## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE: Quintus Corporation, et al.

| | | |
|---|---|---|
| Avaya, Inc. | ) | |
| | ) | |
| Appellant, | ) | C.A. No. 06-769 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| KURT F. GWYNNE, Chapter 11 | ) | Bankruptcy Case No. 00-01-00501 through |
| Trustee, | ) | 01-00503 (MFW) |
| | ) | Adv.   04-53074 |
| Appellee. | ) | AP     06-06-73 |

## APPENDIX TO
## OPENING BRIEF OF DEFENDANT AVAYA
## IN SUPPORT OF ITS APPEAL FROM AN ORDER
## OF THE BANKRUPTCY COURT

ROSENTHAL, MONHAIT & GODDESS, P.A.
Jeffrey S. Goddess (Del. Bar. No. 630)
919 N. Market Street, Suite 1401
Wilmington, DE 19801
jgoddess@rmgglaw.com
(302) 656-4433

- and -

SIDLEY AUSTIN LLP
James D. Arden
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Appellant*

April 9, 2007

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

Asset Purchase Agreement Pursuant to Section 363 of the Bankruptcy Code
Dated as of February 22, 2001 among Quintus Corporation, certain wholly-
owned subsidiaries of Quintus Corporation and Avaya, Inc. (without exhibits)
(Appendix to Answering Brief in Opposition to the Chapter 11 Trustee's Motion
for Partial Summary Judgment and Motion for Sanctions for Spoliation of
Evidence, D.I. 99) ................................................................................................ 1-63

Email from Martin A. Wellington, dated February 20, 2001, to K. Lawson, et al.
Re: Revised Assumed Liabilities Schedule (Appendix to Answering Brief in
Opposition to the Chapter 11 Trustee's Motion for Partial Summary Judgment and
Motion for Sanctions for Spoliation of Evidence, D.I. 99).............................................64

Email from Martin A. Wellington, dated February 20, 2001 to Irving Rotter, et al.
Re: APA and attachments thereto (selected pages) (Appendix to Answering Brief
in Opposition to the Chapter 11 Trustee's Motion for Partial Summary Judgment
and Motion for Sanctions for Spoliation of Evidence, D.I. 99)............................... 65-68

April 5, 2001 Schedule of Assumed Liabilities (Appendix to Answering Brief in
Opposition to the Chapter 11 Trustee's Motion for Partial Summary Judgment and
Motion for Sanctions for Spoliation of Evidence, D.I. 99)...................................... 69-71

April 20, 2001 Schedule of Assumed Liabilities (Appendix to Answering Brief in
Opposition to the Chapter 11 Trustee's Motion for Partial Summary Judgment and
Motion for Sanctions for Spoliation of Evidence, D.I. 99)...................................... 72-74

Aged Payables Report as of April 20, 2001(Appendix to Answering Brief in
Opposition to the Chapter 11 Trustee's Motion for Partial Summary Judgment and
Motion for Sanctions for Spoliation of Evidence, D.I. 99)................................... 75-133

May 15, 2001 Email from Kelly Wall to Lewis Black et al. forwarding May 8, 2001
Email from Mark Thompson to Kelly Wall Re: Liabilities Update and attachments
thereto (select pages) (Appendix to Answering Brief in Opposition to the
Chapter 11 Trustee's Motion for Partial Summary Judgment and Motion for Sanctions
for Spoliation of Evidence, D.I. 99)................................................................... 134-140

June 2001 Quintus Corporation Account Reconciliation (select pages) (Appendix to
Answering Brief in Opposition to the Chapter 11 Trustee's Motion for Partial
Summary Judgment and Motion for Sanctions for Spoliation of Evidence, D.I. 99).......... 141-146

July 25, 2001 Email from Gregory Maloney to Gary Wilson forwarding
July 25, 2001 Email from Mark Thompson to Gregory Maloney attaching
Schedule of Assumed Liabilities as of June 30, 2001 (Appendix to Answering
Brief in Oppposition to the Chapter 11 Trustee's Motion for Partial Summary
Judgment and Motion for Sanctions for Spoliation of evidence, D.I. 99) ........................... 147-152

Deposition Transcript of Irving L. Rotter, dated November 4, 2005 (selected pages)
(Appendix to Opening Brief of Defendant Avaya, Inc. in Support of its Motion
for Partial Summary Judgment, D.I. 90; Appendix to Answering Brief in
Opposition to the Chapter 11 Trustee's Motion for Partial Summary Judgment and
Motion for Sanctions for Spoliation of Evidence, D.I. 99) ................................................. 153-156

Deposition Transcript of Kurt F. Gwynne, dated November 22, 2005 (selected pages)
(Appendix to Opening Brief of Defendant Avaya, Inc. in Support of its Motion for
Partial Summary Judgment, D.I. 90) ................................................................................ 157-161

Deposition Transcript of Eric M. Sherbet, dated November 22, 2005 (selected pages)
(Appendix to Opening Brief of Defendant Avaya, Inc. in Support of its Motion for
Partial Summary Judgment, D.I. 90; Appendix to Answering Brief in Opposition to
the Chapter 11 Trustee's Motion for Partial Summary Judgment and Motion for
Sanctions for Spoliation of Evidence, D.I. 99) ................................................................. 162-167

Deposition Transcript of Shobhna Asthana, dated January 25, 2006 (selected pages)
(Appendix to Opening Brief of Defendant Avaya, Inc. in Support of its Motion for
Partial Summary Judgment, D.I. 90; Appendix to Answering Brief in Opposition to
the Chapter 11 Trustee's Motion for Partial Summary Judgment and Motion for
Sanctions for Spoliation of Evidence, D.I. 99) ................................................................. 168-177

Deposition Transcript of Mark Thompson, dated January 26, 2006 (selected pages)
(Appendix to Opening Brief of Defendant Avaya, Inc. in Support of its Motion for
Partial Summary Judgment, D.I. 90; Appendix to Answering Brief in Opposition to
the Chapter 11 Trustee's Motion for Partial Summary Judgment and Motion for
Sanctions for Spoliation of Evidence, D.I. 99) ................................................................. 178-211

Deposition Transcript of Rosie Nguyen, dated January 27, 2006 (selected pages)
(selected pages) (Appendix to Opening Brief of Defendant Avaya, Inc. in Support of
its Motion for Partial Summary Judgment, D.I. 90; Appendix to Answering Brief in
Opposition to the Chapter 11 Trustee's Motion for Partial Summary Judgment and
Motion for Sanctions for Spoliation of Evidence, D.I. 99) ................................................ 212-221

ii

ASSET PURCHASE AGREEMENT
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE

Dated as of

February 22, 2001

among

**QUINTUS CORPORATION,**

certain wholly-owned subsidiaries of

**QUINTUS CORPORATION**

and

**AVAYA, INC.**

---

*SIGNING SET*

---

Asset Purchase Agreement Pursuant to Section 363 of The Bankruptcy Code dated as of February 22, 2001 among Quintus Corporation, certain wholly-owned subsidiaries of Quintus Corporation and Avaya, Inc. ........... 1

Exhibit A- Reserved ............... 2

Exhibit B- Reserved ............... 3

Exhibit C- Bidding Procedures ............... 4

Exhibit D- Term Sheet for Credit Agreement ............... 5

Exhibit E- Disclosure Documents ............... 6

Company Disclosure Schedule ............... 7

Index to Annexes to the Company Disclosure Schedule ............... 8

Annex 1.01(b)- List of Customers with whom Company has Executory Contracts ............... 9

B - 1

1

000468

Annex 3.01- List of the Good Standing Status of Company................. 10

Annex 3.06- Refer to Exhibit E of the Asset Purchase Agreement......... 11

Annex 3.14(h)- List of Names of all Employees Receiving Annual
Compensation in Excess of $100,000............................................. 12

Annex 3.16(a)- Contracts Table.................................................. 13

Annex 3.16(a)(i)- Capital Leases................................................. 14

Annex 3.16(a)(vii)(A)- List of Disbursements made by Company;
List of International Suppliers of Company Representing Annual Turnover
In Excess of $100,000............................................................. 15

Annex 3.16(a)(vii)(B)- List of Invoicing Activity of Company; List
of International Customers of Company with Annual Invoicing Activity
in Excess of $100,000............................................................. 16

Annex 3.16(a)(vii)(C)- List of Customers with Open Statement of Work
Contracts in Excess of $100,000 for a Two-Year Period; List of Customers
with Maintenance Agreements in Excess of $100,000; List of International
Customers Showing License and Maintenance Revenues Separately....... 17

Annex 3.16(a)(xii)- Summary of Active Leases................................ 18

Annex 3.17(b)- Domain Names Registered by Company..................... 19

000469

EXECUTION COPY

ASSET PURCHASE AGREEMENT
PURSUANT TO SECTION 363
OF THE BANKRUPTCY CODE

dated as of

February 22, 2001

among

QUINTUS CORPORATION,

certain wholly-owned subsidiaries of

QUINTUS CORPORATION

and

AVAYA INC.

(NP) 12173\005\BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

000470

# TABLE OF CONTENTS

PAGE

## ARTICLE 1
### PURCHASE AND SALE OF ASSETS

SECTION 1.01. *Acquired Assets* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
SECTION 1.02. *Excluded Assets* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
SECTION 1.03. *Assumed Liabilities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
SECTION 1.04. *Excluded Liabilities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
SECTION 1.05. *Purchase Price* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## ARTICLE 2
### THE CLOSING

SECTION 2.01. *Closing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
SECTION 2.02. *Deliveries at Closing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## ARTICLE 3
### REPRESENTATIONS AND WARRANTIES OF SELLERS

SECTION 5.01. *Conduct of the Business* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
SECTION 5.02. *Marketing Period* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
SECTION 5.03. *Bankruptcy Court Approvals* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
SECTION 5.04. *Access and Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
SECTION 5.05. *Books and Records* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
SECTION 5.06. *All Reasonable Efforts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
SECTION 5.07. *Further Assurances* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
SECTION 5.08. *Public Announcements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
SECTION 5.09. *Notices of Certain Events* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
SECTION 5.10. *Name Change* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
SECTION 5.11. *Permits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
SECTION 5.12. *Transfer Taxes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
SECTION 5.13. *Consents* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
SECTION 5.14. *Excess Liabilities* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
SECTION 5.15. Acton, Massachusetts Real Property and Facility . . . . . . . . . . . 33

## ARTICLE 6
### EMPLOYEES AND BENEFITS

SECTION 6.01. *Employees and Offers of Employment* . . . . . . . . . . . . . . . . . . . . 33
SECTION 6.02. *Company Employee Benefit Plans* . . . . . . . . . . . . . . . . . . . . . . . . 34

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

000471

PAGE

SECTION 6.03. *Buyers Benefit Plans* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## ARTICLE 7
## TAX MATTERS

SECTION 7.01. *Tax Cooperation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
SECTION 7.02. *Tax Reporting* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## ARTICLE 8
## CONDITIONS PRECEDENT

SECTION 8.01. *Conditions Precedent to Obligation of Company and Buyer* . . . 36
SECTION 8.02. *Conditions Precedent to Obligation of Company* . . . . . . . . . . . 36
SECTION 8.03. *Conditions Precedent to Obligation of Buyer* . . . . . . . . . . . . . . 37

## ARTICLE 9
## TERMINATION, AMENDMENT AND WAIVER

SECTION 9.01. *Termination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
SECTION 9.02. *Effect of Termination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## ARTICLE 10
## GENERAL PROVISIONS

SECTION 10.01. *Notices* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
SECTION 10.02. *Survival of Representations and Warranties* . . . . . . . . . . . . . . 41
SECTION 10.03. *Amendments; No Waivers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
SECTION 10.04. *Expenses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
SECTION 10.05. *Successors and Assigns* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
SECTION 10.06. *Governing Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
SECTION 10.07. *Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
SECTION 10.08. *WAIVER OF JURY TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . 43
SECTION 10.09. *Counterparts; Effectiveness* . . . . . . . . . . . . . . . . . . . . . . . . . 43
SECTION 10.10. *Descriptive Headings; Certain Terms* . . . . . . . . . . . . . . . . . . 43
SECTION 10.11. *Entire Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
SECTION 10.12. *Severability; Validity; Parties of Interest* . . . . . . . . . . . . . . . . 43
SECTION 10.13. *Bulk Sales* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CATJ 17115/0005/BANKRUPTCY.SALE/AFA/365.apa.avaya.execution.wpd

-ii-

ARTICLE 11
DEFINITIONS

SECTION 11.01. *Defined Terms* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## EXHIBITS

EXHIBIT A - Reserved
EXHIBIT B - Reserved
EXHIBIT C - Bidding Procedures
EXHIBIT D - Term Sheet for Credit Agreement
EXHIBIT E - Disclosure Documents

(NP) J7173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

000473

## ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT, dated as of February 22, 2001, among Quintus Corporation, a Delaware corporation ("Company"), Mustang.com, Inc., a California corporation ("Mustang.com") and Acuity Corp., a Delaware corporation ("Acuity"), each of which is a wholly owned subsidiary of Company, and all of which are collectively with Company referred to herein as the "Sellers") and Avaya Inc., a Delaware corporation ("Buyer").

WHEREAS, Company, among other things, designs, develops, manufactures, sells and services comprehensive e-customer relationship management solutions;

WHEREAS, the Board of Directors of Company has determined that it is necessary to file, and to cause each other Seller to file for reorganization relief under Chapter 11 of Title 11 of the United States Code, Section 101 et seq., as amended (the "Bankruptcy Code") by filing a case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, the Board of Directors of Company has determined that it is in the best interests, subject to the terms and conditions of this Agreement, of Company to pursue an order of the Bankruptcy Court to sell, convey, assign and transfer to Buyer substantially all of the assets and contracts and unexpired leases constituting the business of Company together with the obligations and liabilities in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with Sections 363 and 365 and other applicable provisions of the Bankruptcy Code;

WHEREAS, certain assets of Sellers will be sold to Buyer, and the contracts and unexpired leases will be assumed and assigned to Buyer pursuant to an order of the Bankruptcy Court approving such sale under Section 363 of the Bankruptcy Code and approving such assumption and assignment under Section 365 of the Bankruptcy Code, and upon the terms and subject to conditions of this Agreement; and

WHEREAS, Buyer has agreed to advance to Company certain amounts, with respect to any advances after the commencement of the Chapter 11 Case, pursuant to Section 364 of the Bankruptcy Code and subject to the approval of the Bankruptcy Court, upon the terms and subject to the conditions set forth in the Term Sheet attached hereto as Exhibit D (the "Credit Agreement Term Sheet") and such other customary and reasonable terms and conditions as the parties shall

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-1-

000474

agree, all of which shall be set forth in a mutually agreeable form of credit agreement;

NOW, THEREFORE, in consideration of the foregoing premises, the respective representations, warranties, covenants and agreements set forth herein and other consideration the receipt of and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1
## PURCHASE AND SALE OF ASSETS

SECTION 1.01. *Acquired Assets.* (a) *Section 363 Assigned Assets.* Pursuant to Section 363 of the Bankruptcy Code and on the terms of and subject to the conditions precedent set forth in Article 8 of this Agreement, at the Closing Company shall, and shall cause each other Seller and Foreign Subsidiary to, sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase and accept from Sellers and Foreign Subsidiaries, all of Sellers' and Foreign Subsidiaries' right, title and interest in, to and under all of the assets, property, rights and claims of Sellers and Foreign Subsidiaries as of the date hereof, and all of such assets, rights and claims acquired after the date hereof, which have not been subsequently disposed of in the ordinary course of business, of every kind and description, wherever located, real, personal or mixed, whether tangible or intangible other than Excluded Assets (collectively, the "**Section 363 Assigned Assets**"). For the avoidance of doubt, the Section 363 Assigned Assets shall include:

(i)    all of Sellers' and Foreign Subsidiaries' cash and cash equivalents on hand and in banks;

(ii)    all computers, servers, machinery, equipment, vehicles (including, to the extent assignable, rights to the warranties received from the manufacturers and distributors of any of the foregoing and to any related claims, credits, rights of recovery and setoff with respect to any of the foregoing), furniture, furnishings and other personal property and interests therein;

(iii)    all inventories (including any raw materials, work-in-progress, parts, finished products, and inventoriable supplies) and any rights of Sellers and Foreign Subsidiaries to the warranties received from suppliers, and, to the extent assignable, any related claims, credits, rights of recovery and set off with respect to the foregoing;

(iv)   all of the outstanding capital stock of, or other voting securities or ownership interests in any Person (other than any Seller or any Foreign Subsidiary) owned by Company;

(v)   all accounts, notes and other receivables;

(vi)   all prepaid expenses, credits, deferred charges, advance payments and security deposits (other than any security deposits made by third party bidders in the course of the proceedings contemplated by Section 5.04) including but not limited to ad valorem taxes, leases and rentals;

(vii)   all transferable governmental licenses, permits or other authorizations including all applications therefor;

(viii)   all books, records, files and papers, whether in hard copy or computer format;

(ix)   all goodwill associated with the Business or the Acquired Assets, together with the right to represent to third parties that Buyer is the successor to the Business; and

(x)   the note receivable from Paul Bartlett to Company dated April 27, 2000 in the principal amount of $4,880,700 plus interest accrued thereon.

Notwithstanding the foregoing, the Section 363 Assigned Assets shall not include any executory contracts or unexpired leases, which are dealt with exclusively in Section 1.01(b), nor shall they include the Excluded Assets, as provided in Section 1.02.

(b)   *Section 365 Assumed Rights.* (i) Pursuant to Section 365 of the Bankruptcy Code, at the Closing, Company shall, and shall cause each other Seller to, assume and assign to Buyer, and Buyer shall accept from Sellers, all of Sellers' rights under and title and interest in all of Sellers' executory contracts (including the option provided for in Section 5.16 of this Agreement) and unexpired leases entered into prior to the date hereof, which are listed on Schedule 1.01(b) (collectively, the "**Section 365 Assumed Rights**").

(ii)   Buyer agrees to use all reasonable efforts and to take all reasonable actions, including the cure of defaults the costs of which shall be borne by Sellers and providing adequate assurances of future performance, mutually agreed by Buyer and Company in writing to be necessary or advisable, or determined to be necessary by the Bankruptcy

000476

Court, in order to permit the assumption and assignment of the Section 365 Assumed Rights to Buyer; *provided* that nothing contained herein shall obligate Buyer to take any action other than the payment of money in an amount determined by Buyer in its sole discretion (which amount shall be credited against the Purchase Price if approved in advance in writing by Company, which approval shall not unreasonably be withheld). Subject to the foregoing, Company agrees to use all reasonable efforts and to take all other reasonable actions necessary or advisable, or determined to be necessary by the Bankruptcy Court, in order to permit the assumption and assignment to Buyer of the Section 365 Assumed Rights.

(c)  *Intellectual Property Rights and Permits*. For the avoidance of doubt, the assets so transferred shall, to the fullest extent permissible under Sections 363 and 365 of the Bankruptcy Code, include all right, title and interest of Sellers in, to and under the Intellectual Property owned by Sellers and licenses of Intellectual Property to Sellers as well as in, to and under any permits, licenses and authorizations issued by any domestic, foreign or supranational governmental body, agency, official or authority.

SECTION 1.02. *Excluded Assets*. Notwithstanding the foregoing, Buyer expressly understands and agrees that (i) the Purchase Price and any other amounts received in respect of, and all rights of Company arising under, any of this Agreement, any order of the Bankruptcy Court relating to this Agreement, or the transactions contemplated hereby, (ii) all claims, credits, causes of action or rights under any insurance policies of Sellers related to any Excluded Liabilities, (iii) any claims or causes of action of Sellers relating to the Existing Claims (as defined below), (iv) any books and records which Company concludes (based upon advice of counsel) is privileged or confidential material in connection with the Existing Claims; *provided* that a copy of such books and records redacted to eliminate such privileged or confidential material shall be provided to Buyer, (v) any books and records of Sellers required by law to be retained by Sellers, (vi) the notes of Alan Anderson and Susan Salvesen referred to in Schedule 3.14 item 24 of the Company Disclosure Schedule, (vii) the real property of Company located in Acton, Massachusetts and referred to in Section 5.15 (collectively, the "Excluded Assets"), and (viii) the capital stock of Mustang.com, Acuity and, subject to Section 5.16, the Foreign Subsidiaries shall be excluded from the Acquired Assets, *provided* that Buyer shall be entitled at its own cost and expense to examine and make copies of such books and records retained under Section 1.02(a)(v).

SECTION 1.03. *Assumed Liabilities*. On the terms and subject to the conditions set forth in this Agreement, at the Closing, Buyer shall assume from Sellers and thereafter pay, perform or discharge in accordance with their terms all

[NP] 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-4-

000477

of the liabilities and obligations in Schedule 1.03, but excluding any Excluded Liabilities (the "Assumed Liabilities"). No more than 3 business days prior to the Closing Date, Company shall deliver to Buyer a schedule in reasonable detail showing Company's estimate of the Assumed Liabilities as of the Closing Date. Buyer shall have the right, to review this schedule of Assumed Liabilities, and the parties agree to discuss in good faith any comments or questions that Buyer may have with respect to such schedule. From and after the Closing, Buyer shall have the right to confirm the accuracy of the schedule for a period of 5 business days after the Closing. If, based on such review, Buyer believes that the Assumed Liabilities as of the Closing Date exceed $30,000,000, the parties agree to discuss in good faith Buyer's comments, and any disputes that the parties cannot resolve within 2 business days will be resolved expeditiously before the Bankruptcy Court. If the Assumed Liabilities as of the Closing Date, as reflected on the schedule prepared by Company or as revised upon resolution of any comments by Buyer, exceed $30,000,000, then the provisions of Section 5.14 shall apply.

SECTION 1.04. *Excluded Liabilities.* Notwithstanding any provision in this Agreement or any other writing or commitment (written or oral) to the contrary, other than the Assumed Liabilities Buyer is not assuming any liabilities, obligations or commitments of Sellers (or any predecessors of Sellers or any prior owners of all or part of their businesses and assets) whether known or unknown, absolute, accrued, contingent or otherwise (whether or not related to the Business or the Acquired Assets). For the avoidance of doubt, the Excluded Liabilities shall include:

(i)    any liability or obligation for Designated Chapter 11 Costs and any contracts related thereto;

(ii)    any and all claims, actions, causes of action and liabilities of any type, whether known or unknown, whether disputed or undisputed, whether fixed or contingent, whether liquidated or unliquidated (including all costs incurred in defending such claims, actions, causes of action and liabilities) related to the factual matters asserted in the cases set forth on Schedule 1.04(a)(ii) (the "Existing Claims");

(iii)    any obligation of Sellers with respect to indemnification of any officer, director, employee or other agent or representative of Sellers arising out of facts, events or circumstances occurring or existing prior to the Closing Date;

(iv)    any liability or obligation relating to an Excluded Asset, including the mortgages on the real estate facilities described in Section 5.15;

(MP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-5-

(v)   any and all claims, actions, causes of action and liabilities of any type, whether known or unknown, relating to payments of an aggregate of $4.7 million purportedly in satisfaction of a receivable determined to have arisen based upon falsified documentation and currently reflected as a liability on the Company Balance Sheet, as described in the Company Disclosure Documents;

(vi)   any Taxes, other than Taxes accrued by the Company at or prior to the Closing;

(vii)   any environmental condition of any real or personal property existing on or prior to the Closing Date whether arising under Environmental Laws (or in connection with the Release or threatened Release of any Contaminant); and

(viii)   any and all claims, actions, causes of actions and liabilities of any type, whether known, unknown, relating to stock options, the employee stock purchase plan and any transaction bonuses described in Schedule 3.14(a)(3) (the "**Excluded Employee Liabilities**").

All such liabilities and obligations shall be retained by and remain obligations and liabilities of the applicable Seller (all such liabilities and obligations not being assumed being herein referred to as the "**Excluded Liabilities**").

SECTION 1.05. *Purchase Price.* (a)  In consideration for the Acquired Assets, Buyer shall pay to Company at the Closing the amount in cash equal to $30,000,000, subject to adjustment pursuant to Section 5.15, and, if applicable, Section 5.14 (the "**Purchase Price**").  The Purchase Price shall be paid as provided in Section 2.02(b).

(b)   The Purchase Price (plus Assumed Liabilities to the extent properly taken into account under Section 1060 of the Code) shall be allocated among the Acquired Assets acquired by Buyer as agreed upon by Buyer and Company within 90 days after the Closing.  Buyer and Company agree to be bound by such allocation and to file, in accordance with Section 1060 of the Code, all Tax Returns and reports with respect to the transactions contemplated by this Agreement, including, but not limited to, all federal, state and local Tax Returns on the basis of such allocation.  Buyer and Company agree to file any additional information return required to be filed pursuant to Section 1060 of the Code and to treat the adjusted allocation in the manner described above.

## ARTICLE 2
## THE CLOSING

SECTION 2.01. *Closing.* The consummation of the transactions contemplated by this Agreement (the "Closing") shall take place at the offices of Davis Polk & Wardwell located at 1600 El Camino Real, Menlo Park, California 94025 at 10:00 a.m. P.S.T. as promptly as practicable after the date hereof but in no event later than three business days after the conditions set forth in Article 8 shall have been satisfied or waived, or at such other time, date and place as shall be fixed by agreement between Company and Buyer (the date of the Closing being herein referred to as the "Closing Date").

SECTION 2.02. *Deliveries at Closing.* (a) At the Closing, Sellers shall deliver to Buyer such deeds, bills of sale, assignments of leases and contracts, and any other instruments of conveyance that are necessary or appropriate to effectuate the transfer of the Acquired Assets to Buyer, and such other documents, instruments or certificates required to be delivered as a condition precedent to Buyer's obligations under this Agreement or as Buyer or its counsel may reasonably request.

(b)     At the Closing, Buyer shall deliver to Company (i) the Purchase Price, by wire transfer of same day funds and cancellation of obligations for any funds advanced by Buyer to Company as contemplated by the Credit Agreement Term Sheet or Section 9.01(iv), if any, and (ii) such duly executed instruments as are necessary or appropriate to effectuate the assumption of the Assumed Liabilities by Buyer, and such other documents, instruments or certificates required to be delivered as a condition precedent to Company's obligations under this Agreement, or as Company or its counsel may reasonably request.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Each Seller represents and warrants to Buyer, jointly and severally, as of the date hereof and as of the Closing Date except as otherwise provided herein and except as specifically disclosed in the Company Disclosure Schedules, that each of the statements contained in this Article 3 are true and complete. Each exception set forth in the Company Disclosure Schedule and each other reference to this Agreement set forth in the Company Disclosure Schedule (i) is identified by reference to, or has been grouped under a heading referring to, a specific individual section of this Agreement, (ii) shall be deemed an exception or qualification to the entire section of this Agreement so referenced, regardless of

(MP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

000480

any subsections within such section and, except as otherwise specifically stated with respect to such exception, relates only to such section.

SECTION 3.01. *Corporate Existence and Power.* Company is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Delaware, and has all corporate powers and all governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted, except for those licenses, authorizations, permits, consents and approvals the absence of which would not reasonably be expected have, individually or in the aggregate, a Material Adverse Effect on Company. Company is duly qualified to do business as a foreign corporation and is in good standing in each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Company. Company has heretofore delivered to Buyer true and complete copies of the certificate of incorporation and bylaws of Company as currently in effect.

SECTION 3.02. *Corporate Authorization.* The execution, delivery and performance by Sellers of this Agreement and the consummation by Sellers of the transactions contemplated hereby are within Sellers' corporate powers and have been duly authorized by all necessary corporate action on the part of Sellers. This Agreement has been duly and validly executed by Sellers and will constitute a valid and binding obligation of Sellers enforceable in accordance with its terms, subject to the entry of the Section 363/365 Order, except for the provisions of Section 9.01 with respect to the Topping Fee which shall become the binding obligation of Sellers upon the entry of the Interim Order, and except as enforceability against Sellers may be limited by applicable bankruptcy, reorganization, insolvency, moratorium, and other laws of similar application affecting creditors' rights generally from time to time in effect and to general equitable principles.

SECTION 3.03. *Governmental Authorization.* (a) The execution, delivery and performance by Company of this Agreement and the consummation by Sellers of the transactions contemplated hereby require no approval by, action by or in respect of, or filing with, any federal, state, local or foreign government, any court, administrative, regulatory or other governmental agency, commission or authority or any non-governmental self-regulatory agency, commission or authority, domestic, foreign or supranational other than (i) consents, approvals or authorizations of, or declarations or filings with, the Bankruptcy Court, (ii) compliance with any applicable requirements of the HSR Act, and (iii) any approvals, actions or filings the absence of which would not be reasonably expected to have, individually or in the aggregate, a Material Adverse Effect.

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-8-

B - 14

14

000481

(b)  The execution and delivery of this Agreement does not, and the consummation of the transactions contemplated by this Agreement hereby and the compliance with the provisions of this Agreement will not, conflict with, or result in any violation of, or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit under, or result in the creation of any Lien upon any of the properties or assets of Company or any Subsidiary under (i) any loan or credit agreement, note, bond, mortgage, indenture, lease or other agreement, instrument, permit, concession, franchise, license or similar authorization applicable to Company or any Subsidiary or their respective properties or assets, other than (A) such violations, defaults, rights of termination, cancellation or acceleration or losses of benefits as would not be given effect under the Bankruptcy Code or (B) as disclosed pursuant to Section 3.04 or (ii) subject to the governmental filings and other matters referred to in Section 3.03(a), any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Company or any Subsidiary or their respective properties or assets, other than, in the case of paragraph (a), any such conflicts, violations, defaults, rights, losses or liens that individually or in the aggregate could not reasonably be expected to have a Material Adverse Effect.

SECTION 3.04.  *Required and Other Consents*.  Schedule 3.04 sets forth each material agreement, contract, lease or other instrument binding upon Company that will constitute an Assumed Liability, and each material agreement, contract, lease or other instrument binding upon any Subsidiary of Company, which requires the consent or other action by any Person as a result of the execution, delivery and performance of this Agreement, except any such contract, lease or other instruments binding upon Sellers that can be assumed and assigned without such consent or action under the Bankruptcy Code.

SECTION 3.05.  *Subsidiaries*.  (a) Each Subsidiary of Company is a corporation duly incorporated, validly existing and in good standing under the laws of its jurisdiction of incorporation, has all corporate powers and all governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted, except for those licenses, authorizations, permits, consents and approvals the absence of which would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Company.  Each such Subsidiary is duly qualified to do business as a foreign corporation and is in good standing in each jurisdiction where such qualification is necessary, except for those jurisdictions where failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, have a Material Adverse Effect on Company.  All Subsidiaries of Company and their respective jurisdictions of incorporation are identified on Schedule 3.05.  Company has heretofore delivered to Buyer true and complete copies of the charter and bylaws

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-9-

000482

(or other similar organizational documents) of each wholly-owned Subsidiary as currently in effect. Except as set forth in Schedule 3.05, the Company and each of its Subsidiaries do not own any equity interests in any other Person.

(b)    All of the outstanding capital stock of, or other voting securities or ownership interests in, each Subsidiary of Company, is owned by Company, directly or indirectly, free and clear of any Lien and free of any other limitation or restriction (including any restriction on the right to vote, sell or otherwise dispose of such capital stock or other voting securities or ownership interests other than any such restriction on Company pursuant to the Bankruptcy Code that shall not be binding on Buyer after the Closing). There are no outstanding (i) securities of Company or any of its Subsidiaries convertible into or exchangeable for shares of capital stock or other voting securities or ownership interests in any Subsidiary of Company or (ii) warrants, calls, options or other rights to acquire from Company or any of its Subsidiaries, or other obligation of Company or any of its Subsidiaries to issue, any capital stock or other voting securities or ownership interests in, or any securities convertible into or exchangeable for any capital stock or other voting securities or ownership interests in, any Subsidiary of Company (the items in clauses (i) and (ii) being referred to collectively as the "Company Subsidiary Securities").

SECTION 3.06.  *Disclosure Documents.*  Company has delivered to Buyer the Company Disclosure Documents and will deliver to Buyer any Company SEC Documents filed after the date hereof promptly upon such filing. The Company Disclosure Documents comply or will comply in all material respects with the requirements of the forms on which such documents were or are to be filed or prepared and, taken together, do not and will not contain as of the date hereof or upon which such documents are filed any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein, in the light of the circumstances under which they were made or will be made, not misleading.

SECTION 3.07.  *Financial Statements.*  The unaudited consolidated financial statements and consolidated interim financial statements of Company included or to be included in the Company Disclosure Documents (the "Company Financial Statements"), comply or will comply as to form in all material respects with applicable accounting requirements and the published rules and regulations of the SEC with respect thereto, have been or will be prepared in accordance with GAAP (except, in the case of unaudited interim statements, as permitted by Form 10-Q of the SEC) applied on a consistent basis during the periods involved (except as may be indicated in the notes thereto) and fairly present in accordance with GAAP applied on a consistent basis in all material respects the consolidated financial position of the Company and its consolidated Subsidiaries as of the dates thereof and the consolidated results of their operations

000483

and cash flows for the periods then ended (subject, in the case of unaudited interim statements, to normal recurring year-end audit adjustments).

SECTION 3.08. *Absence of Certain Changes.* Since the Balance Sheet Date, the Business has been conducted in the ordinary course consistent with past practices and there has not been:

(a)    any declaration, setting aside or payment of any dividend or other distribution with respect to any shares of capital stock of Company or any of its Subsidiaries, or any repurchase, redemption or other acquisition by Company or any of its Subsidiaries of any outstanding shares of capital stock or other securities of, or other ownership interests in, Company or any of its Subsidiaries;

(b)    any making of any material loan, advance or capital contributions to or investment in any Person other than loans, advances or capital contributions to or investments in its wholly-owned Subsidiaries made in the ordinary course of business consistent with past practices;

(c)    any damage, destruction or other loss (whether or not covered by insurance) or condemnation or other taking affecting the Business or the assets of Company or any of its Subsidiaries that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Company;

(d)    any transaction or commitment made, or any contract or agreement entered into, by Company or any of its Subsidiaries relating to the Acquired Assets or Business (including the acquisition or disposition of any assets) or any relinquishment by Company or any of its Subsidiaries of any contract or other right, in either case, material to Company, other than transactions and commitments in the ordinary course of business consistent with past practices and those contemplated by this Agreement;

(e)    any (i) employment, deferred compensation, severance, retirement or other similar agreement entered into with any director, officer or employee of Company or any Subsidiary (or any amendment to any such existing agreement), (ii) grant of any severance or termination pay to any director, officer or employee of Company or any Subsidiary, or (iii) change in compensation or other benefits payable to any director, officer or employee of Company or any Subsidiary pursuant to any severance or retirement plans or policies thereof, in each case other than in the ordinary course of business consistent with past practices, *provided* that Company may incur financial obligations and liabilities pursuant to Approved Employee Orders.

(f)    any material labor dispute, other than routine individual grievances, or any activity or proceeding by a labor union or representative thereof to organize any employees of Company or any of its Subsidiaries, or any material lockouts, strikes, slowdowns, work stoppages or threats thereof by or with respect to such employees;

(g)    any material Tax election made or changed, any annual tax accounting period changed, any method of tax accounting adopted or changed, any material amended Tax returns or claims for material Tax refunds filed, any material closing agreement entered into, any material Tax claim, audit or assessment settled, or any right to claim a material Tax refund, offset or other reduction in Tax liability surrendered;

(h)    except insofar as may have been required by a change in GAAP, any change in accounting methods, principles or practices by Company;

(i)    failure to protect or keep the Company Intellectual Property Rights in effect;

(j)    except as disclosed in the Company Disclosure Documents, any event or occurrence or change, financial or otherwise, in the Acquired Assets, Business or Assumed Liabilities that has had or would reasonably be expected to have a Material Adverse Effect;

(k)    except as disclosed in the Company Disclosure Documents, (i) any granting by Company or any Subsidiary to any current or former director, officer or other employee of Company or Subsidiary of any increase in compensation, bonus or other benefits, except for normal increases in cash compensation in the ordinary course of business consistent with past practice or as was required under any employment agreements in effect as of the date of the Audited Balance Sheet included in the Company Disclosure Documents, (ii) any granting by Company or any Subsidiary to any such current or former director, officer or employee of any increase in severance or termination pay, except in the ordinary course of business consistent with past practice, or (iii) any entry by Company or any Subsidiary into, or any amendments of, any employment, deferred compensation, consulting, severance, termination or indemnification agreement with any such current or former director, officer or employee;

(l)    any material amendment or termination, other than in the ordinary course of business consistent with past practice, of any agreement to which Company or any Subsidiary is a party and which contract is or should be set forth on the Company Disclosure Schedule;

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-12-

B - 18                                                                000485

18

(m)   any undertaking or commitment to undertake capital expenditures exceeding $50,000 for any single project or related series of projects, other than commitments or expenditures related to the completion of and move into Company's new headquarters facility in Dublin, California for which there have not been any undertakings or commitment to undertake capital expenditures exceeding $150,000 for any single project or related series of projects;

(n)   any sale, lease (as lessor), transfer or other disposition of, mortgage, pledge, or imposition of any Lien on, any of the assets reflected on the Audited Balance Sheet or any assets acquired by Company or any of its Subsidiaries after the date of such Audited Balance Sheet, except for inventory and personal property sold or otherwise disposed of for fair value in the ordinary course of its business consistent with past practice; or

(o)   any resolution, agreement or understanding to take any act similar to those set forth in this Section 3.08, except as contemplated by this Agreement.

SECTION 3.09. *No Undisclosed Material Liabilities.* There are no liabilities or obligations of Company or any of its Subsidiaries of any kind, other than:

(a)   liabilities or obligations specifically identified and described in the Company Disclosure Documents;

(b)   liabilities not required under GAAP on a basis consistent with preceding accounting periods to be shown in the Company Financial Statements;

(c)   liabilities incurred in the ordinary course of business since the Balance Sheet Date;

(d)   liabilities relating to the Existing Claims;

(e)   liabilities relating to the Excluded Assets;

(f)   liabilities under this Agreement or the transactions contemplated hereby; or

(g)   undisclosed liabilities which, individually or in the aggregate, are not material to Company.

SECTION 3.10. *Compliance with Laws and Court Orders.* (a) Each of Company and its Subsidiaries has complied in all material respects with, and is

(\IP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-13-

000486

not in violation of, in any material respect, any law, ordinance or governmental rule or regulation (collectively, "Laws") to which it or its business is subject;

(b)    Each of Company and its Subsidiaries has obtained all licenses, permits, certificates or other governmental authorizations (collectively "Authorizations") necessary for the ownership or use of the Acquired Assets and the Business other than Authorizations (i) which are ministerial in nature and which Company or such Subsidiary has no reason to believe would not be issued in due course and (ii) which, the failure of Company or such Subsidiary to possess, would, after the Closing, subject Buyer to penalties or other fines in excess of $75,000 in the aggregate ("Immaterial Authorizations");

(c)    Neither Company nor any of its Subsidiaries has received notice of violation of, or knows of any violation of, any Laws to which it or its business is subject or any Authorization necessary for the ownership or use of its assets and properties or the conduct of its business (other than Immaterial Authorizations).

SECTION 3.11. *Litigation.* Except for the matters listed on Schedule 3.11, there is no action, suit, investigation or proceeding (or any basis therefor) pending against, or, to the knowledge of Company, threatened against or affecting, Company, any of its Subsidiaries, any present or former officer, director or employee of Company or any of its Subsidiaries or any other Person for whom Company or any of such Subsidiary may be liable or any of their respective properties before any court or arbitrator or before or by any governmental body, agency or official, domestic, foreign or supranational, that, if determined or resolved adversely in accordance with the plaintiff's demands, would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect on Company.

SECTION 3.12. *Finders' Fees.* There is no investment banker, broker, finder or other intermediary that has been retained by or is authorized to act on behalf of Company or any of its Subsidiaries who might be entitled to any fee or commission from Company or any of its Affiliates in connection with the transactions contemplated by this Agreement.

SECTION 3.13. *Tax Matters.* (a) Except to the extent, if any, constrained by the pendency of the Chapter 11 Case or reserved for on the Company Financial Statements, Company has filed all Tax Returns that has been required to be filed and timely paid all Taxes payable by it for the Pre-Closing Tax Period which will have been required to be paid on or prior to the date hereof, the non-payment of which would result in a Lien on any Acquired Asset (that would not be released pursuant to the Section 363/365 Order), or would otherwise reasonably be expected to have a Material Adverse Effect, and such Tax Returns are complete

and accurate in all material respects and disclose all Taxes required to be paid in respect of the Company or the Acquired Assets with respect to the Pre-Closing Tax Period.

(b)    Company has established, in accordance with GAAP applied on a basis consistent with that of preceding periods, adequate reserves for the payment of all Taxes which arise from or with respect to the Acquired Assets or the operation of the Business and are incurred in or attributable to the Pre-Closing Tax Period (that would not be released pursuant to the Section 363/365 Order), the non-payment of which would result in a Lien on any Acquired Asset, or would otherwise reasonably be expected to have a Material Adverse Effect.

(c)    Except as reserved for on the Company Financial Statements, there is no claim, action, audit, assessment, suit or other proceeding now pending or threatened expressly asserting that Company is liable for any Tax in any jurisdiction.

SECTION 3.14.  *Employee Benefit Plans.* (a)  Schedule 3.14(a) lists each material "employee benefit plan", as such term is defined in Section 3(3) of ERISA and each material employment, severance or other similar contract and any material  arrangement, policy, plan or arrangement providing for insurance coverage (including any self-insured arrangements), workers' compensation, disability benefits, supplemental unemployment benefits, vacation benefits, retirement benefits or for deferred compensation, profit-sharing, bonuses, stock options, stock appreciation or other forms of incentive compensation or post-retirement insurance, compensation or benefits which (i) is entered into, maintained or contributed to, as the case may be, by Company or any of its Subsidiaries or ERISA Affiliates and (ii) covers any employee of Company.  Such contracts, plans and arrangements are hereinafter referred to collectively as the "Benefit Arrangements."

(b)    With respect to each Benefit Arrangement, Company has provided (or will prior to Closing provide) (i) a true and complete copy of such plan document and trust agreement and group annuity contract relating thereto (or, in the case of unwritten plans, descriptions thereof), (ii) the most recently filed Form 5500 and (iii) the most recent summary plan description for each Benefit Arrangement for which such summary plan description is required.  Each Benefit Arrangement has been maintained in substantial compliance with its terms and with the requirements prescribed by any and all statutes, orders, rules and regulations which are applicable to such Benefit Arrangement except where any such failure to do so would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

000488

(c)   No Benefit Arrangement is (i) a Multiemployer Plan or (ii) subject to Title IV of ERISA.

(d)   Each Benefit Arrangement which is intended to be qualified under Section 401(a) of the Code has received an opinion, determination, advisory or notification letter from the Internal Revenue Service that it is so qualified or has remaining a period of time to obtain such a letter from the IRS, and no event has occurred since the date of such determination that would reasonably be expected to result in the revocation of, or adversely affect, such qualification. Company has furnished to Buyer copies of the most recent Internal Revenue Service determination, opinion, or notification letters with respect to each such Plan.

(e)   With respect to the employees of the Business, there are no employee post-retirement medical or health plans in effect, except as required by Section 601 of ERISA and Buyer shall have no responsibility for any such retiree benefits other than as set forth in Article 6.

(f)   Except as set forth on Schedule 3.14(f), no Transferred Employee will become entitled to any retirement, severance or similar benefit solely as a result of the transactions contemplated hereby.

(g)   There is no contract, agreement, plan or arrangement covering any Transferred Employee that, individually or collectively, would give rise to the payment of any amount that would not be deductible pursuant to the terms of Code Section 280G.

(h)   Schedule 3.14(h) sets forth a true and complete list of the names, titles, and annual salaries of all employees of the business of Company whose annual base salary exceeds $100,000.

(i)   Since the Balance Sheet Date and other than as set forth in Schedule 3.14(i), there has not been any adoption or amendment in any material respect by Company, any of its Subsidiaries or any Affiliate of any Benefit Arrangement, or any material change in any actuarial or other assumption used to calculate funding obligations with respect to any Benefit Arrangement, or any change in the manner in which contributions to any Benefit Arrangement are made or the basis on which such contributions are determined.

SECTION 3.15. *Environmental Matters.* (a) Except as disclosed on Schedule 3.15:

(i)   no notice, notification, demand, request for information, citation, summons or order has been received, no complaint has been filed,

000489

no penalty has been assessed, and no action, claim, suit, proceeding or, to Company's knowledge, investigation or review is pending or, to the knowledge of Company, is threatened by any governmental entity or other Person in connection with the Company, any of its Subsidiaries or any of their respective assets or operations relating to or arising out of any Environmental Law or otherwise relating to or arising out of any Release or threatened Release of any Contaminant nor, to the knowledge of the Company, is there any basis therefor;

(ii)    Company and each of its Subsidiaries is in compliance with all Environmental Laws and all Environmental Permits in all material respects; and

(iii)    except as would not reasonably be expected to have a Material Adverse Effect, there are no liabilities of or relating to Company or any of its Subsidiaries of any kind whatsoever, whether accrued, contingent, absolute, determined, determinable or otherwise arising under or relating to any Environmental Law or otherwise relating to or arising out of any Release or threatened Release of any Contaminant, and there are no facts, conditions, situations or set of circumstances that would reasonably be expected to result in or be the basis for any such liability, and neither the Company nor its Subsidiaries are subject to any decree, judgment or settlement relating to the violation of any Environmental Law.

(b)    There has been no environmental investigation, study, audit, test, review or other analysis conducted of which Company has knowledge in relation to the current or prior Business of Company or any of its Subsidiaries or any property or facility now or previously owned or leased by Company or any of its Subsidiaries that has not been delivered to Buyer at least five days prior to the date hereof.

(c)    Neither Company nor any of its Subsidiaries owns, leases or operates or has owned, leased or operated any real property, or conducts or has conducted any operations, in New Jersey or Connecticut.

(d)    For purposes of this Section 3.15, the terms "Company" and "Subsidiaries" shall include any entity that is, in whole or in part, a predecessor of Company or any of its Subsidiaries.

SECTION 3.16.  *Material Contracts.*  (a) Except for the contracts disclosed in Schedule 3.16(a), Company or any of its Subsidiaries is not a party to or bound by:

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-17-

(i)   any written debt instrument, including, without limitation, any loan agreement, line of credit, promissory note, security agreement or other evidence of indebtedness, where Company or any of its Subsidiaries is a lender, borrower or guarantor, other than such instruments (A) with an outstanding principal amount not in excess of $150,000 or (B) entered into subsequent to the date of this Agreement in the ordinary course consistent with past practice and Section 5.01;

(ii)   any written contract or commitment that would materially restrict any assignee of the Business or the Acquired Assets from engaging in any industry or any line of business in any location;

(iii)   any written contract or commitment in excess of $25,000 to which Company or any of its Subsidiaries is a party for any charitable contribution;

(iv)   any written agreement in excess of $150,000 to which Company or any of its Subsidiaries is a party with respect to any assignment, discounting or reduction of any receivables of Company or such Subsidiary reflected in the Company Disclosure Documents as of the Balance Sheet Date;

(v)   any written joint venture or partnership agreement to which Company or any of its Subsidiaries is a party requiring payments by Company in excess of $150,000;

(vi)   any written distributorship, sales agency, sales representative, reseller or marketing agreement to which Company or any of its Subsidiaries is a party, pursuant to which Company or any of its Subsidiaries have made or received aggregate payments exceeding $150,000 calculated on a cash basis during the 24 month period ended December 31, 2000;

(vii)   any value added reseller, original equipment manufacturing, technology transfer, source code license or other license or any other agreement containing the right to sublicense software and/or technology, in each case, to which Company or any of its Subsidiaries is a party pursuant to which Company or any of its Subsidiaries have made or received aggregate payments exceeding $150,000 calculated on a cash basis during the 24 month period ended December 31, 2000, other than agreements related to "off-the-shelf" software;

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-18-

B - 24

**24**

000491

(viii)   any agreement, option or commitment or right with, or held by, any third party to acquire any assets or properties, or any interest therein, of Company or any of its Subsidiaries, having a value in excess of $150,000, except for contracts for the sale of licenses or inventory, machinery or equipment in the ordinary course of business;

(ix)   any license of Intellectual Property by any third party to the Company or any of its Subsidiaries that Company or any of its Subsidiaries could not readily replace without a material impact on Company or such Subsidiary or that is not generally commercially available;

(x)   any written employment contract involving annual compensation in excess of $100,000 entered into by the Company or any of its Subsidiaries;

(xi)   any other agreement, commitment, arrangement or plan not made in the ordinary course of business that is material to the Business; and

(xii)   any outstanding leases, both capital and operating, or licenses, pursuant to which Company or any of its Subsidiaries has (A) obtained the right to use or occupy any real or tangible personal property under arrangements where the remaining obligation is more than $150,000, exclusive of any renewal rights or (B) granted to any other Person the right to use any material item of machinery, equipment, furniture, vehicle or other personal property of Company or any of its Subsidiaries having an original cost of $150,000 or more.

(b)   Except as set forth on Schedule 3.16(a) of the Company Disclosure Schedule, (i) there are no oral contracts or commitments of the types described in Section 3.16(a), (ii) there are no contracts or commitments between Company or any of its Subsidiaries and any Affiliate, (iii) there are no contracts, commitments or arrangements (including with any employee) which require the payment of any compensation upon the occurrence of any change of control, (iv) there are no contracts to which Company or any of its Subsidiaries is a party which would create rights for any Person against Buyer or any of its Affiliates (other than rights against Company as in effect on the Closing Date) and (v) except as set forth in response to Section 3.14, there are no contracts or arrangements, except this Agreement, which provide for payment of any compensation, penalty or liquidated damages to any party solely as a result of the transactions contemplated hereby or in the event of the termination of such contract or arrangement on or following the Closing Date, which amount would not have been payable upon

(NFP) 171723/006/BANKRUPTCY.SALE/APA/2G2.apa.avaya.execution.wpd

-19-

000492

such termination but for the consummation of the transactions contemplated hereby.

SECTION 3.17. *Intellectual Property.* (a) Subject to Section 3.04, Company and its Subsidiaries own, or are validly licensed or otherwise have the right to use, all Intellectual Property, material to the conduct of the Business (the "**Company Intellectual Property Rights**"). Schedule 3.17(a) of the Company Disclosure Schedule contains a list of all such registered Company Intellectual Property Rights owned by Company (other than trade secrets and computer programs which are licensed to Company or any of its Subsidiaries and are generally commercially available).

(b)    Except as disclosed on Schedule 3.17(b) of the Company Disclosure Schedule: neither Company nor any of its Subsidiaries has infringed upon or any Intellectual Property or other proprietary information of any other Person; neither Company nor any of its Subsidiaries has received any written charge, complaint, claim, demand or notice alleging any such infringement, misappropriation or violation (including any claim that Company or any of its Subsidiaries must license or refrain from using any Company Intellectual Property Rights or other proprietary information of any other Person) which has not been settled or otherwise fully resolved except, in each case, for such infringement, misappropriation or violation as would not be material to the conduct of the Business.

(c)    Subject to Section 3.04, except as disclosed on Section 3.17(c) of the Company Disclosure Schedule, assuming that Buyer continues to operate the business of Company and its Subsidiaries as presently conducted, and without taking into account any of Buyer's agreements or intellectual property rights, then Buyer's use of the Company Intellectual Property Rights or other proprietary information which is material to the conduct of the business of Company and its Subsidiaries will not infringe upon, misappropriate or otherwise come into conflict with the Company Intellectual Property Rights or other proprietary information of any other Person except, in each case, for such infringement, misappropriation or violation as would not be material to the conduct of the Business.

(d)    Each employee, agent, consultant, officer, director or contractor who has contributed to or participated in the creation or development of any copyrightable, patentable or trade secret material on behalf of Company, any of its Subsidiaries or any predecessor in interest thereto either: (i) is a party to an agreement, a copy of which has been made available to Buyer, under which Company or one of its Subsidiaries is deemed to be the original owner/author of all property rights therein; or (ii) has executed an assignment or an agreement to

{NP} 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-20-

000493

assign in favor of Company, such Subsidiary or such predecessor in interest, as applicable, all right, title and interest in such material, a copy of which assignment or agreement to assign has been made available to Buyer.

(e)    Except as set forth on Schedule 3.17, (i) Company and its Subsidiaries have not sold, assigned, transferred, licensed or sublicensed, or entered into any contract to sell, assign, transfer or sublicense their Company Intellectual Property Rights other than in the ordinary course of business consistent with past practices and (ii) Company and its Subsidiaries have not entered into any contract or other arrangement pursuant to which Company or such Subsidiary has agreed or is obligated to license, transfer or place in escrow the source code for any of its products (prior or current), other than escrow agreements restricting the use of source code after release to maintenance of the end-user's installation or the distributor's installed base.

(f)    To the knowledge of Company no officer, director or employee of Company or any of its Subsidiaries, has any interest in any Company Intellectual Property Rights (other than as a stockholder of Company) that is material to the business or operations of Company).

(g)    Except as disclosed on Schedule 3.17(g), none of the material development activities relating to Company Intellectual Property Rights were undertaken or performed outside of the United States.

SECTION 3.18.  *Valid Title.*  Upon consummation of the Section 363/365 Sale upon the terms and subject to the conditions described herein, Sellers shall have transferred good and valid title to the Section 363 Assigned Assets, free and clear of any claims or Liens of Persons other than Buyer except for any Permitted Exceptions.  Subject to Section 3.04, and except for Section 365 Assumed Rights that are not, individually or in the aggregate, material to the conduct of the Business, upon consummation of the Section 363/365 Sale upon the terms and subject to the conditions described herein, Sellers shall have transferred good and valid title to the Section 365 Assumed Rights, free and clear of any claims or Liens of Persons other than Buyer except for any Permitted Exceptions. Subject to Section 3.04, other than Section 365 Assumed Rights that are not, individually or in the aggregate, material to the conduct of the Business, and other than the Excluded Assets, the Acquired Assets constitute all the assets, properties, rights and interests used by Company in the Business as conducted at all times since December 31, 2000.  Subject to Section 3.04, other than Section 365 Assumed Rights that are not, individually or in the aggregate, material to the conduct of the Business, and other than the Excluded Assets, no assets, properties, rights and interests of any kind whatsoever are necessary to conduct the Business, exclusive of working capital.

000494

SECTION 3.19. *Employment Matters*. Within three business days of the date of this Agreement, Company shall deliver to Buyer a true and correct copy of the organizational chart of Company, identifying all officers and their functional responsibilities within Company and all of the other employees of Company reporting directly or indirectly primarily to such officers. Each of Company and its Subsidiaries has complied in all material respects with all applicable laws, rules and regulations respecting employment and employment practices, terms and conditions of employment, wages and hours, and neither Company nor any Subsidiary is liable for any arrears of wages or any Taxes or penalties for failure to comply with any such laws, rules or regulations, except for such failures to comply or liabilities as would not reasonably be expected to have a Material Adverse Effect on Company; (b) there are no controversies pending or, to the knowledge of Company, threatened between Company or any Subsidiary and any of their respective employees, which controversies have or would reasonably be expected to reasonably be expected to have a Material Adverse Effect; (d) neither Company nor any Subsidiary is a party to any collective bargaining agreement or other labor union contract applicable to Persons employed by Company or any such Subsidiary, nor, to the knowledge of Company, are there any activities or proceedings of any labor union to organize any such employees; (e) there are no unfair labor practice complaints pending against Company or any of its Subsidiaries before the National Labor Relations Board or any current union representation questions involving employees of Company or any Subsidiary; (f) there is no strike, slowdown, work stoppage or lockout existing, or, to the knowledge of Company, threatened, by or with respect to any employees of Company or any Subsidiary; (g) except as set forth on Schedule 3.19(g) of Company Disclosure Schedule, no charges are pending before the Equal Employment Opportunity Commission or any state, local or foreign agency responsible for the prevention of unlawful employment practices with respect to Company or any Subsidiary; (h) there are no claims pending against Company or any Subsidiary before any workers' compensation board which would reasonably be expected to have a Material Adverse Effect; (i) neither Company nor any of its Subsidiaries has received notice that any federal, state, local or foreign agency responsible for the enforcement of labor or employment laws intends to conduct an investigation of or relating to Company or any Subsidiary and, to the best knowledge of Company, no such investigation is in progress; and (j) to the knowledge of Company, the relationship of Company and its Subsidiaries with their employees is generally satisfactory.

SECTION 3.20. *Absence of Default*. Except as set forth in Schedule 3.21 of Company Disclosure Schedule, each of the leases, contracts and other agreements listed or required to be listed in Item 3.16 of the Company Disclosure Schedule that create obligations on any Person in excess of $150,000 constitutes a valid and binding obligation of Company, assuming such agreements are binding

(MP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-22-

and valid on the counterparties, and, to Company's knowledge is in full force and effect. Each of Company and its Subsidiaries has fulfilled and performed in all material respects its obligations under each such lease, contract or other agreement to which it is a party to the extent such obligations are required by the terms thereof to have been fulfilled or performed through the date hereof (except for any such lease, contract or other agreement which, by its terms, will expire prior to the Closing Date) and neither Company nor any such Subsidiary is alleged in writing to be, in breach or default under, nor is there or is there alleged in writing to be any basis for termination of, any such lease, contract or other agreement. To the knowledge of Company, no other party to any such lease, contract or other agreement has breached or defaulted thereunder. No act or omission of Company has occurred which, with the passage of time or the giving of notice or both, would constitute a material default or breach by Company or, to the knowledge of Company, by any such other party. Company is not currently renegotiating any such lease, contract or other agreement or paying liquidated damages in lieu of performance thereunder. Complete and correct copies of each such lease, contract or other agreement and any amendments thereto have heretofore been made available to Buyer.

SECTION 3.21. *Disclosure.* None of the representations or warranties of Company contained herein and none of the information contained in the Company Disclosure Schedule and none of the other information or documents furnished or made available to Buyer by Sellers, when taken as a whole, contains, or at the Closing will contain, any untrue statement of a material fact or omits, or at the Closing will omit, to state a material fact required to be stated herein or therein necessary to make the statements herein or therein, in light of the circumstances under which they were made, not misleading in any material respect.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Company, as of the date hereof and as of the Closing Date except as otherwise provided herein, except as disclosed in the Buyer Disclosure Schedules, as follows:

SECTION 4.01. *Corporate Existence and Power.* Buyer is a corporation duly incorporated, validly existing and in good standing under the laws of its jurisdiction of incorporation and has all corporate powers and all governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted, except for those licenses, authorizations, permits, consents and approvals the absence of which would not have, individually or in

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-23-

the aggregate, a material adverse effect on Buyer, its financial condition or results of operations or materially impair Buyer's ability to perform its obligations under this Agreement or to consummate the transactions contemplated by this Agreement.

SECTION 4.02. *Corporate Authorization.* The execution, delivery and performance by Buyer of this Agreement and the consummation by Buyer of the transactions contemplated hereby are within the corporate powers of Buyer and have been duly authorized by all necessary corporate action. Assuming this Agreement constitutes a valid and binding obligation of Company, this Agreement constitutes a valid and binding agreement of Buyer, enforceable against Buyer in accordance with its terms, except as enforceability against Buyer may be limited by applicable bankruptcy, reorganization, insolvency, moratorium, and other laws of similar application affecting creditors' rights generally from time to time in effect and to general equitable principles.

SECTION 4.03. *Governmental Authorization.* The execution, delivery and performance by Buyer of this Agreement and the consummation by Buyer of the transactions contemplated hereby require no approval or action by or in respect of, or filing with, any governmental body, agency, official or authority, domestic, foreign or supranational, other than consents, approvals or authorizations of the Bankruptcy Court, compliance with any applicable requirements of the HSR Act, any approvals, actions or filings the absence of which would not be reasonably expected to have, individually or in the aggregate, a material adverse effect on Buyer or materially to impair the ability of Buyer to consummate the transactions contemplated by this Agreement.

SECTION 4.04. *Non-Contravention.* The execution, delivery and performance by Buyer of this Agreement and the consummation by Buyer of the transactions contemplated hereby do not and will not contravene, conflict with, or result in any violation or breach of any provision of the certificate of incorporation or bylaws of Buyer, assuming compliance with the matters referred to in Section 4.03, contravene, conflict with, or result in any violation or breach of any provision of any law, rule, regulation, judgment, injunction, order or decree except for such contraventions, conflicts and violations that would not be reasonably expected to have, individually or in the aggregate, a material adverse effect on Buyer or materially to impair the ability of Buyer perform its obligation under this Agreement or to consummate the transactions contemplated by this Agreement.

SECTION 4.05. *Finders' Fees.* Except for J.P. Morgan H&Q, whose fees will be paid by Buyer, there is no investment banker, broker, finder or other intermediary that has been retained by or is authorized to act on behalf of Buyer

000497

who might be entitled to any fee or commission from Company or any of its Affiliates upon consummation of the transactions contemplated by this Agreement.

SECTION 4.06. *Financing*. Buyer has sufficient cash, available lines of credit or other sources of immediately available funds to enable it to pay the Purchase Price and to pay all fees and expenses related to the Section 363/365 Sale.


ARTICLE 5
COVENANTS

SECTION 5.01. *Conduct of the Business*. (a) From the date hereof until the Closing, Company shall (and shall cause each of its Subsidiaries to):

    (i)   maintain its existence in good standing;

    (ii)   maintain the general character of its business and properties and conduct its business in the ordinary and usual manner consistent with past practices, except as expressly permitted by this Agreement;

    (iii)   maintain business and accounting records consistent with past practices; and

    (iv)   use all reasonable efforts (A) to preserve its business intact, (B) to keep available to Company the services of its present officers and employees, and (C) to preserve for Company or such Subsidiary the goodwill of its suppliers, customers and others having business relations with Company or such Subsidiary.

    (b)   Unless otherwise provided for herein or approved by Buyer in writing, from the date hereof until the Closing, Company shall not (and shall not permit any of its Subsidiaries to):

    (i)   declare, set aside, make or pay any dividend or other distribution, payable in cash, property or otherwise with respect to any of its capital stock;

    (ii)   redeem, purchase or otherwise acquire, directly or indirectly, any of its capital stock;

000498

(iii)    incur any indebtedness for borrowed money or issue any debt securities or assume, guarantee or endorse, or otherwise as an accommodation become responsible for, the obligations of any Person, or make any loans or advances, except for indebtedness contemplated by the Credit Agreement Term Sheet or similar commercially available financing;

(iv)    except as otherwise contemplated by this Agreement, (A) acquire (including, without limitation, by merger, consolidation, or acquisition of stock or assets) any corporation, partnership, other business organization or any division thereof or any material amount of assets; (B) enter into any contract or agreement other than in the ordinary course of business, consistent with past practice; (C) authorize any capital commitment which is in excess of $50,000 or capital expenditures which are, in the aggregate, in excess of $50,000, except as contemplated in Schedule 3.08(g) of the Company Disclosure Schedule; or (D) enter into or amend any contract, agreement, commitment or arrangement with respect to any matter set forth in Section 5.01(b)(iii) or this Section 5.01(b)(iv);

(v)    except as otherwise contemplated by this Agreement, sell, lease, license, mortgage, pledge or subject to Lien or otherwise encumber or subject to any Lien or otherwise dispose of any of its properties or assets (including securitizations), other than sales or licenses of goods in the ordinary course of business consistent with past practice;

(vi)    enter into, agree to enter into or amend any employment agreement except for new hires in the ordinary course of business;

(vii)    assume, guarantee or otherwise become responsible for the obligations of any other Person or agree to so do;

(viii)    except as set forth in Schedule 5.01(b)(vii) of the Company Disclosure Schedule, take any action, other than in the ordinary course of business and consistent with past practice, with respect to accounting policies or procedures (including, without limitation, procedures with respect to the payment of accounts payable and collection of accounts receivables); with respect to any Taxes that will be Assumed Liabilities, make any Tax election or settle or compromise any material federal, state, local or foreign income Tax liability;

(ix)    pay, discharge or satisfy any claim, liability or obligation (absolute, accrued, asserted or unasserted, contingent or otherwise), other

000499

than the payment, discharge or satisfaction, reflected or reserved against in the Company Balance Sheet or otherwise in the ordinary course of business and consistent with past practice, of such liabilities in the ordinary course of business and consistent with past practice;

(x)    except in connection with the sale, licensing or other distribution of Company's products in the ordinary course of business and consistent with past practice, sell, assign, transfer, license, sublicense, pledge or otherwise encumber any of the Intellectual Property Rights;

(xi)    except as required by law or as contemplated hereby, enter into, adopt or amend in any material respect or terminate any Benefit Arrangement or any other agreement, plan or policy involving Company or its Subsidiaries, and one or more of its directors, officers or employees, or materially change any actuarial or other assumption used to calculate funding obligations with respect to any pension plan, or change the manner in which contributions to any pension plan are made or the basis on which such contributions are determined;

(xii)    except for normal increases in the ordinary course of business consistent with past practice that, in the aggregate, do not materially increase benefits or compensation expenses of Company or its Subsidiaries, or as contemplated hereby or by the terms of any employment agreement in existence on the date hereof, increase the cash compensation of any director, executive officer or other key employee or pay any benefit or amount not required by a plan or arrangement as in effect on the date of this Agreement to any such Person; or

(xiii)    announce an intention, commit or agree to do any of the foregoing.

SECTION 5.02. *Marketing Period.* In addition to the marketing efforts carried out to date, from and after the date of the Interim Order, Company shall solicit "higher or better" offers for the Business, pursuant to the bidding procedures set forth on Exhibit C hereto or to such additional procedures for soliciting "higher or better" offers, which procedures are approved by the Bankruptcy Court in the Interim Order (the "**Bidding Procedures**"). Except as provided for in the Bidding Procedures, Company shall not amend, waive, modify or supplement in any material respect the Bidding Procedures. If Company determines in the good faith exercise of its business judgment that a Competing Transaction provides a greater net benefit to the estates of Sellers, after deduction (in the case of bids other than that of Buyer) of the Topping Fee and of $500,000 (the maximum amount of the fees and expenses of Buyer to be paid by Company

herein), and such Competing Transaction is approved by the Bankruptcy Court, Company shall have the right to enter into an agreement providing for the Competing Transaction and to terminate this Agreement pursuant to Section 9.01(a)(ii).

SECTION 5.03. *Bankruptcy Court Approvals.* (a) Company hereby confirms that it is critical to the process of arranging an orderly sale of Company's assets to proceed by selecting Buyer to enter into this Agreement in order to present the Bankruptcy Court with arrangements for obtaining the highest realizable prices for such assets and that, without Buyer's having committed substantial time and effort to such process, the estates of Company would have to employ a less orderly process of sale and thereby both incur higher costs and risk attracting lower prices. Company further confirms that the undertaking of Buyer to pay the Purchase Price while allowing this Agreement to be subject to competitive bidding gives the estate the assurance of a minimum purchase price, and restricts Buyer's options in a manner that no reasonable Person would consent absent assurance of payment of the Topping Fee and expenses set forth herein. Accordingly, the contributions of Buyer to the process have indisputably provided very substantial benefit to the estate of Company. Company acknowledges that Buyer would not have invested the effort in negotiating and documenting the transaction provided for herein and incurring duties to pay its outside advisors and to commit to pay the Purchase Price if Buyer was not entitled to the Topping Fee plus reasonable fees and disbursements of its advisors incurred as a result of Buyer's attempt to purchase the Acquired Assets as provided in this Agreement, if Buyer is not the successful bidder for the Acquired Assets.

(b)   As promptly as practicable after the date hereof, Company shall file and serve motions with the Bankruptcy Court seeking

(i)   an order (the "**Interim Order**")

(A)   approving the Topping Fee and all other payments to Buyer arising under this Agreement as joint and several obligations of Company having priority as an administrative expense in their cases before the Bankruptcy Court,

(B)   approving the Bidding Procedures relating to the sale of the Acquired Assets under Sections 363 and 365 of the Bankruptcy Code, and the adequacy of notice to creditors and parties in interest for the approval of the transactions contemplated hereby and thereby, and

(C)   setting a date for a hearing on the asset sale; and

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-28-

B - 34

000501

34

(ii)    an order (the "Section 363/365 Sale Order")

(A)    authorizing Company to sell the Acquired Assets to Buyer pursuant to this Agreement and Sections 363 and 365 of the Bankruptcy Code, free and clear of all Liens in or on the Acquired Assets (including any and all "claims and interests" in the Acquired Assets within the meaning of Section 363(f) of the Bankruptcy Code), other than Liens and claims related to the Assumed Liabilities and Permitted Exceptions and otherwise free and clear of claims and liabilities, such that Buyer shall not, among other things, incur any liability with respect to any Existing Claim, Excluded Liability or otherwise as a successor to the business of Company, and

(B)    authorizing, among other things, Company, pursuant to Section 365 of the Bankruptcy Code, to assume and to assign to Buyer the Section 365 Assumed Rights, which shall include provisions, upon notice to all licensors of Intellectual Property and all governmental and other entities that have issued permits, licenses or authorizations to Company, for their assignment to Buyer under Section 365 of the Bankruptcy Code free and clear of claims, obligations and defaults which occurred on or prior to the effective time of such assignment.

(c)    Company shall use commercially reasonable efforts to obtain the Interim Order no later than February 28, 2001, and the Section 363/365 Order no later than March 31, 2001. The Interim Order and the Section 363/365 Order shall be in forms reasonably acceptable to Buyer and Company, and the motions relating to the Interim Order and the Section 363/365 Order shall be in form and substance satisfactory to Buyer.

(d)    Subject to the Interim Order, Company shall promptly make any filings, take all actions, and use all reasonable efforts to obtain any and all other approvals and orders necessary or appropriate for consummation of the transactions contemplated hereby, subject to their obligations to comply with any order of the Bankruptcy Court.

(e)    If an appeal is taken, or a stay pending appeal is requested or reconsideration is sought, from either the Interim Order or the Section 363/365 Order, Company shall immediately notify Buyer of such appeal or stay request and shall provide to Buyer within one business day a copy of the related notice of appeal or order of stay or application for reconsideration. Company shall also

(NP) 12173/005/BANKRUPTCY.SALE/APA/363.apa.swryn.execution.wpd

-29-

000502

provide Buyer with written notice and copies of any other or further notice of appeal, motion or application filed in connection with any appeal from or application for reconsideration of, either of such orders and any related briefs. Company shall use all reasonable efforts to defend against such appeals or requests for stay or modification.

(f)    Company shall notify, as is required by the Bankruptcy Code, all parties entitled to notice of the Section 363/365 Motion, the Interim Motion, the Interim Order and/or the Section 363/365 Order, as modified by orders in respect of notice which may be issued at any time and from time to time by the Bankruptcy Court.

SECTION 5.04.  *Access and Information.*  After entry of the Interim Order, Company shall afford to Buyer and to Buyer's financial advisors, legal counsel, accountants, consultants, financing sources and other authorized representatives reasonable access during normal business hours throughout the period prior to the Closing Date to the books, records, properties and personnel of Company and, during such period, shall furnish as promptly as practicable to Buyer any and all such information as Buyer may reasonably may request, including all pleadings and other documents or schedules filed with the Bankruptcy Court, *provided* that (a) such access does not unreasonably interfere with the normal operations of Company or its business, (b) Company need not disclose any information that Company concludes (based upon advice of counsel) is privileged or confidential in connection with the Existing Claims, and (c) all requests for information and access to Company's facilities, and all proposed contacts with Company personnel shall be approved in advance (which approval shall not unreasonably be withheld) by its Chief Executive Officer, General Counsel or Chief Financial Officer.

SECTION 5.05.  *Books and Records.* (a) Buyer agrees to make copies of all the business records and files being transferred to Buyer pursuant to this Agreement and to retain such copies for seven years after the Closing.

(b)    From and after the Closing under this Agreement, Buyer shall allow Company and any of its directors, officers, employees, counsel, representatives, accountants and auditors (collectively, the "**Company Representatives**") access to Transferred Employees and all business records and files of Company or its business that are transferred to Buyer in connection herewith, which are reasonably required by such Company Representatives in order to complete the Chapter 11 Case and resolve the Existing Claims, during regular business hours and upon reasonable notice at Company's former offices or elsewhere as reasonably required and the Company Representatives shall have the right to meet with such Transferred Employees and to make copies of any such records and files; *provided, however,* that any such access or copying shall be had

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-30-

000503

or done in such a manner so as not to unreasonably interfere with the normal conduct of Buyer's business or operations. This Section 5.05 shall cease to be enforceable upon the later of (i) the date Company completes the Chapter 11 Case and (ii) the 9 month anniversary of the Closing.

SECTION 5.06. *All Reasonable Efforts.* Subject to the terms and conditions herein, except as provided by the Bankruptcy Code, the Bankruptcy Rules or any other orders entered or approvals or authorizations granted by the Bankruptcy Court in the Chapter 11 Case, including any order contemplated hereby, each of the parties hereto agrees to use all reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations, to consummate the transactions contemplated by this Agreement. In further and not in limitation of the foregoing, each party hereto agrees to make an appropriate filing of a Notification and Report Form pursuant to the HSR Act with respect to the transactions contemplated hereby as promptly as practicable and in any event within 10 business days of the date hereof and to supply as promptly as practicable any additional information and documentary material that may be requested pursuant to the HSR Act and to take such actions as may be reasonably necessary to cause the expiration or termination of the applicable waiting periods under the HSR Act as soon as practicable, provided that nothing contained herein shall be interpreted or construed as requiring Buyer to sell, dispose of, transfer or license any of its assets or properties or to take any other action which Buyer concludes in its sole discretion would be detrimental to Buyer or its business in order to facilitate such expiration or termination.

SECTION 5.07. *Further Assurances.* In addition to the provisions of this Agreement, from time to time after the Closing Date, Company and Buyer will use all reasonable efforts to execute and deliver such other instruments of conveyance, transfer or assumption, as the case may be, and take such other action as may be reasonably requested to implement more effectively the conveyance and transfer of the Acquired Assets to Buyer and the assumption of the Assumed Liabilities by Buyer. Without limiting the generality of the foregoing, at Buyer's request, Company shall file appropriate motions in the Bankruptcy Court for the assumption and assignment to Buyer of any executory contracts and leases which were not identified in an exhibit to the Section 363/365 Order, and Company shall take such steps, as shall be required to assure that Buyer shall assume such agreements under Section 365 of the Bankruptcy Code free and clear of all claims, obligations and defaults which occurred as of or prior to the effective time of such assignment. Buyer and Company hereby irrevocably consent to the personal and subject-matter jurisdiction of the Bankruptcy Court for all purposes necessary to effectuate this Section. Company will seek to include in any plan of reorganization in the Chapter 11 Case supported by it, provision for retained

000504

jurisdiction of the Bankruptcy Court to effectuate this Section 5.07, and will use all reasonable efforts to oppose any plan of reorganization which fails to include such provisions.

SECTION 5.08. *Public Announcements.* Buyer and Company shall consult with each other before issuing any press release or making any public statement with respect to this Agreement or the transactions contemplated hereby, and except as may be required by applicable law or any listing agreement with any national securities exchange, will not issue any such press release or make any such public statement prior to such consultation.

SECTION 5.09. *Notices of Certain Events.* (a) Company shall promptly notify Buyer of damage or destruction by fire or other casualty of any material Acquired Asset or if any material Acquired Asset becomes the subject of any proceeding or, to the knowledge of Company, threatened proceeding for the taking thereof or any part thereof or of any right relating thereto by condemnation, eminent domain or other similar governmental action.

(b)    The Company shall give prompt notice to Buyer, and Buyer shall give prompt notice to the Company, of (i) the occurrence, or non-occurrence, of any event which would be likely to cause (A) any representation or warranty contained in this Agreement to be untrue or inaccurate in any material respect, (B) any covenant, condition or agreement contained in this Agreement not to be complied with or satisfied, or (C) termination rights to be triggered under Article 9; and (ii) any failure of the Company or Buyer, as the case may be, to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by it hereunder; provided that the delivery of any notice pursuant to this Section 5.10(b) shall not limit or otherwise affect the remedies available to the party receiving such notice.

SECTION 5.10. *Name Change.* Within 45 days after the Closing, Company agrees to use all reasonable efforts to cause Company to cease doing business under any name using the word "Quintus," and, if practicable without seeking stockholder approval, to change Company's legal name to some name not using the word "Quintus."

SECTION 5.11. *Permits.* Prior to the Closing Date, Company shall use all reasonable efforts to obtain consents to the transfer of such permits which are transferable to Buyer at or prior to Closing. Without limiting the requirements of Section 8.03, prior to and after the Closing, Company shall cooperate with Buyer with respect to the transfer of all permits.

(NP) 17175/0005/BANKRUPTCY.SALE/APA/365.apa.avaya.execution.wpd

-32-

000505

SECTION 5.12. *Transfer Taxes.* To the fullest extent permitted by Section 1146(c) of the Bankruptcy Code and other applicable law, the making or delivery of any instrument of transfer pursuant hereto shall not be taxed under any law imposing a stamp tax or similar tax, and the instruments transferring the Acquired Assets to Buyer shall contain the following endorsement:

> "Because this [instrument] has been authorized
> pursuant to Order of the United States Bankruptcy
> Court for the District of Delaware relating to a plan
> of reorganization of the Grantor, it is exempt from
> transfer taxes, stamp taxes or similar taxes pursuant
> to 11 U.S.C. §1146(c)."

If sales, use or other similar transfer Taxes are assessed in the United States at Closing or at any time thereafter solely as a result of the transfer of any other Acquired Assets pursuant to this Agreement, such Taxes incurred as a result of the transactions contemplated hereby shall be paid by Company. If sales, use or other similar Taxes are assessed in any jurisdiction outside the United States at Closing or at any time thereafter solely as a result of the transfer of any Acquired Assets of any Foreign Subsidiary pursuant to this Agreement, such Taxes shall be paid (i) by Company, to the extent such Taxes would have been payable if Buyer had purchased all of the outstanding stock of Company's Foreign Subsidiaries (rather than purchasing assets and liabilities of such Foreign Subsidiaries as set forth in Article 1) and (ii) by Buyer for the balance of such Taxes. Buyer and Company shall cooperate in providing each other with any appropriate resale exemption certifications and other similar documentation.

SECTION 5.13. *Consents.* Company shall use all reasonable efforts to obtain the consents pertaining to the Assigned Assets listed on Schedule 3.04; *provided* that Company shall not make any agreement or understanding adversely affecting the Business or the Assigned Assets after the Closing as a condition for obtaining any such consent except with the prior written authorization of Buyer.

SECTION 5.14. *Excess Liabilities.* At the Closing, if Company's liabilities described in paragraph 1 of Schedule 1.03 exceed $30,000,000, Buyer may elect not to assume such liabilities of Company to the extent required to reduce such liabilities assumed to $30,000,000.

SECTION 5.15. *Acton, Massachusetts Real Property and Facility.* Buyer has advised that it does not desire to acquire Company's real estate facilities at Acton, Massachusetts. The parties agree that (i) the Acton real estate will be an Excluded Asset and (ii) as promptly as reasonably practical after the date hereof, the parties will negotiate and enter into a three-year lease of the Acton real estate

000506

from Company to Buyer at market rental and on market terms, such lease to be effective at the Closing of the transactions contemplated by this Agreement. As promptly as reasonably possible after negotiation of that lease, (i) Company shall select a real estate appraiser knowledgeable about the Acton real estate market, (ii) Buyer shall select a real estate appraiser knowledgeable about the Acton real estate market and (iii) the appraisers so selected shall select a third real estate appraiser knowledgeable about the Acton real estate market, and such appraisers shall independently provide appraisals of the fair market value of the Acton real estate, which appraisals shall take into account the three-year lease of the property to Buyer and the mortgages on the property. The cost of these appraisals will be split equally between Buyer and Company. The parties agree that (x) the average of the three appraisals shall be considered the fair market value of the Acton real estate for purposes of this Agreement, (y) in recognition of the fact that the Acton real estate will be an Excluded Asset, the Purchase Price shall be reduced by 80% of the average of the three quotes and (z) Company will have the right to sell the Acton real estate, subject to the lease, for its own account.

SECTION 5.16.  *Buyer Option to Take Stock of Foreign Subsidiaries.* Notwithstanding the provisions of Sections 1.01 and 1.02, Buyer shall have the option, upon written notice to Company at least five days prior to the Closing Date, to purchase all outstanding shares of capital stock of either or both Foreign Subsidiaries in lieu of the assets and liabilities of such Subsidiary, provided that if such option is exercised with respect to a Foreign Subsidiary and any liability of such Foreign Subsidiary would otherwise count toward the $30,000,000 limit set forth on Schedule 1.03, such liabilities shall continue to be so counted and such stock shall be deemed Acquired Assets.

SECTION 5.17.  *Employee Retention.* Buyer agrees to make offers of employment to employees in Company's Engineering, Worldwide Customer Support Services and Worldwide Sales and Distribution organizations including cash incentives in an aggregate amount of at least $10,000,000 and equity incentives consisting of options to purchase shares of Buyer common stock with an aggregate Black-Scholes value of $10,000,000, and Buyer and Company agree to use all reasonable efforts to induce such employees to accept such offers of employment.

SECTION 5.18.  *Taxes.* Company agrees to use all reasonable efforts to account for Taxes that will be Assumed Liabilities separately from other Assumed Liabilities, and to deliver a schedule of such Taxes to Buyer at the Closing.

000507

ARTICLE 6

EMPLOYEES AND BENEFITS

SECTION 6.01. *Employees and Offers of Employment.* (a) On or prior to the Closing Date, Buyer shall offer employment to all employees of the Business; *provided,* that Buyer may terminate at any time after the Closing Date the employment of any employee who accepts such offer; *provided, however,* that Buyer is solely responsible for any WARN Act notification and any liability under the WARN Act for any failure to notify employees, if any, relating to any termination of any of the employees on or after the Closing as a result of actions taken by Buyer. For purposes of the foregoing, Buyer acknowledges the prior terminations of employment by Company, including the reduction in force in December 2000. Any such offers shall be at salary or wage and benefit levels that are substantially comparable in the aggregate to the wage, benefits and severance protection made available by Buyer to similarly situated employees of Buyer, provided that nothing herein shall prevent Buyer from modifying the salary, wages and benefits at any time after the Closing Date. The employees who accept and commence employment with Buyer are hereinafter collectively referred to as the "Transferred Employees." Company will not take, and will cause each of its Subsidiaries not to take, any action which would impede, hinder, interfere or otherwise compete with Buyer's effort to hire any Transferred Employees.

(b)     For a period of six months following the Closing Date, Buyer shall provide severance benefits no less favorable than those set forth on Schedule 3.14. In addition, Buyer agrees that it shall assume the obligations of Company under the Executive Severance Plan and Retention Bonus Programs described in Schedule 3.14(a)(1) and (2).

SECTION 6.02. *Company Employee Benefit Plans.* Accrued benefits or account balances of Transferred Employees under the Benefit Arrangements shall be fully vested as of the Closing Date.

SECTION 6.03. *Buyers Benefit Plans.* (a) Buyer or one of its Affiliates will recognize all service of the Transferred Employees with Company (or their predecessors) or any of their Affiliates, for purposes of eligibility to participate in and to vest under those employee benefit plans, in which the Transferred Employees are enrolled by Buyer or one of its Affiliates immediately after the Closing Date. Buyer shall cause all pre-existing condition exclusions under any medical and dental plans made available by Buyer to Transferred Employees to be waived in respect of such Employees. Buyer will in good faith determine whether to take into account expenses incurred by Transferred Employees under Company's medical and dental plans during the year that includes the Closing Date for purposes of satisfying deductible and coinsurance requirements and

000508

satisfaction of out-of-pocket provisions of Buyer's medical and dental plans in which Transferred Employees participate for such year, provided that the foregoing shall not require Buyer to do so.

(b)    Company's 401(k) Plan shall be terminated immediately prior to the Closing Date.  Such termination shall be effected in accordance with applicable law and regulations, and Company shall make or cause to be made, any required filings in connection therewith.  Buyer or one of its Affiliates shall take such actions as may be necessary to make available to the Transferred Employees the opportunity to roll over eligible rollover distributions from the Company 401(k) Plan to a defined contribution plan maintained by Buyer or one of its Affiliates. Buyer or one of its Affiliates may require, as a condition to the acceptance of any such eligible rollover distribution, evidence satisfactory to Buyer of the qualified status of the 401(k) Plan, including a copy of a favorable determination letter from the Internal Revenue Service.  Company may require, as a condition to the transfer of such eligible rollover distribution, transfer evidence satisfactory to Company of the qualified status of Buyer's defined contribution plan, including a copy of a favorable determination letter from the Internal Revenue Service.  Each of the parties hereto shall pay its own expenses in connection with such transfer. Neither Buyer nor any of its Affiliates shall assume any other obligations or liabilities arising under or attributable to Company's 401(k) Plan, the same to be retained or assumed by Company.

(c)    Buyer shall make COBRA continuation coverage available under Buyer's group health plans or Company's group health plans, as applicable, to the extent permitted by such plans, the underlying insurance policies and applicable law to each former employee of Company whose employment with Company was terminated prior to Closing and each of their qualified beneficiaries whose qualifying event occurred prior to or in connection with the Closing.  For purposes of this paragraph, the foregoing terms shall have the meanings given to them under IRS regulations under Code Section 4980B.

(d)    Buyer shall make COBRA continuation coverage available under Buyer's group health plans to each Transferred Employee whose employment with Buyer or its Affiliates is terminated after the Closing and each of their qualified beneficiaries whose qualifying event occurred after the Closing Date. For purposes of this paragraph, the foregoing terms shall have the meanings given to them under IRS regulations under Code Section 4980B.

000509

## ARTICLE 7
## TAX MATTERS

SECTION 7.01. *Tax Cooperation.* Buyer and Company agree to furnish or cause to be furnished to each other, upon request, as promptly as practicable, such information and assistance relating to the Business and the Acquired Assets (including access to books and records) as is reasonably necessary for the filing of all Tax Returns, the making of any election relating to Taxes, the preparation for any audit by any taxing authority, and the prosecution or defense of any claim, suit or proceeding relating to any Tax. Buyer shall retain all books and records with respect to Taxes pertaining to the Business, the Acquired Assets or the transactions contemplated hereby for a period of at least seven years following the Closing Date. Company shall retain any records retained by Company related to Taxes until liquidation. Each party shall provide the other with at least thirty days prior written notice before destroying or transferring custody of any such books and records, during which period the party receiving such notice can elect to take possession, at its own expense, of such books and records.

SECTION 7.02. *Tax Reporting.* Buyer will in good faith determine whether to prepare and furnish to each Transferred Employee a combined Form W-2 which shall reflect all wages and compensation paid to such employees for that portion of the calendar year in which the Closing Date occurs during which such employees were employed by Company as well as that portion of the year employed by Buyer (if any), with Buyer treated as a "successor employer" for purposes of Taxes imposed under the United States Federal Unemployment Tax, United States Federal Insurance Contribution Act and any other employment related Tax; provided that nothing in the foregoing shall require Buyer to do so. If Buyer does the foregoing, Buyer shall send to the appropriate Social Security Administration office a duly completed Form W-3 and accompanying copies of the duly completed Form W-2.

## ARTICLE 8
## CONDITIONS PRECEDENT

SECTION 8.01. *Conditions Precedent to Obligation of Company and Buyer.* The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction of the following conditions:

(a)    the Section 363/365 Order shall have been entered by the Bankruptcy Court and such order shall not have been stayed, modified, reversed or amended; and

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-37-

000510

(b)   the waiting period, if any, under the HSR Act shall have expired or been terminated.

SECTION 8.02. *Conditions Precedent to Obligation of Company*. The obligation of Company to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following additional conditions:

(a)   Buyer shall have performed and complied in all material respects with all agreements and conditions contained in this Agreement that are required to be performed or complied with by them prior to or at the Closing.

(b)   Each of the representations and warranties of Buyer contained in Section 4 of this Agreement to the extent it is qualified by Material Adverse Effect shall be true and correct and each of the representations and warranties of Buyer to the extent it is not so qualified by Material Adverse Effect shall be true and correct except for breaches of such representations and warranties that would not have a material adverse effect on Buyer, its financial condition and results of operations, and its ability to perform its obligations under this Agreement and consummate the transactions contemplated by this Agreement, in each case, on and as of the Closing with the same effect as though such representations and warranties were made on and as of the Closing except for changes permitted by this Agreement and except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be as of such earlier date. The Company shall have received a certificate dated the Closing Date and signed by the President or a Vice-President of Buyer, certifying that the conditions specified in clauses (a) and (b) of this Section 8.02 have been satisfied.

SECTION 8.03. *Conditions Precedent to Obligation of Buyer*. The obligation of Buyer to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following additional conditions:

(a)   Company shall have performed and complied in all material respects with all agreements and conditions contained in this Agreement that are required to be performed or complied with by them prior to or at the Closing.

000511

(b)    Each of the representations and warranties of Sellers contained in Section 3 of this Agreement to the extent it is qualified by *Material Adverse Effect* shall be true and correct and each of the representations and warranties of Company to the extent it is not so qualified by Material Adverse Effect (except for the representations and warranties set forth in Section 3.17, which shall be true and correct) shall be true and correct except for breaches of such representations and warranties that would not reasonably be expected to have a Material Adverse Effect (disregarding any materiality qualification therein), in each case, on and as of the Closing with the same effect as though such representations and warranties were made on and as of the Closing except for changes permitted by this Agreement and except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be as of such earlier date. The Buyer shall have received a certificate dated the Closing Date and signed by the President or a Vice-President of Company, certifying that the conditions specified in clauses (a) and (b) of this Section 8.03 have been satisfied.

(c)    No judgment, order, decree, statute, law, ordinance, rule or regulation, entered, enacted, promulgated, enforced or issued by any court or other governmental authority of competent jurisdiction or other legal or prohibition (collectively, "Restraints") shall be in effect with respect to the transactions contemplated hereby, and there shall not be pending any suit, action or proceeding by any governmental authority (i) preventing the consummation of the Closing or (ii) which otherwise is reasonably likely to have a Material Adverse Effect; provided, that each of the parties shall have used all reasonable efforts to prevent the entry of any such *Restraints* and to appeal as promptly as possible any such Restraints that may be entered.

(d)    No event or events shall have occurred that constitutes or would reasonably be expected to constitute a Material Adverse Effect on the Business, the Assigned Assets or Assumed Liabilities.

(e)    Company shall have received all necessary consents, in form and substance satisfactory to Buyer, from the other parties to each agreement, contract, lease or other instrument set forth on Schedule 8.03.

(f)    Company shall have delivered to Buyer all documents and *instruments reasonably satisfactory to Buyer* necessary to transfer the Assigned Assets and Business and to assume the Assumed Liabilities.

(g)   Buyer shall have received a certificate from Company certifying that Company has never been and is not a United States real property holding corporation within the meaning of Section 897(c)(2) of the Code during the applicable period specified in Section 897(c)(1)(A)(ii) of the Code pursuant to Treas. Reg. Sec. 1.897-2(h) and Treas. Reg. Sec. 1.1445-2(c)(3)(i) at the Closing.

(h)   Buyer shall have received letters accepting employment with Buyer from (i) not less than 50% of the employees in Company's Engineering organization, (ii) not less than 50% of the employees in Company's Worldwide Customer Support Services organization and (iii) not less than 50% of the employees in Company's Worldwide Sales and Distribution organization, in each case, based upon the number of persons accepting such positions and the number of employees in each such organization on the date hereof, and each such letter shall be in full force and effect and shall not have been rescinded, provided that this condition shall not be applicable if Buyer has failed to satisfy its obligations under Section 5.17.

## ARTICLE 9

### TERMINATION, AMENDMENT AND WAIVER

SECTION 9.01.  *Termination.*  This Agreement may be terminated:

(i)   by mutual written agreement of Company and Buyer prior to the Closing Date;

(ii)   by Company or Buyer if a Competing Transaction is approved by the Bankruptcy Court whether or not in accordance with the Bidding Procedures;

(iii)   at any time before the Closing, (A) by Buyer if any of the conditions set forth in Sections 8.01 or Section 8.03 shall have become incapable of fulfillment or cure and shall not have been waived by Buyer, *provided* that Buyer is not then in breach of this Agreement, or (B) by Company if any of the conditions set forth in Section 8.01 or Section 8.02 shall have become incapable of fulfillment or cure and shall not have been waived by Company, *provided* that Company is not then in breach of this Agreement.

(iv)   at any time after April 30, 2001, (A) by Company if the

(NP) 17173/005/BANKRUPTCY.SALE/APA/363 apa.ewye.execution.wpd

-40-

000513

Closing fails to occur on or before such date, unless such failure is due to the action or inaction of Company, or (B) by Buyer if the Closing fails to occur on or before such date, unless such failure is due to the action or inaction of Buyer, provided that Buyer, by written notice to Company, may extend such date to a date not later than May 31, 2001, and provided further that in the event Buyer so extends such date, Buyer shall also extend to Company such additional amounts for working capital pursuant to the terms set forth in the Credit Agreement Term Sheet as shall be reasonably necessary to fund the operations of Company until Closing, *provided* that the amounts advanced hereunder shall not exceed $5,000,000 in the aggregate (exclusive of any amounts advanced as contemplated by the Credit Agreement Term Sheet);

(v) by Buyer, at any time within 14 days after the earliest of (a) March 15, 2001 if the Interim Order has not been entered by the Bankruptcy Court, (b) the date the Bankruptcy Court denies the Interim Order and (c) the date the Interim Order is stayed or materially modified in a manner not reasonably acceptable to Buyer; if Buyer fails to terminate this Agreement within 14 days of such date, Buyer shall be deemed to have waived their rights under this Section 9.01(a)(v);

(vi) at any time after April 30, 2001, by Buyer or Company if by such date the Section 363/365 Order has not been entered;

(vii) by Company if the Closing has not occurred as the result of Buyer's failure to consummate the transactions contemplated by this Agreement within 10 days after the satisfaction of the conditions set forth in Sections 8.01 and 8.03, provided that Company is willing and able to close;

(viii) by Buyer if the Closing has not occurred as the result of Company's failure to consummate the transactions contemplated by this Agreement within 10 days after the satisfaction of the conditions set forth in Section 8.01 and 8.02, provided that Buyer is willing and able to close;

(ix) by Buyer in the event of a material breach of the covenants contained in Section 5.02; or

(x) by either Buyer or Company if the other party is in material breach of its covenants in this Agreement and fails to cure such breach within 15 days of notice of such breach by the non-breaching party, provided that no party may terminate the Agreement under this clause (x) if such party is in material breach of its obligations under this Agreement.

000514

SECTION 9.02. *Effect of Termination.* If this Agreement is terminated under Section 9.01, written notice thereof will forthwith be given to the other parties and this Agreement will thereafter become void and have no further force and effect and, except for those provisions that expressly survive the termination of this Agreement, all further obligations of Company and Buyer to each other under this Agreement will terminate without further obligation or liability of Company or Buyer to the other, except that:

(a)    each of the parties will treat all documents, workpapers and other materials of any other party which were obtained in connection with the transactions contemplated by this Agreement in accordance with the Confidentiality Agreement;

(b)    if this Agreement is terminated by Company pursuant to Section 9.01(vii) or (x), provided that Company either has satisfied or is reasonably likely to satisfy the conditions set forth in this Agreement which are within Company's control to satisfy, Buyer shall pay Sellers' actual and reasonable legal expenses, and shall be liable to Company for any damages resulting from such breach; and

(c)    if this Agreement is terminated pursuant to Section 9.01(ii), or if this Agreement is terminated by Buyer pursuant to Section 9.01(viii), (ix) or (x) and within six months thereafter a sale of substantially all of the Acquired Assets or any significant portion thereof in a single transaction or a series of transactions or recapitalization or reorganization plan is consummated, Company shall pay Buyer the Topping Fee plus Buyer's actual and reasonable expenses (including fees and expenses of counsel and advisors), but not to exceed $500,000 in addition to the Topping Fee;

(d)    if this Agreement is terminated by Buyer pursuant to Section 9.01(a)(viii) or 9.01(a)(ix), *provided* that Buyer either has satisfied or is reasonably likely to satisfy the conditions set forth in this Agreement which are within Buyer's control to satisfy, then Company shall pay Buyer's actual and reasonable legal expenses, and shall be liable to Buyer for any damages resulting from such breach.

## ARTICLE 10
### GENERAL PROVISIONS

SECTION 10.01. *Notices.* All notices, requests, and other communications to any party hereunder shall be in writing (including facsimile transmission) and shall be given

(JJF) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-42-

000515

If to Company, to

        Quintus Corporation
        4120 Dublin Boulevard
        Dublin,  CA 94568
        Telecopy: (925) 479-2111
        Attention: Chief Executive Officer

with copies (which shall not constitute notice) to:

        Pachulski, Stang, Ziehl, Young & Jones P.C.
        919 North Market Street, Suite 1600
        Wilmington, DE 19801
        Telecopy: (302) 652-4400
        Attention: Laura Davis Jones, Esq.

        Davis Polk & Wardwell
        1600 El Camino Real
        Menlo Park, California 94025
        Telecopy: 650-752-2111
        Attention: David W. Ferguson, Esq.

        and

If to Buyer, to

        Avaya Inc.
        211 Mount Airy Road
        Basking Ridge, NJ 07920-0012
        Telecopy: (separately provided)
        Attention: Chief Financial Officer

with the copy (which shall not constitute notice) to:

        Avaya Inc.
        211 Mount Airy Road
        Basking Ridge, NJ 07920-0012
        Telecopy: (separately provided)
        Attention: General Counsel

or such other address or facsimile number as such party may hereafter specify for the purposes by notice to the other parties hereto.  All such notices, requests and other communications shall be deemed received on the date of receipt by the

recipient thereof if received prior to 5 p.m. in the place of receipt and such day is a business day in the place of receipt. Otherwise, any such notice, request or communication shall be deemed not to have been received until the next succeeding business day in the place of receipt.

SECTION 10.02. *Survival of Representations and Warranties.* The representations and warranties and agreements contained herein and in any certificate or other writing delivered pursuant hereto shall survive beyond the Closing or the termination of this Agreement until a plan of reorganization in the Chapter 11 Case shall have been approved by the Bankruptcy Court not subject to any further appeal and such plan shall have become effective.

SECTION 10.03. *Amendments; No Waivers.* (a) Any provision of this Agreement may be amended or waived prior to the Closing if, but only if, such amendment or waiver is in writing and is signed, in the case of an amendment by each party to this Agreement or, in the case of a waiver, by each party against whom the waiver is to be effective, *provided* that after the entry of the Section 363/365 Order and without further approval of the Bankruptcy Court, no such amendment or waiver shall reduce the amount or change the kind of consideration to be received in exchange for the Acquired Assets.

(b) No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

SECTION 10.04. *Expenses.* Except as otherwise provided in this Agreement, all costs and expenses incurred in connection with this Agreement shall be paid by the party incurring such cost or expense.

SECTION 10.05. *Successors and Assigns.* The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, *provided* that no party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the consent of each other party hereto, except that Buyer may transfer or assign, in whole or from time to time in part, to one or more of its Affiliates, the right to purchase all or a portion of the Acquired Assets pursuant hereto, but no such transfer or assignment will relieve Buyer of its obligations hereunder or prejudice the rights of Company pursuant hereto.

SECTION 10.06. *Governing Law.* This Agreement shall be governed by and construed in accordance with the law of the State of Delaware, without regard

to the conflict of laws rules of such state.

SECTION 10.07. *Jurisdiction.* Buyer and Company irrevocably and unconditionally consent to submit to the jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement and the transactions contemplated thereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court).

SECTION 10.08. *WAIVER OF JURY TRIAL.* EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

SECTION 10.09. *Counterparts; Effectiveness.* (a) This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

(b) This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

SECTION 10.10. *Descriptive Headings; Certain Terms.* The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All references to "$" or dollars shall be to United States dollars and all references to "days" shall be to calendar days unless otherwise specified.

SECTION 10.11. *Entire Agreement.* This Agreement (including the Exhibits, and the other documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties or any of them, with respect to the subject matter of this Agreement.

SECTION 10.12. *Severability; Validity; Parties of Interest.* If any provision of this Agreement or the application thereof to any person or circumstance is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable. Upon such holding, the parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby shall be consummated as originally contemplated to the fullest extent possible. Nothing in this

(NFJ 1717.0005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-45-

000518

Agreement, express or implied, is intended to confer upon any person not a party to this Agreement any rights or remedies of any nature whatsoever under or by reason of this Agreement.

SECTION 10.13. *Bulk Sales.* Buyer hereby waives compliance by Company with any bulk sales or other similar laws in any applicable jurisdiction in respect of the transactions contemplated by this Agreement.

## ARTICLE 11
## DEFINITIONS

SECTION 11.01. *Defined Terms.* As used herein, the terms below shall have the following meanings.

"**Acquired Assets**" means all of the assets being acquired under this Agreement pursuant to Section 1.01 and Section 5.16, including the Section 363 Assigned Assets and the Section 365 Assumed Rights.

"**Affiliate**" means, with respect to any designated Person, any other Person directly or indirectly controlling, controlled by, or under common control with such designated Person. For purposes hereof, the term "controlled" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management of and policies of such designated Person, whether through the ownership of voting securities, by contract or credit arrangement or otherwise.

"**Agreement**" has the meaning set forth in the Preamble.

"**all reasonable efforts**" means prompt, substantial and persistent efforts as a prudent Person desirous of achieving a result would use in similar circumstances; *provided* that Sellers or Buyer, as applicable, shall be required to expend only such resources as are commercially reasonable in the applicable circumstances.

"**Approved Employee Orders**" means the orders approved by the Bankruptcy Court and agreed to in writing by Buyer with respect to employees and benefits of Company.

"**Assumed Liabilities**" has the meaning set forth in Section 1.03.

"**Balance Sheet**" shall mean Company's unaudited balance sheet at December 31, 2000.

"**Balance Sheet Date**" shall mean December 31, 2000.

(MP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-46-

000519

"**Bankruptcy Code**" has the meaning set forth in the Preamble.

"**Bankruptcy Court**" has the meaning set forth in the Preamble.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedures, as amended.

"**Benefit Arrangements**" has the meaning set forth in Section 3.14(a).

"**Bidding Procedures**" has the meaning set forth in Section 5.02.

"**Business**" means the business of Company including the design, development, manufacture, sale and service of comprehensive e-customer relationship management solutions.

"**Buyer**" has the meaning set forth in the Preamble.

"**Buyer Disclosure Schedules**" means the disclosure schedules of Buyer, dated as of the date hereof, to this Agreement, which shall constitute a part of this Agreement.

"**Chapter 11 Case**" has the meaning set forth in the Preamble.

"**Claim**" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

"**Closing**" has the meaning set forth in Section 2.01.

"**Closing Date**" has the meaning set forth in Section 2.01.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the Preamble.

"**Company Disclosure Documents**" means (a) the Company SEC Documents and (b) Company's forms of Annual Report on Form 10-K/A for the fiscal year ended March 31, 2000, Quarterly Report on Form 10-Q/A for the three months ended June 30, 2000, Quarterly Reports on Form 10-Q for the three month periods ended September 30, 2000 and December 31, 2000, each as attached hereto as Exhibit E and with the effect such documents would have had if they had been filed with the SEC prior to the date hereof.

"**Company Disclosure Schedule**" means the disclosure schedules of

(MP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.execution.wpd

-47-

000520

Company, dated as of the date hereof, to this Agreement, which shall constitute a part of this Agreement.

"**Company Employee Liabilities**" means all liabilities, obligations and commitments arising out of or related to the employment (or termination of employment) by Company of all employees of Company, including, but not limited to, any obligation or liability for (a) accrued but unpaid wages, salary, incentive or bonus compensation, vacation benefits and pay, or other compensation, (b) all claims for severance or other termination benefits, (c) all workers compensation claims, and (d) all claims under the agreements, arrangements and other policies promulgated by Company pursuant to the Approved Employee Orders, *provided* that the Company Employee Liabilities shall not include the Excluded Employee Liabilities.

"**Company Financial Statements**" has the meaning set forth in Section 3.07.

"**Company Intellectual Property Rights**" has the meaning set forth in Section 3.17.

"**Company Representatives**" has the meaning set forth in Section 5.05(b).

"**Company SEC Documents**" means (i) Company's annual report on Form 10-K for its fiscal year ended March 31, 2000, its quarterly report on Form 10-Q for its fiscal quarter ended June 30, 2000, its proxy or information statements relating to meetings of, or actions taken without a meeting by, the stockholders of Company held since March 31, 2000, and all of its other reports, statements, schedules and registration statements filed or to be filed prior to the Closing under the 1934 Act since March 31, 2000, in each case including all amendments and supplements thereto through the date hereof.

"**Company Subsidiary Securities**"has the meaning set forth in Section 3.05.

"**Competing Transaction**" means any transfer or other disposition or retention under a Chapter 11 plan of reorganization or order of the Bankruptcy Court pursuant to Section 363 and Section 365 of all or substantially all of the Acquired Assets or any significant portion thereof, in a single transaction or series of related transactions, *provided* that the Buyer has not theretofore terminated this Agreement pursuant to Section 9.01 hereof, and *provided further* that the Bankruptcy Court shall have theretofore entered the Interim Order.

000521

"Confidentiality Agreement" means the agreement, dated as of February 2, 2001, as amended on February 14, 2001, among Company and Buyer with respect to confidentiality and non-solicitation obligations, as the same may be amended.

"Contaminants" means any pollutant, contaminant, waste or chemical or any toxic, radioactive, ignitable, corrosive, reactive or otherwise hazardous substance, waste or material (including, but not limited to, petroleum), and includes but is not limited to any of those terms as defined in Environmental Law.

"Credit Agreement Term Sheet" has the meaning set forth in the Preamble hereto.

"Delaware Law" means the Delaware General Corporation Law, as amended.

"Designated Chapter 11 Costs" means all out of pocket fees and expenses incurred or owed in connection with the administration of the Chapter 11 Case including the U.S. Trustee fees, the fees and expenses of attorneys, accountants, financial advisors, consultants and other professionals retained by Company, the Creditors' Committee, the postpetition lenders or the prepetition lenders incurred or owed in connection with the administration of the Chapter 11 Case (but specifically excluding ordinary course professionals as authorized by the Bankruptcy Court), and all out of pocket expenses of Company in connection with the transactions contemplated under this Agreement.

"employee benefit plan" has the meaning set forth in Section 3.14(a).

"Environmental Laws" means any federal, state, local or foreign law (including common law), treaty, judicial decision, regulation, rule, judgment, order, decree, injunction, permit or governmental restriction or any agreement with any governmental authority or other third party, relating to the environment, human health and safety or Contaminants.

"Environmental Permits" means all permits, licenses, franchises, identification numbers, certificates, approvals and other similar authorizations of governmental authorities relating to or required by Environmental Laws and affecting, or relating in any way to, the Business.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"ERISA Affiliate" of any entity means any other entity which, together

000522

with such entity, would be treated as a single employer under Section 414 of the Code.

"**Excluded Assets**" has the meaning set forth in Section 1.02.

"**Excluded Employee Liabilities**" has the meaning set forth in Section 1.04(a)(viii).

"**Excluded Liabilities**" has the meaning set forth in Section 1.04.

"**Existing Claims**" has the meaning set forth in Section 1.04(a)(ii).

"**Foreign Subsidiaries**" means Quintus Call Center Solutions, B.V., a Netherlands corporation and Quintus Call Center Solutions Co., a Canadian corporation.

"**GAAP**" means generally accepted accounting principles in the United States.

"**Hazardous Substances**" means any pollutant, contaminant, waste or chemical or any toxic, radioactive, ignitable corrosive, reactive or otherwise hazardous substance, waste or material or any substance, waste or material having any constituent elements displaying any of the foregoing characteristics including petroleum, its derivatives, by-products and other hydrocarbons, and any substance, waste or material regulated under any Environmental Law.

"**HSR Act**" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended.

"**including**" shall always be read as "including without limitation".

"**Intellectual Property**" means all trademarks, service marks, trade names, logos, computer software, mask work, invention, patent, trade secret, copyright, technology, processes, inventions, proprietary data, formulae, research and development data, computer software programs, know-how (including any registrations or applications for registration of any of the foregoing) or any other similar type of proprietary intellectual property right.

"**Interim Order**" has the meaning set forth in Section 5.03(b)(i).

"**Interim Order Motion**" means the motion filed by Company in the Bankruptcy Case seeking entry of the Interim Order.

(NP) 17173/005/BANKRUPTCY SALE/APA/363.apa.avaya.execution.wpd

-50-

"**Lien**" means any interest in the Acquired Assets by a Person other than Company, including any mortgage, lien, pledge, charge, security interest, encumbrance or other adverse claim of any kind in respect of any Acquired Asset.

"**Material Adverse Effect**" means any event, condition or matter in respect of the operation of the Business, the Acquired Assets and the Assumed Liabilities that: (i) in the aggregate will result in or have a material adverse effect on the Business, Assumed Liabilities, Acquired Assets, financial condition or results of operations of the Business taking into account that current circumstances of Company, *provided*, however, that in no event shall any change, event, violation, inaccuracy, circumstance or effect that results from: (x) changes affecting the industry in which such entity operates generally; (y) changes affecting the United States economy generally or (z) provided the condition set forth in Section 8.03(h) is satisfied or not applicable solely as a result of Buyer's failure to comply with provisions of Section 5.17, loss of employees of Company prior to Closing, constitute a Material Adverse Effect; (ii) materially impairs the ability of Company to perform its obligations under this Agreement; or (iii) prevents or materially delays the consummation of the transactions contemplated by this Agreement.

"**Multiemployer Plan**" means any employee benefit plan that is a multiemployer plan, as defined in Section (37) of ERISA.

"**Permitted Exceptions**" means encumbrances incurred in the ordinary course of business that are not yet due and payable or are being contested in good faith, that cannot be released or cured under the Bankruptcy Code pursuant to a sale of assets under Sections 363 or 365 of the Bankruptcy Code or other applicable provisions of the Bankruptcy Code and that do not in the aggregate materially detract from the value of such asset or materially impair the use and operation of such asset in the Business as currently conducted.

"**Person**" means an individual, corporation, partnership, limited liability company, association, trust or other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

"**Pre-Closing Tax Period**" means (1) any Tax period ending on or before the Closing Date and (2) with respect to a Tax Period that commences before but ends after the Closing Date, the portion of such period up to and including the Closing Date.

"**Purchase Price**" has the meaning set forth in Section 1.05(a).

"**Release**"means any presence, release, discharge, disposal, spill, emission,

(MP) 17173/005/BANKRUPTCY.SALE/APA/363.spa.srsvs.execution.wpd

-51-

000524

leaking, pumping, injection, deposit, dispersal, leaching, migration or escape on, at, to or from the indoor or outdoor environment (including, but not limited to structures, surface water, air, soil or groundwater).

"**Section 363 Assigned Assets**" has the meaning set forth in Section 1.01(a).

"**Section 365 Assumed Rights**" has the meaning set forth in Section 1.01(b).

"**Section 363/365 Motion**" means the motion filed by Company in the Bankruptcy Case seeking entry of the Section 363/365 Order.

"**Section 363/365 Order**" has the meaning set forth in Section 5.03(b)(ii).

"**Section 363/365 Sale**" means the sale by Sellers and the purchase by Buyer of the Assigned Assets and the assumption by Buyer of the Assumed Liabilities pursuant to the Section 363/365 Order.

"**Seller**" has the meaning set forth in the recitals.

"**Subsidiary**" means, with respect to any Person, any entity of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other persons performing similar functions are at any time directly or indirectly owned by such Person.

"**Tax**" and, with correlative meaning, "**Taxes**" means (1) any net income, alternative or add-on minimum tax, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, registration, recording, documentary, conveyancing, gains, withholding on amounts paid to or by Company, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental or windfall profit tax, custom duty or other tax, governmental fee or other like assessment or charge of any kind whatsoever, together with any interest, penalty, addition to tax or additional amount imposed by any governmental authority (a "**Taxing Authority**") responsible for the imposition of any such tax (domestic or foreign), or (2) liability for the payment of any amounts of the type described in (1) as a result of being a member of an affiliated, combined or unitary group or party to any agreement or any express or implied obligation to indemnify any other Person.

"**Tax Return**" means any return, filing, report or similar statement required to be filed with respect to any Tax (including any attached schedules), including, without limitation, any information return, claim for refund, amended

000525

return or declaration of estimated Tax.

"**Transferred Employees**" has the meaning set forth in Section 6.01(a).

"**Topping Fee**" means the fee payable by Company to Buyer pursuant to the Interim Order in the amount of $1,300,000 upon the consummation of a Competing Transaction.

"**WARN Act**" means the Worker Adjustment and Retraining Notification Act of 1988.

*The remainder of the page is intentionally blank. Next page is the signature page.*

000526

IN WITNESS WHEREOF, Company and Buyer have caused this Agreement to be executed on their behalf by their officers thereunto duly authorized, as of the date first above written.

AVAYA INC.

By: _____

Name: Garry K. McGuire Sr.

Title: Chief Financial Officer

QUINTUS CORPORATION

By: _____

Name:

Title:

MUSTANG.COM, INC.

By: _____

Name: Paul Bartlett

Title: President

NABNASSET CORPORATION

By: _____

Name: Paul Bartlett

Title: President

ACUITY CORP.

By: _____

Name: Paul Bartlett

Title: President

NY1 20592l1v4                    41

000527

IN WITNESS WHEREOF, Company and Buyer have caused this Agreement to be executed on their behalf by their officers thereunto duly authorized, as of the date first above written.

AVAYA INC.

By:_____
    Name:
    Title:

QUINTUS CORPORATION

By:_____
    Name: Paul Bartlett
    Title: Chief Executive Officer

MUSTANG.COM, INC.

By:_____
    Name: Paul Bartlett
    Title: President

ACUITY CORP.

By:_____
    Name: Paul Bartlett
    Title: President

(NP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.2.wpd

000528

## Schedule 1.03: Assumed Liabilities

1.     All liabilities listed on the Company Balance Sheet (exclusive of the liability listed thereon that is an Excluded Liability pursuant to Section 1.04(v)) and all liabilities accrued or recorded after the Balance Sheet Date in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing Date, provided that the aggregate amount of liabilities assumed pursuant to this paragraph shall not exceed $30,000,000, and provided further that in no event shall Buyer assume liabilities for any advisers to any Seller in connection with the Chapter 11 Case or any Existing Claims in excess of an aggregate of $1,000,000.  In addition, Buyer shall assume each of the liabilities and obligations set forth in clauses a - c below, and such liabilities shall count against the $30,000,000 limitation in the foregoing sentence to the extent such liabilities are or should be accrued or recorded on the Company balance sheet based on GAAP applied on a consistent basis and have not been satisfied at the Closing.

    a.     All performance obligations arising under the Section 365 Assumed Rights, provided that Buyer shall in no event be liable for any pre-closing breach of such contracts;

    b.     All warranty obligations relating to any products sold by Company or any of its Subsidiaries on or prior to the Closing Date that arise in the ordinary course consistent with past practice;

    c.     Except as expressly provided in Section 1.04 or Article 6, all liabilities or obligations relating to employee benefits or compensation arrangements (other than those accrued on the Company Balance Sheet) existing on or prior to the Closing Date with respect to any employee or former employee of the Business solely to the extent such liabilities or obligations and an estimate of the amount thereof are disclosed in an annex to this Schedule reasonably satisfactory to Buyer to be delivered to Buyer within 3 business days of the date of this Agreement.

2.     All liabilities under contracts or Section 365 Assumed Rights in respect of provisions requiring the payment of money solely as a result of a change of control of any Seller, a filing of a petition in bankruptcy by any Seller or the consummation by any Seller of any of the transactions of the type contemplated hereunder, but only to the extent such liabilities are valid and enforceable against Sellers and as agreed upon by the parties or, in the absence of such agreement, as determined by the Bankruptcy Court.

000529

3.    Any portion of the security deposit posted in connection with the Company's lease at the Koll Dublin Corporate Center which security deposit was utilized by Koll Dublin to satisfy amounts owed by Company under such lease.

Any liabilities described in paragraphs 2 and 3 assumed by Buyer shall be taken into account for purposes of the $30,000,000 limit set forth in the first sentence of paragraph 1.

000530

**Kohn, Shalom**

Subject:                    FW: Revised Assumed Liabilities Schedule

-----Original Message-----
From: Martin A. Wellington [mailto:martin.wellington@dpw.com]
Sent: Tuesday, February 20, 2001 1:27 PM
To: klarson@avaya.com; jdillabough@sidley.com; irotter@sidley.com
Cc: ferguson@dpw.com; jmclough@dpw.com; paul.bartlett@quintus.com;
sitaram@quintus.com
Subject: Revised Assumed Liabilities Schedule


For this morning's call, we provide the following revisions to Schedule 1.03:

Schedule 1.03: Assumed Liabilities


1.    All liabilities accrued on the Company Balance Sheet and all liabilities
arising after the Balance Sheet Date in the ordinary course of business and
consistent with past practice to the extent not satisfied prior to the
Closing Date;

2.    All performance obligations arising under the Section 365 Assumed
Rights, except for liabilities for any pre-closing breach of such contracts;

3.    All warranty obligations relating to any products sold by Company or
its Subsidiaries on or prior to the Closing Date that arose in the ordinary
course consistent with past practice;

4.    Except as expressly provided in Section 1.04 or Article 6, all
liabilities or obligations relating to employee benefits or compensation
arrangements accrued on the Company Balance Sheet or existing on or prior
to the Closing Date with respect to any employee or former employee of the
Business solely to the extent such liabilities or obligations are disclosed
in the relevant Exhibits hereto and the Company Disclosure Schedules.

mw.

**Kohn, Shalom**

**Subject:**                    FW: APA

  

363.apa.avaya.2  363.apa.avaya.2  ATT2370370.txt
wpd.dubois.blk...        .wpd

-----Original Message-----
From: Martin A. Wellington [mailto:martin.wellington@dpw.com]
Sent: Tuesday, February 20, 2001 8:18 PM
To: irotter@sidley.com; jidillabo@sidley.com; paul.bartlett@quintus.com;
sitaram@quintus.com; susan.helms@quintus.com
Cc: ferguson@dpw.com; junekim@dpw.com; dgibson@dpw.com; sfutter@dpw.com;
cmhebel@dpw.com; kcoffin@dpw.com
Subject: APA

Subject to discussion between DPW & S&A tax people.

DPW DRAFT OF 2/20/01

# ASSET PURCHASE AGREEMENT
# PURSUANT TO SECTION 363
# OF THE BANKRUPTCY CODE

dated as of

February __, 2001

among

## QUINTUS CORPORATION,

certain wholly-owned subsidiaries of

## QUINTUS CORPORATION

and

## AVAYA, INC.

000257

(MP) 17173/005/BANKRUPTCY.SALE/APA/363.apa.avaya.wpd

2/20/01 4:35pm

^Schedule 1.03: Assumed Liabilities[243]

1.    All liabilities ↑accrued on the Company Balance Sheet (exclusive of the liability that is an Excluded Liability pursuant to Section 1.04(v)) and all liabilities accrued after the Balance Sheet Date in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing ↑Date, provided that the aggregate amount of liabilities assumed pursuant to this paragraph shall not exceed $30,000,000, and provided further that in no event shall Buyer assume liabilities for attorney's fees in connection with the Chapter 11 Case or any Existing Claims in excess of an aggregate of $1,000,000.[244,45]

2.    All ↑performance obligations arising under the Section 365 Assumed ↑Rights, except for liabilities for any pre-closing breach of such contracts;[246,47]

3.    All warranty obligations relating to any products sold by Company or any of its Subsidiaries on or prior to the Closing Date that arose in the ordinary course consistent with past practice;

4.    Except as |expressly provided in Section ↑1.04 or Article 6, all liabilities or obligations relating to employee benefits or compensation arrangements |(other than those accrued on the Company Balance Sheet) existing on or prior to the Closing Date with respect to any employee or former employee of the ↑Business solely to the extent such liabilities or obligations are disclosed in the relevant Exhibits hereto and the Company Disclosure Schedules.[248,49]

commencement of the Bankruptcy Case, the public announcement of the
Bankruptcy Case and the acquisition by Buyer of the Business pursuant hereto, or
the consummation of the transactions contemplated hereby, and agree that such
disruptions do not and shall not constitute a Material Adverse Effect.

233)    "Release" means

234)    5.04(b)(ii).

235)    [party to or a

236)    or]

237)    6.01.

238)    $_____ [3% of Deal Size]

239)    Company, Parent

240)    [COMPANY]

241)    [BUYER] By:_____ Name:

242)    Title: [PARENT]

243)    Title: </TABLE>

244)    set forth on the Balance Sheet and all liabilities incurred thereafter

245)    Date;

246)    liabilities and obligations of Seller

247)    Rights; 3. All Environmental Liabilities; 4. Except as set forth in Section
         1.04(b), all liabilities and obligations arising out of any action, suit,
         investigation or proceeding relating to or arising out of the Business or the
         Section 363 Assigned Assets before any court or arbitrator or any governmental
         body, agency or official; 5. All liabilities and obligations relating to any
         products manufactured or sold by the Business on or prior to the Closing Date,
         including without limitation warranty obligations and product liabilities; 6.

248)    1.04(d)

249)    Business.

000373

B - 182

68

APR. 5. 2001 10:47PM  92 SIDLEY&AUSTIN    QUINTUS CORP    NO. 3318  P. 3  82/84



# QUINTUS

Reference is made to the Asset Purchase Agreement ("Asset Purchase Agreement"), dated as of February 22, 2001, among Quintus Corporation, Acuity Corp., and Mustang.com, Inc., on the one hand, and Avaya Inc., on the other hand. Terms used but not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

Attached as Exhibit I is a schedule of the Company's estimate of the Assumed Liabilities as of the Closing Date provided pursuant to Section 1.03 of the Asset Purchase Agreement.

Please contact us at your earliest convenience to discuss any questions you may have regarding the schedule.

Mark P. Thompson
Vice President Finance
Quintus Corporation
925 479-2854

000248

APR. 5. 2001 10:47PM    92SIDLEY&AUSTIN        QUINTUS CORP        NO. 3318  P. 4  03/04

Quintus Corporation
Schedule of Assumed Liabilities - ESTIMATE
   In Thousands

Current Liabilities

| | | |
|---|---|---:|
| Other Accounts Payable[1] | | |
| Pre Petition Trade AP | $ | 400 |
| Post Petition Trade AP[2] | | 6,020 |
| Accrued Liabilities - See attached Detail | | 230 |
| Deferred Revenue | | 5,061 |
| Capital Leases | | 8,000 |
| Short Term Debt[3] | | 181 |
| | | 294 |
| **Total Current Liabilities** | | |
| | | 20,186 |
| Capital Leases | | |
| Long Term Debt | | 383 |
| Deferred Revenue | | - |
| | | 197 |
| **Total Liabilities** | | |
| | $ | 20,766 |

NOTES:

1. Accrual for amounts due to third party contractors
2. Estimate of Post Petition Trade Accounts payable.
3. Remaining short term debt relates to the SVB Term Loan and the Beehive Note.

000249

APR  5. 2001 10:47PM   92SIDLEY&AUSTIN      QUINTUS CORP        NO. 3318   P.  5  04/04

**Quintus Corporation**
**Schedule of Assumed Liabilities - ESTIMATE**
    In Thousands

| | |
|---|---:|
| **Legal & Accounting** | |
| Transaction/Bankruptcy/Shareholder Litigation [1] | |
| Davis Polk Estimate | $    300 |
| Pachulski Stang Zhiel Young & Jones | 200 |
| PricewaterhouseCoopers | 115 |
| | |
| Various Normal Course Legal | |
| | 100 |
| | |
| **Payroll Related** | |
| Fringe Clearing | |
| Accrued Commissions | (100) |
| Accrued Bonuses | 312 |
| Accrued Vacation | 1,800 |
| 401K/Health Care Withheld | 1,489 |
| ESPP Clearing | 279 |
| Payroll Clearing/Other | (3) |
| Stock Tax Clearing | 201 |
| | 4 |
| | |
| **Sales Related** | |
| Other Accrued Royalties | |
| | 17 |
| | |
| **Taxes** | |
| Sales Tax | |
| Sales and Property Tax Reserves | 34 |
| | 197 |
| | |
| **Other** | |
| Escheat Liability | |
| | 115 |
| | |
| **Total Accrued Liabilities** | $    5,061 |

NOTES:

1. Estimates of Professional Fees and Expenses.  These amounts have not yet been invoiced to Quintus.

000250



## QUINTUS

Reference is made to the Asset Purchase Agreement ("Asset Purchase Agreement"), dated as of February 22, 2001, among Quintus Corporation, Acuity Corp., and Mustang.com, Inc., on the one hand, and Avaya Inc., on the other hand. Terms used but not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

Attached as Exhibit I is a schedule of the Company's estimate of the Assumed Liabilities as of April 20, 2001, prepared and agreed as between the parties to the Asset Purchase Agreement in lieu of the Company's estimate of the Assumed Liabilities as of the Closing Date provided for by Section 1.03 of the Asset Purchase Agreement.


Mark P. Thompson
*Vice President Finance*
Quintus Corporation

Agreed and accepted,


[AVAYA SIGNER, TITLE]
Avaya Inc.
Senior Manager, Mergers & Acquisitions

000251

QUINTUS CORPORATION  4120 Dublin Boulevard, Dublin, CA 94568   (925)479-2800 *phone*   (925)479-2100 *fax*

B - 189

72

Quintus Corporation
Schedule of Assumed Liabilities - FINAL
    In Thousands

**Current Liabilities**

| | | |
|---|---|---:|
| Other Accounts Payable[1] | $ | 917 |
| Trade AP | | 7,080 |
| Accrued Liabilities - See attached Detail | | 5,513 |
| Deferred Revenue | | 8,069 |
| Capital Leases | | 170 |
| Short Term Debt[3] | | 265 |
| **Total Current Liabilities** | | 22,014 |
| Capital Leases | | 357 |
| Long Term Debt | | - |
| Deferred Revenue | | 178 |
| **Total Liabilities 4** | $ | 22,549 |

NOTES:

1. Accrual for amounts due to third party contractors, international and Atlanta building expenses.
2. Estimate of Post Petition Trade Accounts payable.
3. Remaining short term debt relates to the SVB Term Loan and the Beehive Note.
4. Excludes the amount of U.S. $500,000 owing to Silicon Valley Bank secured by certain accounts receivable from Intecom Inc. to Quintus Corporation, which amount shall be satisfied by Avaya Inc. pursuant to a settlement agreement among Quintus Corporation, Avaya Inc., Intecom Inc. and Silicon Valley Bank providing for the cancellation by Silicon Valley Bank of such receivables and the payment of such amount by Avaya Inc. to Silicon Valley Bank.

us.

000252

B - 190

Quintus Corporation
Schedule of Assumed Liabilities - FINAL
  In Thousands

**Legal & Accounting**
Transaction/Bankruptcy/Shareholder Litigation[1]

| | | |
|---|---|---|
| Davis Polk Estimate | $ | 300 |
| Pachulski Stang Zheil Young & Jones | | 200 |
| PricewaterhouseCoopers | | 115 |
| | | |
| Various Normal Course Legal | | 100 |

**Payroll Related**

| | |
|---|---|
| Accrued Commissions | 324 |
| Accrued Payroll 2 | 775 |
| Accrued Bonuses | 1,518 |
| Accrued Vacation | 1,493 |
| 401K/Health Care Withheld | 94 |
| International Payroll Taxes | 316 |

**Sales Related**

| | |
|---|---|
| Other Accrued Royalties | - |

**Taxes**

| | |
|---|---|
| Sales Tax | 128 |
| VAT Taxes | 35 |

**Other**

| | |
|---|---|
| Escheat Liability | 115 |
| | |
| **Total Accrued Liabilities** | $   5,513 |

NOTES:

1. Estimates of Professional Fees and Expenses.  These amounts have not yet been invoiced to Quintus.
2. Estimated payroll accrued for period from April 1 - April 10.  Includes estimated accrued vacation and 401k of approximately 100k.

000253

4/20/01
2:36:10PM

*3001 +3003* (handwritten)

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

*Includes:* (handwritten)
*Pre-Petition - 3001* (handwritten)
*Post-Petition - 3003* (handwritten)

Page 1

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | **Default Branch Code** | | | | | | | |
| **Vendor : 1-800-FLOWER** | | | | | | | | | |
| 1-800-FLOWERS | | | | | | | | | |
| VCH045720 | 13403776 | VOUCHER | 1/5/01 | 90.91 | 0.00 | 0.00 | 0.00 | 90.91 | 101 |
| VCH046648 | 13751642 | VOUCHER | 2/2/01 | 53.98 | 0.00 | 0.00 | 53.98 | 0.00 | 77 |
| **Vendor : 1-800-FLOW Home US** | | **Totals:** | | 144.89 | 0.00 | 0.00 | 53.98 | 90.91 | |
| **Vendor : AAA Locksmit** | | | | | | | | | |
| AAA Locksmiths | | | | | | | | | |
| VCH045258 | 17712 | VOUCHER | 1/2/01 | 664.56 | 0.00 | 0.00 | 0.00 | 664.56 | 108 |
| **Vendor : AAA Locks Home US** | | **Totals:** | | 664.56 | 0.00 | 0.00 | 0.00 | 664.56 | |
| **Vendor : aai** | | | | | | | | | |
| aai Design Solutions | | | | | | | | | |
| VCH045170 | 0007419 | VOUCHER | 1/30/01 | 12,416.12 | 0.00 | 0.00 | 12,416.12 | 0.00 | 80 |
| VCH046330 | 0007483 | VOUCHER | 2/15/01 | 3,535.46 | 0.00 | 0.00 | 3,535.46 | 0.00 | 64 |
| VCH047303 | 7530 | VOUCHER | 3/19/01 | 4,986.46 | 0.00 | 4,986.46 | 0.00 | 0.00 | 32 |
| **Vendor : aai    Home US** | | **Totals:** | | 20,938.04 | 0.00 | 4,986.46 | 15,951.58 | 0.00 | |
| **Vendor : Abacus Tra** | | | | | | | | | |
| Abacus Travel, Inc | | | | | | | | | |
| VCH045721 | 000022339 | VOUCHER | 2/9/01 | 2,691.85 | 0.00 | 0.00 | 2,691.85 | 0.00 | 70 |
| **Vendor : Abacus Tra Home US** | | **Totals:** | | 2,691.85 | 0.00 | 0.00 | 2,691.85 | 0.00 | |
| **Vendor : Aberdeen G** | | | | | | | | | |
| Aberdeen Group Inc. | | | | | | | | | |
| VCH044114 | R12226 | VOUCHER | 12/27/00 | 10,283.75 | 0.00 | 0.00 | 0.00 | 10,283.75 | 114 |
| **Vendor : Aberdeen G Home US** | | **Totals:** | | 10,283.75 | 0.00 | 0.00 | 0.00 | 10,283.75 | |
| **Vendor : Absolute Med** | | | | | | | | | |
| Absolute Media, Inc | | | | | | | | | |
| VCH045432 | Quin-135 | VOUCHER | 1/24/01 | 111.70 | 0.00 | 0.00 | 111.70 | 0.00 | 86 |
| VCH045433 | Quin-136 | VOUCHER | 1/30/01 | 262.18 | 0.00 | 0.00 | 262.18 | 0.00 | 80 |
| VCH045928 | 137 | VOUCHER | 2/8/01 | 315.00 | 0.00 | 0.00 | 315.00 | 0.00 | 71 |
| VCH045933 | 138 | VOUCHER | 2/8/01 | 215.00 | 0.00 | 0.00 | 215.00 | 0.00 | 71 |
| VCH046052 | Quin-134 | VOUCHER | 1/12/01 | 717.97 | 0.00 | 0.00 | 0.00 | 717.97 | 98 |
| VCH047596 | CD's 5.5.1 | VOUCHER | 4/17/01 | 637.35 | 637.35 | 0.00 | 0.00 | 0.00 | 3 |
| **Vendor : Absolute M Home US** | | **Totals:** | | 2,259.20 | 637.35 | 0.00 | 903.88 | 717.97 | |
| **Vendor : Accountants** | | | | | | | | | |
| Accountants Inc. | | | | | | | | | |
| VCH045339 | 01021206 | VOUCHER | 1/23/01 | 1,129.28 | 0.00 | 0.00 | 1,129.28 | 0.00 | 87 |
| VCH045340 | 01021205 | VOUCHER | 1/23/01 | 1,280.00 | 0.00 | 0.00 | 1,280.00 | 0.00 | 87 |
| VCH045341 | 01021207 | VOUCHER | 1/23/01 | 1,280.00 | 0.00 | 0.00 | 1,280.00 | 0.00 | 87 |
| VCH045932 | 101022833 | VOUCHER | 2/13/01 | 1,208.00 | 0.00 | 0.00 | 1,208.00 | 0.00 | 66 |
| VCH045985 | 01021960 | VOUCHER | 2/8/01 | 972.48 | 0.00 | 0.00 | 972.48 | 0.00 | 71 |
| VCH046332 | 01023041 | VOUCHER | 2/20/01 | 1,208.00 | 0.00 | 1,208.00 | 0.00 | 0.00 | 73 |
| VCH047653 | 4779706 | VOUCHER | 2/26/01 | 943.50 | 0.00 | 943.50 | 0.00 | 0.00 | 59 |
| VCH047740 | 01025803 | VOUCHER | 4/3/01 | 610.03 | 610.03 | 0.00 | 0.00 | 0.00 | 17 |
| **Vendor : Accountant Home US** | | **Totals:** | | 8,631.29 | 610.03 | 2,151.50 | 5,869.76 | 0.00 | |
| **Vendor : Accountemp** | | | | | | | | | |
| Accountemps | | | | | | | | | |
| VCH045877 | 4673979 | VOUCHER | 2/12/01 | 715.49 | 0.00 | 0.00 | 715.49 | 0.00 | 67 |
| VCH046661 | 04803293 | VOUCHER | 2/26/01 | 1,077.17 | 0.00 | 1,077.17 | 0.00 | 0.00 | 53 |
| **Vendor : Accountem Home US** | | **Totals:** | | 1,792.66 | 0.00 | 1,077.17 | 715.49 | 0.00 | |
| **Vendor : Acock M** | | | | | | | | | |

**B - 192**

75

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|--------|---------|----------|------------|---------|---------------|------------|------------|--------------|-----------|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Acock M | | | | - Continued... | | | | |
| | Malcolm Acock | | | | | | | | |
| DISB012139 | DB000311 | DB.MEMO | 3/31/98 | (207.66) | 0.00 | 0.00 | 0.00 | (207.66) | |
| Vendor : | Acock M | Home US | Totals: | (207.66) | 0.00 | 0.00 | 0.00 | (207.66) | |
| Vendor : | Action Confe | | | | | | | | |
| | Action Conferncing | | | | | | | | |
| VCH046698 | 624582 | VOUCHER | 3/1/01 | 12,311.54 | 0.00 | 12,311.54 | 0.00 | 0.00 | 50 |
| Vendor : | Action Conf | Home US | Totals: | 12,311.54 | 0.00 | 12,311.54 | 0.00 | 0.00 | |
| Vendor : | Acton Police | | | | | | | | |
| | Acton Police Department | | | | | | | | |
| VCH046276 | 00100038 | VOUCHER | 11/10/00 | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 161 |
| Vendor : | Action Polic | Home US | Totals: | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | |
| Vendor : | Advanstar 42 | | | | | | | | |
| | Advanstar Communications | | | | | | | | |
| DISB015600 | DB000384 | DB.MEMO | | (3,295.00) | 0.00 | 0.00 | 0.00 | (3,295.00) | |
| Vendor : | Advanstar (Home | US | Totals: | (3,295.00) | 0.00 | 0.00 | 0.00 | (3,295.00) | |
| Vendor : | Air System | | | | | | | | |
| | Air Systems, Inc. | | | | | | | | |
| V...984 | 115594 | VOUCHER | 2/1/01 | 169.00 | 0.00 | 0.00 | 169.00 | 0.00 | 78 |
| Vendor : | Air System | Home US | Totals: | 169.00 | 0.00 | 0.00 | 169.00 | 0.00 | |
| Vendor : | Akibia | | | | | | | | |
| | Akibia | | | | | | | | |
| VCH045986 | 2001010521 | VOUCHER | 1/31/01 | 472.94 | 0.00 | 0.00 | 472.94 | 0.00 | 79 |
| Vendor : | Akibia | Home US | Totals: | 472.94 | 0.00 | 0.00 | 472.94 | 0.00 | |
| Vendor : | All American | | | | | | | | |
| | All American Moving Storage, Inc | | | | | | | | |
| VCH045921 | 11449 | VOUCHER | 2/8/01 | 64.00 | 0.00 | 0.00 | 64.00 | 0.00 | 71 |
| VCH047726 | 12175/Mar | VOUCHER | 4/9/01 | 640.00 | 640.00 | 0.00 | 0.00 | 0.00 | 11 |
| Vendor : | All America | Home US | Totals: | 704.00 | 640.00 | 0.00 | 64.00 | 0.00 | |
| Vendor : | Alldata | | | | | | | | |
| | Alldata | | | | | | | | |
| VCH047640 | Overpayment | VOUCHER | 4/18/01 | 843.75 | 843.75 | 0.00 | 0.00 | 0.00 | 2 |
| Vendor : | Alldata | Home US | Totals: | 843.75 | 843.75 | 0.00 | 0.00 | 0.00 | |
| Vendor : | Amelias | | | | | | | | |
| | Amelias | | | | | | | | |
| VCH045337 | 103586 | VOUCHER | 2/1/01 | 125.91 | 0.00 | 0.00 | 125.91 | 0.00 | 78 |
| VCH045930 | 103650 | VOUCHER | 2/14/01 | 41.90 | 0.00 | 0.00 | 41.90 | 0.00 | 65 |
| Vendor : | Amelias | Home US | Totals: | 167.81 | 0.00 | 0.00 | 167.81 | 0.00 | |
| Vendor : | American Exp | | | | | | | | |
| | American Express | | | | | | | | |
| VCH046705 | 378293816811 | VOUCHER | 2/25/01 | 121,090.55 | 0.00 | 121,090.55 | 0.00 | 0.00 | 54 |
| VCH047742 | 8541135888 | VOUCHER | 4/20/01 | 769.77 | 769.77 | 0.00 | 0.00 | 0.00 | 0 |
| Vendor : | American E | Home US | Totals: | 121,860.32 | 769.77 | 121,090.55 | 0.00 | 0.00 | |
| Vendor : | Ameritech/IL | | | | | | | | |

**B - 193**

76

000059

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

Page 3

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|--------|---------|----------|------------|---------|---------------|------------|------------|--------------|-----------|
| **Branch Code:** | default | Default Branch Code | | | - Continued... | | | | |
| **Vendor:** | Ameritech/IL | Ameritech | | | - Continued... | | | | |
| VCH045864 | 708492357002 | VOUCHER | 2/7/01 | 91.46 | 0.00 | 0.00 | 91.46 | 0.00 | 72 |
| VCH045865 | 708492091202 | VOUCHER | 2/7/01 | 52.64 | 0.00 | 0.00 | 52.64 | 0.00 | 72 |
| VCH045867 | 708492056402 | VOUCHER | 2/7/01 | 44.81 | 0.00 | 0.00 | 44.81 | 0.00 | 72 |
| VCH045978 | 708562291101 | VOUCHER | 1/22/01 | 150.59 | 0.00 | 0.00 | 150.59 | 0.00 | 88 |
| VCH046663 | 708562291102 | VOUCHER | 2/22/01 | 140.85 | 0.00 | 140.85 | 0.00 | 0.00 | 57 |
| VCH046709 | 708R06102502 | VOUCHER | 2/16/01 | 3,241.90 | 0.00 | 0.00 | 3,241.90 | 0.00 | 63 |
| **Vendor:** Ameritech/I Home  US | | | **Totals:** | 3,722.25 | 0.00 | 140.85 | 3,581.40 | 0.00 | |
| **Vendor:** Angel Video | Angel Video Production Services | | | | | | | | |
| VCH044239 | 10063 | VOUCHER | 1/12/01 | 331.75 | 0.00 | 0.00 | 0.00 | 331.75 | 98 |
| VCH044247 | 10055 | VOUCHER | 10/8/01 | 181.60 | 181.60 | 0.00 | 0.00 | 0.00 | (171) |
| VCH044677 | 10075 | VOUCHER | 1/19/01 | 310.30 | 0.00 | 0.00 | 0.00 | 310.30 | 91 |
| **Vendor:** Angel Vide Home  US | | | **Totals:** | 823.65 | 181.60 | 0.00 | 0.00 | 642.05 | |
| **Vendor:** Arcus Data S | Arcus Data Security, Inc. | | | | | | | | |
| VCH045717 | 6715214 | VOUCHER | 1/31/01 | 276.00 | 0.00 | 0.00 | 276.00 | 0.00 | 79 |
| VCH045982 | 0653700 | VOUCHER | 1/31/01 | 139.76 | 0.00 | 0.00 | 139.76 | 0.00 | 79 |
| VCH046547 | 6714139 | VOUCHER | 1/1/01 | 296.50 | 0.00 | 0.00 | 0.00 | 296.50 | 109 |
| **Vendor:** Arcus Data Home  US | | | **Totals:** | 712.26 | 0.00 | 0.00 | 415.76 | 296.50 | |
| **Vendor:** Arizona Depa | Arizona Department Of Revenue | | | | | | | | |
| VCH046274 | AZ sales/Tax | VOUCHER | 2/22/01 | 2,992.26 | 0.00 | 2,992.26 | 0.00 | 0.00 | 57 |
| **Vendor:** Arizona De Home  US | | | **Totals:** | 2,992.26 | 0.00 | 2,992.26 | 0.00 | 0.00 | |
| **Vendor:** Aspen Pub | Aspen Publishers, | | | | | | | | |
| VCH046734 | 1010196972/feb | VOUCHER | 2/6/01 | 401.09 | 0.00 | 0.00 | 401.09 | 0.00 | 73 |
| **Vendor:** Aspen Pub Home  US | | | **Totals:** | 401.09 | 0.00 | 0.00 | 401.09 | 0.00 | |
| **Vendor:** Associated S | Associated Services Co. | | | | | | | | |
| VCH045428 | 338123 | VOUCHER | 1/25/01 | 255.66 | 0.00 | 0.00 | 255.66 | 0.00 | 85 |
| VCH045429 | 338336 | VOUCHER | 1/29/01 | 979.60 | 0.00 | 0.00 | 979.60 | 0.00 | 81 |
| VCH045430 | 336894 | VOUCHER | 1/9/01 | 1,862.77 | 0.00 | 0.00 | 0.00 | 1,862.77 | 101 |
| VCH045925 | 340011 | VOUCHER | 2/15/01 | 2,649.44 | 0.00 | 0.00 | 2,649.44 | 0.00 | 64 |
| VCH046305 | 3-40177 | VOUCHER | 2/16/01 | 323.10 | 0.00 | 0.00 | 323.10 | 0.00 | 63 |
| VCH047222 | 1-60700 | VOUCHER | 11/29/01 | 286.60 | 286.60 | 0.00 | 0.00 | 0.00 | 63 |
| VCH047851 | 1-59074 | VOUCHER | 11/17/00 | 736.78 | 0.00 | 0.00 | 0.00 | 736.78 | (223) |
| **Vendor:** Associated Home  US | | | **Totals:** | 7,093.95 | 286.60 | 0.00 | 4,207.80 | 2,599.55 | 154 |
| **Vendor:** Associates P | Associates Printing Services | | | | | | | | |
| VCH044847 | 6918 | VOUCHER | 1/16/01 | 2,621.58 | 0.00 | 0.00 | 0.00 | 2,621.58 | 94 |
| VCH045593 | 6819 | VOUCHER | 12/18/00 | 120.10 | 0.00 | 0.00 | 0.00 | 120.10 | 123 |
| VCH045595 | 6818 | VOUCHER | 12/18/00 | 87.63 | 0.00 | 0.00 | 0.00 | 87.63 | 123 |
| **Vendor:** Associates Home  US | | | **Totals:** | 2,829.31 | 0.00 | 0.00 | 0.00 | 2,829.31 | 123 |
| **Vendor:** AT & T KY | AT & T | | | | | | | | |
| VCH045896 | 676824400/JAN | VOUCHER | 1/27/01 | 11.25 | 0.00 | 0.00 | 11.25 | 0.00 | 83 |
| VCH045897 | 6783669769/Jar | VOUCHER | 1/27/01 | 7.50 | 0.00 | 0.00 | 7.50 | 0.00 | 83 |
| VCH045898 | 6783666300/Jar | VOUCHER | 1/27/01 | 2,639.53 | 0.00 | 0.00 | 2,639.53 | 0.00 | 83 |
| VCH046002 | Jan0113126082; | VOUCHER | 1/7/01 | 22.06 | 0.00 | 0.00 | 0.00 | 22.06 | 103 |

B - 194

77

000060

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 4

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | **default** | **Default Branch Code** | | | | | | | |
| **Vendor :** | **AT & T KY** | | | | - Continued... | | | | |
| | **AT & T** | | | | - Continued... | | | | |
| VCH046710 | 8665461512/Feb | VOUCHER | 2/7/01 | 23.46 | 0.00 | 0.00 | 23.46 | 0.00 | 72 |
| VCH047360 | Feb/Mar | VOUCHER | 2/27/01 | 22.52 | 0.00 | 22.52 | 0.00 | 0.00 | 52 |
| VCH047361 | Feb/Mar01 | VOUCHER | 2/27/01 | 18.72 | 0.00 | 18.72 | 0.00 | 0.00 | 52 |
| **Vendor :** | **AT & T KY  Home  US** | | | **Totals:** | **2,745.04** | 0.00 | 41.24 | 2,681.74 | 22.06 | |
| **Vendor :** | **AT&T - Pho** | | | | | | | | |
| | **AT&T - Phoinx** | | | | | | | | |
| VCH046333 | 1717837394/Feb | VOUCHER | 2/2/01 | 8,288.95 | 0.00 | 0.00 | 8,288.95 | 0.00 | 77 |
| **Vendor :** | **AT&T - Pho Home  US** | | | **Totals:** | **8,288.95** | 0.00 | 0.00 | 8,288.95 | 0.00 | |
| **Vendor :** | **AT&T - Tx** | | | | | | | | |
| | **AT&T - Tx** | | | | | | | | |
| VCH045338 | 61742201/Jan01 | VOUCHER | 1/23/01 | 1,675.01 | 0.00 | 0.00 | 1,675.01 | 0.00 | 87 |
| **Vendor :** | **AT&T - Tx  Home  US** | | | **Totals:** | **1,675.01** | 0.00 | 0.00 | 1,675.01 | 0.00 | |
| **Vendor :** | **AT&T 003** | | | | | | | | |
| | **AT&T** | | | | | | | | |
| VCH045440 | 9258289269/Jar | VOUCHER | 2/4/01 | 28,464.81 | 0.00 | 0.00 | 28,464.81 | 0.00 | |
| VCH045928 | Feb01/92547901 | VOUCHER | 2/9/01 | 15.23 | 0.00 | 0.00 | 15.23 | 0.00 | 75 |
| VCH045929 | Feb01/31064036 | VOUCHER | 2/10/01 | 14.88 | 0.00 | 0.00 | 14.88 | 0.00 | 70 |
| VCH045964 | Jan01 | VOUCHER | 1/24/01 | 18.44 | 0.00 | 0.00 | 18.44 | 0.00 | 89 |
| VCH045965 | Jan01/92582852 | VOUCHER | 1/25/01 | 18.44 | 0.00 | 0.00 | 18.44 | 0.00 | 86 |
| VCH045966 | Jan01/9258285C | VOUCHER | 1/25/01 | 18.44 | 0.00 | 0.00 | 18.44 | 0.00 | 85 |
| VCH045967 | Jan01/92582819 | VOUCHER | 1/21/01 | 7.48 | 0.00 | 0.00 | 18.44 | 0.00 | 85 |
| VCH045968 | Jan01/70856226 | VOUCHER | 1/21/01 | 25.23 | 0.00 | 0.00 | 7.48 | 0.00 | 89 |
| VCH045969 | Jan01/92582848 | VOUCHER | 1/15/01 | 18.44 | 0.00 | 0.00 | 25.23 | 0.00 | 89 |
| VCH045970 | Jan01/92582847 | VOUCHER | 1/15/01 | 18.44 | 0.00 | 0.00 | 0.00 | 18.44 | 95 |
| VCH045971 | Jan01/9258281C | VOUCHER | 1/21/01 | 7.48 | 0.00 | 0.00 | 0.00 | 18.44 | 95 |
| VCH045972 | 9258281210/Jar | VOUCHER | 1/21/01 | 7.48 | 0.00 | 0.00 | 7.48 | 0.00 | 89 |
| VCH045973 | 9258281648/Jar | VOUCHER | 1/21/01 | 7.48 | 0.00 | 0.00 | 7.48 | 0.00 | 89 |
| VCH045974 | 9258282687/Jar | VOUCHER | 1/21/01 | 7.48 | 0.00 | 0.00 | 7.48 | 0.00 | 89 |
| VCH045975 | 9258281379/Jar | VOUCHER | 1/21/01 | 7.48 | 0.00 | 0.00 | 7.48 | 0.00 | 89 |
| VCH045976 | 7048969702/Jar | VOUCHER | 1/19/01 | 214.19 | 0.00 | 0.00 | 7.48 | 0.00 | 89 |
| VCH045977 | 9258286061 | VOUCHER | 1/21/01 | 7.48 | 0.00 | 0.00 | 0.00 | 214.19 | 91 |
| VCH046000 | 9786359784/Jar | VOUCHER | 1/15/01 | 27.11 | 0.00 | 0.00 | 7.48 | 0.00 | 89 |
| VCH046001 | 7048969702/Dec | VOUCHER | 12/19/00 | 227.15 | 0.00 | 0.00 | 0.00 | 27.11 | 95 |
| VCH046003 | 6786247802/Jar | VOUCHER | 1/13/01 | 33.47 | 0.00 | 0.00 | 0.00 | 227.15 | 122 |
| VCH046004 | 5102280187/Jar | VOUCHER | 1/13/01 | 25.90 | 0.00 | 0.00 | 33.47 | 0.00 | 97 |
| VCH046005 | 9258337870/Jar | VOUCHER | 1/13/01 | 74.36 | 0.00 | 0.00 | 25.90 | 0.00 | 97 |
| VCH046307 | Feb01 | VOUCHER | 2/13/01 | 38.99 | 0.00 | 0.00 | 74.36 | 0.00 | 97 |
| VCH046329 | Feb01. | VOUCHER | 2/15/01 | 27.46 | 0.00 | 0.00 | 38.99 | 0.00 | 66 |
| VCH046546 | 0585486220/Feb | VOUCHER | 1/10/01 | 14.69 | 0.00 | 0.00 | 27.46 | 0.00 | 64 |
| VCH046666 | 7085622911/Feb | VOUCHER | 2/21/01 | 25.56 | 0.00 | 0.00 | 0.00 | 14.69 | 100 |
| VCH046700 | 9258289269/Feb | VOUCHER | 3/4/01 | 17,661.06 | 0.00 | 25.56 | 0.00 | 0.00 | 58 |
| **Vendor :** | **AT&T 003  Home  US** | | | **Totals:** | **47,032.85** | 0.00 | 17,661.06 | 0.00 | 0.00 | 47 |
| | | | | | | 17,886.62 | 28,692.28 | 653.75 | |
| **Vendor :** | **AT&T/AZ** | | | | | | | | |
| | **AT&T** | | | | | | | | |
| VCH045716 | 80019690641/Fe | VOUCHER | 2/1/01 | 28,997.14 | 0.00 | 0.00 | 28,997.14 | 0.00 | 78 |
| VCH047602 | 1658464596 | VOUCHER | 4/1/01 | 31,317.91 | 31,317.91 | 0.00 | 0.00 | 0.00 | 19 |
| **Vendor :** | **AT&T/AZ  Home  US** | | | **Totals:** | **60,315.05** | 31,317.91 | 0.00 | 28,997.14 | 0.00 | |
| **Vendor :** | **AT&T/AZ 978** | | | | | | | | |
| | **AT&T** | | | | | | | | |
| VCH045893 | 6786241258/Jar | VOUCHER | 2/1/01 | 14.80 | 0.00 | 0.00 | 14.80 | 0.00 | 78 |
| **Vendor :** | **AT&T/AZ 97Home  US** | | | **Totals:** | **14.80** | 0.00 | 0.00 | 14.80 | 0.00 | |
| **Vendor :** | **AT&T/IL** | | | | | | | | |
| | **AT&T** | | | | | | | | |

**B - 195**

000061

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No     Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | AT&T/IL | | | | - Continued... | | | | |
| | AT&T | | | | | | | | |
| VCH045934 | 9859675 | VOUCHER | 2/1/01 | 897.75 | 0.00 | 0.00 | 897.75 | 0.00 | 78 |
| Vendor : | AT&T/IL | Home US | Totals: | 897.75 | 0.00 | 0.00 | 897.75 | 0.00 | |
| Vendor : | AT&T/Univers | | | | | | | | |
| | AT&T Universal Biller | | | | | | | | |
| VCH046548 | 5967800006 | VOUCHER | 1/1/01 | 1,467.59 | 0.00 | 0.00 | 0.00 | 1,467.59 | 109 |
| Vendor : | AT&T/UniveHome US | | Totals: | 1,467.59 | 0.00 | 0.00 | 0.00 | 1,467.59 | |
| Vendor : | AT&T02 | | | | | | | | |
| | AT&T | | | | | | | | |
| VCH046034 | Jan01/97863597 | VOUCHER | 2/1/01 | 37.18 | 0.00 | 0.00 | 37.18 | 0.00 | 78 |
| Vendor : | AT&T02 | Home US | Totals: | 37.18 | 0.00 | 0.00 | 37.18 | 0.00 | |
| Vendor : | Atlanta Coff | | | | | | | | |
| | Atlanta Coffee Time | | | | | | | | |
| VCH045118 | 133682 | VOUCHER | 12/12/00 | 103.19 | 0.00 | 0.00 | 0.00 | 103.19 | 129 |
| VCH045119 | 133683 | VOUCHER | 12/12/00 | 148.44 | 0.00 | 0.00 | 0.00 | 146.44 | 129 |
| VCH045120 | 131421 | VOUCHER | 11/16/00 | 420.58 | 0.00 | 0.00 | 0.00 | 420.58 | 155 |
| VCH045121 | 131420 | VOUCHER | 11/16/00 | 330.03 | 0.00 | 0.00 | 0.00 | 330.03 | 155 |
| VCH045122 | 136556 | VOUCHER | 1/9/01 | 36.08 | 0.00 | 0.00 | 0.00 | 36.08 | 101 |
| VCH045123 | 137842 | VOUCHER | 1/23/01 | 53.50 | 0.00 | 0.00 | 53.50 | 0.00 | 87 |
| VCH045124 | 137843 | VOUCHER | 1/23/01 | 212.81 | 0.00 | 0.00 | 212.81 | 0.00 | 87 |
| VCH045125 | 1376789 | VOUCHER | 1/10/01 | 26.75 | 0.00 | 0.00 | 0.00 | 26.75 | 100 |
| VCH045126 | 136359 | VOUCHER | 1/9/01 | 237.04 | 0.00 | 0.00 | 0.00 | 237.04 | 101 |
| VCH045889 | 139233 | VOUCHER | 2/6/01 | 178.53 | 0.00 | 0.00 | 178.53 | 0.00 | 73 |
| VCH045891 | 139232 | VOUCHER | 2/6/01 | 66.88 | 0.00 | 0.00 | 66.88 | 0.00 | 73 |
| VCH046253 | 140564 | VOUCHER | 2/20/01 | 46.76 | 0.00 | 46.76 | 0.00 | 0.00 | 59 |
| VCH046254 | 140563 | VOUCHER | 2/20/01 | 9.36 | 0.00 | 9.36 | 0.00 | 0.00 | 59 |
| Vendor : | Atlanta CoffHome US | | Totals: | 1,867.95 | 0.00 | 56.12 | 511.72 | 1,300.11 | |
| Vendor : | Atlas Water | | | | | | | | |
| | Atlas Watersystems, | | | | | | | | |
| VCH045718 | 62580 | VOUCHER | 2/1/01 | 273.00 | 0.00 | 0.00 | 273.00 | 0.00 | 78 |
| Vendor : | Atlas WaterHome US | | Totals: | 273.00 | 0.00 | 0.00 | 273.00 | 0.00 | |
| Vendor : | Automated Sy | | | | | | | | |
| | Automated Systems Design, LLC | | | | | | | | |
| VCH022934 | 60198 | VOUCHER | 7/15/99 | 2,040.00 | 0.00 | 0.00 | 0.00 | 2,040.00 | 645 |
| Vendor : | Automated Home US | | Totals: | 2,040.00 | 0.00 | 0.00 | 0.00 | 2,040.00 | |
| Vendor : | AV Images | | | | | | | | |
| | AV Images, Inc. | | | | | | | | |
| VCH045336 | RT104092 | VOUCHER | 1/29/01 | 7,682.00 | 0.00 | 0.00 | 7,682.00 | 0.00 | 81 |
| Vendor : | AV Images Home US | | Totals: | 7,682.00 | 0.00 | 0.00 | 7,682.00 | 0.00 | |
| Vendor : | Azevedo Tr | | | | | | | | |
| | Azevedo Travel | | | | | | | | |
| VCH050652 | C505/3/14/99 | VOUCHER | 3/19/09 | 30.00 | 30.00 | 0.00 | 0.00 | 0.00 | (2,890) |
| Vendor : | Azevedo Tr Home US | | Totals: | 30.00 | 30.00 | 0.00 | 0.00 | 0.00 | |
| Vendor : | Baker Law | | | | | | | | |
| | Baker Law Corporation | | | | | | | | |
| VCH045999 | Si-B000701 | VOUCHER | 2/9/01 | 600.00 | 0.00 | 0.00 | 600.00 | 0.00 | 70 |
| VCH046650 | Si-B001211 | VOUCHER | 2/22/01 | 1,567.59 | 0.00 | 1,567.72 | 0.00 | 0.00 | 57 |

B - 196

000062

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 6

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|--------|---------|----------|------------|---------|---------------|------------|------------|--------------|-----------|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor: | Baker Law | | | | - Continued... | | | | |
| | Baker Law Corporation | | | | | | | | |
| VCH047363 | SI-B001591 | VOUCHER | 3/12/01 | 1,661.82 | 0.00 | 1,661.82 | 0.00 | 0.00 | 39 |
| Vendor: Baker Law | Home | US | Totals: | 3,829.54 | 0.00 | 3,229.54 | 600.00 | 0.00 | |
| Vendor: | Bass Jessica | | | | | | | | |
| | Jessica Bass | | | | | | | | |
| VCH047727 | w/e 4/18/01/Avar | VOUCHER | 4/18/00 | 990.00 | 0.00 | 0.00 | 0.00 | 990.00 | 367 |
| VCH047728 | w/e 4/18/01/Quir | VOUCHER | 4/18/01 | 1,578.13 | 1,578.13 | 0.00 | 0.00 | 0.00 | 2 |
| Vendor: Bass Jessi | Home | US | Totals: | 2,568.13 | 1,578.13 | 0.00 | 0.00 | 990.00 | |
| Vendor: | Bay Area Tec | | | | | | | | |
| | Bay Area TechWorkers | | | | | | | | |
| VCH046294 | 2027 | VOUCHER | 2/23/01 | 5,000.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 56 |
| VCH046296 | 2026 | VOUCHER | 2/23/01 | 3,942.50 | 0.00 | 3,942.50 | 0.00 | 0.00 | 56 |
| VCH047886 | 2064. | VOUCHER | 3/12/01 | 4,061.00 | 0.00 | 4,061.00 | 0.00 | 0.00 | 39 |
| Vendor: Bay Area T | Home | US | Totals: | 13,003.50 | 0.00 | 13,003.50 | 0.00 | 0.00 | |
| Vendor: | Bay Tact | | | | | | | | |
| | Bay Tact Corp. | | | | | | | | |
| VCH045987 | 045367 | VOUCHER | 8/14/00 | 215.00 | 0.00 | 0.00 | 0.00 | 215.00 | 249 |
| Vendor: Bay Tact | Home | US | Totals: | 215.00 | 0.00 | 0.00 | 0.00 | 215.00 | |
| Vendor: | Bell Atlan | | | | | | | | |
| | Bell Atlantic | | | | | | | | |
| DISB013113 | DB000327 | DB.MEMO | | (588.66) | 0.00 | 0.00 | 0.00 | (588.66) | |
| Vendor: Bell Atlan | Home | US | Totals: | (588.66) | 0.00 | 0.00 | 0.00 | (588.66) | |
| Vendor: | Bell Sout/GA | | | | | | | | |
| | Bell South | | | | | | | | |
| VCH045871 | Jan01/67836663 | VOUCHER | 1/28/01 | 4,246.39 | 0.00 | 0.00 | 4,246.39 | 0.00 | 82 |
| VCH045980 | 6786247802/Jar | VOUCHER | 1/23/01 | 369.32 | 0.00 | 0.00 | 369.32 | 0.00 | 87 |
| VCH046007 | 6783686300/Jar | VOUCHER | 12/28/00 | 8,514.51 | 0.00 | 0.00 | 0.00 | 8,514.51 | 113 |
| Vendor: Bell Sout/G | Home | US | Totals: | 13,130.22 | 0.00 | 0.00 | 4,615.71 | 8,514.51 | |
| Vendor: | Bell South | | | | | | | | |
| | Bell South | | | | | | | | |
| VCH045979 | 7048969702/Jar | VOUCHER | 1/25/01 | 277.97 | 0.00 | 0.00 | 277.97 | 0.00 | 85 |
| VCH046667 | 7048969702/Fel | VOUCHER | 2/25/01 | 523.40 | 0.00 | 523.40 | 0.00 | 0.00 | 54 |
| Vendor: Bell South | Home | US | Totals: | 801.37 | 0.00 | 523.40 | 277.97 | 0.00 | |
| Vendor: | Best Softwar | | | | | | | | |
| | Best Software, Inc. | | | | | | | | |
| VCH046314 | 2185999 | VOUCHER | 1/8/01 | 518.74 | 0.00 | 0.00 | 0.00 | 518.74 | 102 |
| Vendor: Best Softw: | Home | US | Totals: | 518.74 | 0.00 | 0.00 | 0.00 | 518.74 | |
| Vendor: | Bindra Zo | | | | | | | | |
| | Zorawar Bindra | | | | | | | | |
| 6053 | Feb 12 | VOUCHER | 2/12/01 | 910.00 | 0.00 | 0.00 | 910.00 | 0.00 | 67 |
| Vendor: Bindra Zo | Home | US | Totals: | 910.00 | 0.00 | 0.00 | 910.00 | 0.00 | |
| Vendor: | Blakely Soko | | | | | | | | |
| | Blakely Sokoloff Taylor & Zafman | | | | | | | | |
| VCH046730 | 175202 | VOUCHER | 1/22/01 | 4,374.78 | 0.00 | 0.00 | 4,374.78 | 0.00 | 88 |

B - 197

000063

4/20/01
2:36:11PM

Page 7

**Aged Payables By Branch Code/Vendor Code**
**Quintus Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|--------|---------|----------|-----------|---------|---------------|------------|------------|--------------|-----------|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : Blakely Sok | Home  US | Totals: | | 4,374.78 | 0.00 | 0.00 | 4,374.78 | 0.00 | |
| Vendor : Blue Pumpkin | | | | | | | | | |
| Blue Pumpkin Software Inc. | | | | | | | | | |
| VCH045410 | INV0000901 | VOUCHER | 1/25/01 | 8,000.00 | 0.00 | 0.00 | 8,000.00 | 0.00 | 85 |
| Vendor : Blue Pumpl | Home  US | Totals: | | 8,000.00 | 0.00 | 0.00 | 8,000.00 | 0.00 | |
| Vendor : Boston Clean | | | | | | | | | |
| Boston Cleaning Company, Inc. | | | | | | | | | |
| VCH045344 | 10006 | VOUCHER | 2/1/01 | 1,982.54 | 0.00 | 0.00 | 1,982.54 | 0.00 | 78 |
| VCH047883 | 10398 | VOUCHER | 4/1/01 | 2,118.36 | 2,118.36 | 0.00 | 0.00 | 0.00 | 19 |
| Vendor : Boston Clea | Home  US | Totals: | | 4,100.90 | 2,118.36 | 0.00 | 1,982.54 | 0.00 | |
| Vendor : Bowne | | | | | | | | | |
| Bowne Of Los Angeles,Inc; | | | | | | | | | |
| VCH046715 | 0101206580 | VOUCHER | 3/6/01 | 16,451.00 | 0.00 | 16,451.00 | 0.00 | 0.00 | 45 |
| VCH047305 | 010208410 | VOUCHER | 3/8/01 | 428.00 | 0.00 | 428.00 | 0.00 | 0.00 | 43 |
| Vendor : Bowne | Home  US | Totals: | | 16,879.00 | 0.00 | 16,879.00 | 0.00 | 0.00 | |
| Vendor : Bradford | | | | | | | | | |
| Bradford Adams & Company | | | | | | | | | |
| VCH045342 | 0010006190 | VOUCHER | 1/22/01 | 1,443.00 | 0.00 | 0.00 | 1,443.00 | 0.00 | 88 |
| Vendor : Bradford | Home  US | Totals: | | 1,443.00 | 0.00 | 0.00 | 1,443.00 | 0.00 | |
| Vendor : Bradford Gro | | | | | | | | | |
| Bradford Group Temporaries, Inc | | | | | | | | | |
| VCH045988 | 0010006450 | VOUCHER | 2/6/01 | 1,560.00 | 0.00 | 0.00 | 1,560.00 | 0.00 | 73 |
| VCH046054 | 0010006377 | VOUCHER | 1/31/01 | 1,560.00 | 0.00 | 0.00 | 1,560.00 | 0.00 | 79 |
| VCH046331 | 0010006510 | VOUCHER | 2/13/01 | 1,560.00 | 0.00 | 0.00 | 1,560.00 | 0.00 | 66 |
| VCH046340 | 0010006637 | VOUCHER | 2/21/01 | 1,560.00 | 0.00 | 0.00 | 1,560.00 | 0.00 | 58 |
| VCH046551 | 0010006706 | VOUCHER | 2/28/01 | 1,248.00 | 0.00 | 1,248.00 | 0.00 | 0.00 | 53 |
| VCH047689 | 100004006 | VOUCHER | 4/17/01 | 1,560.00 | 1,560.00 | 0.00 | 0.00 | 0.00 | 3 |
| VCH047733 | 10007227 | VOUCHER | 4/10/01 | 1,560.00 | 1,560.00 | 0.00 | 0.00 | 0.00 | 10 |
| Vendor : Bradford Gi | Home  US | Totals: | | 10,608.00 | 3,120.00 | 2,808.00 | 4,680.00 | 0.00 | |
| Vendor : Broadwing | | | | | | | | | |
| Broadwing | | | | | | | | | |
| VCH045409 | 880000139* | VOUCHER | 12/26/00 | 3,172.21 | 0.00 | 0.00 | 0.00 | 3,172.21 | 115 |
| VCH047741 | 880000139 | VOUCHER | 3/21/01 | 1,136.79 | 1,136.79 | -0.00 | 0.00 | 0.00 | 30 |
| Vendor : Broadwing | Home  US | Totals: | | 4,309.00 | 1,136.79 | 0.00 | 0.00 | 3,172.21 | |
| Vendor : Brobeck Ph | | | | | | | | | |
| Brobeck Phleger & Harrison | | | | | | | | | |
| VCH021434 | 21873 | VOUCHER | 4/27/99 | 814.25 | 0.00 | 0.00 | 0.00 | 814.25 | 724 |
| Vendor : Brobeck Ph | Home  US | Totals: | | 814.25 | 0.00 | 0.00 | 0.00 | 814.25 | |
| Vendor : Brooke Rita | | | | | | | | | |
| Rita Brooke | | | | | | | | | |
| DISB017597 | DB000469 | DB.MEMO | | (23.50) | 0.00 | 0.00 | 0.00 | (23.50) | |
| Vendor : Brooke Rita | Home  US | Totals: | | (23.50) | 0.00 | 0.00 | 0.00 | (23.50) | |
| Vendor : Bruce Poole | | | | | | | | | |
| Bruce Poole | | | | | | | | | |
| DISB015147 | DB000358 | DB.MEMO | | (1,000.00) | 0.00 | 0.00 | 0.00 | (1,000.00) | |
| Vendor : Bruce Pooh | Home  US | Totals: | | (1,000.00) | 0.00 | 0.00 | 0.00 | (1,000.00) | |

B - 198

000064

81

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 8

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | Default Branch Code | | | – Continued... | | | | |
| **Vendor : BTI Telecomm** | | | | | | | | | |
| BTI Telecommunications Services | | | | | | | | | |
| VCH045127 | 4155193/Dec00 | VOUCHER | 12/25/00 | 73.72 | 0.00 | 0.00 | 0.00 | 73.72 | 116 |
| VCH048327 | 4155193/Jan01 | VOUCHER | 1/25/01 | 72.64 | 0.00 | 0.00 | 72.64 | 0.00 | 85 |
| VCH046664 | 4155193/Feb01 | VOUCHER | 2/26/01 | 73.73 | 0.00 | 73.73 | 0.00 | 0.00 | 53 |
| Vendor : BTI Telecos Home US | | | Totals: | 220.09 | 0.00 | 73.73 | 72.64 | 73.72 | |
| **Vendor : Business04** | | | | | | | | | |
| Business Wire | | | | | | | | | |
| VCH047226 | 1712073 | VOUCHER | 1/23/01 | 182.70 | 0.00 | 0.00 | 182.70 | 0.00 | 87 |
| VCH047233 | 1714961 | VOUCHER | 1/25/01 | 969.90 | 0.00 | 0.00 | 969.90 | 0.00 | 85 |
| VCH047235 | 1719216 | VOUCHER | 1/31/01 | 1,104.90 | 0.00 | 0.00 | 1,104.90 | 0.00 | 79 |
| VCH047237 | 17128787 | VOUCHER | 2/12/01 | 834.90 | 0.00 | 0.00 | 834.90 | 0.00 | 67 |
| Vendor : Business04 Home US | | | Totals: | 3,092.40 | 0.00 | 0.00 | 3,092.40 | 0.00 | |
| **Vendor : BusinessWire** | | | | | | | | | |
| Business Wire | | | | | | | | | |
| VCH045624 | 1707292 | VOUCHER | 1/23/01 | 799.90 | 0.00 | 0.00 | 799.90 | 0.00 | 87 |
| Vendor : BusinessWi Home US | | | Totals: | 799.90 | 0.00 | 0.00 | 799.90 | 0.00 | |
| **Vendor : Cahners** | | | | | | | | | |
| Cahners Business Information | | | | | | | | | |
| VCH045657 | 1634190 | VOUCHER | 1/18/01 | 11,095.00 | 0.00 | 0.00 | 0.00 | 11,095.00 | 92 |
| VCH047213 | 1648582 | VOUCHER | 1/31/01 | 10,000.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 79 |
| Vendor : Cahners Home US | | | Totals: | 21,095.00 | 0.00 | 0.00 | 10,000.00 | 11,095.00 | |
| **Vendor : CaliforniaCh** | | | | | | | | | |
| California Chamber Of Commerce | | | | | | | | | |
| VCH046051 | 423192 | VOUCHER | 2/1/01 | 48.75 | 0.00 | 0.00 | 48.75 | 0.00 | 78 |
| Vendor : CaliforniaCl Home US | | | Totals: | 48.75 | 0.00 | 0.00 | 48.75 | 0.00 | |
| **Vendor : Cap Gemini** | | | | | | | | | |
| Cap Gemini Ernst & Young US LLC | | | | | | | | | |
| VCH047214 | 50010670A | VOUCHER | 10/10/01 | 11,981.00 | 11,981.00 | 0.00 | 0.00 | 0.00 | (173) |
| VCH047295 | 50019043 | VOUCHER | 1/5/01 | 79,581.00 | 0.00 | 0.00 | 0.00 | 79,581.00 | 105 |
| VCH047364 | 50013870 | VOUCHER | 11/15/00 | 67,328.00 | 0.00 | 0.00 | 0.00 | 67,328.00 | 156 |
| VCH047365 | 50019066 | VOUCHER | 1/9/01 | 140,754.00 | 0.00 | 0.00 | 0.00 | 140,754.00 | 101 |
| Vendor : Cap Gemini Home US | | | Totals: | 299,644.00 | 11,981.00 | 0.00 | 0.00 | 287,663.00 | |
| **Vendor : Careful Cori** | | | | | | | | | |
| Careful Courier | | | | | | | | | |
| VCH045350 | 23563 | VOUCHER | 2/29/00 | 65.00 | 0.00 | 0.00 | 0.00 | 65.00 | 416 |
| VCH045951 | 29609 | VOUCHER | 1/11/01 | 50.30 | 0.00 | 0.00 | 0.00 | 50.30 | 99 |
| Vendor : Careful Cor Home US | | | Totals: | 115.30 | 0.00 | 0.00 | 0.00 | 115.30 | |
| **Vendor : Cassidy Andr** | | | | | | | | | |
| Andrew Cassidy | | | | | | | | | |
| DISB009210 | DB000242 | DB.MEMO | | (10.00) | 0.00 | 0.00 | 0.00 | (10.00) | |
| Vendor : Cassidy An Home US | | | Totals: | (10.00) | 0.00 | 0.00 | 0.00 | (10.00) | |
| **Vendor : Catalyst Sys** | | | | | | | | | |
| Catalyst Systems & Peripherals | | | | | | | | | |
| VCH045352 | 3009 | VOUCHER | 1/16/01 | 15,282.00 | 0.00 | 0.00 | 0.00 | 15,282.00 | 94 |
| VCH045353 | 3008 | VOUCHER | 1/16/01 | 15,282.00 | 0.00 | 0.00 | 0.00 | 15,282.00 | 94 |
| VCH046265 | 2985 | VOUCHER | 1/2/01 | 15,317.38 | 0.00 | 0.00 | 0.00 | 15,317.38 | 108 |

B - 199

000065

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | | **Default Branch Code** | | | – Continued... | | | | |
| Vendor : Catalyst Sy: | Home  US | Totals: | | 45,881.38 | 0.00 | 0.00 | 0.00 | 45,881.38 | |
| Vendor : CBSI | CBSI | | | | | | | | |
| VCH044225 | 90028820 | VOUCHER | 1/15/01 | 9,760.00 | 0.00 | 0.00 | 0.00 | 9,760.00 | 95 |
| Vendor : CBSI | Home  US | Totals: | | 9,760.00 | 0.00 | 0.00 | 0.00 | 9,780.00 | |
| Vendor : ccall.com | ccall.com | | | | | | | | |
| VCH045158 | 2344 | VOUCHER | 11/30/00 | 956.00 | 0.00 | 0.00 | 0.00 | 956.00 | 141 |
| Vendor : ccall.com | Home  US | Totals: | | 956.00 | 0.00 | 0.00 | 0.00 | 956.00 | |
| Vendor : CDW Comp/IL | CDW Computer Centers,Inc | | | | | | | | |
| VCH045983 | CS23067 | VOUCHER | 11/1/00 | 231.49 | 0.00 | 0.00 | 0.00 | 231.49 | 170 |
| VCH047554 | DI43755 | VOUCHER | 2/28/01 | 243.58 | 0.00 | 243.58 | 0.00 | 0.00 | 51 |
| VCH047555 | DI58772 | VOUCHER | 3/1/01 | 26.57 | 0.00 | 26.57 | 0.00 | 0.00 | 50 |
| Vendor : CDW Comp | Home  US | Totals: | | 501.64 | 0.00 | 270.15 | 0.00 | 231.49 | |
| Vendor : CenturyTel | CenturyTel | | | | | | | | |
| VCH046242 | Feb2538518441 | VOUCHER | 2/2/01 | 140.23 | 0.00 | 0.00 | 140.23 | 0.00 | 77 |
| Vendor : CenturyTel | Home  US | Totals: | | 140.23 | 0.00 | 0.00 | 140.23 | 0.00 | |
| Vendor : Ceridian | Ceridian Employer Services | | | | | | | | |
| VCH047703 | Yr2000 W2 Fee: | VOUCHER | 4/19/01 | 1,140.00 | 1,140.00 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : Ceridian | Home  US | Totals: | | 1,140.00 | 1,140.00 | 0.00 | 0.00 | 0.00 | |
| Vendor : CharlotteEx | Charlotte Executive Services | | | | | | | | |
| VCH045927 | 4319 | VOUCHER | 2/10/01 | 161.23 | 0.00 | 0.00 | 161.23 | 0.00 | 69 |
| Vendor : CharlotteEx | Home  US | Totals: | | 161.23 | 0.00 | 0.00 | 161.23 | 0.00 | |
| Vendor : Chase Mellon | Chase Mellon Shareholder Services | | | | | | | | |
| VCH046341 | 143829 | VOUCHER | 2/20/01 | 1,526.44 | 0.00 | 1,526.44 | 0.00 | 0.00 | 59 |
| Vendor : Chase Mellc | Home  US | Totals: | | 1,526.44 | 0.00 | 1,526.44 | 0.00 | 0.00 | |
| Vendor : Chen Yiwei | Yiwei Chen | | | | | | | | |
| VCH033674 | w/e 07/01/2000 | VOUCHER | 6/30/00 | 0.05 | 0.00 | 0.00 | 0.00 | 0.05 | 294 |
| Vendor : Chen Yiwei | Home  US | Totals: | | 0.05 | 0.00 | 0.00 | 0.00 | 0.05 | |
| Vendor : CIO Comm | CIO Communications, Inc | | | | | | | | |
| VCH044500 | 620063 | VOUCHER | 12/15/00 | 19,540.00 | 0.00 | 0.00 | 0.00 | 19,540.00 | 126 |
| Vendor : CIO Comm | Home  US | Totals: | | 19,540.00 | 0.00 | 0.00 | 0.00 | 19,540.00 | |
| Vendor : Citation Pre | Citation Press | | | | | | | | |
| DISB021328 | DB000600 | DB.MEMO | | (451.25) | 0.00 | 0.00 | 0.00 | (451.25) | |
| VCH026019 | 20358 | VOUCHER | 11/18/99 | 324.75 | 0.00 | 0.00 | 0.00 | 324.75 | 519 |
| VCH045354 | 22892 | VOUCHER | 1/31/01 | 805.68 | 0.00 | 0.00 | 805.68 | 0.00 | 79 |

**B - 200**

**83**

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 10

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | **Default Branch Code** | | | - Continued... | | | | |
| **Vendor :** | Citation Pre | | | | - Continued... | | | | |
| | Citation Press | | | | | | | | |
| VCH045355 | 22912 | VOUCHER | 1/24/01 | 439.56 | 0.00 | 0.00 | 439.56 | 0.00 | 86 |
| VCH045356 | 22991 | VOUCHER | 1/31/01 | 805.68 | 0.00 | 0.00 | 805.68 | 0.00 | 79 |
| VCH045357 | 22993 | VOUCHER | 1/31/01 | 489.24 | 0.00 | 0.00 | 489.24 | 0.00 | 79 |
| VCH045358 | 22990 | VOUCHER | 1/31/01 | 489.24 | 0.00 | 0.00 | 489.24 | 0.00 | 79 |
| VCH045359 | 22948 | VOUCHER | 1/29/01 | 3,877.20 | 0.00 | 0.00 | 3,877.20 | 0.00 | 79 |
| VCH045360 | 22916 | VOUCHER | 1/25/01 | 9,126.00 | 0.00 | 0.00 | 9,126.00 | 0.00 | 81 |
| VCH045361 | 22884 | VOUCHER | 1/11/01 | 18,047.88 | 0.00 | 0.00 | 0.00 | 18,047.88 | 85 |
| VCH045362 | 22885 | VOUCHER | 1/11/01 | 11,913.48 | 0.00 | 0.00 | 0.00 | 11,913.48 | 99 |
| VCH045723 | 22999 | VOUCHER | 1/31/01 | 805.68 | 0.00 | 0.00 | 805.68 | 0.00 | 99 |
| VCH045724 | 23001 | VOUCHER | 1/31/01 | 805.68 | 0.00 | 0.00 | 805.68 | 0.00 | 79 |
| VCH045725 | 23000 | VOUCHER | 1/31/01 | 805.68 | 0.00 | 0.00 | 805.68 | 0.00 | 79 |
| VCH045879 | 22998 | VOUCHER | 1/31/01 | 805.68 | 0.00 | 0.00 | 805.68 | 0.00 | 79 |
| VCH045991 | 22996 | VOUCHER | 1/31/01 | 489.24 | 0.00 | 0.00 | 489.24 | 0.00 | 79 |
| VCH045992 | 22994 | VOUCHER | 1/31/01 | 489.24 | 0.00 | 0.00 | 489.24 | 0.00 | 79 |
| VCH045993 | 22997 | VOUCHER | 1/31/01 | 489.24 | 0.00 | 0.00 | 489.24 | 0.00 | 79 |
| VCH045994 | 22995 | VOUCHER | 1/31/01 | 489.24 | 0.00 | 0.00 | 489.24 | 0.00 | 79 |
| **Vendor :** | **Citation PreHome  US** | | **Totals:** | 51,047.14 | 0.00 | 0.00 | 21,212.28 | 29,834.86 | |
| **Vendor :** | Clarke Amer | | | | | | | | |
| | Clarke American | | | | | | | | |
| VCH047639 | Overpayment | VOUCHER | 4/18/01 | 7,600.00 | 7,600.00 | 0.00 | 0.00 | 0.00 | 2 |
| **Vendor :** | **Clarke AmeHome  US** | | **Totals:** | 7,600.00 | 7,600.00 | 0.00 | 0.00 | 0.00 | |
| **Vendor :** | Clickguard C | | | | | | | | |
| | Clickguard Corporation | | | | | | | | |
| VCH045131 | 33910 | VOUCHER | 1/29/01 | 290.00 | 0.00 | 0.00 | 290.00 | 0.00 | 81 |
| VCH046055 | 33319 | VOUCHER | 11/22/00 | 125.00 | 0.00 | 0.00 | 0.00 | 125.00 | 149 |
| VCH046056 | 334757 | VOUCHER | 12/8/00 | 620.27 | 0.00 | 0.00 | 0.00 | 620.27 | 133 |
| VCH046057 | 33458 | VOUCHER | 12/8/00 | 656.00 | 0.00 | 0.00 | 0.00 | 656.00 | 133 |
| VCH046058 | 33738 | VOUCHER | 1/11/01 | 119.08 | 0.00 | 0.00 | 0.00 | 119.08 | 99 |
| **Vendor :** | **Clickguard Home  US** | | **Totals:** | 1,710.35 | 0.00 | 0.00 | 290.00 | 1,420.35 | |
| **Vendor :** | CMP Media | | | | | | | | |
| | CMP Media Inc | | | | | | | | |
| VCH044848 | 37517 | VOUCHER | 12/18/00 | 8,784.75 | 0.00 | 0.00 | 0.00 | 8,784.75 | 123 |
| VCH044849 | 38910 | VOUCHER | 2/18/00 | 3,500.00 | 0.00 | 0.00 | 0.00 | 3,500.00 | 427 |
| VCH044851 | 38911 | VOUCHER | 12/20/00 | 3,500.00 | 0.00 | 0.00 | 0.00 | 3,500.00 | 121 |
| VCH044854 | 33457 | VOUCHER | 11/29/00 | 3,500.00 | 0.00 | 0.00 | 0.00 | 3,500.00 | 142 |
| VCH045728 | 34454 | VOUCHER | 11/29/00 | 5,389.00 | 0.00 | 0.00 | 0.00 | 5,389.00 | 142 |
| VCH045793 | 06096 | VOUCHER | 9/11/00 | 31,858.00 | 0.00 | 0.00 | 0.00 | 31,858.00 | 211 |
| VCH045868 | 41110-1200 | VOUCHER | 12/28/00 | 5,389.00 | 0.00 | 0.00 | 0.00 | 5,389.00 | 113 |
| **Vendor :** | **CMP Media Home  US** | | **Totals:** | 61,920.75 | 0.00 | 0.00 | 0.00 | 61,920.75 | |
| **Vendor :** | Coffee Pause | | | | | | | | |
| | Coffee  Pause | | | | | | | | |
| VCH046181 | I321586 | VOUCHER | 1/18/01 | 460.25 | 0.00 | 0.00 | 0.00 | 460.25 | 92 |
| VCH046183 | I322826 | VOUCHER | 2/15/01 | 969.95 | 0.00 | 0.00 | 969.95 | 0.00 | 64 |
| **Vendor :** | **Coffee PauHome  US** | | **Totals:** | 1,430.20 | 0.00 | 0.00 | 969.95 | 460.25 | |
| **Vendor :** | CoffeePlus | | | | | | | | |
| | CoffeePlus | | | | | | | | |
| 7823 | 115902 | VOUCHER | 9/13/00 | 1,196.40 | 0.00 | 0.00 | 0.00 | 1,196.40 | 219 |
| **Vendor :** | **CoffeePlus Home  US** | | **Totals:** | 1,196.40 | 0.00 | 0.00 | 0.00 | 1,196.40 | |
| **Vendor :** | Coghlin Elec | | | | | | | | |
| | Coghlin Electrical Contractors | | | | | | | | |
| VCH044596 | 3110 | VOUCHER | 11/30/00 | 15,000.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 141 |

**B - 201**

**84**

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | | **Default Branch Code** | | | - Continued... | | | | |
| **Vendor:** Coghlin Ele | Home  US | | Totals: | 15,000.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | |
| | | | | | | | | | |
| **Vendor:** Cognos Cor | | Cognos Corporation | | | | | | | |
| | | | | | | | | | |
| VCH045663 | 98513 | VOUCHER | 1/16/01 | 500.40 | 0.00 | 0.00 | 0.00 | 500.40 | 94 |
| VCH045664 | 98514 | VOUCHER | 1/16/01 | 1,635.36 | 0.00 | 0.00 | 0.00 | 1,635.36 | 94 |
| VCH045665 | 98516 | VOUCHER | 1/16/01 | 18,966.80 | 0.00 | 0.00 | 0.00 | 18,966.80 | 94 |
| VCH045666 | 100459 | VOUCHER | 1/31/01 | 6,819.52 | 0.00 | 0.00 | 6,819.52 | 0.00 | 79 |
| VCH047648 | 104882 | VOUCHER | 3/26/01 | 18,152.80 | 18,152.80 | 0.00 | 0.00 | 0.00 | 25 |
| VCH047649 | 105199 | VOUCHER | 3/29/01 | 37,810.82 | 37,810.82 | 0.00 | 0.00 | 0.00 | 22 |
| **Vendor:** Cognos Cor | Home  US | | Totals: | 83,885.70 | 55,963.62 | 0.00 | 6,819.52 | 21,102.56 | |
| | | | | | | | | | |
| **Vendor:** ComEd | | ComEd | | | | | | | |
| | | | | | | | | | |
| VCH045351 | 5999510025/Jar | VOUCHER | 1/22/01 | 150.00 | 0.00 | 0.00 | 150.00 | 0.00 | 88 |
| VCH046862 | 5999510025/Fet | VOUCHER | 2/21/01 | 308.28 | 0.00 | 308.28 | 0.00 | 0.00 | 58 |
| VCH047287 | Feb01 | VOUCHER | 2/20/01 | 488.89 | 0.00 | 488.89 | 0.00 | 0.00 | 59 |
| **Vendor:** ComEd | Home  US | | Totals: | 947.17 | 0.00 | 797.17 | 150.00 | 0.00 | |
| | | | | | | | | | |
| **Vendor:** Common/Edis | | Commonwealth Edison Company | | | | | | | |
| | | | | | | | | | |
| VCH047685 | Ck2464343 | VOUCHER | 4/19/01 | 1,110.00 | 1,110.00 | 0.00 | 0.00 | 0.00 | 1 |
| **Vendor:** Common/Ei | Home  US | | Totals: | 1,110.00 | 1,110.00 | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| **Vendor:** Communicatio | | Communications General Information Corp | | | | | | | |
| | | | | | | | | | |
| VCH045956 | A6180/Jan01 | VOUCHER | 1/17/01 | 51.30 | 0.00 | 0.00 | 0.00 | 51.30 | 93 |
| VCH045957 | A6202/Jan01 | VOUCHER | 1/17/01 | 56.65 | 0.00 | 0.00 | 0.00 | 56.65 | 93 |
| VCH046310 | Feb01/A6180 | VOUCHER | 2/16/01 | 45.35 | 0.00 | 0.00 | 45.35 | 0.00 | 63 |
| VCH046311 | Feb01/A6202 | VOUCHER | 2/16/01 | 60.55 | 0.00 | 0.00 | 60.55 | 0.00 | 63 |
| **Vendor:** Communica | Home  US | | Totals: | 213.85 | 0.00 | 0.00 | 105.90 | 107.95 | |
| | | | | | | | | | |
| **Vendor:** Community Me | | Community Media Corp. | | | | | | | |
| | | | | | | | | | |
| VCH046262 | 000151C | VOUCHER | 2/8/01 | 5,650.00 | 0.00 | 0.00 | 5,650.00 | 0.00 | 71 |
| **Vendor:** Community | Home  US | | Totals: | 5,650.00 | 0.00 | 0.00 | 5,650.00 | 0.00 | |
| | | | | | | | | | |
| **Vendor:** Comptroller | | Comptroller Of Public Accounts | | | | | | | |
| | | | | | | | | | |
| VCH047680 | Mar01 | VOUCHER | 4/19/01 | 1,592.56 | 1,592.56 | 0.00 | 0.00 | 0.00 | 1 |
| **Vendor:** Comptroller | Home  US | | Totals: | 1,592.56 | 1,592.56 | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| **Vendor:** ComputerPREP | | ComputerPREP | | | | | | | |
| | | | | | | | | | |
| VCH045381 | INV0109796 | VOUCHER | 8/31/00 | 715.63 | 0.00 | 0.00 | 0.00 | 715.63 | 232 |
| **Vendor:** ComputerP | Home  US | | Totals: | 715.63 | 0.00 | 0.00 | 0.00 | 715.63 | |
| | | | | | | | | | |
| **Vendor:** Conseco Fina | | Conseco Finance Vendor Services Corp | | | | | | | |
| | | | | | | | | | |
| 75334 | 40430253/Feb01 | VOUCHER | 1/26/01 | 709.62 | 0.00 | 0.00 | 709.62 | 0.00 | 84 |
| **Vendor:** Conseco Fi | Home  US | | Totals: | 709.62 | 0.00 | 0.00 | 709.62 | 0.00 | |
| | | | | | | | | | |
| **Vendor:** Converge C | | Converge Corporation | | | | | | | |
| | | | | | | | | | |
| VCH045906 | oVERPYMT | VOUCHER | 2/21/01 | 5,512.63 | 0.00 | 5,512.63 | 0.00 | 0.00 | 58 |

**B - 202**

000068

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|--------|---------|----------|------------|---------|---------------|------------|------------|--------------|-----------|
| **Branch Code:** default | | **Default Branch Code** | | | - Continued... | | | | |
| Vendor : Converge CHome US | | | Totals: | 5,512.63 | 0.00 | 5,512.63 | 0.00 | 0.00 | |
| | | | | | | | | | |
| **Vendor : Convergys** Convergys | | | | | | | | | |
| VCH047641 | Overpayment | VOUCHER | 4/18/01 | 9.00 | 9.00 | 0.00 | 0.00 | 0.00 | 2 |
| VCH047642 | Overpayment/Ja | VOUCHER | 4/18/01 | 7,290.00 | 7,290.00 | 0.00 | 0.00 | 0.00 | 2 |
| Vendor : Convergys Home US | | | Totals: | 7,299.00 | 7,299.00 | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| **Vendor : Cooke Doreen** Doreen Cooke | | | | | | | | | |
| VCH046976 | w/e 03/03/01 | VOUCHER | 3/20/01 | 0.01 | 0.00 | 0.01 | 0.00 | 0.00 | 31 |
| VCH046977 | w/e 3/10/01 | VOUCHER | 3/20/01 | 0.01 | 0.00 | 0.01 | 0.00 | 0.00 | 31 |
| Vendor : Cooke DoreHome US | | | Totals: | 0.02 | 0.00 | 0.02 | 0.00 | 0.00 | |
| | | | | | | | | | |
| **Vendor : Cooper, Whit** Cooper, White & Cooper LLP | | | | | | | | | |
| VCH044243 | 6193-975860 | VOUCHER | 1/10/01 | 160.00 | 0.00 | 0.00 | 0.00 | 160.00 | 100 |
| VCH046565 | 6363-976502 | VOUCHER | 2/13/01 | 2,997.90 | 0.00 | 0.00 | 2,997.90 | 0.00 | 66 |
| Vendor : Cooper, WhHome US | | | Totals: | 3,157.90 | 0.00 | 0.00 | 2,997.90 | 160.00 | |
| | | | | | | | | | |
| **Vendor : Cornish & Ca** Cornish & Carey Commercial | | | | | | | | | |
| VCH047644 | QC-01 | VOUCHER | 1/15/01 | 30,000.00 | 0.00 | 0.00 | 0.00 | 30,000.00 | 95 |
| Vendor : Cornish & CHome US | | | Totals: | 30,000.00 | 0.00 | 0.00 | 0.00 | 30,000.00 | |
| | | | | | | | | | |
| **Vendor : Corporate Mo** Corporate Motivators | | | | | | | | | |
| VCH043714 | 2000-38876 | VOUCHER | 1/11/01 | 21,434.09 | 0.00 | 0.00 | 0.00 | 21,434.09 | 99 |
| VCH045560 | 37680 | VOUCHER | 8/11/00 | 4,310.07 | 0.00 | 0.00 | 0.00 | 4,310.07 | 252 |
| VCH045561 | 38339 | VOUCHER | 10/12/00 | 182.61 | 0.00 | 0.00 | 0.00 | 182.61 | 190 |
| VCH045562 | 38922 | VOUCHER | 12/12/00 | 2,510.38 | 0.00 | 0.00 | 0.00 | 2,510.38 | 129 |
| VCH045563 | 38432 | VOUCHER | 10/18/00 | 1,802.44 | 0.00 | 0.00 | 0.00 | 1,802.44 | 184 |
| VCH045565 | 38546 | VOUCHER | 12/5/00 | 7,898.03 | 0.00 | 0.00 | 0.00 | 7,898.03 | 136 |
| VCH045567 | 38984 | VOUCHER | 12/18/00 | 775.53 | 0.00 | 0.00 | 0.00 | 775.53 | 123 |
| VCH045569 | 38923 | VOUCHER | 12/12/00 | 728.22 | 0.00 | 0.00 | 0.00 | 728.22 | 129 |
| VCH045576 | 39241 | VOUCHER | 2/12/01 | 1,565.97 | 0.00 | 0.00 | 1,565.97 | 0.00 | 67 |
| VCH045690 | 39191 | VOUCHER | 2/5/01 | 563.40 | 0.00 | 0.00 | 563.40 | 0.00 | 74 |
| VCH046060 | 038646 | VOUCHER | 2/8/01 | 7,085.55 | 0.00 | 0.00 | 7,085.55 | 0.00 | 71 |
| Vendor : Corporate I Home US | | | Totals: | 48,856.29 | 0.00 | 0.00 | 9,214.92 | 39,441.37 | |
| | | | | | | | | | |
| **Vendor : Cort Furni** Cort Furniture | | | | | | | | | |
| VCH045989 | 16-235656 | VOUCHER | 2/2/01 | 162.38 | 0.00 | 0.00 | 162.38 | 0.00 | 77 |
| VCH047607 | 16-255930 | VOUCHER | 4/3/01 | 162.38 | 162.38 | 0.00 | 0.00 | 0.00 | 17 |
| VCH047731 | 245461 | VOUCHER | 3/3/01 | 162.38 | 0.00 | 162.38 | 0.00 | 0.00 | 48 |
| Vendor : Cort Furni Home US | | | Totals: | 487.14 | 162.38 | 162.38 | 162.38 | 0.00 | |
| | | | | | | | | | |
| **Vendor : County Recor** County Recorder, | | | | | | | | | |
| DISB015157 | DB000387 | DB.MEMO | | (11.00) | 0.00 | 0.00 | 0.00 | (11.00) | |
| Vendor : County RecHome US | | | Totals: | (11.00) | 0.00 | 0.00 | 0.00 | (11.00) | |
| | | | | | | | | | |
| **Vendor : Crawford Sui** Crawford Suite | | | | | | | | | |
| VCH046731 | 105957/Quin | VOUCHER | 2/9/01 | 4,570.67 | 0.00 | 0.00 | 4,570.67 | 0.00 | 70 |
| Vendor : Crawford S Home US | | | Totals: | 4,570.67 | 0.00 | 0.00 | 4,570.67 | 0.00 | |

**B - 203**

**86**

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
**Summary Style, As of 04/20/2001**
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: default | | Default Branch Code | | | - Continued... | | | | |
| Vendor : Crowe & Sons | | Crowe & Sons Electrical Corp. | | | | | | | |
| VCH045881 | 61953 | VOUCHER | 2/1/01 | 156.95 | 0.00 | 0.00 | 156.95 | 0.00 | 78 |
| Vendor : Crowe & Sc Home  US | | | Totals: | 156.95 | 0.00 | 0.00 | 156.95 | 0.00 | |
| Vendor : CT Corpora | | CT Corporation System | | | | | | | |
| VCH044590 | 0083494788-01 | VOUCHER | 1/17/01 | 1,842.50 | 0.00 | 0.00 | 0.00 | 1,842.50 | 93 |
| Vendor : CT Corpora Home  US | | | Totals: | 1,842.50 | 0.00 | 0.00 | 0.00 | 1,842.50 | |
| Vendor : Cybernet Mar | | Cybernet Marketing | | | | | | | |
| VCH045870 | CM/01/02-53 | VOUCHER | 2/5/01 | 8,640.00 | 0.00 | 0.00 | 8,640.00 | 0.00 | 74 |
| Vendor : Cybernet M Home  US | | | Totals: | 8,640.00 | 0.00 | 0.00 | 8,640.00 | 0.00 | |
| Vendor : Data-com | | Data Com Cable, Inc | | | | | | | |
| VCH046061 | N28414 | VOUCHER | 1/30/01 | 7,755.00 | 0.00 | 0.00 | 7,755.00 | 0.00 | 80 |
| Vendor : Data-com  Home  US | | | Totals: | 7,755.00 | 0.00 | 0.00 | 7,755.00 | 0.00 | |
| Vendor : Datasafe | | Datasafe | | | | | | | |
| VCH045995 | 607980201 | VOUCHER | 1/31/01 | 114.24 | 0.00 | 0.00 | 114.24 | 0.00 | 79 |
| VCH046658 | 6079803001 | VOUCHER | 2/28/01 | 94.62 | 0.00 | 94.62 | 0.00 | 0.00 | 51 |
| VCH047739 | 6079604 | VOUCHER | 3/31/01 | 1,402.35 | 1,402.35 | 0.00 | 0.00 | 0.00 | 20 |
| Vendor : Datasafe   Home  US | | | Totals: | 1,611.21 | 1,402.35 | 94.62 | 114.24 | 0.00 | |
| Vendor : DB Incorpora | | DB Incorporated | | | | | | | |
| VCH045364 | 00017610 | VOUCHER | 1/31/01 | 24,409.30 | 0.00 | 0.00 | 24,409.30 | 0.00 | 79 |
| VCH046325 | 00017652 | VOUCHER | 2/21/01 | 400.00 | 0.00 | 400.00 | 0.00 | 0.00 | 58 |
| Vendor : DB Incorpo Home  US | | | Totals: | 24,809.30 | 0.00 | 400.00 | 24,409.30 | 0.00 | |
| Vendor : Deerfield | | Derrfield Commons I | | | | | | | |
| VCH048128 | Appl. #4 | VOUCHER | 12/21/00 | 12,197.00 | 0.00 | 0.00 | 0.00 | 12,197.00 | 120 |
| Vendor : Deerfield   Home  US | | | Totals: | 12,197.00 | 0.00 | 0.00 | 0.00 | 12,197.00 | |
| Vendor : Delaware01 | | Delaware Secretary of State | | | | | | | |
| VCH047898 | 2232852 | VOUCHER | 4/19/01 | 37,555.11 | 37,555.11 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : Delaware01 Home  US | | | Totals: | 37,555.11 | 37,555.11 | 0.00 | 0.00 | 0.00 | |
| Vendor : Denicas Pas | | Denicas Pastry Cafe | | | | | | | |
| VCH045106 | Feb 2 | VOUCHER | 2/2/01 | 55.89 | 0.00 | 0.00 | 55.89 | 0.00 | 77 |
| VCH045107 | 138 | VOUCHER | 1/31/01 | 103.00 | 0.00 | 0.00 | 103.00 | 0.00 | 79 |
| VCH045108 | JAN 30 | VOUCHER | 1/30/01 | 70.96 | 0.00 | 0.00 | 70.96 | 0.00 | 80 |
| VCH045109 | 570600 | VOUCHER | 1/26/01 | 79.56 | 0.00 | 0.00 | 79.56 | 0.00 | 84 |
| VCH046549 | 137 | VOUCHER | 2/9/01 | 84.37 | 0.00 | 0.00 | 84.37 | 0.00 | 70 |
| Vendor : Denicas Pa Home  US | | | Totals: | 393.78 | 0.00 | 0.00 | 393.78 | 0.00 | |
| Vendor : Dialogic Cor | | Dialogic Corporation | | | | | | | |
| VCH045117 | 699877 | VOUCHER | 1/23/01 | 9,511.00 | 0.00 | 0.00 | 9,511.00 | 0.00 | 87 |

**B - 204**

000070

## Aged Payables By: Branch Code/Vendor Code
### Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | | Default Branch Code | | - Continued... | | | | | |
| **Vendor :** Dialogic Cor | | | | - Continued... | | | | | |
| Dialogic Corporation | | | | | | | | | |
| VCH045382 | 698620 | VOUCHER | 1/9/01 | 4,994.50 | 0.00 | 0.00 | 0.00 | 4,994.50 | 101 |
| VCH045383 | 699048 | VOUCHER | 1/15/01 | 9.00 | 0.00 | 0.00 | 0.00 | 9.00 | 95 |
| VCH045727 | 701191 | VOUCHER | 2/7/01 | 4,760.00 | 0.00 | 0.00 | 4,760.00 | 0.00 | 72 |
| **Vendor :** Dialogic Co Home US | | | **Totals:** | 19,274.50 | 0.00 | 0.00 | 14,271.00 | 5,003.50 | |
| **Vendor :** DSL Net | | | | | | | | | |
| DSL_Net, Inc | | | | | | | | | |
| VCH045981 | 36741 | VOUCHER | 1/23/01 | 349.00 | 0.00 | 0.00 | 349.00 | 0.00 | 87 |
| **Vendor :** DSL Net Home US | | | **Totals:** | 349.00 | 0.00 | 0.00 | 349.00 | 0.00 | |
| **Vendor :** Dun & Brad | | | | | | | | | |
| Dun & Bradstreet | | | | | | | | | |
| VCH045876 | 4300075-020201 | VOUCHER | 2/5/01 | 1,790.00 | 0.00 | 0.00 | 1,790.00 | 0.00 | 74 |
| VCH045935 | 4154191-01 | VOUCHER | 1/31/01 | 91.60 | 0.00 | 0.00 | 91.60 | 0.00 | 79 |
| **Vendor :** Dun & Brad Home US | | | **Totals:** | 1,881.60 | 0.00 | 0.00 | 1,881.60 | 0.00 | |
| **Vendor :** E*Trade | | | | | | | | | |
| E*Trade Business Solutions | | | | | | | | | |
| VCH047650 | 307414 | VOUCHER | 1/26/01 | 2,091.49 | 0.00 | 0.00 | 2,091.49 | 0.00 | 84 |
| **Vendor :** E*Trade Home US | | | **Totals:** | 2,091.49 | 0.00 | 0.00 | 2,091.49 | 0.00 | |
| **Vendor :** EM Publishin | | | | | | | | | |
| EM Publishing Enterprises, Inc | | | | | | | | | |
| VCH047684 | 40686 | VOUCHER | 3/6/01 | 1,475.00 | 0.00 | 1,475.00 | 0.00 | 0.00 | 45 |
| **Vendor :** EM Publish Home US | | | **Totals:** | 1,475.00 | 0.00 | 1,475.00 | 0.00 | 0.00 | |
| **Vendor :** Ensemble Con | | | | | | | | | |
| Ensemble Consulting | | | | | | | | | |
| VCH045367 | QU11200c | VOUCHER | 12/21/00 | 9,900.00 | 0.00 | 0.00 | 0.00 | 9,900.00 | 120 |
| VCH045368 | QU10101c | VOUCHER | 1/31/01 | 550.00 | 0.00 | 0.00 | 550.00 | 0.00 | 79 |
| VCH045369 | QU11200b | VOUCHER | 12/21/00 | 10,000.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 120 |
| VCH045579 | QU10201b | VOUCHER | 2/12/01 | 10,000.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 67 |
| VCH045580 | QU10201c | VOUCHER | 2/12/01 | 9,900.00 | 0.00 | 0.00 | 9,900.00 | 0.00 | 67 |
| VCH045582 | Qu10201d | VOUCHER | 2/12/01 | 3,000.00 | 0.00 | 0.00 | 3,000.00 | 0.00 | 67 |
| VCH045583 | QU10201e | VOUCHER | 2/12/01 | 6,000.00 | 0.00 | 0.00 | 6,000.00 | 0.00 | 67 |
| VCH045584 | QU10201f | VOUCHER | 2/12/01 | 3,750.00 | 0.00 | 0.00 | 3,750.00 | 0.00 | 67 |
| VCH045585 | QU10201g | VOUCHER | 2/12/01 | 5,000.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 67 |
| VCH045586 | QU10301a | VOUCHER | 2/28/01 | 7,500.00 | 0.00 | 7,500.00 | 0.00 | 0.00 | 51 |
| VCH045587 | QU10301b | VOUCHER | 2/28/01 | 5,000.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 51 |
| VCH045588 | QU10301c | VOUCHER | 2/28/01 | 2,500.00 | 0.00 | 2,500.00 | 0.00 | 0.00 | 51 |
| VCH046257 | Qu0101e | VOUCHER | 1/31/01 | 437.69 | 0.00 | 0.00 | 437.69 | 0.00 | 79 |
| VCH046258 | Qu10101b | VOUCHER | 1/31/01 | 4,900.00 | 0.00 | 0.00 | 4,900.00 | 0.00 | 79 |
| VCH046259 | Qu10201a | VOUCHER | 2/1/01 | 5,000.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 78 |
| VCH046260 | Qu10101d | VOUCHER | 1/31/01 | 593.75 | 0.00 | 0.00 | 593.75 | 0.00 | 79 |
| VCH047645 | QU1021h | VOUCHER | 2/17/01 | 1,209.70 | 0.00 | 0.00 | 1,209.70 | 0.00 | 62 |
| VCH047646 | QU102001a | VOUCHER | 1/1/01 | 4,000.00 | 0.00 | 0.00 | 0.00 | 4,000.00 | 109 |
| VCH047647 | QU11200f | VOUCHER | 12/31/00 | 3,840.00 | 0.00 | 0.00 | 0.00 | 3,840.00 | 110 |
| **Vendor :** Ensemble ( Home US | | | **Totals:** | 93,081.14 | 0.00 | 15,000.00 | 50,341.14 | 27,740.00 | |
| **Vendor :** Epicor Softw | | | | | | | | | |
| Epicor Software Corp. | | | | | | | | | |
| VCH045366 | CS18684 | VOUCHER | 1/25/01 | 1,847.25 | 0.00 | 0.00 | 1,847.25 | 0.00 | 85 |
| VCH046712 | CS19833 | VOUCHER | 2/27/01 | 2,022.85 | 0.00 | 2,022.85 | 0.00 | 0.00 | 52 |
| **Vendor :** Epicor SoftHome US | | | **Totals:** | 3,870.10 | 0.00 | 2,022.85 | 1,847.25 | 0.00 | |
| **Vendor :** EpicorSoftIr | | | | | | | | | |
| Epicor Software Corp. | | | | | | | | | |

B - 205

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
**Summary Style, As of 04/20/2001**
**Include Future Trxs: No    Include Trxs Paid in Full: No**

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | **default** | Default Branch Code | | | - Continued... | | | | |
| **Vendor:** | **EpicorSoftr** | Epicor Software Corp. | | | - Continued... | | | | |
| VCH045826 | IV0010889 | VOUCHER | 11/28/00 | 20,000.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 143 |
| VCH045830 | IV0010890 | VOUCHER | 11/28/00 | 4,500.00 | 0.00 | 0.00 | 0.00 | 4,500.00 | 143 |
| | Vendor: EpicorSoftr | Home US | Totals: | 24,500.00 | 0.00 | 0.00 | 0.00 | 24,500.00 | |
| | **Vendor: Ernst & Yo** | Ernst & Young LLP | | | | | | | |
| VCH046342 | 17786 | VOUCHER | 1/24/01 | 235.46 | 0.00 | 0.00 | 235.46 | 0.00 | 86 |
| | Vendor: Ernst & Yo | Home US | Totals: | 235.46 | 0.00 | 0.00 | 235.46 | 0.00 | |
| | **Vendor: Exodus Comm** | Exodus Communications, Inc | | | | | | | |
| VCH046069 | 152554 | VOUCHER | 12/8/00 | 14,032.76 | 0.00 | 0.00 | 0.00 | 14,032.76 | 133 |
| VCH046078 | 146397 | VOUCHER | 11/29/00 | 826.28 | 0.00 | 0.00 | 0.00 | 826.28 | 142 |
| VCH046080 | 146233 | VOUCHER | 11/29/00 | 53.30 | 0.00 | 0.00 | 0.00 | 53.30 | 142 |
| VCH046082 | 146609 | VOUCHER | 11/29/00 | 826.28 | 0.00 | 0.00 | 0.00 | 826.28 | 142 |
| VCH046084 | 162131 | VOUCHER | 1/11/01 | 14,032.76 | 0.00 | 0.00 | 0.00 | 14,032.76 | 99 |
| VCH046339 | 171102 | VOUCHER | 2/13/01 | 14,032.76 | 0.00 | 0.00 | 14,032.76 | 0.00 | 66 |
| | Vendor: Exodus Co | Home US | Totals: | 43,804.14 | 0.00 | 0.00 | 14,032.76 | 29,771.38 | |
| | **Vendor: Extraprise** | Extraprise Group, Inc | | | | | | | |
| 44282 | 125283 | VOUCHER | 12/26/00 | 86,333.34 | 0.00 | 0.00 | 0.00 | 86,333.34 | 115 |
| 45412 | 125438 | VOUCHER | 1/31/01 | 90.00 | 0.00 | 0.00 | 90.00 | 0.00 | 79 |
| VCH046849 | 125548 | VOUCHER | 2/23/01 | 375.66 | 0.00 | 375.66 | 0.00 | 0.00 | 56 |
| | Vendor: Extraprise | Home US | Totals: | 86,799.00 | 0.00 | 375.66 | 90.00 | 86,333.34 | |
| | **Vendor: Federal Ex** | Federal Express | | | | | | | |
| VCH045861 | 937225392 | VOUCHER | 2/16/01 | 69.90 | 0.00 | 0.00 | 69.90 | 0.00 | 63 |
| VCH045863 | 237225393 | VOUCHER | 2/16/01 | 34.32 | 0.00 | 0.00 | 34.32 | 0.00 | 63 |
| VCH045939 | 710905529 | VOUCHER | 2/13/01 | 741.09 | 0.00 | 0.00 | 741.09 | 0.00 | 66 |
| VCH045940 | 710896288 | VOUCHER | 2/12/01 | 12.54 | 0.00 | 0.00 | 12.54 | 0.00 | 66 |
| VCH045941 | 573271744 | VOUCHER | 2/15/01 | 29.83 | 0.00 | 0.00 | 29.83 | 0.00 | 64 |
| VCH045942 | 572274458 | VOUCHER | 2/16/01 | 129.45 | 0.00 | 0.00 | 129.45 | 0.00 | 63 |
| VCH045943 | 573236594 | VOUCHER | 2/9/01 | 8.66 | 0.00 | 0.00 | 8.66 | 0.00 | 70 |
| VCH045944 | 237225394 | VOUCHER | 2/20/01 | 230.77 | 0.00 | 230.77 | 0.00 | 0.00 | 59 |
| VCH045945 | 937225396 | VOUCHER | 2/21/01 | 385.37 | 0.00 | 385.37 | 0.00 | 0.00 | 58 |
| VCH045946 | 237225397 | VOUCHER | 2/21/01 | 32.95 | 0.00 | 32.95 | 0.00 | 0.00 | 58 |
| VCH046095 | 501923008 | VOUCHER | 2/7/01 | 24.30 | 0.00 | 0.00 | 24.30 | 0.00 | 72 |
| VCH046096 | 710796335 | VOUCHER | 1/29/01 | 1,101.14 | 0.00 | 0.00 | 1,101.14 | 0.00 | 81 |
| VCH046097 | 710836230 | VOUCHER | 2/2/01 | 41.88 | 0.00 | 0.00 | 41.88 | 0.00 | 77 |
| VCH046098 | 710807365 | VOUCHER | 1/30/01 | 24.08 | 0.00 | 0.00 | 24.08 | 0.00 | 80 |
| VCH046099 | 573206793 | VOUCHER | 2/2/01 | 433.60 | 0.00 | 0.00 | 433.60 | 0.00 | 77 |
| VCH046104 | 573234382 | VOUCHER | 2/9/01 | 410.02 | 0.00 | 0.00 | 410.02 | 0.00 | 70 |
| VCH046109 | 572244092 | VOUCHER | 2/2/01 | 149.45 | 0.00 | 0.00 | 149.45 | 0.00 | 77 |
| VCH046114 | 573241336 | VOUCHER | 2/8/01 | 57.74 | 0.00 | 0.00 | 57.74 | 0.00 | 71 |
| VCH046122 | 573217181 | VOUCHER | 2/1/01 | 188.52 | 0.00 | 0.00 | 188.52 | 0.00 | 78 |
| VCH046123 | 572215557 | VOUCHER | 2/2/01 | 196.81 | 0.00 | 0.00 | 196.81 | 0.00 | 77 |
| VCH046266 | 553702172 | VOUCHER | 7/26/00 | 1,077.93 | 0.00 | 0.00 | 0.00 | 1,077.93 | 266 |
| VCH046267 | 574278671 | VOUCHER | 2/23/01 | 9.76 | 0.00 | 9.76 | 0.00 | 0.00 | 56 |
| VCH046268 | 572305650 | VOUCHER | 2/23/01 | 137.02 | 0.00 | 137.02 | 0.00 | 0.00 | 56 |
| VCH046269 | 573265256 | VOUCHER | 2/16/01 | 313.36 | 0.00 | 0.00 | 313.36 | 0.00 | 56 |
| 46270 | 573271094 | VOUCHER | 2/16/01 | 21.46 | 0.00 | 0.00 | 21.46 | 0.00 | 63 |
| 46271 | 710936761 | VOUCHER | 2/16/01 | 4,613.11 | 0.00 | 0.00 | 4,613.11 | 0.00 | 63 |
| VCH046272 | 710964509 | VOUCHER | 2/21/01 | 23.00 | 0.00 | 23.00 | 0.00 | 0.00 | 58 |
| VCH046273 | 573301873 | VOUCHER | 2/22/01 | 31.30 | 0.00 | 31.30 | 0.00 | 0.00 | 57 |
| VCH046347 | 937225391 | VOUCHER | 2/15/01 | 116.42 | 0.00 | 0.00 | 116.42 | 0.00 | 64 |
| VCH046349 | 237225390 | VOUCHER | 2/14/01 | 21.84 | 0.00 | 0.00 | 21.84 | 0.00 | 65 |
| VCH046350 | 937225389 | VOUCHER | 2/14/01 | 95.89 | 0.00 | 0.00 | 95.89 | 0.00 | 65 |
| VCH046351 | 937225388 | VOUCHER | 2/13/01 | 247.81 | 0.00 | 0.00 | 247.81 | 0.00 | 66 |
| VCH046657 | 573296324 | VOUCHER | 2/23/01 | 460.48 | 0.00 | 460.48 | 0.00 | 0.00 | 56 |

**B - 206**

000072

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 16

| A...TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | **Default Branch Code** | | | - Continued... | | | | |
| **Vendor :** | Federal Ex | | | | - Continued... | | | | |
| | Federal Express | | | | | | | | |
| VCH046659 | 937225398 | VOUCHER | 2/22/01 | 158.14 | 0.00 | 158.14 | 0.00 | 0.00 | 57 |
| VCH046660 | 237225399 | VOUCHER | 2/20/01 | 431.54 | 0.00 | 431.54 | 0.00 | 0.00 | 57 |
| VCH046690 | 572336265 | VOUCHER | 3/2/01 | 254.00 | 0.00 | 254.00 | 0.00 | 0.00 | 49 |
| VCH046693 | 710915712 | VOUCHER | 2/14/01 | 19.20 | 0.00 | 0.00 | 19.20 | 0.00 | 65 |
| VCH046694 | 573327224 | VOUCHER | 3/2/01 | 389.21 | 0.00 | 389.21 | 0.00 | 0.00 | 49 |
| VCH048716 | 237225385. | VOUCHER | 2/9/01 | 347.65 | 0.00 | 0.00 | 347.65 | 0.00 | 70 |
| VCH046717 | 937225384. | VOUCHER | 2/9/01 | 264.31 | 0.00 | 0.00 | 264.31 | 0.00 | 70 |
| VCH046719 | 937225382. | VOUCHER | 2/8/01 | 271.00 | 0.00 | 0.00 | 271.00 | 0.00 | 71 |
| VCH046722 | 937225383 | VOUCHER | 2/8/01 | 642.87 | 0.00 | 0.00 | 642.87 | 0.00 | 71 |
| VCH046726 | 237225387. | VOUCHER | 2/12/01 | 55.12 | 0.00 | 0.00 | 55.12 | 0.00 | 67 |
| VCH046727 | 937225386. | VOUCHER | 2/12/01 | 204.48 | 0.00 | 0.00 | 204.48 | 0.00 | 67 |
| VCH047284 | 711092906 | VOUCHER | 3/13/01 | 4,569.02 | 0.00 | 4,569.02 | 0.00 | 0.00 | 38 |
| VCH047362 | 710925519 | VOUCHER | 2/15/01 | 57.46 | 0.00 | 0.00 | 57.46 | 0.00 | 64 |
| VCH047551 | 937225455. | VOUCHER | 4/4/01 | 156.16 | 156.16 | 0.00 | 0.00 | 0.00 | 16 |
| VCH047594 | 237225457 | VOUCHER | 4/16/01 | 78.53 | 78.53 | 0.00 | 0.00 | 0.00 | 4 |
| VCH047595 | 937225456. | VOUCHER | 4/16/01 | 289.59 | 289.59 | 0.00 | 0.00 | 0.00 | 4 |
| VCH047655 | 573332848 | VOUCHER | 3/1/01 | 57.08 | 0.00 | 57.08 | 0.00 | 0.00 | 50 |
| VCH047656 | 572343884 | VOUCHER | 3/2/01 | 13.52 | 0.00 | 13.52 | 0.00 | 0.00 | 49 |
| VCH047678 | 237225462. | VOUCHER | 4/18/01 | 93.35 | 93.35 | 0.00 | 0.00 | 0.00 | 2 |
| VCH047679 | 937225461. | VOUCHER | 4/18/01 | 38.30 | 38.30 | 0.00 | 0.00 | 0.00 | 2 |
| VCH047682 | 937225442. | VOUCHER | 4/5/01 | 224.07 | 224.07 | 0.00 | 0.00 | 0.00 | 15 |
| VCH047687 | 937225459 | VOUCHER | 4/17/01 | 37.34 | 37.34 | 0.00 | 0.00 | 0.00 | 3 |
| VCH047688 | 237225460 | VOUCHER | 4/17/01 | 54.40 | 54.40 | 0.00 | 0.00 | 0.00 | 3 |
| VCH047729 | 937225454 | VOUCHER | 4/12/01 | 123.99 | 123.99 | 0.00 | 0.00 | 0.00 | 8 |
| **Vendor :** Federal Ex Home  US | | | **Totals:** | 20,302.13 | 1,095.73 | 7,183.16 | 10,945.31 | 1,077.93 | |
| **Vendor :** Federal Wage | | | | | | | | | |
| | Federal Wage and Labor | | | | | | | | |
| VCH046087 | 79160 | VOUCHER | 1/23/01 | 66.35 | 0.00 | 0.00 | 66.35 | 0.00 | 87 |
| **Vendor :** Federal Wa Home  US | | | **Totals:** | 66.35 | 0.00 | 0.00 | 66.35 | 0.00 | |
| **Vendor :** FedEX/IL | | | | | | | | | |
| | FedEx Ground | | | | | | | | |
| DISB034725 | fedxground | CASHDISB | | (0.29) | 0.00 | 0.00 | 0.00 | (0.29) | |
| VCH045887 | 38175831 | VOUCHER | 1/26/01 | 110.63 | 0.00 | 0.00 | 110.63 | 0.00 | 84 |
| **Vendor :** FedEX/IL  Home  US | | | **Totals:** | 110.34 | 0.00 | 0.00 | 110.63 | (0.29) | |
| **Vendor :** FilterFresh | | | | | | | | | |
| | FilterFresh Cambridge | | | | | | | | |
| DISB021221 | DB000597 | DB.MEMO | | (39.50) | 0.00 | 0.00 | 0.00 | (39.50) | |
| **Vendor :** FilterFresh Home  US | | | **Totals:** | (39.50) | 0.00 | 0.00 | 0.00 | (39.50) | |
| **Vendor :** First Choice | | | | | | | | | |
| | First Choice Vending Company | | | | | | | | |
| VCH045427 | 00002 | VOUCHER | 2/5/01 | 5,456.19 | 0.00 | 0.00 | 5,456.19 | 0.00 | 74 |
| **Vendor :** First Choic Home  US | | | **Totals:** | 5,456.19 | 0.00 | 0.00 | 5,456.19 | 0.00 | |
| **Vendor :** FitzGeraldCo | | | | | | | | | |
| | FitzGerald Communication, Inc | | | | | | | | |
| VCH047843 | 127121 | VOUCHER | 3/31/01 | 9,097.63 | 9,097.63 | 0.00 | 0.00 | 0.00 | 20 |
| **Vendor :** FitzGeraldC Home  US | | | **Totals:** | 9,097.63 | 9,097.63 | 0.00 | 0.00 | 0.00 | |
| **Vendor :** Florida De | | | | | | | | | |
| | Florida Department of Revenue | | | | | | | | |
| VCH047681 | Mar01 | VOUCHER | 4/18/01 | 2,125.95 | 2,125.95 | 0.00 | 0.00 | 0.00 | 1 |
| **Vendor :** Florida De  Home  US | | | **Totals:** | 2,125.95 | 2,125.95 | 0.00 | 0.00 | 0.00 | |

**B - 207**

90

000073

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| 'TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Franchise Ta | Franchise Tax Board | | | | | | | |
| DISB015628 | DB000414 | DB.MEMO | | (554.18) | 0.00 | 0.00 | 0.00 | (554.18) | |
| Vendor : | Franchise T | Home US | Totals: | (554.18) | 0.00 | 0.00 | 0.00 | (554.18) | |
| Vendor : | Freedom Tech | Freedom Tecnology Media Group | | | | | | | |
| VCH044852 | ECRM05224 | VOUCHER | 12/18/00 | 20,114.00 | 0.00 | 0.00 | 0.00 | 20,114.00 | 123 |
| VCH044853 | DCRM04582 | VOUCHER | 9/29/00 | 9,000.00 | 0.00 | 0.00 | 0.00 | 9,000.00 | 203 |
| VCH045728 | dcrm05111 | VOUCHER | 11/30/00 | 9,500.00 | 0.00 | 0.00 | 0.00 | 9,500.00 | 141 |
| Vendor : | Freedom Tc | Home US | Totals: | 38,614.00 | 0.00 | 0.00 | 0.00 | 38,614.00 | |
| Vendor : | Front Line S | Front Line S | | | | | | | |
| VCH046091 | 1190 | VOUCHER | 12/26/01 | 22,000.00 | 22,000.00 | 0.00 | 0.00 | 0.00 | (252) |
| Vendor : | Front Line S | Home US | Totals: | 22,000.00 | 22,000.00 | 0.00 | 0.00 | 0.00 | |
| Vendor : | Fulcrum Te | Fulcrum Technologies Corp | | | | | | | |
| DISB015604 | DB000388 | DB.MEMO | | (4,125.00) | 0.00 | 0.00 | 0.00 | (4,125.00) | |
| Vendor : | Fulcrum Te | Home US | Totals: | (4,125.00) | 0.00 | 0.00 | 0.00 | (4,125.00) | |
| Vendor : | g.neil | g.neil Direct Mail Inc | | | | | | | |
| VCH046125 | 5509624 | VOUCHER | 12/14/00 | 42.99 | 0.00 | 0.00 | 0.00 | 42.99 | 127 |
| Vendor : | g.neil | Home US | Totals: | 42.99 | 0.00 | 0.00 | 0.00 | 42.99 | |
| Vendor : | Gartner Gr | Gartner Group Inc. | | | | | | | |
| VCH043749 | 379386 | VOUCHER | 12/19/00 | 10,237.50 | 0.00 | 0.00 | 0.00 | 10,237.50 | 122 |
| Vendor : | Gartner Gr | Home US | Totals: | 10,237.50 | 0.00 | 0.00 | 0.00 | 10,237.50 | |
| Vendor : | GE Capit | GE Capital Business Finance | | | | | | | |
| VCH045335 | 669993 | VOUCHER | 1/27/01 | 1,940.26 | 0.00 | 0.00 | 1,940.26 | 0.00 | 83 |
| Vendor : | GE Capit | Home US | Totals: | 1,940.26 | 0.00 | 0.00 | 1,940.26 | 0.00 | |
| Vendor : | Golden State | Golden State Communications | | | | | | | |
| VCH044619 | 23450 | VOUCHER | 1/10/01 | 1,197.29 | 0.00 | 0.00 | 0.00 | 1,197.29 | 100 |
| VCH045937 | 00024395 | VOUCHER | 2/12/01 | 197.99 | 0.00 | 0.00 | 197.99 | 0.00 | 67 |
| VCH045958 | 00022832 | VOUCHER | 12/12/00 | 86.48 | 86.48 | 0.00 | 0.00 | 0.00 | (236) |
| Vendor : | Golden Stat | Home US | Totals: | 1,481.76 | 86.48 | 0.00 | 197.99 | 1,197.29 | |
| Vendor : | Greenan, Pef | Greenan, Peffer, Sallander & Lally LLP | | | | | | | |
| VCH045802 | EEOC Complain | VOUCHER | 2/9/01 | 0.26 | 0.00 | 0.00 | 0.26 | 0.00 | 70 |
| Vendor : | Greenan, Pi | Home US | Totals: | 0.26 | 0.00 | 0.00 | 0.26 | 0.00 | |
| Vendor : | Greenblatt | Paul Greenblatt | | | | | | | |
| VCH047725 | w/e 4/14/01 | VOUCHER | 4/13/01 | 1,710.00 | 1,710.00 | 0.00 | 0.00 | 0.00 | 7 |
| Vendor : | Greenblatt | Home US | Totals: | 1,710.00 | 1,710.00 | 0.00 | 0.00 | 0.00 | |

**B - 208**

000074

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Group Bigate | Group Bigates, Inc | | | | | | | |
| VCH046979 | Q-0102 | VOUCHER | 2/15/01 | 76,747.48 | 0.00 | 0.00 | 76,747.48 | 0.00 | 64 |
| VCH047200 | Q-0103 | VOUCHER | 3/15/01 | 89,494.38 | 0.00 | 89,494.38 | 0.00 | 0.00 | 36 |
| Vendor : | Group Biga Home US | | Totals: | 166,241.86 | 0.00 | 89,494.38 | 76,747.48 | 0.00 | |
| Vendor : | GTSI Corp | GTSI Corp | | | | | | | |
| VCH045952 | 110000082 | VOUCHER | 11/30/00 | 22,000.00 | 0.00 | 0.00 | 0.00 | 22,000.00 | 141 |
| VCH045954 | 110000083 | VOUCHER | 11/30/00 | 22,000.00 | 0.00 | 0.00 | 0.00 | 22,000.00 | 141 |
| Vendor : | GTSI Corp Home US | | Totals: | 44,000.00 | 0.00 | 0.00 | 0.00 | 44,000.00 | |
| Vendor : | Hall Kinlon | Hall Kinlon | | | | | | | |
| VCH042982 | 153544 | VOUCHER | 12/28/00 | 2,950.00 | 0.00 | 0.00 | 0.00 | 2,950.00 | 113 |
| VCH043023 | 154229 | VOUCHER | 12/28/00 | 5,034.80 | 0.00 | 0.00 | 0.00 | 5,034.80 | 113 |
| VCH043024 | 153793 | VOUCHER | 12/28/00 | 3,160.00 | 0.00 | 0.00 | 0.00 | 3,160.00 | 113 |
| VCH043032 | 151704 | VOUCHER | 12/20/00 | 3,258.75 | 0.00 | 0.00 | 0.00 | 3,258.75 | 121 |
| VCH043035 | 152427 | VOUCHER | 12/20/00 | 1,240.00 | 0.00 | 0.00 | 0.00 | 1,240.00 | 121 |
| VCH043055 | 152160 | VOUCHER | 12/20/00 | 2,950.00 | 0.00 | 0.00 | 0.00 | 2,950.00 | 121 |
| VCH043882 | 151735 | VOUCHER | 12/20/00 | 4,027.84 | 0.00 | 0.00 | 0.00 | 4,027.84 | 121 |
| VCH043884 | 152214 | VOUCHER | 12/20/00 | 4,445.06 | 0.00 | 0.00 | 0.00 | 4,445.06 | 121 |
| VCH044131 | 156488 | VOUCHER | 1/10/01 | 2,350.00 | 0.00 | 0.00 | 0.00 | 2,350.00 | 100 |
| VCH044132 | 157582 | VOUCHER | 1/12/01 | 105.74 | 0.00 | 0.00 | 0.00 | 105.74 | 98 |
| VCH044437 | 153806 | VOUCHER | 12/28/00 | 3,708.94 | 0.00 | 0.00 | 0.00 | 3,708.94 | 113 |
| VCH045395 | 159564 | VOUCHER | 1/24/01 | 1,900.00 | 0.00 | 0.00 | 1,900.00 | 0.00 | 86 |
| VCH045396 | 158029 | VOUCHER | 1/17/01 | 2,800.00 | 0.00 | 0.00 | 0.00 | 2,800.00 | 93 |
| VCH045397 | 161086 | VOUCHER | 1/31/01 | 2,700.00 | 0.00 | 0.00 | 2,700.00 | 0.00 | 79 |
| VCH045848 | 146821 | VOUCHER | 11/30/00 | 2,689.69 | 0.00 | 0.00 | 0.00 | 2,689.69 | 141 |
| VCH045649 | 148110 | VOUCHER | 12/1/00 | 45.07 | 0.00 | 0.00 | 0.00 | 45.07 | 140 |
| VCH045650 | 148112 | VOUCHER | 12/1/00 | 104.32 | 0.00 | 0.00 | 0.00 | 104.32 | 140 |
| VCH045651 | 148115 | VOUCHER | 12/1/00 | 5,022.80 | 0.00 | 0.00 | 0.00 | 5,022.80 | 140 |
| VCH045652 | 150005 | VOUCHER | 12/13/00 | 170.36 | 0.00 | 0.00 | 0.00 | 170.36 | 128 |
| VCH045653 | 162951 | VOUCHER | 2/8/01 | 2,750.00 | 0.00 | 0.00 | 2,750.00 | 0.00 | 73 |
| VCH045655 | 163937 | VOUCHER | 2/13/01 | 8,800.00 | 0.00 | 0.00 | 8,800.00 | 0.00 | 66 |
| VCH045656 | 20010213 | VOUCHER | 2/13/01 | 2,700.00 | 0.00 | 0.00 | 2,700.00 | 0.00 | 66 |
| VCH045947 | 164547 | VOUCHER | 2/14/01 | 2,700.00 | 0.00 | 0.00 | 2,700.00 | 0.00 | 65 |
| VCH047505 | 174971 | VOUCHER | 4/4/01 | 3,280.00 | 3,280.00 | 0.00 | 0.00 | 0.00 | 16 |
| VCH047600 | 176066 | VOUCHER | 4/11/01 | 3,280.00 | 3,280.00 | 0.00 | 0.00 | 0.00 | 9 |
| Vendor : | Hall Kinlon Home US | | Totals: | 72,173.37 | 6,560.00 | 0.00 | 21,550.00 | 44,063.37 | |
| Vendor : | Hanson Pub | Hanson Publications Inc. | | | | | | | |
| VCH046544 | 193268 | VOUCHER | 1/12/01 | 263.65 | 0.00 | 0.00 | 0.00 | 263.65 | 98 |
| Vendor : | Hanson Put Home US | | Totals: | 263.65 | 0.00 | 0.00 | 0.00 | 263.65 | |
| Vendor : | Hartford Off | Hartford Office Supply | | | | | | | |
| DISB021222 | DB000598 | DB.MEMO | | (30.00) | 0.00 | 0.00 | 0.00 | (30.00) | |
| DISB021335 | DB000602 | DB.MEMO | | (8.49) | 0.00 | 0.00 | 0.00 | (8.49) | |
| VCH045377 | 985167 | VOUCHER | 1/23/01 | 473.10 | 0.00 | 0.00 | 473.10 | 0.00 | 87 |
| VCH045378 | 989438 | VOUCHER | 1/23/01 | 491.77 | 0.00 | 0.00 | 491.77 | 0.00 | 87 |
| VCH045379 | 981492 | VOUCHER | 1/30/01 | 183.23 | 0.00 | 0.00 | 183.23 | 0.00 | 80 |
| VCH045729 | 989338 | VOUCHER | 2/7/01 | 52.00 | 0.00 | 0.00 | 52.00 | 0.00 | 72 |
| VCH045736 | 985896.1 | VOUCHER | 2/5/01 | 23.09 | 0.00 | 0.00 | 23.09 | 0.00 | 74 |
| VCH045745 | 986574 | VOUCHER | 2/5/01 | 0.66 | 0.00 | 0.00 | 0.66 | 0.00 | 74 |
| VCH045747 | 991653 | VOUCHER | 2/8/01 | 23.09 | 0.00 | 0.00 | 23.09 | 0.00 | 71 |
| VCH045748 | 985895 | VOUCHER | 2/2/01 | 70.09 | 0.00 | 0.00 | 70.09 | 0.00 | 77 |
| VCH045750 | U985898 | VOUCHER | 2/2/01 | 48.81 | 0.00 | 0.00 | 48.81 | 0.00 | 77 |
| VCH045752 | U985895 | VOUCHER | 2/2/01 | 2.18 | 0.00 | 0.00 | 2.18 | 0.00 | 77 |
| VCH046655 | 110690 | VOUCHER | 2/22/01 | 510.88 | 0.00 | 510.88 | 0.00 | 0.00 | 57 |
| VCH046656 | U110690 | VOUCHER | 2/22/01 | 6.59 | 0.00 | 6.59 | 0.00 | 0.00 | 57 |

**B - 209**

Aged Payables By: Branch Code/Vendor Code
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | – Continued... | | | | |
| Vendor : Hartford Offi | Home   US | | Totals: | 1,847.00 | 0.00 | 517.47 | 1,368.02 | (38.49) | |
| | | | | | | | | | |
| Vendor : Hertzog Chri | Christine Hertzog | | | | | | | | |
| DISB009468 | DB000252 | DB.MEMO | | (540.00) | 0.00 | 0.00 | 0.00 | (540.00) | |
| Vendor : Hertzog Chri | Home   US | | Totals: | (540.00) | 0.00 | 0.00 | 0.00 | (540.00) | |
| | | | | | | | | | |
| Vendor : Hilton/IL | Hilton | | | | | | | | |
| VCH041594 | DB/MB5204000( | VOUCHER | 11/13/00 | 4,493.77 | 0.00 | 0.00 | 0.00 | 4,493.77 | 158 |
| Vendor : Hilton/IL | Home   US | | Totals: | 4,493.77 | 0.00 | 0.00 | 0.00 | 4,493.77 | |
| | | | | | | | | | |
| Vendor : Hinckley Spr | Hinckley Springs | | | | | | | | |
| VCH045133 | 970493 | VOUCHER | 1/14/00 | 57.40 | 0.00 | 0.00 | 0.00 | 57.40 | 462 |
| VCH046697 | 174139 | VOUCHER | 2/8/01 | 45.22 | 0.00 | 0.00 | 45.22 | 0.00 | 73 |
| Vendor : Hinckley Sp | Home   US | | Totals: | 102.62 | 0.00 | 0.00 | 45.22 | 57.40 | |
| | | | | | | | | | |
| Vendor : HIQ Computer | HIQ Computers | | | | | | | | |
| VCH044797 | 31772 | VOUCHER | 1/12/01 | 192.15 | 0.00 | 0.00 | 0.00 | 192.15 | 98 |
| VCH044890 | 31893 | VOUCHER | 1/23/01 | 193.50 | 0.00 | 0.00 | 193.50 | 0.00 | 87 |
| VCH045380 | 31844 | VOUCHER | 1/16/01 | 364.88 | 0.00 | 0.00 | 364.88 | 0.00 | 94 |
| VCH045754 | 32212 | VOUCHER | 2/7/01 | 84.00 | 0.00 | 0.00 | 0.00 | 364.88 | 94 |
| VCH045755 | 32217 | VOUCHER | 2/8/01 | 467.25 | 0.00 | 0.00 | 84.00 | 0.00 | 72 |
| VCH046552 | 32435 | VOUCHER | 2/23/01 | 296.10 | 0.00 | 0.00 | 467.25 | 0.00 | 71 |
| VCH047240 | 32327 | VOUCHER | 2/8/01 | 581.00 | 0.00 | 296.10 | 0.00 | 0.00 | 56 |
| | | | | | | 0.00 | 581.00 | 0.00 | 71 |
| Vendor : HIQ Compu | Home   US | | Totals: | 2,158.88 | 0.00 | 296.10 | 1,305.75 | 557.03 | |
| | | | | | | | | | |
| Vendor : Hopkins & Ca | Hopkins & Carley | | | | | | | | |
| VCH047286 | 60833 | VOUCHER | 2/23/01 | 268.00 | 0.00 | 268.00 | 0.00 | 0.00 | 56 |
| Vendor : Hopkins & ( | Home   US | | Totals: | 268.00 | 0.00 | 268.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| Vendor : Hosman Kelly | Kelly Hosman | | | | | | | | |
| DISB009215 | DB000247 | DB.MEMO | | (5,000.00) | 0.00 | 0.00 | 0.00 | (5,000.00) | |
| Vendor : Hosman Ke | Home   US | | Totals: | (5,000.00) | 0.00 | 0.00 | 0.00 | (5,000.00) | |
| | | | | | | | | | |
| Vendor : Hotjobs.com | Hotjobs.com | | | | | | | | |
| VCH047501 | 421212 | VOUCHER | 3/28/01 | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | 23 |
| Vendor : Hotjobs.cor | Home   US | | Totals: | 400.00 | 400.00 | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| Vendor : Howard J | Jeff Howard | | | | | | | | |
| DISB009211 | DB000243 | DB.MEMO | | (3,065.83) | 0.00 | 0.00 | 0.00 | (3,065.83) | |
| DISB009212 | DB000244 | DB.MEMO | | (315.36) | 0.00 | 0.00 | 0.00 | (315.36) | |
| DISB009213 | DB000245 | DB.MEMO | | (315.36) | 0.00 | 0.00 | 0.00 | (315.36) | |
| Vendor : Howard J | Home   US | | Totals: | (3,696.55) | 0.00 | 0.00 | 0.00 | (3,696.55) | |
| | | | | | | | | | |
| Vendor : HQ Dominion | HQ Dominion Plaza | | | | | | | | |
| VCH046348 | 274 | VOUCHER | 2/27/01 | 320.43 | 0.00 | 320.43 | 0.00 | 0.00 | 52 |
| VCH047261 | 309 | VOUCHER | 3/1/01 | 93.92 | 0.00 | 93.92 | 0.00 | 0.00 | 50 |

B - 210

000076

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| VY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | Default Branch Code | | | | - Continued... | | | | |
| Vendor : HQ DominicHome US | | Totals: | | 414.35 | 0.00 | 414.35 | 0.00 | 0.00 | |
| Vendor : HQ Global/MD | HQ Global Workplaces | | | | | | | | |
| VCH046713 | Feb 2001 Svcs. | VOUCHER | 2/27/01 | 390.00 | 0.00 | 390.00 | 0.00 | 0.00 | 52 |
| Vendor : HQ Global/I Home US | | Totals: | | 390.90 | 0.00 | 390.00 | 0.00 | 0.00 | |
| Vendor : HQ Global-NY | HQ Global Workplaces, Inc. | | | | | | | | |
| VCH046750 | pre-pet svcs. | VOUCHER | 2/28/01 | 8,757.94 | 0.00 | 8,757.94 | 0.00 | 0.00 | 51 |
| VCH047892 | May 01 Rent | VOUCHER | 4/19/01 | 19,220.17 | 19,220.17 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : HQ Global-I Home US | | Totals: | | 27,978.11 | 19,220.17 | 8,757.94 | 0.00 | 0.00 | |
| Vendor : HQGlobal/CA | HQ Global Workplaces | | | | | | | | |
| VCH046751 | pre-pet svcs. | VOUCHER | 2/28/01 | 80.26 | 0.00 | 80.26 | 0.00 | 0.00 | 51 |
| Vendor : HQGlobal/C Home US | | Totals: | | 80.26 | 0.00 | 80.26 | 0.00 | 0.00 | |
| Vendor : HQGlobal/WA | HQ Global Workplaces | | | | | | | | |
| VCH046749 | pre-pet svcs. | VOUCHER | 2/28/01 | 286.98 | 0.00 | 286.98 | 0.00 | 0.00 | 51 |
| VCH047721 | Svcs.-3/11-4/10 | VOUCHER | 4/19/01 | 162.55 | 162.55 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : HQGlobal/W Home US | | Totals: | | 449.53 | 162.55 | 286.98 | 0.00 | 0.00 | |
| Vendor : Huggins Bruc | Bruce Huggins | | | | | | | | |
| DISB020460 | DB000587 | DB.MEMO | | (240.00) | 0.00 | 0.00 | 0.00 | (240.00) | |
| Vendor : Huggins Br Home US | | Totals: | | (240.00) | 0.00 | 0.00 | 0.00 | (240.00) | |
| Vendor : Huntington G | Huntington Group | | | | | | | | |
| VCH044390 | 8270003 | VOUCHER | 8/27/00 | 11,000.00 | 0.00 | 0.00 | 0.00 | 11,000.00 | 236 |
| VCH044392 | 8270004 | VOUCHER | 8/27/00 | 13,750.00 | 0.00 | 0.00 | 0.00 | 13,750.00 | 238 |
| Vendor : Huntington Home US | | Totals: | | 24,750.00 | 0.00 | 0.00 | 0.00 | 24,750.00 | |
| Vendor : IBM Corp05 | IBM Corporation - S.F. | | | | | | | | |
| VCH046288 | QE66187 | VOUCHER | 1/1/01 | 1,146.44 | 0.00 | 0.00 | 0.00 | 1,146.44 | 109 |
| Vendor : IBM Corp05 Home US | | Totals: | | 1,146.44 | 0.00 | 0.00 | 0.00 | 1,146.44 | |
| Vendor : IKON 02 | IKON Office Solutions | | | | | | | | |
| VCH045408 | 46468 | VOUCHER | 1/26/01 | 304.59 | 0.00 | 0.00 | 304.59 | 0.00 | 84 |
| VCH046846 | 47466 | VOUCHER | 2/23/01 | 2,950.00 | 0.00 | 2,950.00 | 0.00 | 0.00 | 56 |
| VCH046847 | 47465 | VOUCHER | 2/23/01 | 327.38 | 0.00 | 327.38 | 0.00 | 0.00 | 56 |
| Vendor : IKON 02   Home US | | Totals: | | 3,581.97 | 0.00 | 3,277.38 | 304.59 | 0.00 | |
| Vendor : IKON Office | IKON Office Solutions | | | | | | | | |
| VCH045996 | OAK027612 | VOUCHER | 2/6/01 | 1,869.48 | 0.00 | 0.00 | 1,869.48 | 0.00 | 73 |
| VCH046261 | OAK027283 | VOUCHER | 1/29/01 | 1,783.96 | 0.00 | 0.00 | 1,783.96 | 0.00 | 81 |
| VCH046324 | 47182 | VOUCHER | 2/15/01 | 249.95 | 0.00 | 0.00 | 249.95 | 0.00 | 64 |
| VCH046326 | 47322 | VOUCHER | 2/20/01 | 359.40 | 0.00 | 0.00 | 0.00 | 359.40 | 425 |
| VCH047553 | 49083 | VOUCHER | 3/28/01 | 846.60 | 846.60 | 0.00 | 0.00 | 0.00 | 23 |
| Vendor : IKON Office Home US | | Totals: | | 5,109.39 | 846.60 | 0.00 | 3,903.39 | 359.40 | |

**B - 211**

**94**

Case 1:06-cv-00769-SLR    Document 8-2    Filed 04/09/2007    Page 21 of 78

4/20/01
2:36:11PM

Aged Payables By: Branch Code/Vendor Code
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

Page 21

| PAY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | | **Default Branch Code** | | | - Continued... | | | | |
| **Vendor : Imagination** | | | | | | | | | |
| Imagination@Work | | | | | | | | | |
| VCH045110 | 1429 | VOUCHER | 1/23/01 | 4,400.00 | 0.00 | 0.00 | 4,400.00 | 0.00 | 87 |
| VCH045112 | 1427 | VOUCHER | 1/23/01 | 2,591.00 | 0.00 | 0.00 | 2,591.00 | 0.00 | 87 |
| VCH045113 | 1428 | VOUCHER | 1/23/01 | 1,018.00 | 0.00 | 0.00 | 1,018.00 | 0.00 | 87 |
| VCH045613 | 1433 | VOUCHER | 2/12/01 | 2,942.00 | 0.00 | 0.00 | 2,942.00 | 0.00 | 67 |
| **Vendor : ImaginationHome  US** | | | **Totals:** | 10,951.00 | 0.00 | 0.00 | 10,951.00 | 0.00 | |
| **Vendor : Independ/Tel** | | | | | | | | | |
| Independent Telecom | | | | | | | | | |
| VCH046126 | 1682 | VOUCHER | 12/31/00 | 630.00 | 0.00 | 0.00 | 0.00 | 630.00 | 110 |
| VCH046651 | 1559 | VOUCHER | 9/15/00 | 843.80 | 0.00 | 0.00 | 0.00 | 843.80 | 217 |
| **Vendor : Independ/TiHome  US** | | | **Totals:** | 1,473.80 | 0.00 | 0.00 | 0.00 | 1,473.80 | |
| **Vendor : InfoNet Solu** | | | | | | | | | |
| InfoNet Solutions | | | | | | | | | |
| VCH043823 | 16772 | VOUCHER | 12/8/00 | 18,471.24 | 0.00 | 0.00 | 0.00 | 18,471.24 | 133 |
| **Vendor : InfoNet SolHome  US** | | | **Totals:** | 18,471.24 | 0.00 | 0.00 | 0.00 | 18,471.24 | |
| **Vendor : InnerGreen** | | | | | | | | | |
| InnerGreen | | | | | | | | | |
| VCH044172 | 42002 | VOUCHER | 1/9/01 | 527.65 | 0.00 | 0.00 | 0.00 | 527.65 | 101 |
| VCH045134 | 42003 | VOUCHER | 2/6/01 | 105.00 | 0.00 | 0.00 | 105.00 | 0.00 | 73 |
| VCH046711 | 42004 | VOUCHER | 3/30/01 | 105.00 | 105.00 | 0.00 | 0.00 | 0.00 | 21 |
| VCH047504 | 42005 | VOUCHER | 4/30/01 | 105.00 | -105.00 | 0.00 | 0.00 | 0.00 | (10) |
| **Vendor : InnerGreen Home  US** | | | **Totals:** | 842.65 | 210.00 | 0.00 | 105.00 | 527.65 | |
| **Vendor : Innovativ/CA** | | | | | | | | | |
| Innovative Performance Improvement | | | | | | | | | |
| VCH046287 | 300 | VOUCHER | 2/13/01 | 3,395.60 | 0.00 | 0.00 | 3,395.60 | 0.00 | 66 |
| **Vendor : Innovativ/C.Home  US** | | | **Totals:** | 3,395.60 | 0.00 | 0.00 | 3,395.60 | 0.00 | |
| **Vendor : Innovative P** | | | | | | | | | |
| Innovative Performance Improvement, Inc. | | | | | | | | | |
| VCH045136 | Agrmnt of Work | VOUCHER | 2/8/01 | 3,290.00 | 0.00 | 0.00 | 3,290.00 | 0.00 | 71 |
| **Vendor : Innovative IHome  US** | | | **Totals:** | 3,290.00 | 0.00 | 0.00 | 3,290.00 | 0.00 | |
| **Vendor : Installshiel** | | | | | | | | | |
| Installshield Software Corp. | | | | | | | | | |
| VCH047652 | S-502 | VOUCHER | 2/2/01 | 799.20 | 0.00 | 0.00 | 799.20 | 0.00 | 77 |
| **Vendor : Installshiel Home  US** | | | **Totals:** | 799.20 | 0.00 | 0.00 | 799.20 | 0.00 | |
| **Vendor : Internat/Pap** | | | | | | | | | |
| International Paper | | | | | | | | | |
| VCH045875 | Overpymt | VOUCHER | 2/21/01 | 10,003.28 | 0.00 | 10,003.28 | 0.00 | 0.00 | 58 |
| **Vendor : Internat/ParHome  US** | | | **Totals:** | 10,003.28 | 0.00 | 10,003.28 | 0.00 | 0.00 | |
| **Vendor : Invesmart** | | | | | | | | | |
| Ivesmart | | | | | | | | | |
| VCH046243 | 23187 | VOUCHER | 11/30/00 | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 141 |
| VCH046244 | 26663 | VOUCHER | 1/23/01 | 4,156.00 | 0.00 | 0.00 | 4,156.00 | 0.00 | 87 |
| VCH046245 | 28817 | VOUCHER | 2/8/01 | 500.00 | 0.00 | 0.00 | 500.00 | 0.00 | 71 |
| VCH047306 | 30752 | VOUCHER | 2/28/01 | 50.00 | 0.00 | 50.00 | 0.00 | 0.00 | 51 |
| VCH047307 | 30203 | VOUCHER | 2/27/01 | 385.00 | 0.00 | 385.00 | 0.00 | 0.00 | 52 |
| **Vendor : Invesmart  Home  US** | | | **Totals:** | 5,191.00 | 0.00 | 435.00 | 4,656.00 | 100.00 | |

B - 212

95

4/20/01
2:36:11PM

## Aged Payables By: Branch Code/Vendor Code
### Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : Iron Mountai | | | | | | | | | |
| Iron Mountain | | | | | | | | | |
| VCH045931 | 7250147725014 | VOUCHER | 1/31/01 | 25.31 | 0.00 | 0.00 | 25.31 | 0.00 | 79 |
| VCH047598 | 76020351-76203 | VOUCHER | 3/31/01 | 32.91 | 32.91 | 0.00 | 0.00 | 0.00 | 20 |
| Vendor : Iron Mountz | Home US | Totals: | | 58.22 | 32.91 | 0.00 | 25.31 | 0.00 | |
| Vendor : IVC, Inc | | | | | | | | | |
| IVC, Inc | | | | | | | | | |
| VCH044426 | 01100103 | VOUCHER | 1/10/01 | 22,102.50 | 0.00 | 0.00 | 0.00 | 22,102.50 | 100 |
| VCH044428 | 01100104 | VOUCHER | 1/10/01 | 5,800.00 | 0.00 | 0.00 | 0.00 | 5,800.00 | 100 |
| VCH044429 | 01100101 | VOUCHER | 1/10/01 | 1,880.00 | 0.00 | 0.00 | 0.00 | 1,880.00 | 100 |
| VCH044434 | 12070003 | VOUCHER | 12/7/00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 134 |
| VCH044884 | 1310101 | VOUCHER | 1/31/01 | 15,900.00 | 0.00 | 0.00 | 15,900.00 | 0.00 | 79 |
| VCH045398 | 01100102 | VOUCHER | 1/10/01 | 17,820.00 | 0.00 | 0.00 | 0.00 | 17,820.00 | 100 |
| VCH046006 | 2130101 | VOUCHER | 2/13/01 | 900.00 | 0.00 | 0.00 | 900.00 | 0.00 | 66 |
| VCH046296 | 2120101 | VOUCHER | 2/12/01 | 8,760.00 | 0.00 | 0.00 | 8,760.00 | 0.00 | 67 |
| VCH048553 | 2230101A | VOUCHER | 2/23/01 | 2,160.00 | 0.00 | 2,160.00 | 0.00 | 0.00 | 56 |
| VCH046554 | 2230101B | VOUCHER | 2/23/01 | 360.00 | 0.00 | 360.00 | 0.00 | 0.00 | 56 |
| VCH047085 | 3260101 | VOUCHER | 3/26/01 | 8,062.97 | 8,062.97 | 0.00 | 0.00 | 0.00 | 25 |
| Vendor : IVC, Inc | Home US | Totals: | | 84,745.47 | 8,062.97 | 2,520.00 | 25,560.00 | 48,602.50 | |
| Vendor : Jack Jesse | | | | | | | | | |
| Jesse Jack | | | | | | | | | |
| VCH047548 | JJ41301 | VOUCHER | 4/13/01 | 1,158.00 | 1,158.00 | 0.00 | 0.00 | 0.00 | 7 |
| VCH047549 | JJ40501 | VOUCHER | 4/5/01 | 1,088.00 | 1,088.00 | 0.00 | 0.00 | 0.00 | 15 |
| VCH047550 | JJ33001 | VOUCHER | 3/30/01 | 1,190.00 | 1,190.00 | 0.00 | 0.00 | 0.00 | 21 |
| Vendor : Jack Jesse | Home US | Totals: | | 3,436.00 | 3,436.00 | 0.00 | 0.00 | 0.00 | |
| Vendor : Just Ergonom | | | | | | | | | |
| Just Ergonomics | | | | | | | | | |
| VCH044417 | 2515 | VOUCHER | 1/9/01 | 3,709.33 | 0.00 | 0.00 | 0.00 | 3,709.33 | 101 |
| Vendor : Just Ergon: | Home US | Totals: | | 3,709.33 | 0.00 | 0.00 | 0.00 | 3,709.33 | |
| Vendor : Karr & Assoc | | | | | | | | | |
| Karr & Associates, Inc | | | | | | | | | |
| VCH045434 | J.Coriston/Dec0( | VOUCHER | 12/1/00 | 3,333.34 | 0.00 | 0.00 | 0.00 | 3,333.34 | 140 |
| VCH045435 | J.Coriston/Dec2( | VOUCHER | 12/20/00 | 4,050.00 | 0.00 | 0.00 | 0.00 | 4,050.00 | 121 |
| VCH045436 | J.Coriston/Jan6 | VOUCHER | 1/12/01 | 4,100.00 | 0.00 | 0.00 | 4,100.00 | 0.00 | 98 |
| VCH045437 | J.Coriston/Jan1: | VOUCHER | 1/19/01 | 3,200.00 | 0.00 | 0.00 | 0.00 | 3,200.00 | 91 |
| VCH045438 | J.Coriston/Jan2( | VOUCHER | 1/26/01 | 3,050.00 | 0.00 | 0.00 | 3,050.00 | 0.00 | 84 |
| VCH045439 | JCoriston/Jan27 | VOUCHER | 2/2/01 | 4,000.00 | 0.00 | 0.00 | 4,000.00 | 0.00 | 77 |
| VCH047367 | 5001 | VOUCHER | 3/12/01 | 28,800.00 | 0.00 | 28,800.00 | 0.00 | 0.00 | 39 |
| Vendor : Karr & Assc | Home US | Totals: | | 50,533.34 | 0.00 | 28,800.00 | 7,050.00 | 14,683.34 | |
| Vendor : Keyspan | | | | | | | | | |
| Keyspan | | | | | | | | | |
| VCH045391 | 4221159769010 | VOUCHER | 1/31/01 | 507.79 | 0.00 | 0.00 | 507.79 | 0.00 | 79 |
| VCH047552 | 4221159769010 | VOUCHER | 3/30/01 | 452.22 | 452.22 | 0.00 | 0.00 | 0.00 | 21 |
| Vendor : Keyspan | Home US | Totals: | | 960.01 | 452.22 | 0.00 | 507.79 | 0.00 | |
| Vendor : Kinkos | | | | | | | | | |
| Kinko's | | | | | | | | | |
| VCH044370 | 515500128480 | VOUCHER | 1/11/01 | 551.81 | 0.00 | 0.00 | 0.00 | 551.81 | 99 |
| VCH044389 | 515500128440 | VOUCHER | 1/9/01 | 326.74 | 0.00 | 0.00 | 0.00 | 326.74 | 101 |
| VCH044819 | 515500128885 | VOUCHER | 1/30/01 | 418.54 | 0.00 | 0.00 | 418.54 | 0.00 | 80 |
| VCH044820 | 515500128883 | VOUCHER | 1/30/01 | 1,569.20 | 0.00 | 0.00 | 1,569.20 | 0.00 | 80 |
| VCH044821 | 515500128797 | VOUCHER | 1/30/01 | 1,097.75 | 0.00 | 0.00 | 1,097.75 | 0.00 | 80 |
| Vendor : Kinkos | Home US | Totals: | | 3,964.04 | 0.00 | 0.00 | 3,085.49 | 878.55 | |

B - 213

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 23

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | **Default Branch Code** | | | - Continued... | | | | |
| **Vendor : Koll Dublin** | | | | | | | | | |
| Koll Dublin Corporate Center, L.P. | | | | | | | | | |
| VCH047671 | May rent | VOUCHER | 4/19/01 | 241,373.32 | 241,373.32 | 0.00 | 0.00 | 0.00 | 1 |
| **Vendor : Koll Dublin Home  US** | | Totals: | | 241,373.32 | 241,373.32 | 0.00 | 0.00 | 0.00 | |
| **Vendor : Kozyak Tropl** | | | | | | | | | |
| Kozyak Topin & Throckmorton, PA | | | | | | | | | |
| VCH045466 | Jan 31 | VOUCHER | 1/3/01 | 164.84 | 0.00 | 0.00 | 0.00 | 164.84 | 107 |
| **Vendor : Kozyak TroiHome  US** | | Totals: | | 164.84 | 0.00 | 0.00 | 0.00 | 164.84 | |
| **Vendor : Kreative Imp** | | | | | | | | | |
| Kreative Impressions | | | | | | | | | |
| VCH044488 | 2256 | VOUCHER | 1/10/01 | 887.65 | 0.00 | 0.00 | 0.00 | 887.65 | 100 |
| **Vendor : Kreative ImHome  US** | | Totals: | | 887.65 | 0.00 | 0.00 | 0.00 | 887.65 | |
| **Vendor : LearningTree** | | | | | | | | | |
| Learning Tree International | | | | | | | | | |
| VCH044438 | IN452160 | VOUCHER | 1/10/01 | 2,110.00 | 0.00 | 0.00 | 0.00 | 2,110.00 | 100 |
| VCH046564 | IN456388 | VOUCHER | 2/21/01 | 2,345.00 | 0.00 | 2,345.00 | 0.00 | 0.00 | 58 |
| **Vendor : LearningTriHome  US** | | Totals: | | 4,455.00 | 0.00 | 2,345.00 | 0.00 | 2,110.00 | |
| **Vendor : Lechter Joel** | | | | | | | | | |
| Joel Lechter | | | | | | | | | |
| DISB035049 | joel l | CASHDISB | | (0.01) | 0.00 | 0.00 | 0.00 | (0.01) | |
| VCH045669 | w/e 1/20/01* | VOUCHER | 1/20/01 | 0.01 | 0.00 | 0.00 | 0.01 | 0.00 | 90 |
| VCH047673 | w/e 4/7/01 | VOUCHER | 4/7/01 | 51.34 | 51.34 | 0.00 | 0.00 | 0.00 | 13 |
| **Vendor : Lechter JoeHome  US** | | Totals: | | 51.34 | 51.34 | 0.00 | 0.01 | (0.01) | |
| **Vendor : Level III** | | | | | | | | | |
| Level III Services, inc. | | | | | | | | | |
| VCH044494 | 101004 | VOUCHER | 1/9/01 | 615.91 | 0.00 | 0.00 | 0.00 | 615.91 | 101 |
| VCH045111 | 101040 | VOUCHER | 1/24/01 | 284.33 | 0.00 | 0.00 | 284.33 | 0.00 | 86 |
| VCH045115 | 12000155 | VOUCHER | 12/31/00 | 937.69 | 0.00 | 0.00 | 0.00 | 937.69 | 110 |
| VCH045116 | 12000109 | VOUCHER | 12/31/00 | 3,608.62 | 0.00 | 0.00 | 0.00 | 3,608.62 | 110 |
| VCH045882 | 101127 | VOUCHER | 1/31/01 | 3,585.45 | 0.00 | 0.00 | 3,585.45 | 0.00 | 79 |
| VCH045884 | 101162 | VOUCHER | 1/31/01 | 443.04 | 0.00 | 0.00 | 443.04 | 0.00 | 79 |
| VCH045886 | 101168 | VOUCHER | 1/31/01 | 1,419.89 | 0.00 | 0.00 | 1,419.89 | 0.00 | 79 |
| VCH046313 | 201022 | VOUCHER | 2/19/01 | 1,268.00 | 0.00 | 1,268.00 | 0.00 | 0.00 | 60 |
| **Vendor : Level III  Home  US** | | Totals: | | 12,142.93 | 0.00 | 1,268.00 | 5,712.71 | 5,162.22 | |
| **Vendor : LexiQuest, I** | | | | | | | | | |
| LexiQuest, Inc | | | | | | | | | |
| VCH047204 | 2000-23 | VOUCHER | 12/29/00 | 100,000.00 | 0.00 | 0.00 | 0.00 | 100,000.00 | 112 |
| **Vendor : LexiQuest, IHome  US** | | Totals: | | 100,000.00 | 0.00 | 0.00 | 0.00 | 100,000.00 | |
| **Vendor : Lexis-Nexis** | | | | | | | | | |
| Lexis-Nexis Group | | | | | | | | | |
| VCH045873 | Overpymt | VOUCHER | 2/21/01 | 2,000.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 58 |
| **Vendor : Lexis-NexisHome  US** | | Totals: | | 2,000.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | |
| **Vendor : Lighthouse C** | | | | | | | | | |
| Lighthouse Consulting, LLC | | | | | | | | | |
| VCH045411 | 47 | VOUCHER | 1/1/01 | 5,980.00 | 0.00 | 0.00 | 0.00 | 5,980.00 | 109 |
| **Vendor : Lighthouse Home  US** | | Totals: | | 5,980.00 | 0.00 | 0.00 | 0.00 | 5,980.00 | |

B - 214

97

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 24

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : Luce Press C | | | | | | | | | |
| Luce Press Clippings, Inc | | | | | | | | | |
| VCH047225 | 1049056 | VOUCHER | 2/1/01 | 385.18 | 0.00 | 0.00 | 385.18 | 0.00 | 78 |
| Vendor : Luce Press Home  US | | | Totals: | 385.18 | 0.00 | 0.00 | 385.18 | 0.00 | |
| Vendor : Lutton Lawre | | | | | | | | | |
| Lawrence M. Lutton | | | | | | | | | |
| VCH046129 | w/e 2/10/01 | VOUCHER | 2/10/01 | 1,819.92 | 0.00 | 0.00 | 1,819.92 | 0.00 | 69 |
| Vendor : Lutton LawHome  US | | | Totals: | 1,819.92 | 0.00 | 0.00 | 1,819.92 | 0.00 | |
| Vendor : Malkranz & A | | | | | | | | | |
| Malkranz & Associates | | | | | | | | | |
| DISB009214 | DB000246 | DB.MEMO | | (0.60) | 0.00 | 0.00 | 0.00 | (0.60) | |
| Vendor : Malkranz & Home  US | | | Totals: | (0.60) | 0.00 | 0.00 | 0.00 | (0.60) | |
| Vendor : Mallory Head | | | | | | | | | |
| Mallory Headsets, Inc. | | | | | | | | | |
| VCH044803 | 30364 | VOUCHER | 1/9/01 | 350.76 | 0.00 | 0.00 | 0.00 | 350.76 | 101 |
| VCH046300 | 30733 | VOUCHER | 2/8/01 | 179.76 | 0.00 | 0.00 | 179.76 | 0.00 | 71 |
| Vendor : Mallory HeaHome  US | | | Totals: | 530.52 | 0.00 | 0.00 | 179.76 | 350.76 | |
| Vendor : Marlowes | | | | | | | | | |
| Marlowes: Flowers & Gifts | | | | | | | | | |
| VCH046130 | 516697 | VOUCHER | 1/31/01 | 84.98 | 0.00 | 0.00 | 84.98 | 0.00 | 79 |
| VCH046703 | 00532109 | VOUCHER | 2/12/01 | 57.78 | 0.00 | 0.00 | 57.78 | 0.00 | 67 |
| Vendor : Marlowes   Home  US | | | Totals: | 142.76 | 0.00 | 0.00 | 142.76 | 0.00 | |
| Vendor : Massachuse | | | | | | | | | |
| Massachusetts Department of Revenue | | | | | | | | | |
| VCH047658 | Mar01 Sales Tax | VOUCHER | 4/19/01 | 297.00 | 297.00 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : Massachus Home  US | | | Totals: | 297.00 | 297.00 | 0.00 | 0.00 | 0.00 | |
| Vendor : Matt Mason | | | | | | | | | |
| Matt Mason | | | | | | | | | |
| VCH046733 | 1005-12/26/00 | VOUCHER | 12/26/00 | 240.00 | 0.00 | 0.00 | 0.00 | 240.00 | 115 |
| Vendor : Matt Mason Home  US | | | Totals: | 240.00 | 0.00 | 0.00 | 0.00 | 240.00 | |
| Vendor : MC2 | | | | | | | | | |
| MC2 | | | | | | | | | |
| VCH047457 | 5967 | VOUCHER | 6/22/00 | 1,972.24 | 0.00 | 0.00 | 0.00 | 1,972.24 | 302 |
| VCH047458 | 5965 | VOUCHER | 6/20/00 | 5,175.91 | 0.00 | 0.00 | 0.00 | 5,175.91 | 304 |
| Vendor : MC2    Home  US | | | Totals: | 7,148.15 | 0.00 | 0.00 | 0.00 | 7,148.15 | |
| Vendor : McFarlane Do | | | | | | | | | |
| McFarlane Douglass & Companies | | | | | | | | | |
| VCH045385 | 36825 | VOUCHER | 2/1/01 | 124.16 | 0.00 | 0.00 | 124.16 | 0.00 | 78 |
| VCH047664 | 37787 | VOUCHER | 3/1/01 | 130.36 | 0.00 | 130.36 | 0.00 | 0.00 | 50 |
| Vendor : McFarlane l Home  US | | | Totals: | 254.52 | 0.00 | 130.36 | 124.16 | 0.00 | |
| Vendor : MCI Worldcom | | | | | | | | | |
| MCI Worldcom | | | | | | | | | |
| VCH046728 | 866027799-2/2 | VOUCHER | 2/28/01 | 261.37 | 0.00 | 261.37 | 0.00 | 0.00 | 51 |
| Vendor : MCI Worldc Home  US | | | Totals: | 261.37 | 0.00 | 261.37 | 0.00 | 0.00 | |

**B - 215**

000081

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 25

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: default | | Default Branch Code | | | - Continued... | | | | |
| Vendor : MCSi | | | | | | | | | |
| MCSi | | | | | | | | | |
| VCH044369 | 1302164SX | VOUCHER | 12/27/00 | 101,122.22 | 0.00 | 0.00 | 0.00 | 101,122.22 | 114 |
| VCH045734 | 1302164SX-02 | VOUCHER | 2/6/01 | 20,224.44 | 0.00 | 0.00 | 20,224.44 | 0.00 | 73 |
| Vendor : MCSi | Home | US | Totals: | 121,346.66 | 0.00 | 0.00 | 20,224.44 | 101,122.22 | |
| Vendor : MCSi technic | | | | | | | | | |
| MCSi | | | | | | | | | |
| VCH045959 | 92388 | VOUCHER | 1/4/01 | 15,174.75 | 0.00 | 0.00 | 0.00 | 15,174.75 | 106 |
| VCH045960 | 92286 | VOUCHER | 1/4/01 | 15,174.75 | 0.00 | 0.00 | 0.00 | 15,174.75 | 106 |
| VCH045961 | 92390 | VOUCHER | 1/4/01 | 10,119.00 | 0.00 | 0.00 | 0.00 | 10,119.00 | 106 |
| VCH045962 | 92656 | VOUCHER | 1/18/01 | 35,397.75 | 0.00 | 0.00 | 0.00 | 35,397.75 | 92 |
| VCH045963 | 92136 | VOUCHER | 12/27/00 | 8,233.95 | 0.00 | 0.00 | 0.00 | 8,233.95 | 114 |
| Vendor : MCSi techn | Home | US | Totals: | 84,100.20 | 0.00 | 0.00 | 0.00 | 84,100.20 | |
| Vendor : Meena | | | | | | | | | |
| Meena | | | | | | | | | |
| VCH044816 | 1012388 | VOUCHER | 1/23/01 | 250.00 | 0.00 | 0.00 | 250.00 | 0.00 | 87 |
| Vendor : Meena | Home | US | Totals: | 250.00 | 0.00 | 0.00 | 250.00 | 0.00 | |
| Vendor : Mellon Inves | | | | | | | | | |
| Mellon Investor Services, LLC | | | | | | | | | |
| VCH047301 | 145966 | VOUCHER | 3/23/01 | 1,128.21 | 1,128.21 | 0.00 | 0.00 | 0.00 | 28 |
| 47302 | 145992 | VOUCHER | 3/23/01 | 335.97 | 335.97 | 0.00 | 0.00 | 0.00 | 28 |
| 47308 | 145973 | VOUCHER | 3/23/01 | 465.39 | 465.39 | 0.00 | 0.00 | 0.00 | 28 |
| Vendor : Mellon Inve | Home | US | Totals: | 1,929.57 | 1,929.57 | 0.00 | 0.00 | 0.00 | |
| Vendor : Meridos Con | | | | | | | | | |
| Meridos Consulting GmbH | | | | | | | | | |
| VCH046354 | 2001-SIqnts/05 | VOUCHER | 12/14/00 | 54,520.00 | 0.00 | 0.00 | 0.00 | 54,520.00 | 127 |
| Vendor : Meridos Co | Home | US | Totals: | 54,520.00 | 0.00 | 0.00 | 0.00 | 54,520.00 | |
| Vendor : MGE UPS SYST | | | | | | | | | |
| MGE UPS Systems | | | | | | | | | |
| VCH045149 | 178474 | VOUCHER | 1/27/01 | 5,233.42 | 0.00 | 0.00 | 5,233.42 | 0.00 | 83 |
| Vendor : MGE UPS S | Home | US | Totals: | 5,233.42 | 0.00 | 0.00 | 5,233.42 | 0.00 | |
| Vendor : Mikrut Kim | | | | | | | | | |
| Kim Mikrut | | | | | | | | | |
| VCH047693 | w/e 3/23/01 | VOUCHER | 4/17/01 | 605.72 | 605.72 | 0.00 | 0.00 | 0.00 | 3 |
| Vendor : Mikrut Kim | Home | US | Totals: | 605.72 | 605.72 | 0.00 | 0.00 | 0.00 | |
| Vendor : Miller Lau | | | | | | | | | |
| Laurie A. Miller | | | | | | | | | |
| VCH046550 | 144.01/Dec00 | VOUCHER | 1/31/01 | 5,006.63 | 0.00 | 0.00 | 5,006.63 | 0.00 | 79 |
| Vendor : Miller Lau | Home | US | Totals: | 5,006.63 | 0.00 | 0.00 | 5,006.63 | 0.00 | |
| Vendor : Minuteman Pr | | | | | | | | | |
| Minuteman Press of Pleasanton | | | | | | | | | |
| VCH047322 | 7254 | VOUCHER | 3/23/01 | 410.25 | 410.25 | 0.00 | 0.00 | 0.00 | 28 |
| Vendor : Minuteman | Home | US | Totals: | 410.25 | 410.25 | 0.00 | 0.00 | 0.00 | |
| Vendor : Moonlight In | | | | | | | | | |
| Moonlight Interactive | | | | | | | | | |
| VCH008299 | CUI0002 | VOUCHER | 11/1/96 | (400.00) | 0.00 | 0.00 | 0.00 | (400.00) | 1,631 |

B - 216

000082

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 26

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | – Continued... | | | | |
| Vendor : Moonlight liHome  US | | | Totals: | (400.00) | 0.00 | 0.00 | 0.00 | (400.00) | |
| Vendor : N.C. Dept of | | | | | | | | | |
| N.C. Dept. of Revenue | | | | | | | | | |
| DISB021223 | DB000599 | DB.MEMO | | (16,697.90) | 0.00 | 0.00 | 0.00 | (16,697.90) | |
| Vendor : N.C. Dept o Home  US | | | Totals: | (16,697.90) | 0.00 | 0.00 | 0.00 | (16,697.90) | |
| Vendor : Narragabsett | | | | | | | | | |
| Narragansett Electric | | | | | | | | | |
| VCH046131 | 627031021025F | VOUCHER | 2/1/01 | 392.45 | 0.00 | 0.00 | 392.45 | 0.00 | 78 |
| VCH047714 | 627031021026- | VOUCHER | 4/13/01 | 134.60 | 134.60 | 0.00 | 0.00 | 0.00 | 7 |
| Vendor : Narragabse Home  US | | | Totals: | 527.05 | 134.60 | 0.00 | 392.45 | 0.00 | |
| Vendor : Netmarket Gr | | | | | | | | | |
| Netmarket Group Inc | | | | | | | | | |
| VCH045872 | OVERPYMT | VOUCHER | 2/21/01 | 1,500.00 | 0.00 | 1,500.00 | 0.00 | 0.00 | 58 |
| Vendor : Netmarket (Home  US | | | Totals: | 1,500.00 | 0.00 | 1,500.00 | 0.00 | 0.00 | |
| Vendor : Network De | | | | | | | | | |
| Network Design & Integration Services | | | | | | | | | |
| VCH045756 | 9047 | VOUCHER | 2/7/01 | 301.32 | 0.00 | 0.00 | 301.32 | 0.00 | 72 |
| VCH045757 | 9048 | VOUCHER | 2/7/01 | 63.72 | 0.00 | 0.00 | 63.72 | 0.00 | 72 |
| VCH045758 | 9049 | VOUCHER | 2/7/01 | 1,047.60 | 0.00 | 0.00 | 1,047.60 | 0.00 | 72 |
| VCH045759 | 9055 | VOUCHER | 2/6/01 | 4,876.40 | 0.00 | 0.00 | 4,876.40 | 0.00 | 73 |
| VCH045923 | 9083 | VOUCHER | 2/9/01 | 5,670.00 | 0.00 | 0.00 | 5,670.00 | 0.00 | 70 |
| VCH046255 | 9088 | VOUCHER | 2/14/01 | 614.52 | 0.00 | 0.00 | 614.52 | 0.00 | 65 |
| VCH046256 | 8533 | VOUCHER | 10/13/00 | 1,528.80 | 0.00 | 0.00 | 0.00 | 1,528.80 | 189 |
| VCH046665 | 9118 | VOUCHER | 2/15/01 | 182.52 | 0.00 | 0.00 | 182.52 | 0.00 | 64 |
| Vendor : Network De Home  US | | | Totals: | 14,084.88 | 0.00 | 0.00 | 12,556.08 | 1,528.80 | |
| Vendor : Network Solu | | | | | | | | | |
| Network Solutions, Inc. | | | | | | | | | |
| VCH046301 | 28826157 | VOUCHER | 12/4/00 | 70.00 | 0.00 | 0.00 | 0.00 | 70.00 | 137 |
| Vendor : Network So Home  US | | | Totals: | 70.00 | 0.00 | 0.00 | 0.00 | 70.00 | |
| Vendor : Newsedge | | | | | | | | | |
| Newsedge | | | | | | | | | |
| VCH020199 | B000203931-40 | VOUCHER | 2/28/99 | 29.95 | 0.00 | 0.00 | 0.00 | 29.95 | 782 |
| Vendor : Newsedge  Home  US | | | Totals: | 29.95 | 0.00 | 0.00 | 0.00 | 29.95 | |
| Vendor : Nextel Commu | | | | | | | | | |
| Nextel Communications | | | | | | | | | |
| VCH045162 | 258447-2-1/30/0 | VOUCHER | 1/30/01 | 306.43 | 0.00 | 0.00 | 306.43 | 0.00 | 80 |
| VCH045294 | 52708-5-01/18/0 | VOUCHER | 1/18/01 | 2,807.27 | 0.00 | 0.00 | 0.00 | 2,807.27 | 92 |
| VCH046312 | 52708-5/2/17/01 | VOUCHER | 2/17/01 | 2,616.97 | 0.00 | 0.00 | 2,616.97 | 0.00 | 62 |
| VCH047304 | 52708-5-pre | VOUCHER | 3/17/01 | 94.48 | 0.00 | 94.48 | 0.00 | 0.00 | 34 |
| Vendor : Nextel Com Home  US | | | Totals: | 5,827.15 | 0.00 | 94.48 | 2,925.40 | 2,807.27 | |
| Vendor : Nextel/PA | | | | | | | | | |
| Nextel Communications | | | | | | | | | |
| VCH046133 | 0012142590-1/1 | VOUCHER | 1/11/01 | 519.21 | 0.00 | 0.00 | 0.00 | 519.21 | 99 |
| VCH046509 | 00121425904Fe | VOUCHER | 2/12/01 | 492.28 | 0.00 | 0.00 | 492.28 | 0.00 | 67 |
| VCH047372 | 121425904-pre | VOUCHER | 3/12/01 | 227.64 | 0.00 | 227.64 | 0.00 | 0.00 | 39 |
| Vendor : Nextel/PA  Home  US | | | Totals: | 1,239.13 | 0.00 | 227.64 | 492.28 | 519.21 | |
| Vendor : Nicor Gas | | | | | | | | | |
| Nicor Gas | | | | | | | | | |

**B - 217**

**100**

000083

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 27

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | **default** | **Default Branch Code** | | | - Continued... | | | | |
| **Vendor :** | **Nicor Gas** | | | | - Continued... | | | | |
| | Nicor Gas | | | | | | | | |
| VCH045388 | 1095616650 | VOUCHER | 1/1/01 | 77.40 | 0.00 | 0.00 | 0.00 | 77.40 | 109 |
| VCH046132 | 109561665* | VOUCHER | 2/13/01 | 212.54 | 0.00 | 0.00 | 212.54 | 0.00 | 66 |
| VCH046696 | 1095616650-3/1 | VOUCHER | 3/13/01 | 37.46 | 0.00 | 37.46 | 0.00 | 0.00 | 38 |
| VCH047690 | 1095616650-4/1 | VOUCHER | 4/12/01 | 66.93 | 66.93 | 0.00 | 0.00 | 0.00 | 8 |
| | **Vendor : Nicor Gas  Home  US** | | **Totals:** | 394.33 | 66.93 | 37.46 | 212.54 | 77.40 | |
| **Vendor :** | **Noahs Bagels** | | | | | | | | |
| | Noahs Bagels | | | | | | | | |
| VCH046264 | 564812 | VOUCHER | 2/5/01 | 319.40 | 0.00 | 0.00 | 319.40 | 0.00 | 74 |
| VCH047634 | 4/23 delivery | VOUCHER | 4/18/01 | 79.85 | 79.85 | 0.00 | 0.00 | 0.00 | 2 |
| | **Vendor : Noahs Bags Home  US** | | **Totals:** | 399.25 | 79.85 | 0.00 | 319.40 | 0.00 | |
| **Vendor :** | **Nortel/NY** | | | | | | | | |
| | Nortel Networks | | | | | | | | |
| VCH044960 | 95719 | VOUCHER | 1/16/01 | 2,316.00 | 0.00 | 0.00 | 0.00 | 2,316.00 | 94 |
| | **Vendor : Nortel/NY  Home  US** | | **Totals:** | 2,316.00 | 0.00 | 0.00 | 0.00 | 2,316.00 | |
| **Vendor :** | **North Amer** | | | | | | | | |
| | North American Van Lines | | | | | | | | |
| VCH044818 | M706800 | VOUCHER | 1/22/01 | 3,449.02 | 0.00 | 0.00 | 3,449.02 | 0.00 | 88 |
| | **Vendor : North Amer Home  US** | | **Totals:** | 3,449.02 | 0.00 | 0.00 | 3,449.02 | 0.00 | |
| **Vendor :** | **Notions** | | | | | | | | |
| | Notions Systems, Inc. | | | | | | | | |
| VCH043973 | 1229-2 | VOUCHER | 12/27/00 | 12,480.00 | 0.00 | 0.00 | 0.00 | 12,480.00 | 114 |
| VCH043974 | 1204-1 | VOUCHER | 11/30/00 | 2,340.00 | 0.00 | 0.00 | 0.00 | 2,340.00 | 141 |
| | **Vendor : Notions  Home  US** | | **Totals:** | 14,820.00 | 0.00 | 0.00 | 0.00 | 14,820.00 | |
| **Vendor :** | **Notions Syst** | | | | | | | | |
| | Notions System, Inc | | | | | | | | |
| VCH046247 | 01-0131-2 | VOUCHER | 1/31/01 | 1,560.00 | 0.00 | 0.00 | 1,560.00 | 0.00 | 79 |
| VCH046718 | 01-0226-7 | VOUCHER | 2/28/01 | 3,900.00 | 0.00 | 3,900.00 | 0.00 | 0.00 | 51 |
| VCH047257 | 00-1204-2 | VOUCHER | 11/30/00 | 9,469.96 | 0.00 | 0.00 | 0.00 | 9,469.96 | 141 |
| VCH047724 | 01-0403-4 | VOUCHER | 3/31/01 | 780.00 | 780.00 | 0.00 | 0.00 | 0.00 | 20 |
| | **Vendor : Notions Syst Home  US** | | **Totals:** | 15,709.96 | 780.00 | 3,900.00 | 1,560.00 | 9,469.96 | |
| **Vendor :** | **NSTAR Electr** | | | | | | | | |
| | NSTAR Electric | | | | | | | | |
| VCH045154 | 526582049107* | VOUCHER | 1/8/01 | 3,401.69 | 0.00 | 0.00 | 0.00 | 3,401.69 | 102 |
| VCH045806 | Jan01 | VOUCHER | 2/8/01 | 93.35 | 0.00 | 0.00 | 93.35 | 0.00 | 71 |
| VCH045807 | Jan01/Maynar | VOUCHER | 2/8/01 | 91.52 | 0.00 | 0.00 | 91.52 | 0.00 | 71 |
| VCH045730 | 526582049107-/ | VOUCHER | 2/6/01 | 1,659.62 | 0.00 | 0.00 | 1,659.62 | 0.00 | 73 |
| VCH046702 | 526582049107a | VOUCHER | 3/7/01 | 2,757.40 | 0.00 | 2,757.40 | 0.00 | 0.00 | 44 |
| VCH047282 | 548390022178- | VOUCHER | 3/9/01 | 115.02 | 0.00 | 115.02 | 0.00 | 0.00 | 42 |
| VCH047283 | 548390022186a | VOUCHER | 3/9/01 | 70.63 | 0.00 | 70.63 | 0.00 | 0.00 | 42 |
| VCH047284 | 548390224602 | VOUCHER | 3/9/01 | 31.21 | 0.00 | 31.21 | 0.00 | 0.00 | 42 |
| VCH047628 | 548390022186-/ | VOUCHER | 4/10/01 | 125.15 | 125.15 | 0.00 | 0.00 | 0.00 | 10 |
| VCH047628 | 548390022178-/ | VOUCHER | 4/10/01 | 218.49 | 218.49 | 0.00 | 0.00 | 0.00 | 10 |
| VCH047629 | 548390022460-/ | VOUCHER | 4/10/01 | 25.15 | 25.15 | 0.00 | 0.00 | 0.00 | 10 |
| VCH047675 | 526582049107-/ | VOUCHER | 4/6/01 | 4,174.32 | 4,174.32 | 0.00 | 0.00 | 0.00 | 14 |
| | **Vendor : NSTAR Elec Home  US** | | **Totals:** | 12,763.55 | 4,543.11 | 2,974.26 | 1,844.49 | 3,401.69 | |
| **Vendor :** | **NSTAR Gas** | | | | | | | | |
| | NSTAR Gas | | | | | | | | |
| VCH045387 | 11471430139* | VOUCHER | 1/18/01 | 67.20 | 0.00 | 0.00 | 0.00 | 67.20 | 92 |
| VCH046513 | 11471430139/Fe | VOUCHER | 2/20/01 | 141.97 | 0.00 | 141.97 | 0.00 | 0.00 | 59 |

**B - 218**

**101**

000084

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor: | NSTAR Gas | | | | - Continued... | | | | |
| | NSTAR Gas | | | | | | | | |
| VCH046725 | 11471410081-2/ | VOUCHER | 2/26/01 | 50.61 | 0.00 | 50.01 | 0.00 | 0.00 | 53 |
| VCH046732 | 11471420080-2/ | VOUCHER | 2/20/01 | 108.69 | 0.00 | 108.69 | 0.00 | 0.00 | 59 |
| Vendor: | NSTAR GasHome US | | Totals: | 367.87 | 0.00 | 300.67 | 0.00 | 67.20 | |
| | | | | | | | | | |
| Vendor: | nth Degress | | | | | | | | |
| | nth Degree | | | | | | | | |
| VCH045288 | 215178 | VOUCHER | 1/31/01 | 5,631.00 | 0.00 | 0.00 | 5,631.00 | 0.00 | 79 |
| Vendor: | nth Degress:Home US | | Totals: | 5,631.00 | 0.00 | 0.00 | 5,631.00 | 0.00 | |
| | | | | | | | | | |
| Vendor: | NY LIC | | | | | | | | |
| | NY LIC | | | | | | | | |
| VCH047547 | ACCT#N48851 | VOUCHER | 4/16/01 | 906.00 | 906.00 | 0.00 | 0.00 | 0.00 | 4 |
| Vendor: | NY LIC   Home US | | Totals: | 906.00 | 906.00 | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| Vendor: | Oce - Usa | | | | | | | | |
| | Oce Credit Corporation | | | | | | | | |
| VCH045164 | 1048492 | VOUCHER | 1/23/01 | 336.59 | 0.00 | 0.00 | 336.59 | 0.00 | 87 |
| Vendor: | Oce - Usa   Home US | | Totals: | 336.59 | 0.00 | 0.00 | 336.59 | 0.00 | |
| | | | | | | | | | |
| Vendor: | Oce-Use 02 | | | | | | | | |
| | Oce-USA Inc. | | | | | | | | |
| VCH044697 | 1034321 | VOUCHER | 1/11/01 | 361.38 | 0.00 | 0.00 | 0.00 | 361.38 | 99 |
| VCH045163 | 1044000 | VOUCHER | 1/19/01 | 32.13 | 0.00 | 0.00 | 0.00 | 32.13 | 91 |
| VCH045268 | 1043998 | VOUCHER | 1/19/01 | 123.28 | 0.00 | 0.00 | 0.00 | 123.28 | 91 |
| VCH045269 | 1043999 | VOUCHER | 1/19/01 | 37.96 | 0.00 | 0.00 | 0.00 | 37.96 | 91 |
| VCH045284 | 1031338 | VOUCHER | 1/9/01 | 275.60 | 0.00 | 0.00 | 0.00 | 275.60 | 101 |
| VCH045289 | 1058780 | VOUCHER | 1/30/01 | 1,373.75 | 0.00 | 0.00 | 1,373.75 | 0.00 | 80 |
| VCH045731 | 1075690 | VOUCHER | 2/8/01 | 275.60 | 0.00 | 0.00 | 275.60 | 0.00 | 73 |
| VCH046142 | 1075536 | VOUCHER | 2/8/01 | 361.38 | 0.00 | 0.00 | 361.38 | 0.00 | 71 |
| VCH046322 | 1067100 | VOUCHER | 2/17/01 | 38.93 | 0.00 | 0.00 | 38.93 | 0.00 | 62 |
| VCH046323 | 1067099 | VOUCHER | 2/17/01 | 227.32 | 0.00 | 0.00 | 227.32 | 0.00 | 62 |
| VCH046511 | 1090204 | VOUCHER | 2/20/01 | 336.59 | 0.00 | 336.59 | 0.00 | 0.00 | 59 |
| VCH047282 | 1129635-pre | VOUCHER | 3/17/01 | 56.56 | 0.00 | 56.56 | 0.00 | 0.00 | 34 |
| VCH047283 | 1129634-pre | VOUCHER | 3/17/01 | 257.84 | 0.00 | 257.84 | 0.00 | 0.00 | 34 |
| VCH047625 | 1143919 | VOUCHER | 3/29/01 | 1,373.75 | 1,373.75 | 0.00 | 0.00 | 0.00 | 22 |
| VCH047735 | 1163939 | VOUCHER | 4/10/01 | 275.60 | 275.60 | 0.00 | 0.00 | 0.00 | 10 |
| VCH047736 | 1163938 | VOUCHER | 4/10/01 | 361.38 | 361.38 | 0.00 | 0.00 | 0.00 | 10 |
| VCH047738 | 1148110 | VOUCHER | 3/31/01 | 57.11 | 57.11 | 0.00 | 0.00 | 0.00 | 20 |
| Vendor: | Oce-Use 02 Home US | | Totals: | 5,827.16 | 2,067.84 | 650.99 | 2,277.98 | 830.35 | |
| | | | | | | | | | |
| Vendor: | Office Dep | | | | | | | | |
| | Office Depot | | | | | | | | |
| DISB021338 | DB000604 | DB.MEMO | | (266.30) | 0.00 | 0.00 | 0.00 | (266.30) | |
| DISB021339 | DB000606 | DB.MEMO | | (90.93) | 0.00 | 0.00 | 0.00 | (90.93) | |
| VCH018306 | 055831258 | VOUCHER | 11/30/98 | 315.67 | 0.00 | 0.00 | 0.00 | 315.67 | 872 |
| VCH044685 | 116077995-001 | VOUCHER | 1/10/01 | 43.34 | 0.00 | 0.00 | 0.00 | 43.34 | 100 |
| VCH044688 | 117309102-002 | VOUCHER | 1/10/01 | 15.89 | 0.00 | 0.00 | 0.00 | 15.89 | 100 |
| VCH044689 | 117543245-001 | VOUCHER | 1/10/01 | 98.60 | 0.00 | 0.00 | 0.00 | 98.60 | 100 |
| VCH044690 | 118385064-001 | VOUCHER | 1/10/01 | 151.03 | 0.00 | 0.00 | 0.00 | 151.03 | 100 |
| VCH044691 | 118386278-001 | VOUCHER | 1/10/01 | 66.93 | 0.00 | 0.00 | 0.00 | 66.93 | 100 |
| VCH044692 | 118386896-001 | VOUCHER | 1/10/01 | 19.95 | 0.00 | 0.00 | 0.00 | 19.95 | 100 |
| VCH044693 | 118388672-001 | VOUCHER | 1/10/01 | 62.96 | 0.00 | 0.00 | 0.00 | 62.96 | 100 |
| VCH044694 | 118452017-001 | VOUCHER | 1/10/01 | 114.87 | 0.00 | 0.00 | 0.00 | 114.87 | 100 |
| VCH044968 | 115924743-001 | VOUCHER | 12/13/00 | 399.44 | 0.00 | 0.00 | 0.00 | 399.44 | 128 |
| VCH045216 | 117321363-001 | VOUCHER | 1/24/01 | 45.97 | 0.00 | 0.00 | 45.97 | 0.00 | 86 |
| VCH045218 | 117322346-001 | VOUCHER | 1/24/01 | 43.34 | 0.00 | 0.00 | 43.34 | 0.00 | 86 |
| VCH045220 | 119047199-001 | VOUCHER | 1/24/01 | 56.71 | 0.00 | 0.00 | 56.71 | 0.00 | 86 |
| VCH045223 | 119047379-001 | VOUCHER | 1/24/01 | 61.78 | 0.00 | 0.00 | 61.78 | 0.00 | 86 |
| VCH045225 | 119047453001 | VOUCHER | 1/24/01 | 56.71 | 0.00 | 0.00 | 56.71 | 0.00 | 86 |
| VCH045227 | 119239717-001 | VOUCHER | 1/24/01 | 52.45 | 0.00 | 0.00 | 52.45 | 0.00 | 86 |

**B - 219**

000085

4/20/01
2:36:11PM

# Aged Payables By: Branch Code/Vendor Code
## Quintus Corporation
### Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 29

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Office Dep | | | | - Continued... | | | | |
| | Office Depot | | | | | | | | |
| VCH045230 | 119243797-001 | VOUCHER | 1/24/01 | 132.72 | 0.00 | 0.00 | 132.72 | 0.00 | 86 |
| VCH045231 | 119390515-001 | VOUCHER | 1/24/01 | 241.16 | 0.00 | 0.00 | 241.16 | 0.00 | 86 |
| VCH045240 | 119454641-001 | VOUCHER | 1/24/01 | 479.92 | 0.00 | 0.00 | 479.92 | 0.00 | 86 |
| VCH045243 | 119826694-001 | VOUCHER | 1/24/01 | 184.68 | 0.00 | 0.00 | 184.68 | 0.00 | 86 |
| VCH045245 | 119827335-001 | VOUCHER | 1/24/01 | 52.16 | 0.00 | 0.00 | 52.16 | 0.00 | 86 |
| VCH045247 | 119828456-001 | VOUCHER | 1/24/01 | 84.20 | 0.00 | 0.00 | 84.20 | 0.00 | 86 |
| VCH045249 | 119829985-001 | VOUCHER | 1/24/01 | 123.08 | 0.00 | 0.00 | 123.08 | 0.00 | 86 |
| VCH045251 | 119888224-001 | VOUCHER | 1/24/01 | 66.12 | 0.00 | 0.00 | 66.12 | 0.00 | 86 |
| VCH045253 | 120078612-001 | VOUCHER | 1/24/01 | 35.64 | 0.00 | 0.00 | 35.64 | 0.00 | 86 |
| VCH045732 | 116559329-001 | VOUCHER | 2/7/01 | 227.28 | 0.00 | 0.00 | 227.28 | 0.00 | 72 |
| VCH045733 | 116561512-001 | VOUCHER | 2/7/01 | 2,007.72 | 0.00 | 0.00 | 2,007.72 | 0.00 | 72 |
| VCH045737 | 118595545-002 | VOUCHER | 2/7/01 | 10.11 | 0.00 | 0.00 | 10.11 | 0.00 | 72 |
| VCH045738 | 119239717-002 | VOUCHER | 2/7/01 | 37.13 | 0.00 | 0.00 | 37.13 | 0.00 | 72 |
| VCH045739 | 120767310-001 | VOUCHER | 2/7/01 | 238.83 | 0.00 | 0.00 | 238.83 | 0.00 | 72 |
| VCH045740 | 120769116-001 | VOUCHER | 2/7/01 | 56.64 | 0.00 | 0.00 | 56.64 | 0.00 | 72 |
| VCH045741 | 120760076-001 | VOUCHER | 2/7/01 | 58.93 | 0.00 | 0.00 | 58.93 | 0.00 | 72 |
| VCH045742 | 120899064-001 | VOUCHER | 2/7/01 | 158.47 | 0.00 | 0.00 | 158.47 | 0.00 | 72 |
| VCH045743 | 120901297-001 | VOUCHER | 2/7/01 | 72.44 | 0.00 | 0.00 | 72.44 | 0.00 | 72 |
| VCH045746 | 120975971-001 | VOUCHER | 2/7/01 | 44.02 | 0.00 | 0.00 | 44.02 | 0.00 | 72 |
| VCH045749 | 121033877-001 | VOUCHER | 2/7/01 | 4.50 | 0.00 | 0.00 | 4.50 | 0.00 | 72 |
| VCH045751 | 121037198-001 | VOUCHER | 2/7/01 | 57.04 | 0.00 | 0.00 | 57.04 | 0.00 | 72 |
| VCH045753 | 121069843-001 | VOUCHER | 2/7/01 | 250.45 | 0.00 | 0.00 | 250.45 | 0.00 | 72 |
| VCH046011 | 118760205 | VOUCHER | 1/17/01 | 110.37 | 0.00 | 0.00 | 0.00 | 110.37 | 93 |
| VCH046012 | 118775823 | VOUCHER | 1/17/01 | 198.07 | 0.00 | 0.00 | 0.00 | 198.07 | 93 |
| VCH046013 | 118893088 | VOUCHER | 1/17/01 | 10.31 | 0.00 | 0.00 | 0.00 | 10.31 | 93 |
| VCH046014 | 118928057 | VOUCHER | 1/17/01 | 10.17 | 0.00 | 0.00 | 0.00 | 10.17 | 93 |
| VCH046015 | 118967778 | VOUCHER | 1/17/01 | 483.39 | 0.00 | 0.00 | 0.00 | 483.39 | 93 |
| VCH046016 | 118714579 | VOUCHER | 1/17/01 | 249.05 | 0.00 | 0.00 | 0.00 | 249.05 | 93 |
| VCH046017 | 118722355 | VOUCHER | 1/17/01 | 998.19 | 0.00 | 0.00 | 0.00 | 998.19 | 93 |
| VCH046018 | 118602644 | VOUCHER | 1/17/01 | 208.00 | 0.00 | 0.00 | 0.00 | 208.00 | 93 |
| VCH046019 | 118605702 | VOUCHER | 1/17/01 | 18.49 | 0.00 | 0.00 | 0.00 | 18.49 | 93 |
| VCH046020 | 118687544 | VOUCHER | 1/17/01 | 11.68 | 0.00 | 0.00 | 0.00 | 11.68 | 93 |
| VCH046021 | 117322117 | VOUCHER | 1/17/01 | 38.27 | 0.00 | 0.00 | 0.00 | 38.27 | 93 |
| VCH046022 | 117322260 | VOUCHER | 1/17/01 | 43.34 | 0.00 | 0.00 | 0.00 | 43.34 | 93 |
| VCH046023 | 117646825 | VOUCHER | 1/17/01 | 32.44 | 0.00 | 0.00 | 0.00 | 32.44 | 93 |
| VCH046024 | 118541289 | VOUCHER | 1/17/01 | 156.76 | 0.00 | 0.00 | 0.00 | 156.76 | 93 |
| VCH046025 | 118595545 | VOUCHER | 1/17/01 | 483.51 | 0.00 | 0.00 | 0.00 | 483.51 | 93 |
| VCH046026 | 116077329 | VOUCHER | 1/17/01 | 76.56 | 0.00 | 0.00 | 0.00 | 76.56 | 93 |
| VCH046027 | 117320546 | VOUCHER | 1/17/01 | 43.34 | 0.00 | 0.00 | 0.00 | 43.34 | 93 |
| VCH046028 | 117320917 | VOUCHER | 1/17/01 | 43.34 | 0.00 | 0.00 | 0.00 | 43.34 | 93 |
| VCH046134 | 117321170-001 | VOUCHER | 1/31/01 | 81.63 | 0.00 | 0.00 | 81.63 | 0.00 | 79 |
| VCH046135 | 120086810-001 | VOUCHER | 1/31/01 | 272.14 | 0.00 | 0.00 | 272.14 | 0.00 | 79 |
| VCH046136 | 120067052-001 | VOUCHER | 1/31/01 | 628.51 | 0.00 | 0.00 | 628.51 | 0.00 | 79 |
| VCH046137 | 120257616-001 | VOUCHER | 1/31/01 | 35.25 | 0.00 | 0.00 | 35.25 | 0.00 | 79 |
| VCH046138 | 120258057-001 | VOUCHER | 1/31/01 | 55.71 | 0.00 | 0.00 | 55.71 | 0.00 | 79 |
| VCH046139 | 120573604-001 | VOUCHER | 1/31/01 | 227.95 | 0.00 | 0.00 | 227.95 | 0.00 | 79 |
| VCH046140 | 120574758-001 | VOUCHER | 1/31/01 | 108.76 | 0.00 | 0.00 | 108.76 | 0.00 | 79 |
| VCH046141 | w/e 1/31/01 | VOUCHER | 1/31/01 | 27.00 | 0.00 | 0.00 | 27.00 | 0.00 | 79 |
| VCH046283 | 116558859-001 | VOUCHER | 2/14/01 | 3,659.74 | 0.00 | 0.00 | 3,659.74 | 0.00 | 65 |
| VCH046284 | 118426619-001 | VOUCHER | 2/14/01 | 131.72 | 0.00 | 0.00 | 131.72 | 0.00 | 65 |
| VCH046285 | 121331043-001 | VOUCHER | 2/14/01 | 291.61 | 0.00 | 0.00 | 291.61 | 0.00 | 65 |
| VCH046286 | 121359901-001 | VOUCHER | 2/14/01 | 830.19 | 0.00 | 0.00 | 830.19 | 0.00 | 65 |
| VCH046289 | 121478236-001 | VOUCHER | 2/14/01 | 68.89 | 0.00 | 0.00 | 68.89 | 0.00 | 65 |
| VCH046290 | 121478692-001 | VOUCHER | 2/14/01 | 20.93 | 0.00 | 0.00 | 20.93 | 0.00 | 65 |
| VCH046291 | 121479022-001 | VOUCHER | 2/14/01 | 77.75 | 0.00 | 0.00 | 77.75 | 0.00 | 65 |
| VCH046292 | 121776094-001 | VOUCHER | 2/14/01 | 107.24 | 0.00 | 0.00 | 107.24 | 0.00 | 65 |
| VCH046293 | 121832318-001 | VOUCHER | 2/14/01 | 251.19 | 0.00 | 0.00 | 251.19 | 0.00 | 65 |
| VCH046295 | 121858979-001 | VOUCHER | 2/14/01 | 136.96 | 0.00 | 0.00 | 136.96 | 0.00 | 65 |
| VCH046297 | 121878479-001 | VOUCHER | 2/14/01 | 776.73 | 0.00 | 0.00 | 776.73 | 0.00 | 65 |
| VCH046299 | 121888562-001 | VOUCHER | 2/14/01 | 35.49 | 0.00 | 0.00 | 35.49 | 0.00 | 65 |
| VCH046456 | 120901297 | VOUCHER | 2/21/01 | 0.64 | 0.00 | 0.64 | 0.00 | 0.00 | 58 |
| VCH046457 | 121776954 | VOUCHER | 2/21/01 | 105.10 | 0.00 | 105.10 | 0.00 | 0.00 | 58 |
| VCH046459 | 121777071 | VOUCHER | 2/21/01 | 43.34 | 0.00 | 43.34 | 0.00 | 0.00 | 58 |
| VCH046465 | 121777143 | VOUCHER | 2/21/01 | 38.27 | 0.00 | 38.27 | 0.00 | 0.00 | 58 |
| VCH046466 | 121777205 | VOUCHER | 2/21/01 | 43.40 | 0.00 | 43.40 | 0.00 | 0.00 | 58 |
| VCH046467 | 121777244 | VOUCHER | 2/21/01 | 44.32 | 0.00 | 44.32 | 0.00 | 0.00 | 58 |
| VCH046468 | 121777300 | VOUCHER | 2/21/01 | 38.27 | 0.00 | 38.27 | 0.00 | 0.00 | 58 |
| VCH046469 | 12177737 | VOUCHER | 2/21/01 | 43.47 | 0.00 | 43.47 | 0.00 | 0.00 | 58 |

**B - 220**

## 103

000086

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No　　Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | **Default Branch Code** | | | - Continued... | | | | |
| **Vendor :** | Office Dep | | | | - Continued... | | | | |
| | Office Depot | | | | | | | | |
| VCH046470 | 121777414 | VOUCHER | 2/21/01 | 43.47 | 0.00 | 43.47 | 0.00 | 0.00 | 58 |
| VCH046471 | 121777491 | VOUCHER | 2/21/01 | 43.34 | 0.00 | 43.34 | 0.00 | 0.00 | 58 |
| VCH046472 | 121777782 | VOUCHER | 2/21/01 | 43.34 | 0.00 | 43.34 | 0.00 | 0.00 | 58 |
| VCH046475 | 121974100 | VOUCHER | 2/21/01 | 901.89 | 0.00 | 901.89 | 0.00 | 0.00 | 58 |
| VCH046476 | 122007265 | VOUCHER | 2/21/01 | 802.81 | 0.00 | 802.81 | 0.00 | 0.00 | 58 |
| VCH046475 | 122046445 | VOUCHER | 2/21/01 | 637.78 | 0.00 | 637.78 | 0.00 | 0.00 | 58 |
| VCH046478 | 122097430 | VOUCHER | 2/21/01 | 3.07 | 0.00 | 3.07 | 0.00 | 0.00 | 58 |
| VCH046479 | 122097759 | VOUCHER | 2/21/01 | 39.75 | 0.00 | 39.75 | 0.00 | 0.00 | 58 |
| VCH046480 | 122098214 | VOUCHER | 2/21/01 | 34.37 | 0.00 | 34.37 | 0.00 | 0.00 | 58 |
| VCH046481 | 122099023 | VOUCHER | 2/21/01 | 6.01 | 0.00 | 6.01 | 0.00 | 0.00 | 58 |
| VCH046482 | 122099331 | VOUCHER | 2/21/01 | 24.73 | 0.00 | 24.73 | 0.00 | 0.00 | 58 |
| VCH046484 | 122099649 | VOUCHER | 2/21/01 | 24.73 | 0.00 | 24.73 | 0.00 | 0.00 | 58 |
| VCH046485 | 122153695 | VOUCHER | 2/21/01 | 13.75 | 0.00 | 13.75 | 0.00 | 0.00 | 58 |
| VCH046487 | 122154487 | VOUCHER | 2/21/01 | 32.55 | 0.00 | 32.55 | 0.00 | 0.00 | 58 |
| VCH046488 | 122220358 | VOUCHER | 2/21/01 | 1,187.87 | 0.00 | 1,187.87 | 0.00 | 0.00 | 58 |
| VCH046489 | 122222266 | VOUCHER | 2/21/01 | 32.14 | 0.00 | 32.14 | 0.00 | 0.00 | 58 |
| VCH046491 | 122377202 | VOUCHER | 2/21/01 | 207.39 | 0.00 | 207.39 | 0.00 | 0.00 | 58 |
| **Vendor : Office Dep  Home  US** | | **Totals:** | | 21,344.12 | 0.00 | 4,435.80 | 12,763.59 | 4,144.73 | |
| **Vendor :** | On Call Co | | | | | | | | |
| | On Call Computer Supply | | | | | | | | |
| DISB000756 | DB000016 | DB.MEMO | | (1,332.44) | 0.00 | 0.00 | 0.00 | (1,332.44) | |
| **Vendor : On Call Co  Home  US** | | **Totals:** | | (1,332.44) | 0.00 | 0.00 | 0.00 | (1,332.44) | |
| **Vendor :** | On24, Inc. | | | | | | | | |
| | On24, Inc. | | | | | | | | |
| VCH046248 | 532 | VOUCHER | 1/18/01 | 2,129.00 | 0.00 | 0.00 | 0.00 | 2,129.00 | 92 |
| VCH046249 | 533 | VOUCHER | 1/18/01 | 7,000.00 | 0.00 | 0.00 | 0.00 | 7,000.00 | 92 |
| VCH046652 | 551 | VOUCHER | 2/18/01 | 7,000.00 | 0.00 | 0.00 | 7,000.00 | 0.00 | 61 |
| VCH046653 | 550 | VOUCHER | 2/18/01 | 2,129.00 | 0.00 | 0.00 | 2,129.00 | 0.00 | 61 |
| VCH046744 | 490 | VOUCHER | 12/18/00 | 2,129.00 | 0.00 | 0.00 | 0.00 | 2,129.00 | 123 |
| VCH046745 | 481 | VOUCHER | 12/18/00 | 7,000.00 | 0.00 | 0.00 | 0.00 | 7,000.00 | 123 |
| **Vendor : On24, Inc.  Home  US** | | **Totals:** | | 27,387.00 | 0.00 | 0.00 | 9,129.00 | 18,258.00 | |
| **Vendor :** | One Stop | | | | | | | | |
| | One Stop Business Centers, Inc. | | | | | | | | |
| VCH045384 | 39067 | VOUCHER | 1/5/01 | 51.83 | 0.00 | 0.00 | 0.00 | 51.83 | 105 |
| VCH046304 | 039662 | VOUCHER | 2/7/01 | 43.91 | 0.00 | 0.00 | 43.91 | 0.00 | 72 |
| VCH047670 | 040243 | VOUCHER | 3/9/01 | 35.97 | 0.00 | 35.97 | 0.00 | 0.00 | 42 |
| **Vendor : One Stop  Home  US** | | **Totals:** | | 131.71 | 0.00 | 35.97 | 43.91 | 51.83 | |
| **Vendor :** | One Workplac | | | | | | | | |
| | One Workplace L. Ferrari | | | | | | | | |
| VCH042883 | 62607 | VOUCHER | 11/13/00 | 78,410.06 | 0.00 | 0.00 | 0.00 | 78,410.06 | 158 |
| VCH042884 | 61359 | VOUCHER | 11/3/00 | 1,433.57 | 0.00 | 0.00 | 0.00 | 1,433.57 | 168 |
| VCH042885 | 62313 | VOUCHER | 11/9/00 | 4,305.60 | 0.00 | 0.00 | 0.00 | 4,305.60 | 162 |
| VCH042886 | 61495 | VOUCHER | 11/3/00 | 35,821.65 | 0.00 | 0.00 | 0.00 | 35,821.65 | 168 |
| VCH042887 | 61472 | VOUCHER | 11/3/00 | 29,517.39 | 0.00 | 0.00 | 0.00 | 29,517.39 | 168 |
| VCH042868 | 61249 | VOUCHER | 11/3/00 | 10,327.00 | 0.00 | 0.00 | 0.00 | 10,327.00 | 168 |
| VCH042870 | 62084 | VOUCHER | 11/8/00 | 59,541.72 | 0.00 | 0.00 | 0.00 | 59,541.72 | 163 |
| VCH042871 | 62083 | VOUCHER | 11/8/00 | 67,912.59 | 0.00 | 0.00 | 0.00 | 67,912.59 | 163 |
| VCH042873 | 61941 | VOUCHER | 11/8/00 | 84.44 | 0.00 | 0.00 | 0.00 | 84.44 | 163 |
| VCH042875 | 61940 | VOUCHER | 11/8/00 | 3,180.66 | 0.00 | 0.00 | 0.00 | 3,180.66 | 163 |
| VCH042877 | 61939 | VOUCHER | 11/8/00 | 10,356.93 | 0.00 | 0.00 | 0.00 | 10,356.93 | 163 |
| VCH042879 | 61938 | VOUCHER | 11/8/00 | 3,480.35 | 0.00 | 0.00 | 0.00 | 3,480.35 | 163 |
| VCH042881 | 62278 | VOUCHER | 11/9/00 | 74,051.88 | 0.00 | 0.00 | 0.00 | 74,051.88 | 162 |
| VCH042882 | 62276 | VOUCHER | 11/9/00 | 4,166.65 | 0.00 | 0.00 | 0.00 | 4,166.65 | 162 |
| VCH042884 | 62279 | VOUCHER | 11/9/00 | 3,294.26 | 0.00 | 0.00 | 0.00 | 3,294.26 | 162 |
| VCH045168 | 73234 | VOUCHER | 1/8/01 | 3,954.43 | 0.00 | 0.00 | 0.00 | 3,954.43 | 102 |
| VCH045169 | 65366 | VOUCHER | 11/28/00 | 17,760.25 | 0.00 | 0.00 | 0.00 | 17,760.25 | 143 |
| VCH045171 | 64430 | VOUCHER | 11/22/00 | 6,475.84 | 0.00 | 0.00 | 0.00 | 6,475.84 | 149 |

**B - 221**

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 31

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | One Workplac | One Workplace L. Ferrari | | | - Continued... | | | | |
| VCH045172 | 63049 | VOUCHER | 11/15/00 | 2,261.88 | 0.00 | 0.00 | 0.00 | 2,261.88 | 156 |
| VCH045173 | 65893 | VOUCHER | 11/29/00 | 67,151.75 | 0.00 | 0.00 | 0.00 | 67,151.75 | 142 |
| VCH045174 | 65892 | VOUCHER | 11/29/00 | 262.18 | 0.00 | 0.00 | 0.00 | 262.18 | 142 |
| VCH045175 | 65891 | VOUCHER | 11/29/00 | 92.54 | 0.00 | 0.00 | 0.00 | 92.54 | 142 |
| VCH045176 | 66150 | VOUCHER | 11/29/00 | 3,769.81 | 0.00 | 0.00 | 0.00 | 3,769.81 | 142 |
| VCH045177 | 66930 | VOUCHER | 11/30/00 | 3,769.81 | 0.00 | 0.00 | 0.00 | 3,769.81 | 141 |
| VCH045178 | 66929 | VOUCHER | 11/30/00 | 2,261.88 | 0.00 | 0.00 | 0.00 | 2,261.88 | 141 |
| VCH045179 | 66675 | VOUCHER | 11/30/00 | 16,195.39 | 0.00 | 0.00 | 0.00 | 16,195.39 | 141 |
| VCH045180 | 64429 | VOUCHER | 11/22/00 | 60,737.45 | 0.00 | 0.00 | 0.00 | 60,737.45 | 149 |
| VCH045181 | 64428 | VOUCHER | 11/22/00 | 53,676.36 | 0.00 | 0.00 | 0.00 | 53,676.36 | 149 |
| VCH045182 | 64433 | VOUCHER | 11/22/00 | 43,754.76 | 0.00 | 0.00 | 0.00 | 43,754.76 | 149 |
| VCH045183 | 64434 | VOUCHER | 11/22/00 | 21,016.09 | 0.00 | 0.00 | 0.00 | 21,016.09 | 149 |
| VCH045184 | 65367 | VOUCHER | 11/28/00 | 22,535.11 | 0.00 | 0.00 | 0.00 | 22,535.11 | 143 |
| VCH045185 | 63707 | VOUCHER | 11/17/00 | 7,492.74 | 0.00 | 0.00 | 0.00 | 7,492.74 | 154 |
| VCH045186 | 63706 | VOUCHER | 11/17/00 | 20,352.79 | 0.00 | 0.00 | 0.00 | 20,352.79 | 154 |
| VCH045187 | 64432 | VOUCHER | 11/22/00 | 11,682.77 | 0.00 | 0.00 | 0.00 | 11,682.77 | 149 |
| VCH045190 | 64431 | VOUCHER | 11/22/00 | 4,197.83 | 0.00 | 0.00 | 0.00 | 4,197.83 | 149 |
| VCH045191 | 64427 | VOUCHER | 11/22/00 | 34,853.27 | 0.00 | 0.00 | 0.00 | 34,853.27 | 149 |
| VCH045192 | 65029 | VOUCHER | 11/27/00 | 5,186.04 | 0.00 | 0.00 | 0.00 | 5,186.04 | 144 |
| VCH045193 | 65030 | VOUCHER | 11/27/00 | 3,006.75 | 0.00 | 0.00 | 0.00 | 3,006.75 | 144 |
| VCH045195 | 65033 | VOUCHER | 11/27/00 | 1,017.45 | 0.00 | 0.00 | 0.00 | 1,017.45 | 144 |
| VCH045196 | 67263 | VOUCHER | 12/5/00 | 3,551.57 | 0.00 | 0.00 | 0.00 | 3,551.57 | 136 |
| VCH045197 | 67262 | VOUCHER | 12/5/00 | 1,745.86 | 0.00 | 0.00 | 0.00 | 1,745.86 | 136 |
| VCH045198 | 67261 | VOUCHER | 12/5/00 | 5,659.62 | 0.00 | 0.00 | 0.00 | 5,659.62 | 136 |
| VCH045199 | 65369 | VOUCHER | 11/28/00 | 12,417.63 | 0.00 | 0.00 | 0.00 | 12,417.63 | 143 |
| VCH045200 | 64033 | VOUCHER | 11/20/00 | 8,525.07 | 0.00 | 0.00 | 0.00 | 8,525.07 | 151 |
| VCH045202 | 63705 | VOUCHER | 11/17/00 | 1,922.41 | 0.00 | 0.00 | 0.00 | 1,922.41 | 154 |
| VCH045203 | 64032 | VOUCHER | 11/20/00 | 47,193.81 | 0.00 | 0.00 | 0.00 | 47,193.81 | 151 |
| VCH045204 | 64034 | VOUCHER | 11/20/00 | 39,377.62 | 0.00 | 0.00 | 0.00 | 39,377.62 | 151 |
| VCH045205 | 65372 | VOUCHER | 11/28/00 | 7,901.44 | 0.00 | 0.00 | 0.00 | 7,901.44 | 143 |
| VCH045206 | 65371 | VOUCHER | 11/28/00 | 15,482.35 | 0.00 | 0.00 | 0.00 | 15,482.35 | 143 |
| VCH045207 | 65370 | VOUCHER | 11/28/00 | 30,247.32 | 0.00 | 0.00 | 0.00 | 30,247.32 | 143 |
| VCH045208 | 63386 | VOUCHER | 11/15/00 | 2,122.63 | 0.00 | 0.00 | 0.00 | 2,122.63 | 156 |
| VCH045209 | 63055 | VOUCHER | 11/15/00 | 15,005.62 | 0.00 | 0.00 | 0.00 | 15,005.62 | 156 |
| VCH045213 | 64035 | VOUCHER | 11/20/00 | 2,065.63 | 0.00 | 0.00 | 0.00 | 2,065.63 | 151 |
| VCH045214 | 65032 | VOUCHER | 11/27/00 | 15,085.77 | 0.00 | 0.00 | 0.00 | 15,085.77 | 144 |
| VCH045215 | 65031 | VOUCHER | 11/27/00 | 4,849.55 | 0.00 | 0.00 | 0.00 | 4,849.55 | 144 |
| VCH045217 | 65897 | VOUCHER | 11/29/00 | 1,719.91 | 0.00 | 0.00 | 0.00 | 1,719.91 | 142 |
| VCH045219 | 65896 | VOUCHER | 11/29/00 | 36,910.59 | 0.00 | 0.00 | 0.00 | 36,910.59 | 142 |
| VCH045221 | 65895 | VOUCHER | 11/29/00 | 390.94 | 0.00 | 0.00 | 0.00 | 390.94 | 142 |
| VCH045222 | 65894 | VOUCHER | 11/29/00 | 35,369.12 | 0.00 | 0.00 | 0.00 | 35,369.12 | 142 |
| VCH045224 | 63746 | VOUCHER | 11/17/00 | 7,141.64 | 0.00 | 0.00 | 0.00 | 7,141.64 | 154 |
| VCH045226 | 67292 | VOUCHER | 12/5/00 | 7,878.80 | 0.00 | 0.00 | 0.00 | 7,878.80 | 136 |
| VCH045228 | 64079 | VOUCHER | 11/20/00 | 1,285.20 | 0.00 | 0.00 | 0.00 | 1,285.20 | 151 |
| VCH045229 | 65944 | VOUCHER | 11/29/00 | 602.13 | 0.00 | 0.00 | 0.00 | 602.13 | 142 |
| VCH045232 | 63124 | VOUCHER | 11/15/00 | 8,255.25 | 0.00 | 0.00 | 0.00 | 8,255.25 | 156 |
| VCH045233 | 65460 | VOUCHER | 11/28/00 | 42,445.40 | 0.00 | 0.00 | 0.00 | 42,445.40 | 143 |
| VCH047186 | 82968 | VOUCHER | 2/21/01 | 13,807.00 | 0.00 | 13,807.00 | 0.00 | 0.00 | 58 |
| VCH047187 | 68040 | VOUCHER | 12/8/00 | 101,052.41 | 0.00 | 0.00 | 0.00 | 101,052.41 | 133 |
| VCH047188 | 68575 | VOUCHER | 12/13/00 | 557.62 | 0.00 | 0.00 | 0.00 | 557.62 | 128 |
| VCH047190 | 75874 | VOUCHER | 1/22/01 | 4,445.00 | 0.00 | 0.00 | 4,445.00 | 0.00 | 88 |
| VCH047191 | 73230 | VOUCHER | 1/8/01 | 5,272.57 | 0.00 | 0.00 | 0.00 | 5,272.57 | 102 |
| VCH047192 | 77304 | VOUCHER | 1/30/01 | 1,013.37 | 0.00 | 0.00 | 1,013.37 | 0.00 | 80 |
| VCH047193 | 67855 | VOUCHER | 12/8/00 | 161.02 | 0.00 | 0.00 | 0.00 | 161.02 | 133 |
| VCH047194 | 73231 | VOUCHER | 1/8/01 | 31,635.42 | 0.00 | 0.00 | 0.00 | 31,635.42 | 102 |
| VCH047195 | 73496 | VOUCHER | 1/10/01 | 9,622.80 | 0.00 | 0.00 | 0.00 | 9,622.80 | 100 |
| VCH047196 | 75001 | VOUCHER | 1/17/01 | 6,216.50 | 0.00 | 0.00 | 0.00 | 6,216.50 | 93 |
| VCH047197 | 1095 | VOUCHER | 2/21/01 | 49,289.36 | 0.00 | 49,289.36 | 0.00 | 0.00 | 58 |
| VCH047198 | 73232 | VOUCHER | 1/8/01 | 9,227.00 | 0.00 | 0.00 | 0.00 | 9,227.00 | 102 |
| VCH047199 | 61698 | VOUCHER | 11/6/00 | 14,519.63 | 0.00 | 0.00 | 0.00 | 14,519.63 | 165 |
| VCH047201 | 73233 | VOUCHER | 1/8/01 | 30,317.28 | 0.00 | 0.00 | 0.00 | 30,317.28 | 102 |
| VCH047202 | 73497 | VOUCHER | 1/10/01 | 6,577.20 | 0.00 | 0.00 | 0.00 | 6,577.20 | 100 |
| VCH047203 | 77306 | VOUCHER | 1/30/01 | 8,329.84 | 0.00 | 0.00 | 8,329.84 | 0.00 | 80 |
| VCH047205 | 77307 | VOUCHER | 1/30/01 | 661.05 | 0.00 | 0.00 | 661.05 | 0.00 | 80 |
| VCH047206 | 73235 | VOUCHER | 1/8/01 | 2,636.29 | 0.00 | 0.00 | 0.00 | 2,636.29 | 102 |
| VCH047207 | 77305 | VOUCHER | 1/30/01 | 1,101.75 | 0.00 | 0.00 | 1,101.75 | 0.00 | 80 |
| VCH047208 | 73236 | VOUCHER | 1/8/01 | 5,272.57 | 0.00 | 0.00 | 0.00 | 5,272.57 | 102 |
| VCH047209 | 77309 | VOUCHER | 1/30/01 | 969.78 | 0.00 | 0.00 | 969.78 | 0.00 | 80 |

B - 222

000088

4/20/01
2:36:11PM

# Aged Payables By: Branch Code/Vendor Code
## Quintus Corporation
### Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | Default Branch Code | | | - Continued... | | | | | |
| **Vendor:** One Workplac | | | | - Continued... | | | | | |
| One Workplace L. Ferrari | | | | | | | | | |
| VCH047210 | 61699 | VOUCHER | 11/6/00 | 11,894.40 | 0.00 | 0.00 | 0.00 | 11,894.40 | 165 |
| VCH047211 | 69864 | VOUCHER | 12/19/00 | 868.65 | 0.00 | 0.00 | 0.00 | 868.65 | 122 |
| VCH047212 | 73237 | VOUCHER | 1/8/01 | 25,044.71 | 0.00 | 0.00 | 0.00 | 25,044.71 | 102 |
| VCH047215 | 73496 | VOUCHER | 1/10/01 | 10,035.90 | 0.00 | 0.00 | 0.00 | 10,035.90 | 100 |
| VCH047216 | 77310 | VOUCHER | 1/30/01 | 4,953.42 | 0.00 | 0.00 | 4,953.42 | 0.00 | 80 |
| VCH047217 | 68920 | VOUCHER | 12/13/00 | 34,385.56 | 0.00 | 0.00 | 0.00 | 34,385.56 | 128 |
| VCH047218 | 69169 | VOUCHER | 12/15/00 | 159.89 | 0.00 | 0.00 | 0.00 | 159.89 | 126 |
| VCH047219 | 73238 | VOUCHER | 1/8/01 | 18,769.05 | 0.00 | 0.00 | 0.00 | 18,769.05 | 102 |
| VCH047220 | 73499 | VOUCHER | 1/10/01 | 8,868.80 | 0.00 | 0.00 | 0.00 | 8,868.80 | 100 |
| VCH047221 | 74830 | VOUCHER | 1/18/01 | 4,759.56 | 0.00 | 0.00 | 0.00 | 4,759.56 | 94 |
| VCH047223 | 77311 | VOUCHER | 1/30/01 | 1,424.30 | 0.00 | 0.00 | 1,424.30 | 0.00 | 80 |
| VCH047224 | 68196 | VOUCHER | 12/11/00 | 250,750.57 | 0.00 | 0.00 | 0.00 | 250,750.57 | 130 |
| VCH047227 | 68518 | VOUCHER | 12/13/00 | 55,833.60 | 0.00 | 0.00 | 0.00 | 55,833.60 | 128 |
| VCH047228 | 69170 | VOUCHER | 12/15/00 | 16,596.67 | 0.00 | 0.00 | 0.00 | 16,596.67 | 126 |
| VCH047229 | 69865 | VOUCHER | 12/19/00 | 100,453.98 | 0.00 | 0.00 | 0.00 | 100,453.98 | 122 |
| VCH047230 | 70130 | VOUCHER | 12/20/00 | 12,121.06 | 0.00 | 0.00 | 0.00 | 12,121.06 | 121 |
| VCH047231 | 70522 | VOUCHER | 12/22/00 | 1,344.51 | 0.00 | 0.00 | 0.00 | 1,344.51 | 119 |
| VCH047232 | 70977 | VOUCHER | 12/26/00 | 8,576.65 | 0.00 | 0.00 | 0.00 | 8,576.65 | 115 |
| VCH047234 | 72148 | VOUCHER | 12/28/00 | 3,345.34 | 0.00 | 0.00 | 0.00 | 3,345.34 | 113 |
| VCH047236 | 72518 | VOUCHER | 12/29/00 | 63,306.19 | 0.00 | 0.00 | 0.00 | 63,306.19 | 112 |
| VCH047238 | 73239 | VOUCHER | 1/8/01 | 39,274.71 | 0.00 | 0.00 | 0.00 | 39,274.71 | 102 |
| VCH047239 | 73500 | VOUCHER | 1/10/01 | 10,611.00 | 0.00 | 0.00 | 0.00 | 10,611.00 | 100 |
| VCH047241 | 76040 | VOUCHER | 1/24/01 | 2,648.16 | 0.00 | 0.00 | 2,648.16 | 0.00 | 86 |
| VCH047242 | 1115 | VOUCHER | 2/21/01 | 20,366.60 | 0.00 | 20,366.60 | 0.00 | 0.00 | 58 |
| VCH047243 | 1105 | VOUCHER | 2/21/01 | 1,831.33 | 0.00 | 1,831.33 | 0.00 | 0.00 | 58 |
| VCH047244 | 69171 | VOUCHER | 12/15/00 | 10,643.68 | 0.00 | 0.00 | 0.00 | 10,643.68 | 126 |
| VCH047246 | 61710 | VOUCHER | 11/6/00 | 33.20 | 0.00 | 0.00 | 0.00 | 33.20 | 165 |
| VCH047247 | 67607 | VOUCHER | 12/6/00 | 22,489.92 | 0.00 | 0.00 | 0.00 | 22,489.92 | 135 |
| VCH047248 | 67888 | VOUCHER | 12/8/00 | 12,447.80 | 0.00 | 0.00 | 0.00 | 12,447.80 | 133 |
| VCH047250 | 68932 | VOUCHER | 12/13/00 | 4,827.80 | 0.00 | 0.00 | 0.00 | 4,827.80 | 128 |
| VCH047251 | 73257 | VOUCHER | 1/8/01 | 2,080.00 | 0.00 | 0.00 | 0.00 | 2,080.00 | 102 |
| VCH047252 | 73673 | VOUCHER | 1/12/01 | 5,912.50 | 0.00 | 0.00 | 0.00 | 5,912.50 | 98 |
| VCH047253 | 74842 | VOUCHER | 1/16/01 | 300.00 | 0.00 | 0.00 | 0.00 | 300.00 | 94 |
| VCH047254 | 1102 | VOUCHER | 2/21/01 | 20,533.29 | 0.00 | 20,533.29 | 0.00 | 0.00 | 58 |
| VCH047255 | 1096 | VOUCHER | 2/21/01 | 43,407.18 | 0.00 | 43,407.18 | 0.00 | 0.00 | 58 |
| VCH047256 | 82594 | VOUCHER | 2/21/01 | 65,655.61 | 0.00 | 65,655.61 | 0.00 | 0.00 | 58 |
| VCH047257 | 1108 | VOUCHER | 2/21/01 | 2,131.50 | 0.00 | 2,131.50 | 0.00 | 0.00 | 58 |
| VCH047258 | 1101 | VOUCHER | 2/21/01 | 986.00 | 0.00 | 986.00 | 0.00 | 0.00 | 58 |
| VCH047259 | 1111 | VOUCHER | 2/21/01 | 375.84 | 0.00 | 375.84 | 0.00 | 0.00 | 58 |
| VCH047260 | 1117 | VOUCHER | 2/21/01 | 1,053.00 | 0.00 | 1,053.00 | 0.00 | 0.00 | 58 |
| **Vendor: One Workpl Home US** | | **Totals:** | | **2,358,070.21** | **0.00** | **219,438.71** | **25,546.67** | **2,111,066.83** | |
| **Vendor: PA Departmen** | | | | | | | | | |
| PA Department Of Revenue | | | | | | | | | |
| VCH047662 | Q4FY01Sales Ta | VOUCHER | 4/19/01 | 2,012.17 | 2,012.17 | 0.00 | 0.00 | 0.00 | 1 |
| **Vendor: PA Departm Home US** | | **Totals:** | | **2,012.17** | **2,012.17** | **0.00** | **0.00** | **0.00** | |
| **Vendor: Pacific Be** | | | | | | | | | |
| Pacific Bell | | | | | | | | | |
| VCH046144 | 510-226-0187 | VOUCHER | 1/31/01 | 92.16 | 0.00 | 0.00 | 92.16 | 0.00 | 79 |
| VCH046145 | 232-271-3555 | VOUCHER | 1/31/01 | 149.23 | 0.00 | 0.00 | 149.23 | 0.00 | 79 |
| VCH046146 | 2322713554 | VOUCHER | 1/31/01 | 149.19 | 0.00 | 0.00 | 149.19 | 0.00 | 79 |
| VCH046147 | 232-271-3553 | VOUCHER | 1/31/01 | 149.23 | 0.00 | 0.00 | 149.23 | 0.00 | 79 |
| VCH046150 | 925828-9268-2/2 | VOUCHER | 2/2/01 | 2,975.76 | 0.00 | 0.00 | 2,975.76 | 0.00 | 77 |
| VCH046151 | 9254799003-2/2 | VOUCHER | 2/2/01 | 1,110.85 | 0.00 | 0.00 | 1,110.85 | 0.00 | 77 |
| VCH046152 | 9258281082-2/2 | VOUCHER | 2/2/01 | 39.79 | 0.00 | 0.00 | 39.79 | 0.00 | 77 |
| VCH046153 | 9258281379-2/2 | VOUCHER | 2/2/01 | 37.79 | 0.00 | 0.00 | 37.79 | 0.00 | 77 |
| VCH046154 | 9258281210-2/2 | VOUCHER | 2/2/01 | 37.79 | 0.00 | 0.00 | 37.79 | 0.00 | 77 |
| VCH046155 | 9254792000-2/2 | VOUCHER | 2/2/01 | 3,811.80 | 0.00 | 0.00 | 3,811.80 | 0.00 | 77 |
| VCH046156 | 9258286061-2/2 | VOUCHER | 2/2/01 | 37.79 | 0.00 | 0.00 | 37.79 | 0.00 | 77 |
| VCH046157 | 9258289154-2/2 | VOUCHER | 2/2/01 | 549.48 | 0.00 | 0.00 | 549.48 | 0.00 | 77 |
| VCH046158 | 9258284659 | VOUCHER | 2/2/01 | 48.75 | 0.00 | 0.00 | 48.75 | 0.00 | 77 |
| VCH046159 | 9258285212-2/2 | VOUCHER | 2/2/01 | 34.94 | 0.00 | 0.00 | 34.94 | 0.00 | 77 |
| VCH046160 | 9258281029 | VOUCHER | 2/2/01 | 34.94 | 0.00 | 0.00 | 34.94 | 0.00 | 77 |
| VCH046161 | 925-8284706-2/: | VOUCHER | 2/2/01 | 49.41 | 0.00 | 0.00 | 49.41 | 0.00 | 77 |

4/20/01
2:36:11PM

## Aged Payables By: Branch Code/Vendor Code
### Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No     Include Trxs Paid In Full: No

Page 33

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | | - Continued... | | | |
| Vendor: | Pacific Be Pacific Bell | | | | | - Continued... | | | |
| VCH046162 | 9258285084-2/2 | VOUCHER | 2/2/01 | 41.52 | 0.00 | 0.00 | 41.52 | 0.00 | 77 |
| VCH046163 | 9254799002-2/2 | VOUCHER | 2/2/01 | 86.27 | 0.00 | 0.00 | 86.27 | 0.00 | 77 |
| VCH046164 | 9254791300-2/2 | VOUCHER | 2/2/01 | 265.02 | 0.00 | 0.00 | 265.02 | 0.00 | 77 |
| VCH046165 | 9258282687-2/2 | VOUCHER | 2/2/01 | 41.96 | 0.00 | 0.00 | 41.96 | 0.00 | 77 |
| VCH046166 | 9258281927-2/2 | VOUCHER | 2/2/01 | 37.79 | 0.00 | 0.00 | 37.79 | 0.00 | 77 |
| VCH046167 | 9258261648-2/2 | VOUCHER | 2/2/01 | 37.79 | 0.00 | 0.00 | 37.79 | 0.00 | 77 |
| VCH046168 | 9608322147-2/1 | VOUCHER | 2/1/01 | 1,301.11 | 0.00 | 0.00 | 1,301.11 | 0.00 | 77 |
| VCH046169 | 5104903624-2/1 | VOUCHER | 2/1/01 | 56.15 | 0.00 | 0.00 | 56.15 | 0.00 | 78 |
| VCH046170 | 9257439523-1/1 | VOUCHER | 1/11/01 | 98.01 | 0.00 | 0.00 | 98.01 | 0.00 | 99 |
| VCH046171 | 5106242920-1/1 | VOUCHER | 1/13/01 | 138.74 | 0.00 | 0.00 | 138.74 | 0.00 | 97 |
| VCH046172 | 2322713554-1/7 | VOUCHER | 1/7/01 | 339.69 | 0.00 | 0.00 | 339.69 | 0.00 | 103 |
| VCH046173 | 2322713555-1/7 | VOUCHER | 1/7/01 | 339.69 | 0.00 | 0.00 | 339.69 | 0.00 | 103 |
| VCH046174 | 5106242880-1/1 | VOUCHER | 1/13/01 | 331.96 | 0.00 | 0.00 | 331.96 | 0.00 | 97 |
| VCH046175 | 2322713553-1/7 | VOUCHER | 1/7/01 | 337.69 | 0.00 | 0.00 | 337.69 | 0.00 | 103 |
| VCH046176 | 5106242623-1/1 | VOUCHER | 1/13/01 | 56.72 | 0.00 | 0.00 | 56.72 | 0.00 | 97 |
| VCH046177 | 5106248739-1/1 | VOUCHER | 1/13/01 | 37.29 | 0.00 | 0.00 | 37.29 | 0.00 | 97 |
| VCH046178 | 5106248741-1/1 | VOUCHER | 1/13/01 | 55.76 | 0.00 | 0.00 | 55.76 | 0.00 | 97 |
| VCH046179 | 5106242900-1/1 | VOUCHER | 1/13/01 | 137.97 | 0.00 | 0.00 | 137.97 | 0.00 | 97 |
| VCH046180 | 5106242943-1/1 | VOUCHER | 1/13/01 | 55.76 | 0.00 | 0.00 | 55.76 | 0.00 | 97 |
| VCH046184 | 5106242931-1/1 | VOUCHER | 1/13/01 | 42.33 | 0.00 | 0.00 | 42.33 | 0.00 | 97 |
| VCH046185 | 5106242911-1/1 | VOUCHER | 1/13/01 | 131.95 | 0.00 | 0.00 | 131.95 | 0.00 | 97 |
| VCH046186 | 5106242862-1/1 | VOUCHER | 1/13/01 | 39.47 | 0.00 | 0.00 | 39.47 | 0.00 | 97 |
| VCH046187 | 5106242895-1/1 | VOUCHER | 1/13/01 | 38.10 | 0.00 | 0.00 | 38.10 | 0.00 | 97 |
| VCH046188 | 5106242800-1/1 | VOUCHER | 1/13/01 | 368.21 | 0.00 | 0.00 | 368.21 | 0.00 | 97 |
| VCH046279 | 5106242920-2/1 | VOUCHER | 2/13/01 | 136.96 | 0.00 | 0.00 | 136.96 | 0.00 | 66 |
| VCH046280 | 5106242895-2/1 | VOUCHER | 2/13/01 | 38.45 | 0.00 | 0.00 | 38.45 | 0.00 | 66 |
| VCH046302 | 2323710704-2/7 | VOUCHER | 2/7/01 | 3,535.93 | 0.00 | 0.00 | 3,535.93 | 0.00 | 72 |
| VCH046303 | 2322713595-2/7 | VOUCHER | 2/7/01 | 2,174.14 | 0.00 | 0.00 | 2,174.14 | 0.00 | 72 |
| VCH046308 | 5106242880-2/1 | VOUCHER | 2/13/01 | 320.80 | 0.00 | 0.00 | 320.80 | 0.00 | 66 |
| VCH046309 | 2323710300-2/7 | VOUCHER | 2/7/01 | 3,538.94 | 0.00 | 0.00 | 3,538.94 | 0.00 | 72 |
| VCH046319 | 5106242800-2/1 | VOUCHER | 2/13/01 | 351.61 | 0.00 | 0.00 | 351.61 | 0.00 | 66 |
| VCH046495 | 5106242862/Fet | VOUCHER | 2/13/01 | 38.15 | 0.00 | 0.00 | 38.15 | 0.00 | 66 |
| VCH046498 | 5106242911/Fet | VOUCHER | 2/13/01 | 129.22 | 0.00 | 0.00 | 129.22 | 0.00 | 66 |
| VCH046500 | 5106242931Feb | VOUCHER | 2/13/01 | 19.84 | 0.00 | 0.00 | 19.84 | 0.00 | 66 |
| VCH046502 | 5106242943/Fet | VOUCHER | 2/13/01 | 55.44 | 0.00 | 0.00 | 55.44 | 0.00 | 66 |
| VCH046503 | 5106242980/Fet | VOUCHER | 2/13/01 | 129.15 | 0.00 | 0.00 | 129.15 | 0.00 | 66 |
| VCH046505 | 5106248739 | VOUCHER | 2/13/01 | 37.04 | 0.00 | 0.00 | 37.04 | 0.00 | 66 |
| VCH046507 | 5106248741 | VOUCHER | 2/13/01 | 55.44 | 0.00 | 0.00 | 55.44 | 0.00 | 66 |
| VCH046508 | 5106242823 | VOUCHER | 2/13/01 | 56.04 | 0.00 | 0.00 | 56.04 | 0.00 | 66 |
| VCH046668 | 5107701377-2/2 | VOUCHER | 2/26/01 | 50.12 | 0.00 | 50.12 | 0.00 | 0.00 | 53 |
| VCH046671 | 9258289154-3/2 | VOUCHER | 2/28/01 | 398.17 | 0.00 | 398.17 | 0.00 | 0.00 | 51 |
| VCH046672 | 9258286061-3/2 | VOUCHER | 2/28/01 | 26.94 | 0.00 | 26.94 | 0.00 | 0.00 | 51 |
| VCH046673 | 9258282887-3/2 | VOUCHER | 2/28/01 | 26.94 | 0.00 | 26.94 | 0.00 | 0.00 | 51 |
| VCH046674 | 9258281210-3/2 | VOUCHER | 2/28/01 | 26.94 | 0.00 | 26.94 | 0.00 | 0.00 | 51 |
| VCH046675 | 9258281927-3/2 | VOUCHER | 2/28/01 | 27.37 | 0.00 | 27.37 | 0.00 | 0.00 | 51 |
| VCH046676 | 9258281648-3/2 | VOUCHER | 2/28/01 | 27.37 | 0.00 | 27.37 | 0.00 | 0.00 | 51 |
| VCH046677 | 9258281379-3/2 | VOUCHER | 3/2/01 | 27.37 | 0.00 | 27.37 | 0.00 | 0.00 | 49 |
| VCH046678 | 9258281062-3/2 | VOUCHER | 2/28/01 | 27.37 | 0.00 | 27.37 | 0.00 | 0.00 | 51 |
| VCH046679 | 9258281029-3/2 | VOUCHER | 3/2/01 | 25.27 | 0.00 | 25.27 | 0.00 | 0.00 | 49 |
| VCH046680 | 9258265212-3/2 | VOUCHER | 3/2/01 | 25.27 | 0.00 | 25.27 | 0.00 | 0.00 | 49 |
| VCH046681 | 9258285084-3/2 | VOUCHER | 3/2/01 | 25.37 | 0.00 | 25.37 | 0.00 | 0.00 | 49 |
| VCH046682 | 9258284859-3/2 | VOUCHER | 2/28/01 | 25.48 | 0.00 | 25.48 | 0.00 | 0.00 | 51 |
| VCH046683 | 9258284706-3/2 | VOUCHER | 3/2/01 | 25.49 | 0.00 | 25.49 | 0.00 | 0.00 | 49 |
| VCH046684 | 9256403668-3/5 | VOUCHER | 3/5/01 | 10.57 | 0.00 | 10.57 | 0.00 | 0.00 | 46 |
| VCH046685 | 2322713595-3/7 | VOUCHER | 3/7/01 | 362.61 | 0.00 | 362.61 | 0.00 | 0.00 | 44 |
| VCH046686 | 2323710704-3/7 | VOUCHER | 3/7/01 | 362.61 | 0.00 | 362.61 | 0.00 | 0.00 | 44 |
| VCH046687 | 2323710300-3/7 | VOUCHER | 3/7/01 | 923.02 | 0.00 | 923.02 | 0.00 | 0.00 | 44 |
| VCH046688 | 9254791300-3/2 | VOUCHER | 3/2/01 | 27.33 | 0.00 | 27.33 | 0.00 | 0.00 | 49 |
| VCH046689 | 9254799002-3/2 | VOUCHER | 3/2/01 | 9.39 | 0.00 | 9.39 | 0.00 | 0.00 | 49 |
| VCH046691 | 9254799003-3/2 | VOUCHER | 3/2/01 | 206.28 | 0.00 | 206.28 | 0.00 | 0.00 | 49 |
| VCH046692 | 9254792000-3/2 | VOUCHER | 3/2/01 | 540.84 | 0.00 | 540.84 | 0.00 | 0.00 | 49 |
| VCH046701 | 9258289269 | VOUCHER | 3/2/01 | 2,177.15 | 0.00 | 2,177.15 | 0.00 | 0.00 | 49 |
| VCH046729 | 9257439523-2/1 | VOUCHER | 2/16/01 | 79.07 | 0.00 | 0.00 | 79.07 | 0.00 | 63 |
| VCH046737 | 5107700948-2/2 | VOUCHER | 2/26/01 | 628.84 | 0.00 | 628.84 | 0.00 | 0.00 | 53 |
| VCH046738 | 5107701792 | VOUCHER | 2/26/01 | 78.69 | 0.00 | 78.69 | 0.00 | 0.00 | 53 |
| VCH047270 | 5106242800-pre | VOUCHER | 3/13/01 | 115.49 | 0.00 | 115.49 | 0.00 | 0.00 | 53 |
| VCH047271 | 5106242920-pre | VOUCHER | 3/13/01 | 50.82 | 0.00 | 50.82 | 0.00 | 0.00 | 38 |
| VCH047272 | 5106242880-pre | VOUCHER | 3/13/01 | 117.78 | 0.00 | 117.78 | 0.00 | 0.00 | 38 |

B - 224

107

000090

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 34

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | **Default Branch Code** | | | | - Continued... | | | | |
| **Vendor:** Pacific Be | | | | | - Continued... | | | | |
|  | Pacific Bell | | | | | | | | |
| VCH047273 | 5106242911-pre | VOUCHER | 3/13/01 | 47.92 | 0.00 | 47.92 | 0.00 | 0.00 | 38 |
| VCH047274 | 5106242931-pre | VOUCHER | 3/13/01 | 7.50 | 0.00 | 7.50 | 0.00 | 0.00 | 38 |
| VCH047275 | 5106242823-pre | VOUCHER | 3/13/01 | 20.76 | 0.00 | 20.76 | 0.00 | 0.00 | 38 |
| VCH047276 | 5106242943-pre | VOUCHER | 3/13/01 | 20.68 | 0.00 | 20.68 | 0.00 | 0.00 | 38 |
| VCH047277 | 5106242980-pre | VOUCHER | 3/13/01 | 48.01 | 0.00 | 48.01 | 0.00 | 0.00 | 38 |
| VCH047278 | 5106248739-pre | VOUCHER | 3/13/01 | 13.85 | 0.00 | 13.85 | 0.00 | 0.00 | 38 |
| VCH047279 | 5106248741-pre | VOUCHER | 3/13/01 | 20.57 | 0.00 | 20.57 | 0.00 | 0.00 | 38 |
| VCH047280 | 5106242862-pre | VOUCHER | 3/13/01 | 13.86 | 0.00 | 13.86 | 0.00 | 0.00 | 38 |
| VCH047281 | 5106242895-pre | VOUCHER | 3/13/01 | 13.97 | 0.00 | 13.97 | 0.00 | 0.00 | 38 |
| VCH047665 | 9258289269-4/2 | VOUCHER | 4/2/01 | 1,331.17 | 1,331.17 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047676 | 3106403668-4/5 | VOUCHER | 4/5/01 | 17.77 | 17.77 | 0.00 | 0.00 | 0.00 | 15 |
| VCH047691 | 2323710704-4/7 | VOUCHER | 4/7/01 | 834.91 | 834.91 | 0.00 | 0.00 | 0.00 | 13 |
| VCH047696 | 9254791300-4/2 | VOUCHER | 4/2/01 | 38.80 | 38.80 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047696 | 9254799002-4/2 | VOUCHER | 4/2/01 | 13.35 | 13.35 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047697 | 9258281379-4/2 | VOUCHER | 4/2/01 | 39.88 | 39.88 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047699 | 9258281648-4/2 | VOUCHER | 4/2/01 | 39.88 | 39.88 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047700 | 925-479-0987 | VOUCHER | 4/2/01 | 18.81 | 18.81 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047701 | 9254799003-4/2 | VOUCHER | 4/2/01 | 296.15 | 296.15 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047702 | 9258284706-4/2 | VOUCHER | 4/2/01 | 36.21 | 36.21 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047704 | 9258284859-4/2 | VOUCHER | 4/2/01 | 36.20 | 36.20 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047705 | 9258285084-4/2 | VOUCHER | 4/2/01 | 36.08 | 36.08 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047706 | 9258285212-4/2 | VOUCHER | 4/2/01 | 35.98 | 35.98 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047707 | 9258289154-4/2 | VOUCHER | 4/2/01 | 566.06 | 566.06 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047708 | 9258281082-4/2 | VOUCHER | 4/2/01 | 39.88 | 39.88 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047709 | 9258281210-4/2 | VOUCHER | 4/2/01 | 39.87 | 39.87 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047710 | 9258281927-4/2 | VOUCHER | 4/2/01 | 39.88 | 39.88 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047711 | 9258282887-4/2 | VOUCHER | 4/2/01 | 39.95 | 39.95 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047712 | 9258286061-4/2 | VOUCHER | 4/2/01 | 39.87 | 39.87 | 0.00 | 0.00 | 0.00 | 18 |
| VCH047713 | 9258281029-4/2 | VOUCHER | 4/2/01 | 35.98 | 35.98 | 0.00 | 0.00 | 0.00 | 18 |
| **Vendor: Pacific Be  Home  US** | | | **Totals:** | 34,582.78 | 3,576.68 | 6,586.01 | 21,872.75 | 2,547.34 | |
| **Vendor: Pacific Date** | | | | | | | | | |
|  | Pacific Data Group | | | | | | | | |
| DISB012482 | DB000317 | DB.MEMO | | (100.00) | 0.00 | 0.00 | 0.00 | (100.00) | |
| **Vendor: Pacific Date Home  US** | | | **Totals:** | (100.00) | 0.00 | 0.00 | 0.00 | (100.00) | |
| **Vendor: PBCC** | | | | | | | | | |
|  | PBCC | | | | | | | | |
| VCH045137 | 5281929-JA01 | VOUCHER | 1/24/01 | 3,204.49 | 0.00 | 0.00 | 3,204.49 | 0.00 | 86 |
| VCH047663 | 4937000-MR01 | VOUCHER | 3/24/01 | 426.12 | 426.12 | 0.00 | 0.00 | 0.00 | 27 |
| VCH047669 | 966304091 | VOUCHER | 3/24/01 | 164.90 | 164.90 | 0.00 | 0.00 | 0.00 | 27 |
| **Vendor: PBCC  Home  US** | | | **Totals:** | 3,795.51 | 591.02 | 0.00 | 3,204.49 | 0.00 | |
| **Vendor: Pener Marlo** | | | | | | | | | |
|  | Marlo Pener & Associates | | | | | | | | |
| VCH046334 | August 15, 2000 | VOUCHER | 8/15/00 | 19,000.00 | 0.00 | 0.00 | 0.00 | 19,000.00 | 248 |
| **Vendor: Pener Mark Home  US** | | | **Totals:** | 19,000.00 | 0.00 | 0.00 | 0.00 | 19,000.00 | |
| **Vendor: Penton Media** | | | | | | | | | |
|  | Penton Media, Inc. | | | | | | | | |
| VCH045373 | EBT-ECRM01-0 | VOUCHER | 4/10/00 | 44,955.00 | 0.00 | 0.00 | 0.00 | 44,955.00 | 375 |
| **Vendor: Penton Mec Home  US** | | | **Totals:** | 44,955.00 | 0.00 | 0.00 | 0.00 | 44,955.00 | |
| **Vendor: Perisho Tomb** | | | | | | | | | |
|  | Perisho Tombor Loomis & Ramirez | | | | | | | | |
| VCH046720 | LR18660 | VOUCHER | 2/25/01 | 491.75 | 0.00 | 491.75 | 0.00 | 0.00 | 54 |
| VCH047486 | LR18736 | VOUCHER | 3/25/01 | 275.00 | 275.00 | 0.00 | 0.00 | 0.00 | 26 |
| **Vendor: Perisho Tor Home  US** | | | **Totals:** | 766.75 | 275.00 | 491.75 | 0.00 | 0.00 | |

B - 225

**108**

4/20/01
2:36:11PM

## Aged Payables By: Branch Code/Vendor Code
### Quintus Corporation
#### Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | **Default Branch Code** | | | | - Continued... | | | | |
| **Vendor :** Pilot Netw | Pilot Network Services Inc. | | | | | | | | |
| DISB017064 | DB000449 | DB.MEMO | | (152.25) | 0.00 | 0.00 | 0.00 | (152.25) | |
| **Vendor :** Pilot Netw Home US | | Totals: | | (152.25) | 0.00 | 0.00 | 0.00 | (152.25) | |
| **Vendor :** Pinkerton | Pinkerton | | | | | | | | |
| VCH046735 | 756286 | VOUCHER | 2/23/01 | 3,560.00 | 0.00 | 3,560.00 | 0.00 | 0.00 | 56 |
| **Vendor :** Pinkerton Home US | | Totals: | | 3,560.00 | 0.00 | 3,560.00 | 0.00 | 0.00 | |
| **Vendor :** Pitney Bow02 | Pitney Bowes | | | | | | | | |
| VCH046724 | 506010 | VOUCHER | 2/9/01 | 135.44* | 0.00 | 0.00 | 135.44 | 0.00 | 70 |
| VCH047630 | 353086 | VOUCHER | 3/26/01 | 161.00 | 161.00 | 0.00 | 0.00 | 0.00 | 25 |
| **Vendor :** Pitney Bow Home US | | Totals: | | 296.44 | 161.00 | 0.00 | 135.44 | 0.00 | |
| **Vendor :** PlaceWare | PlaceWare | | | | | | | | |
| VCH046149 | 3010002367 | VOUCHER | 11/24/00 | 13,000.00 | 0.00 | 0.00 | 0.00 | 13,000.00 | 147 |
| VCH047732 | 3010000000P | VOUCHER | 3/29/01 | 16,000.00 | 16,000.00 | 0.00 | 0.00 | 0.00 | 22 |
| **Vendor :** PlaceWare Home US | | Totals: | | 29,000.00 | 16,000.00 | 0.00 | 0.00 | 13,000.00 | |
| **Vendor :** PlusOne | Plus One Computing Inc. | | | | | | | | |
| DISB034709 | plusone | CASHDISB | | (0.01) | 0.00 | 0.00 | 0.00 | (0.01) | |
| VCH047384 | 3016s | VOUCHER | 2/23/01 | 4,320.00 | 0.00 | 4,320.00 | 0.00 | 0.00 | 56 |
| VCH047716 | w/e 4/14/01 | VOUCHER | 4/17/01 | 798.37 | 798.37 | 0.00 | 0.00 | 0.00 | 3 |
| VCH047717 | w/e 4/7/01 | VOUCHER | 4/7/01 | 798.37 | 798.37 | 0.00 | 0.00 | 0.00 | 13 |
| VCH047718 | w/e 3/31/01 | VOUCHER | 4/17/01 | 771.92 | 771.92 | 0.00 | 0.00 | 0.00 | 3 |
| VCH047719 | w/e 3/24/01 | VOUCHER | 4/17/01 | 835.86 | 835.86 | 0.00 | 0.00 | 0.00 | 3 |
| VCH047720 | w/e 3/1/01 | VOUCHER | 4/17/01 | 146.29 | 146.29 | 0.00 | 0.00 | 0.00 | 3 |
| VCH047722 | 3021s | VOUCHER | 4/15/01 | 1,680.00 | 1,680.00 | 0.00 | 0.00 | 0.00 | 5 |
| VCH047723 | 3020 | VOUCHER | 4/15/01 | 6,533.33 | 6,533.33 | 0.00 | 0.00 | 0.00 | 5 |
| **Vendor :** PlusOne Home US | | Totals: | | 15,874.13 | 11,554.14 | 4,320.00 | 0.00 | (0.01) | |
| **Vendor :** Poland Sprin | Poland Spring Water | | | | | | | | |
| VCH045141 | 1A0424793669 | VOUCHER | 1/6/01 | 295.09 | 0.00 | 0.00 | 0.00 | 295.09 | 104 |
| VCH046143 | 01B0424793669 | VOUCHER | 2/6/01 | 307.34 | 0.00 | 0.00 | 307.34 | 0.00 | 73 |
| VCH046699 | 01C0424793669 | VOUCHER | 3/6/01 | 106.73 | 0.00 | 106.73 | 0.00 | 0.00 | 45 |
| VCH047734 | 1D0424793669 | VOUCHER | 4/6/01 | 177.31 | 177.31 | 0.00 | 0.00 | 0.00 | 14 |
| **Vendor :** Poland Spri Home US | | Totals: | | 886.47 | 177.31 | 106.73 | 307.34 | 295.09 | |
| **Vendor :** Price/Cost | Price/Costco,BNB USA | | | | | | | | |
| DISB011744 | DB000296 | DB.MEMO | | (284.90) | 0.00 | 0.00 | 0.00 | (284.90) | |
| **Vendor :** Price/Cost Home US | | Totals: | | (284.90) | 0.00 | 0.00 | 0.00 | (284.90) | |
| **Vendor :** Pritchett Ru | Pritchett Rummler-Brache | | | | | | | | |
| VCH046746 | PIV063812 | VOUCHER | 1/17/01 | 624.25 | 0.00 | 0.00 | 0.00 | 624.25 | 93 |
| VCH046747 | PIV063810 | VOUCHER | 1/17/01 | 261.16 | 0.00 | 0.00 | 0.00 | 261.16 | 93 |
| VCH046748 | PIV063808 | VOUCHER | 1/17/01 | 594.00 | 0.00 | 0.00 | 0.00 | 594.00 | 93 |
| **Vendor :** Pritchett Ru Home US | | Totals: | | 1,479.41 | 0.00 | 0.00 | 0.00 | 1,479.41 | |
| **Vendor :** ProgressiBu | Progressive Business Publications | | | | | | | | |

B - 226

## 109

Page 36

4/20/01
2:36:11PM

## Aged Payables By: Branch Code/Vendor Code
### Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | **Default Branch Code** | | | | - Continued... | | | | |
| **Vendor :** ProgressiBu | | | | | - Continued... | | | | |
| Progressive Business Publications | | | | | | | | | |
| VCH026099 | A12467430-A | VOUCHER | 11/21/99 | 299.00 | 0.00 | 0.00 | 0.00 | 299.00 | 516 |
| VCH045194 | 1811791 | VOUCHER | 1/20/01 | 299.00 | 0.00 | 0.00 | 299.00 | 0.00 | 90 |
| VCH046514 | 01811791 | VOUCHER | 2/16/01 | 299.00 | 0.00 | 0.00 | 299.00 | 0.00 | 63 |
| **Vendor :** ProgressiB Home  US | | **Totals:** | | **897.00** | **0.00** | **0.00** | **598.00** | **299.00** | |
| **Vendor :** Public stora | | | | | | | | | |
| Public Storage | | | | | | | | | |
| VCH047632 | C006-May rent | VOUCHER | 4/12/01 | 161.00 | 161.00 | 0.00 | 0.00 | 0.00 | 8 |
| VCH047633 | A016-May rent | VOUCHER | 4/12/01 | 179.00 | 179.00 | 0.00 | 0.00 | 0.00 | 8 |
| **Vendor :** Public stori Home  US | | **Totals:** | | **340.00** | **340.00** | **0.00** | **0.00** | **0.00** | |
| **Vendor :** Purchase P | | | | | | | | | |
| Purchase Power | | | | | | | | | |
| VCH045143 | 16096103862** | VOUCHER | 1/19/01 | 1,739.00 | 0.00 | 0.00 | 0.00 | 1,739.00 | 91 |
| VCH048146 | 18256097868-fe | VOUCHER | 2/8/01 | 212.85 | 0.00 | 0.00 | 212.85 | 0.00 | 73 |
| VCH046315 | 16096103862-2/ | VOUCHER | 2/20/00 | 2,020.00 | 0.00 | 0.00 | 0.00 | 2,020.00 | 425 |
| VCH047631 | 18256097868-4/ | VOUCHER | 4/5/01 | 54.48 | 54.48 | 0.00 | 0.00 | 0.00 | 15 |
| **Vendor :** Purchase P Home  US | | **Totals:** | | **4,026.33** | **54.48** | **0.00** | **212.85** | **3,759.00** | |
| **Vendor :** Qwest Commun | | | | | | | | | |
| Qwest Communications | | | | | | | | | |
| 45271 | 520665528 | VOUCHER | 1/23/01 | 10.41 | 0.00 | 0.00 | 10.41 | 0.00 | 87 |
| 48189 | 521144934-2/7 | VOUCHER | 2/7/01 | 16.61 | 0.00 | 0.00 | 16.61 | 0.00 | 72 |
| VCH046190 | 521145086-2/7 | VOUCHER | 2/7/01 | 16.61 | 0.00 | 0.00 | 16.61 | 0.00 | 72 |
| VCH046191 | 521052487-2/3 | VOUCHER | 2/3/01 | 21.76 | 0.00 | 0.00 | 21.76 | 0.00 | 76 |
| VCH046365 | 521403945 | VOUCHER | 2/11/01 | 43,741.60 | 0.00 | 0.00 | 43,741.60 | 0.00 | 68 |
| VCH047300 | 522773368-pre | VOUCHER | 3/11/01 | 27,601.55 | 0.00 | 27,601.55 | 0.00 | 0.00 | 40 |
| **Vendor :** Qwest Com Home  US | | **Totals:** | | **71,408.54** | **0.00** | **27,601.55** | **43,806.99** | | |
| **Vendor :** R Squared/MA | | | | | | | | | |
| R-Squared Office Panels & Furniture, Inc | | | | | | | | | |
| VCH045150 | 012734 | VOUCHER | 12/18/00 | 2,314.90 | 0.00 | 0.00 | 0.00 | 2,314.90 | 123 |
| **Vendor :** R Squared Home  US | | **Totals:** | | **2,314.90** | **0.00** | **0.00** | **0.00** | **2,314.90** | |
| **Vendor :** Real Market, | | | | | | | | | |
| The Real Market,Inc | | | | | | | | | |
| VCH045883 | 1188 | VOUCHER | 2/13/01 | 8,000.00 | 0.00 | 0.00 | 8,000.00 | 0.00 | 66 |
| **Vendor :** Real Market Home  US | | **Totals:** | | **8,000.00** | **0.00** | **0.00** | **8,000.00** | **0.00** | |
| **Vendor :** Reeves Sus | | | | | | | | | |
| Reeves & Associates | | | | | | | | | |
| VCH006300. | 22 | VOUCHER | 10/3/97 | (11,270.00) | 0.00 | 0.00 | 0.00 | (11,270.00) | 1,295 |
| **Vendor :** Reeves Sus Home  US | | **Totals:** | | **(11,270.00)** | **0.00** | **0.00** | **0.00** | **(11,270.00)** | |
| **Vendor :** Regus | | | | | | | | | |
| Regus Business Centre-Reston Town Cente | | | | | | | | | |
| VCH045144 | 002101145/INV | VOUCHER | 1/10/01 | 796.93 | 0.00 | 0.00 | 0.00 | 796.93 | 100 |
| 46346 | 002101100/INV | VOUCHER | 2/1/01 | 175.00 | 0.00 | 0.00 | 175.00 | 0.00 | 78 |
| 48736 | 002101231/INV | VOUCHER | 2/28/01 | 175.00 | 0.00 | 175.00 | 0.00 | 0.00 | 51 |
| **Vendor :** Regus    Home  US | | **Totals:** | | **1,146.93** | **0.00** | **175.00** | **175.00** | **796.93** | |
| **Vendor :** Remedy Tem | | | | | | | | | |
| Remedy Temp | | | | | | | | | |
| VCH045211 | 99539 | VOUCHER | 12/24/00 | 511.44 | 0.00 | 0.00 | 0.00 | 511.44 | 117 |

B - 227

000093

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Remedy Tem | Remedy Temp | | | - Continued... | | | | |
| VCH045212 | 114226 | VOUCHER | 1/7/01 | 797.69 | 0.00 | 0.00 | 0.00 | 797.69 | 103 |
| VCH045278 | 137184 | VOUCHER | 1/26/01 | 273.52 | 0.00 | 0.00 | 273.52 | 0.00 | 82 |
| VCH046192 | 121880 | VOUCHER | 1/14/01 | 582.80 | 0.00 | 0.00 | 0.00 | 582.80 | 96 |
| Vendor : Remedy TerHome  US | | | Totals: | 2,145.45 | 0.00 | 0.00 | 273.52 | 1,871.93 | |
| Vendor : | Rex Electric | Rex Electric, Inc | | | | | | | |
| VCH044798 | 132532 | VOUCHER | 12/22/00 | 33,389.00 | 0.00 | 0.00 | 0.00 | 33,389.00 | 119 |
| Vendor : Rex ElectrkHome  US | | | Totals: | 33,389.00 | 0.00 | 0.00 | 0.00 | 33,389.00 | |
| Vendor : | RGA Consulti | RGA Consulting, Inc. | | | | | | | |
| VCH044543 | 4129EC | VOUCHER | 12/15/00 | 11,050.00 | 0.00 | 0.00 | 0.00 | 11,050.00 | 126 |
| Vendor : RGA ConsuHome  US | | | Totals: | 11,050.00 | 0.00 | 0.00 | 0.00 | 11,050.00 | |
| Vendor : | RHI Consulti | RHI Consulting | | | | | | | |
| VCH046250 | 04513525 | VOUCHER | 1/22/01 | 979.20 | 0.00 | 0.00 | 979.20 | 0.00 | 88 |
| VCH046251 | 04565710 | VOUCHER | 1/29/01 | 1,224.00 | 0.00 | 0.00 | 1,224.00 | 0.00 | 81 |
| VCH046512 | 04776064 | VOUCHER | 2/26/01 | 979.20 | 0.00 | 979.20 | 0.00 | 0.00 | 53 |
| Vendor : RHI ConsutHome  US | | | Totals: | 3,182.40 | 0.00 | 979.20 | 2,203.20 | 0.00 | |
| Vendor : | Sagacious Co | Sagacious Consulting, Inc. | | | | | | | |
| VCH045159 | 8 | VOUCHER | 2/5/01 | 6,000.00 | 0.00 | 0.00 | 6,000.00 | 0.00 | 74 |
| VCH046199 | 9 | VOUCHER | 2/14/01 | 8,000.00 | 0.00 | 0.00 | 8,000.00 | 0.00 | 65 |
| Vendor : Sagacious (Home  US | | | Totals: | 14,000.00 | 0.00 | 0.00 | 14,000.00 | 0.00 | |
| Vendor : | Sales & Use | Sales & Use Tax - New Jersey | | | | | | | |
| VCH046708 | Feb01 | VOUCHER | 3/6/01 | 3,402.00 | 0.00 | 3,402.00 | 0.00 | 0.00 | 45 |
| VCH047657 | Mar 01 Sales Ta | VOUCHER | 4/19/01 | 4,218.39 | 4,218.39 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : Sales & UseHome  US | | | Totals: | 7,620.39 | 4,218.39 | 3,402.00 | 0.00 | 0.00 | |
| Vendor : | San Jose M | San Jose Mercury News | | | | | | | |
| VCH046207 | 0587036-2/11/01 | VOUCHER | 2/11/01 | 45.20 | 0.00 | 0.00 | 45.20 | 0.00 | 68 |
| Vendor : San Jose MHome  US | | | Totals: | 45.20 | 0.00 | 0.00 | 45.20 | 0.00 | |
| Vendor : | San Jose Off | San Jose Office Furniture.Com | | | | | | | |
| VCH047672 | 1228SM | VOUCHER | 3/1/01 | 5,400.00 | 0.00 | 5,400.00 | 0.00 | 0.00 | 50 |
| Vendor : San Jose OHome  US | | | Totals: | 5,400.00 | 0.00 | 5,400.00 | 0.00 | 0.00 | |
| Vendor : | Savoury Lane | Savoury Lane | | | | | | | |
| 5274 | 4139 | VOUCHER | 1/30/01 | 542.33 | 0.00 | 0.00 | 542.33 | 0.00 | 80 |
| VCH046206 | 4177 | VOUCHER | 2/13/01 | 154.98 | 0.00 | 0.00 | 154.98 | 0.00 | 66 |
| VCH046317 | 37767 | VOUCHER | 2/20/01 | 435.72 | 0.00 | 435.72 | 0.00 | 0.00 | 59 |
| VCH047823 | 4290 | VOUCHER | 4/4/01 | 337.58 | 337.58 | 0.00 | 0.00 | 0.00 | 16 |
| VCH047824 | 4300 | VOUCHER | 4/10/01 | 74.91 | 74.91 | 0.00 | 0.00 | 0.00 | 10 |
| Vendor : Savoury LarHome  US | | | Totals: | 1,545.52 | 412.49 | 435.72 | 697.31 | 0.00 | |
| Vendor : | SBC Datacom | | | | | | | | |

B - 228

000094

**111**

**Aged Payables By: Branch Code/Vendor Code**

Quintus Corporation

Summary Style, As of 04/20/2001

Include Future Trxs: No    Include Trxs Paid in Full: No

4/20/01
2:36:11PM

Page 38

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | SBC Datacom | | | | - Continued... | | | | |
| | SBC Datacomm | | | | | | | | |
| VCH046197 | 276-034478 | VOUCHER | 1/30/01 | 216.00 | 0.00 | 0.00 | 216.00 | 0.00 | 80 |
| VCH046205 | 276-034064 | VOUCHER | 1/31/01 | 1,944.00 | 0.00 | 0.00 | 1,944.00 | 0.00 | 79 |
| Vendor : SBC Datacc | Home  US | Totals: | | 2,160.00 | 0.00 | 0.00 | 2,160.00 | 0.00 | |
| Vendor : | Schmidt M | | | | | | | | |
| | Mark Schmidt | | | | | | | | |
| DISB005356 | DB000186 | DB.MEMO | | (910.94) | 0.00 | 0.00 | | (910.94) | |
| Vendor : Schmidt M | Home  US | Totals: | | (910.94) | 0.00 | 0.00 | 0.00 | (910.94) | |
| Vendor : | Schwartz | | | | | | | | |
| | Schwartz Communications, Inc. | | | | | | | | |
| VCH045280 | 2014 | VOUCHER | 11/1/00 | 188.48 | 0.00 | 0.00 | 0.00 | 188.48 | 170 |
| Vendor : Schwartz | Home  US | Totals: | | 188.48 | 0.00 | 0.00 | 0.00 | 188.48 | |
| Vendor : | Sears Roebuc | | | | | | | | |
| | Sears Roebuck & Co:Floor10 | | | | | | | | |
| VCH047638 | Overpayment | VOUCHER | 4/18/01 | 3,717.00 | 3,717.00 | 0.00 | 0.00 | 0.00 | 2 |
| Vendor : Sears Roeb | Home  US | Totals: | | 3,717.00 | 3,717.00 | 0.00 | 0.00 | 0.00 | |
| Vendor : | SecurityLink | | | | | | | | |
| | SecurityLink | | | | | | | | |
| VCH046206 | 47180692 | VOUCHER | 2/9/01 | 237.00 | 0.00 | 0.00 | 237.00 | 0.00 | 70 |
| VCH046337 | 45445967 | VOUCHER | 12/1/00 | 155.40 | 0.00 | 0.00 | 0.00 | 155.40 | 140 |
| VCH046338 | 45424551 | VOUCHER | 11/21/00 | 10,434.00 | 0.00 | 0.00 | 0.00 | 10,434.00 | 150 |
| Vendor : SecurityLin | Home  US | Totals: | | 10,826.40 | 0.00 | 0.00 | 237.00 | 10,589.40 | |
| Vendor : | Selbre Assoc | | | | | | | | |
| | Selbre Associates, Inc. | | | | | | | | |
| DISB015611 | DB000396 | DB.MEMO | | (2,000.00) | 0.00 | 0.00 | 0.00 | (2,000.00) | |
| DISB015612 | DB000397 | DB.MEMO | | (2,000.00) | 0.00 | 0.00 | 0.00 | (2,000.00) | |
| DISB015621 | DB000406 | DB.MEMO | | (2,000.00) | 0.00 | 0.00 | 0.00 | (2,000.00) | |
| VCH045291 | 10489 | VOUCHER | 1/13/01 | 2,000.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 97 |
| VCH046209 | 010603 | VOUCHER | 2/13/01 | 2,000.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 66 |
| Vendor : Selbre Asxc | Home  US | Totals: | | (2,000.00) | 0.00 | 0.00 | 2,000.00 | (4,000.00) | |
| Vendor : | Semans Com | | | | | | | | |
| | Semans Communications Inc. | | | | | | | | |
| VCH044795 | 26602 | VOUCHER | 1/12/01 | 3,840.00 | 0.00 | 0.00 | 0.00 | 3,840.00 | 98 |
| Vendor : Semans Co | Home  US | Totals: | | 3,840.00 | 0.00 | 0.00 | 0.00 | 3,840.00 | |
| Vendor : | Shareholder | | | | | | | | |
| | Shareholder.com | | | | | | | | |
| VCH045146 | QNTS1200 | VOUCHER | 1/6/01 | 3,570.00 | 0.00 | 0.00 | 0.00 | 3,570.00 | 104 |
| Vendor : Shareholde | Home  US | Totals: | | 3,570.00 | 0.00 | 0.00 | 0.00 | 3,570.00 | |
| Vendor : | ShoeHorn, In | | | | | | | | |
| | ShoeHorn, Inc. | | | | | | | | |
| VCH046654 | 727 | VOUCHER | 1/29/01 | 6,775.71 | 0.00 | 0.00 | 6,775.71 | 0.00 | 81 |
| Vendor : ShoeHorn, I | Home  US | Totals: | | 6,775.71 | 0.00 | 0.00 | 6,775.71 | 0.00 | |
| Vendor : | Shore.Net | | | | | | | | |
| | Shore.Net | | | | | | | | |
| VCH045188 | A489345 | VOUCHER | 1/17/01 | 159.46 | 0.00 | 0.00 | 0.00 | 159.46 | 93 |

**B - 229**

000095

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 39

| TO NUM | DOC NUM | TRX-TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Shore.Net | | | | - Continued... | | | | |
| | Shore.Net | | | | | | | | |
| VCH046318 | A502986 | VOUCHER | 2/17/01 | 169.00 | 0.00 | 0.00 | 169.00 | 0.00 | 62 |
| Vendor : | Shore.Net Home  US | | Totals: | 328.46 | 0.00 | 0.00 | 169.00 | 159.46 | |
| Vendor : | Shotgun | | | | | | | | |
| | Shotgun Delivery | | | | | | | | |
| VCH046200 | 228773 | VOUCHER | 1/31/01 | 35.49 | 0.00 | 0.00 | 35.49 | 0.00 | 79 |
| VCH046366 | 226827 | VOUCHER | 12/31/00 | 35.00 | 0.00 | 0.00 | 0.00 | 35.00 | 110 |
| Vendor : | Shotgun  Home  US | | Totals: | 70.49 | 0.00 | 0.00 | 35.49 | 35.00 | |
| Vendor : | Siebel Syste | | | | | | | | |
| | Siebel Systems | | | | | | | | |
| VCH044049 | 33090 | VOUCHER | 12/28/00 | 160,000.00 | 0.00 | 0.00 | 0.00 | 160,000.00 | 113 |
| Vendor : | Siebel Syst Home  US | | Totals: | 160,000.00 | 0.00 | 0.00 | 0.00 | 160,000.00 | |
| Vendor : | Siemens | | | | | | | | |
| | Siemens Enterprise Networks | | | | | | | | |
| VCH043006 | A121100412 | VOUCHER | 12/11/00 | 23,200.00 | 0.00 | 0.00 | 0.00 | 23,200.00 | 130 |
| VCH045275 | B012900902 | VOUCHER | 1/29/01 | 395.00 | 0.00 | 0.00 | 395.00 | 0.00 | 81 |
| VCH045415 | A122900163 | VOUCHER | 12/29/00 | 82,537.80 | 0.00 | 0.00 | 0.00 | 82,537.80 | 112 |
| VCH045416 | A122900164 | VOUCHER | 12/29/00 | 26,317.74 | 0.00 | 0.00 | 0.00 | 26,317.74 | 112 |
| VCH046196 | B021201725 | VOUCHER | 2/12/01 | 520.00 | 0.00 | 0.00 | 520.00 | 0.00 | 67 |
| VCH046211 | A122100697 | VOUCHER | 12/21/00 | 430.83 | 0.00 | 0.00 | 0.00 | 430.83 | 120 |
| VCH046212 | B011200760 | VOUCHER | 1/12/01 | 125.00 | 0.00 | 0.00 | 0.00 | 125.00 | 98 |
| VCH046213 | B011500653 | VOUCHER | 1/15/01 | 125.00 | 0.00 | 0.00 | 0.00 | 125.00 | 95 |
| VCH046214 | B011500657 | VOUCHER | 1/15/01 | 125.00 | 0.00 | 0.00 | 0.00 | 125.00 | 95 |
| VCH046215 | B011500576 | VOUCHER | 1/16/01 | 125.00 | 0.00 | 0.00 | 0.00 | 125.00 | 94 |
| VCH046363 | B012900338 | VOUCHER | 1/29/01 | 7,250.00 | 0.00 | 0.00 | 7,250.00 | 0.00 | 81 |
| VCH046364 | A122201427 | VOUCHER | 12/22/00 | 4,139.60 | 0.00 | 0.00 | 0.00 | 4,139.60 | 119 |
| Vendor : | Siemens.  Home  US | | Totals: | 145,290.77 | 0.00 | 0.00 | 8,165.00 | 137,125.77 | |
| Vendor : | Sigis | | | | | | | | |
| | Sigis | | | | | | | | |
| VCH046246 | 12985 | VOUCHER | 2/14/01 | 888.89 | 0.00 | 0.00 | 888.89 | 0.00 | 65 |
| Vendor : | Sigis  Home  US | | Totals: | 888.89 | 0.00 | 0.00 | 888.89 | 0.00 | |
| Vendor : | SimpliCTI | | | | | | | | |
| | SimpliCTI Software Solutions, Inc | | | | | | | | |
| VCH045147 | Q01270101 | VOUCHER | 1/27/01 | 997.50 | 0.00 | 0.00 | 997.50 | 0.00 | 83 |
| Vendor : | SimpliCTI  Home  US | | Totals: | 997.50 | 0.00 | 0.00 | 997.50 | 0.00 | |
| Vendor : | Sisca's Sons | | | | | | | | |
| | Sisca's Sons Shredding Service | | | | | | | | |
| VCH044133 | 5599 | VOUCHER | 1/11/01 | 620.00 | 0.00 | 0.00 | 0.00 | 620.00 | 99 |
| Vendor : | Sisca's Son Home  US | | Totals: | 620.00 | 0.00 | 0.00 | 0.00 | 620.00 | |
| Vendor : | Skyline Su | | | | | | | | |
| | Skyline Supply Co. Inc. | | | | | | | | |
| D    1111 | DB000018 | DB.MEMO | | (69.71) | 0.00 | 0.00 | 0.00 | (69.71) | |
| D    07856 | DB00215 | DB.MEMO | | (169.39) | 0.00 | 0.00 | 0.00 | (169.39) | |
| VCH045146 | 308480-0 | VOUCHER | 1/23/01 | 406.19 | 0.00 | 0.00 | 406.19 | 0.00 | 87 |
| Vendor : | Skyline Su  Home  US | | Totals: | 167.09 | 0.00 | 0.00 | 406.19 | (239.10) | |
| Vendor : | SkySoft | | | | | | | | |
| | SkySoft Corporation | | | | | | | | |

B - 230

113

000096

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

4/20/01
2:36:11PM

Page 40

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: default | | Default Branch Code | | | - Continued... | | | | |
| Vendor : SkySoft | | | | | - Continued... | | | | |
| SkySoft Corporation | | | | | | | | | |
| DISB023702 | DB000630 | DB.MEMO | | (7,930.00) | 0.00 | 0.00 | 0.00 | (7,930.00) | |
| Vendor : SkySoft | Home | US | Totals: | (7,930.00) | 0.00 | 0.00 | 0.00 | (7,930.00) | |
| Vendor : SKYTEL | | | | | | | | | |
| SKYTEL | | | | | | | | | |
| VCH046198 | 01B2309665 | VOUCHER | 1/27/01 | 6,703.65 | 0.00 | 0.00 | 6,703.65 | 0.00 | 83 |
| Vendor : SKYTEL | Home | US | Totals: | 6,703.65 | 0.00 | 0.00 | 6,703.65 | 0.00 | |
| Vendor : SoftWorld | | | | | | | | | |
| SoftWorld, Inc. | | | | | | | | | |
| VCH044044 | 5896 | VOUCHER | 12/28/00 | 4,350.00 | 0.00 | 0.00 | 0.00 | 4,350.00 | 113 |
| VCH044870 | 5852 | VOUCHER | 12/21/00 | 1,360.00 | 0.00 | 0.00 | 0.00 | 1,360.00 | 120 |
| VCH044871 | 5865 | VOUCHER | 12/28/00 | 1,360.00 | 0.00 | 0.00 | 0.00 | 1,360.00 | 113 |
| VCH044872 | 5878 | VOUCHER | 12/28/00 | 1,224.00 | 0.00 | 0.00 | 0.00 | 1,224.00 | 113 |
| VCH046306 | 6182 | VOUCHER | 2/14/01 | 1,360.00 | 0.00 | 0.00 | 1,360.00 | 0.00 | 65 |
| Vendor : SoftWorld | Home | US | Totals: | 9,654.00 | 0.00 | 0.00 | 1,360.00 | 8,294.00 | |
| Vendor : Solomon-Page | | | | | | | | | |
| Solomon-Page Group Ltd. | | | | | | | | | |
| VCH047677 | 20155 | VOUCHER | 4/7/01 | 2,040.00 | 2,040.00 | 0.00 | 0.00 | 0.00 | 13 |
| VCH047694 | 20048 | VOUCHER | 3/31/01 | 2,269.50 | 2,269.50 | 0.00 | 0.00 | 0.00 | 20 |
| Vendor : Solomon-P Home | | US | Totals: | 4,309.50 | 4,309.50 | 0.00 | 0.00 | 0.00 | |
| Vendor : SoluTech C. | | | | | | | | | |
| SoluTech Consulting Services, Inc | | | | | | | | | |
| VCH044702 | 3746 | VOUCHER | 1/15/01 | 4,531.50 | 0.00 | 0.00 | 0.00 | 4,531.50 | 95 |
| VCH045295 | 3654 | VOUCHER | 12/15/00 | 3,160.50 | 0.00 | 0.00 | 0.00 | 3,160.50 | 126 |
| VCH045296 | 3776 | VOUCHER | 1/31/01 | 6,042.00 | 0.00 | 0.00 | 6,042.00 | 0.00 | 79 |
| VCH046282 | 3823 | VOUCHER | 2/20/01 | 4,770.00 | 0.00 | 4,770.00 | 0.00 | 0.00 | 59 |
| VCH046704 | 3877 | VOUCHER | 3/10/01 | 2,014.00 | 0.00 | 2,014.00 | 0.00 | 0.00 | 41 |
| Vendor : SoluTech C Home | | US | Totals: | 20,518.00 | 0.00 | 6,784.00 | 6,042.00 | 7,692.00 | |
| Vendor : Southwestern | | | | | | | | | |
| Southwestern Bell | | | | | | | | | |
| VCH046193 | 7135223034-1/2 | VOUCHER | 1/25/01 | 254.63 | 0.00 | 0.00 | 254.63 | 0.00 | 85 |
| Vendor : Southweste Home | | US | Totals: | 254.63 | 0.00 | 0.00 | 254.63 | 0.00 | |
| Vendor : Southworth | | | | | | | | | |
| Southworth-Milton, Inc. | | | | | | | | | |
| VCH045187 | SERV0250727 | VOUCHER | 1/29/01 | 414.39 | 0.00 | 0.00 | 414.39 | 0.00 | 81 |
| Vendor : Southworth Home | | US | Totals: | 414.39 | 0.00 | 0.00 | 414.39 | 0.00 | |
| Vendor : Sprint 01 | | | | | | | | | |
| Sprint PCS | | | | | | | | | |
| VCH046202 | 00059415407-2/ | VOUCHER | 2/15/01 | 18.61 | 0.00 | 0.00 | 18.61 | 0.00 | 64 |
| VCH046210 | 00059415407 | VOUCHER | 1/15/01 | 95.97 | 0.00 | 0.00 | 0.00 | 95.97 | 95 |
| Vendor : Sprint 01 | Home | US | Totals: | 114.58 | 0.00 | 0.00 | 18.61 | 95.97 | |
| Vendor : Standard Reg | | | | | | | | | |
| Standard Register | | | | | | | | | |
| VCH046492 | 4394764 | VOUCHER | 2/21/01 | 247.19 | 0.00 | 247.19 | 0.00 | 0.00 | 58 |
| Vendor : Standard R Home | | US | Totals: | 247.19 | 0.00 | 247.19 | 0.00 | 0.00 | |
| Vendor : State Boar01 | | | | | | | | | |

B - 231

000097

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | Default Branch Code | | | - Continued... | | | | |
| **Vendor :** | State Boar01 | | | | - Continued... | | | | |
| | State Board Of Equalization | | | | | | | | |
| VCH046707 | Feb01 | VOUCHER | 3/6/01 | 10,551.00 | 0.00 | 10,551.00 | 0.00 | 0.00 | 45 |
| VCH047245 | Q3Fy01 | VOUCHER | 3/16/01 | 618.80 | 0.00 | 618.80 | 0.00 | 0.00 | 35 |
| **Vendor : State Boar0Home  US** | | | Totals: | 11,169.80 | 0.00 | 11,169.80 | 0.00 | 0.00 | |
| **Vendor :** | Summit Sof | | | | | | | | |
| | Summit Software Company | | | | | | | | |
| VCH046559 | 10691 | VOUCHER | 2/9/01 | 40,000.00 | 0.00 | 0.00 | 40,000.00 | 0.00 | 70 |
| **Vendor : Summit SofHome  US** | | | Totals: | 40,000.00 | 0.00 | 0.00 | 40,000.00 | 0.00 | |
| **Vendor :** | Sun Micros | | | | | | | | |
| | Sun Microsystems Inc | | | | | | | | |
| VCH043118 | 405229 | VOUCHER | 12/4/00 | 13,285.52 | 0.00 | 0.00 | 0.00 | 13,285.52 | 137 |
| VCH043689 | 405367 | VOUCHER | 12/4/00 | 498.13 | 0.00 | 0.00 | 0.00 | 498.13 | 137 |
| VCH043690 | 420538 | VOUCHER | 12/28/00 | 1,312.82 | 0.00 | 0.00 | 0.00 | 1,312.82 | 113 |
| VCH043692 | 420263 | VOUCHER | 12/28/00 | 11,370.13 | 0.00 | 0.00 | 0.00 | 11,370.13 | 113 |
| VCH046194 | 393495 | VOUCHER | 11/13/00 | 3,364.41 | 0.00 | 0.00 | 0.00 | 3,364.41 | 158 |
| VCH046195 | 422254 | VOUCHER | 12/30/00 | 2,587.69 | 0.00 | 0.00 | 0.00 | 2,587.69 | 111 |
| **Vendor : Sun Micros Home  US** | | | Totals: | 32,398.70 | 0.00 | 0.00 | 0.00 | 32,398.70 | |
| **Vendor :** | Sunlite Cafe | | | | | | | | |
| | SunLite Cafe | | | | | | | | |
| 4174 | 01/10/01 | VOUCHER | 1/10/01 | 665.00 | 0.00 | 0.00 | 0.00 | 665.00 | 100 |
| 44680 | 013101 | VOUCHER | 1/31/01 | 735.00 | 0.00 | 0.00 | 735.00 | 0.00 | 79 |
| VCH045809 | Jan 01 | VOUCHER | 2/12/01 | 740.00 | 0.00 | 0.00 | 740.00 | 0.00 | 67 |
| VCH047666 | 4/12/01 | VOUCHER | 4/12/01 | 200.00 | 200.00 | 0.00 | 0.00 | 0.00 | 8 |
| VCH047667 | 4/9/01-STMT | VOUCHER | 4/9/01 | 750.00 | 750.00 | 0.00 | 0.00 | 0.00 | 11 |
| **Vendor : Sunlite CafeHome  US** | | | Totals: | 3,090.00 | 950.00 | 0.00 | 1,475.00 | 665.00 | |
| **Vendor :** | Sweet & Savo | | | | | | | | |
| | Sweet & Savory | | | | | | | | |
| VCH045153 | 17814 | VOUCHER | 2/7/01 | 263.45 | 0.00 | 0.00 | 263.45 | 0.00 | 72 |
| VCH046201 | 17847 | VOUCHER | 2/15/01 | 109.85 | 0.00 | 0.00 | 109.85 | 0.00 | 64 |
| VCH046203 | 17828 | VOUCHER | 2/9/01 | 201.00 | 0.00 | 0.00 | 201.00 | 0.00 | 70 |
| VCH046204 | 17824 | VOUCHER | 2/8/01 | 169.65 | 0.00 | 0.00 | 169.65 | 0.00 | 71 |
| **Vendor : Sweet & SaHome  US** | | | Totals: | 743.95 | 0.00 | 0.00 | 743.95 | 0.00 | |
| **Vendor :** | Table Group | | | | | | | | |
| | The Table Group, Inc | | | | | | | | |
| VCH045614 | 347 | VOUCHER | 12/6/00 | 12,586.90 | 0.00 | 0.00 | 0.00 | 12,586.90 | 135 |
| **Vendor : Table GrouHome  US** | | | Totals: | 12,586.90 | 0.00 | 0.00 | 0.00 | 12,586.90 | |
| **Vendor :** | Tamburri Deb | | | | | | | | |
| | Deborah Tamburri | | | | | | | | |
| VCH046121 | w/e 2/10/01 | VOUCHER | 2/10/01 | 587.75 | 0.00 | 0.00 | 587.75 | 0.00 | 69 |
| **Vendor : Tamburri DHome  US** | | | Totals: | 587.75 | 0.00 | 0.00 | 587.75 | 0.00 | |
| **Vendor :** | Tanner Insur | | | | | | | | |
| | Tanner Insurance Brokers | | | | | | | | |
| 18511 | DB000536 | DB.MEMO | | (7,779.31) | 0.00 | 0.00 | 0.00 | (7,779.31) | |
| **Vendor : Tanner InsuHome  US** | | | Totals: | (7,779.31) | 0.00 | 0.00 | 0.00 | (7,779.31) | |
| **Vendor :** | Tatro Gina | | | | | | | | |
| | Gina Tatro | | | | | | | | |
| DISB018961 | DB000538 | DB.MEMO | | (175.91) | 0.00 | 0.00 | 0.00 | (175.91) | |

**B - 232**

000098

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 42

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: default | | Default Branch Code | | | - Continued... | | | | |
| Vendor : Tatro Gina Home US | | | Totals: | (175.91) | 0.00 | 0.00 | 0.00 | (175.91) | |
| | | | | | | | | | |
| Vendor : Tehnology Ma | | | | | | | | | |
| Technology Marketing Corp./CTI | | | | | | | | | |
| VCH044160 | CSSP21012 | VOUCHER | 12/19/00 | 49,200.00 | 0.00 | 0.00 | 0.00 | 49,200.00 | 122 |
| VCH045152 | 20001234 | VOUCHER | 1/1/01 | 5,567.50 | 0.00 | 0.00 | 0.00 | 5,567.50 | 109 |
| VCH048217 | 1798 | VOUCHER | 1/1/01 | 4,802.50 | 0.00 | 0.00 | 0.00 | 4,802.50 | 109 |
| Vendor : Tehnology IfHome US | | | Totals: | 59,570.00 | 0.00 | 0.00 | 0.00 | 59,570.00 | |
| | | | | | | | | | |
| Vendor : Tek Trans/NY | | | | | | | | | |
| Tek Translation International | | | | | | | | | |
| VCH045390 | Corp. Brochures | VOUCHER | 2/9/01 | 8,409.00 | 0.00 | 0.00 | 8,409.00 | 0.00 | 70 |
| Vendor : Tek Trans/h Home US | | | Totals: | 8,409.00 | 0.00 | 0.00 | 8,409.00 | 0.00 | |
| | | | | | | | | | |
| Vendor : Tennessee De | | | | | | | | | |
| Tennessee Dept. Of Revenue | | | | | | | | | |
| VCH047285 | Sep/Jan 01 | VOUCHER | 3/22/01 | 75.00 | 75.00 | 0.00 | 0.00 | 0.00 | 29 |
| VCH047659 | Mar01 Sales Ta: | VOUCHER | 4/19/01 | 1,793.00 | 1,793.00 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : Tennessee Home US | | | Totals: | 1,868.00 | 1,868.00 | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| Vendor : Thomson Fin | | | | | | | | | |
| Thomson Financial | | | | | | | | | |
| VCH047269 | 1766097-A1-16 | VOUCHER | 10/26/00 | 465.42 | 0.00 | 0.00 | 0.00 | 465.42 | 176 |
| Vendor : Thomson FiHome US | | | Totals: | 465.42 | 0.00 | 0.00 | 0.00 | 465.42 | |
| | | | | | | | | | |
| Vendor : Thomson Fina | | | | | | | | | |
| Thomson Financial Media | | | | | | | | | |
| VCH045151 | 45060001 | VOUCHER | 9/27/00 | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 205 |
| VCH045290 | 45122001 | VOUCHER | 9/27/00 | 5,593.00 | 0.00 | 0.00 | 0.00 | 5,593.00 | 205 |
| Vendor : Thomson FiHome US | | | Totals: | 5,693.00 | 0.00 | 0.00 | 0.00 | 5,693.00 | |
| | | | | | | | | | |
| Vendor : TRCA | | | | | | | | | |
| T.R.C.A. | | | | | | | | | |
| VCH044539 | 54649 | VOUCHER | 1/9/01 | 458.65 | 0.00 | 0.00 | 0.00 | 458.65 | 101 |
| VCH044541 | 54893 | VOUCHER | 1/16/01 | 24.00 | 0.00 | 0.00 | 0.00 | 24.00 | 94 |
| VCH045270 | 55388 | VOUCHER | 1/26/01 | 722.85 | 0.00 | 0.00 | 722.85 | 0.00 | 84 |
| Vendor : TRCA Home US | | | Totals: | 1,205.50 | 0.00 | 0.00 | 722.85 | 482.65 | |
| | | | | | | | | | |
| Vendor : Trinity Wa01 | | | | | | | | | |
| Trinity Water | | | | | | | | | |
| DISB008011 | DB000225 | DB.MEMO | | (65.20) | 0.00 | 0.00 | 0.00 | (65.20) | |
| Vendor : Trinity Wa0 Home US | | | Totals: | (65.20) | 0.00 | 0.00 | 0.00 | (65.20) | |
| | | | | | | | | | |
| Vendor : UBS AG | | | | | | | | | |
| UBS AG | | | | | | | | | |
| VCH047637 | Duplicate Pymt | VOUCHER | 4/18/01 | 1,882.01 | 1,882.01 | 0.00 | 0.00 | 0.00 | 2 |
| Vendor : UBS AG Home US | | | Totals: | 1,882.01 | 1,882.01 | 0.00 | 0.00 | 0.00 | |
| | | | | | | | | | |
| Vendor : ULINE | | | | | | | | | |
| ULINE | | | | | | | | | |
| VCH045608 | 3851107 | VOUCHER | 2/6/01 | 54.05 | 0.00 | 0.00 | 54.05 | 0.00 | 73 |
| Vendor : ULINE Home US | | | Totals: | 54.05 | 0.00 | 0.00 | 54.05 | 0.00 | |
| | | | | | | | | | |
| Vendor : United Parce | | | | | | | | | |
| United Parcel Service | | | | | | | | | |

**B - 233**

000099

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
**Quintus Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

Page 43

| PAY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | Default Branch Code | | | | - Continued... | | | | |
| **Vendor:** United Parce | United Parcel Service | | | | - Continued... | | | | |
| VCH046219 | 966304051 | VOUCHER | 2/3/01 | 59.17 | 0.00 | 0.00 | 59.17 | 0.00 | 76 |
| VCH047622 | 966304141 | VOUCHER | 4/7/01 | 130.88 | 130.88 | 0.00 | 0.00 | 0.00 | 13 |
| **Vendor:** United ParcHome  US | | | Totals: | 190.05 | 130.88 | 0.00 | 59.17 | 0.00 | |
| **Vendor:** USRefresh | USRefresh | | | | | | | | |
| VCH045277 | 124345 | VOUCHER | 1/30/01 | 808.25 | 0.00 | 0.00 | 808.25 | 0.00 | 80 |
| VCH046743 | 125150 | VOUCHER | 3/1/01 | 800.75 | 0.00 | 800.75 | 0.00 | 0.00 | 50 |
| VCH047668 | 125818 | VOUCHER | 3/29/01 | 182.05 | 182.05 | 0.00 | 0.00 | 0.00 | 22 |
| **Vendor:** USRefresh Home  US | | | Totals: | 1,791.05 | 182.05 | 800.75 | 808.25 | 0.00 | |
| **Vendor:** UUNET Techno | UUNET Technologies | | | | | | | | |
| VCH046218 | 5026945-2/01 | VOUCHER | 2/1/01 | 542.29 | 0.00 | 0.00 | 542.29 | 0.00 | 78 |
| **Vendor:** UUNET TecHome  US | | | Totals: | 542.29 | 0.00 | 0.00 | 542.29 | 0.00 | |
| **Vendor:** Valley Facil | Valley Facilities Management Corp. | | | | | | | | |
| VCH044895 | 01-101 | VOUCHER | 1/9/01 | 1,275.00 | 0.00 | 0.00 | 0.00 | 1,275.00 | 101 |
| **Vendor:** Valley Facil Home  US | | | Totals: | 1,275.00 | 0.00 | 0.00 | 0.00 | 1,275.00 | |
| **Vendor:** Vantas Inc. | Vantas Inc. | | | | | | | | |
| VCH046343 | 0157162-Svcs. | VOUCHER | 2/19/01 | 977.12 | 0.00 | 977.12 | 0.00 | 0.00 | 60 |
| **Vendor:** Vantas Inc. Home  US | | | Totals: | 977.12 | 0.00 | 977.12 | 0.00 | 0.00 | |
| **Vendor:** Vega Info | Vega Informatica SPA | | | | | | | | |
| VCH047636 | Overpayment | VOUCHER | 4/18/01 | 555.22 | 555.22 | 0.00 | 0.00 | 0.00 | 2 |
| **Vendor:** Vega Info  Home  US | | | Totals: | 555.22 | 555.22 | 0.00 | 0.00 | 0.00 | |
| **Vendor:** Verizon | Verizon | | | | | | | | |
| DISB029456 | DB000723 | DB.MEMO | | (89.01) | 0.00 | 0.00 | 0.00 | (89.01) | |
| DISB032639 | DB000724 | DB.MEMO | | (49.45) | 0.00 | 0.00 | 0.00 | (49.45) | |
| DISB032840 | DB000725 | DB.MEMO | | (19.84) | 0.00 | 0.00 | 0.00 | (19.84) | |
| VCH045166 | 9786359784* | VOUCHER | 1/11/01 | 137.48 | 0.00 | 0.00 | 0.00 | 137.48 | 99 |
| VCH045386 | 9784619396* | VOUCHER | 1/25/01 | 99.41 | 0.00 | 0.00 | 99.41 | 0.00 | 85 |
| VCH046220 | 9782644104-1/2 | VOUCHER | 1/25/01 | 19.92 | 0.00 | 0.00 | 19.92 | 0.00 | 85 |
| VCH046221 | 5087872800-2/0 | VOUCHER | 2/5/01 | 1,343.77 | 0.00 | 0.00 | 1,343.77 | 0.00 | 74 |
| VCH046222 | 5087872800-1/0 | VOUCHER | 1/6/01 | 1,336.56 | 0.00 | 0.00 | 0.00 | 1,336.56 | 105 |
| VCH046278 | 9786359784-2/1 | VOUCHER | 2/11/01 | 137.57 | 0.00 | 0.00 | 137.57 | 0.00 | 68 |
| VCH046669 | 9786359784-3/1 | VOUCHER | 2/12/01 | 52.04 | 0.00 | 0.00 | 52.04 | 0.00 | 67 |
| VCH046670 | 5087872800-3/5 | VOUCHER | 2/28/01 | 806.82 | 0.00 | 806.82 | 0.00 | 0.00 | 51 |
| VCH046714 | 9784619396-2/2 | VOUCHER | 2/25/01 | 96.31 | 0.00 | 96.31 | 0.00 | 0.00 | 54 |
| VCH046721 | 9782644104-2/2 | VOUCHER | 2/25/01 | 19.69 | 0.00 | 19.69 | 0.00 | 0.00 | 54 |
| VCH047265 | 9782632941-2/1 | VOUCHER | 2/19/01 | 48.88 | 0.00 | 48.88 | 0.00 | 0.00 | 60 |
| VCH047266 | 9782635017-2/1 | VOUCHER | 2/19/01 | 66.14 | 0.00 | 66.14 | 0.00 | 0.00 | 60 |
| **Vendor:** Verizon  Home  US | | | Totals: | 4,026.29 | 0.00 | 1,057.84 | 1,652.71 | 1,315.74 | |
| **Vendor:** Verizon 401 | Verizon | | | | | | | | |
| VCH045201 | 4018489977** | VOUCHER | 1/18/01 | 551.22 | 0.00 | 0.00 | 0.00 | 551.22 | 92 |
| VCH046723 | 4018489977-2/1 | VOUCHER | 2/18/01 | 461.76 | 0.00 | 0.00 | 461.76 | 0.00 | 61 |
| **Vendor:** Verizon 401Home  US | | | Totals: | 1,012.98 | 0.00 | 0.00 | 461.76 | 551.22 | |

B - 234

117

000100

4/20/01
2:36:11PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| / TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Verizon Wire | Verizon Wireless, #09564238601105 | | | | | | | |
| VCH046321 | 09564238-6011( | VOUCHER | 2/14/01 | 81.02 | 0.00 | 0.00 | 81.02 | 0.00 | 65 |
| Vendor : | Verizon Wir | Home US | Totals: | 81.02 | 0.00 | 0.00 | 81.02 | 0.00 | |
| Vendor : | Verizon508 | Verizon | | | | | | | |
| VCH045287 | 508M16-372835 | VOUCHER | 1/25/01 | 1,524.16 | 0.00 | 0.00 | 1,524.16 | 0.00 | 85 |
| Vendor : | Verizon508 | Home US | Totals: | 1,524.16 | 0.00 | 0.00 | 1,524.16 | 0.00 | |
| Vendor : | Verizonwirel | Verizon Wireless | | | | | | | |
| VCH045210 | 0886383360110 | VOUCHER | 1/11/01 | 117.79 | 0.00 | 0.00 | 0.00 | 117.79 | 99 |
| VCH046316 | 8863833601105 | VOUCHER | 2/11/01 | 191.03 | 0.00 | 0.00 | 191.03 | 0.00 | 68 |
| Vendor : | Verizonwire | Home US | Totals: | 308.82 | 0.00 | 0.00 | 191.03 | 117.79 | |
| Vendor : | Vermont Dept | Vermont Dept. Of Taxes | | | | | | | |
| VCH047661 | VT Sales Tax Pr | VOUCHER | 4/19/01 | 408.72 | 408.72 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : | Vermont De | Home US | Totals: | 408.72 | 408.72 | 0.00 | 0.00 | 0.00 | |
| Vendor : | W. B. Mason | W. B. Mason Company, Inc. | | | | | | | |
| VCH047465 | W27192 | VOUCHER | 3/29/01 | 66.45 | 66.45 | 0.00 | 0.00 | 0.00 | 22 |
| Vendor : | W. B. Maso | Home US | Totals: | 66.45 | 66.45 | 0.00 | 0.00 | 0.00 | |
| Vendor : | Warren Mary | Mary Warren | | | | | | | |
| VCH046226 | Phone exp. | VOUCHER | 2/26/01 | 63.47 | 0.00 | 63.47 | 0.00 | 0.00 | 53 |
| Vendor : | Warren Mar | Home US | Totals: | 63.47 | 0.00 | 63.47 | 0.00 | 0.00 | |
| Vendor : | Washington03 | Washington State Dept of Revenue | | | | | | | |
| VCH046706 | Q1Fy01/WA | VOUCHER | 3/6/01 | 868.00 | 0.00 | 868.00 | 0.00 | 0.00 | 45 |
| Vendor : | Washington | Home US | Totals: | 868.00 | 0.00 | 868.00 | 0.00 | 0.00 | |
| Vendor : | Waste Manang | Waste Management of Central MA | | | | | | | |
| VCH046236 | 084622704470 | VOUCHER | 2/1/01 | 513.11 | 0.00 | 0.00 | 513.11 | 0.00 | 78 |
| Vendor : | Waste Man | Home US | Totals: | 513.11 | 0.00 | 0.00 | 513.11 | 0.00 | |
| Vendor : | Water Supply | Water Supply District of Acton | | | | | | | |
| VCH047488 | Acct. #1516 -4/4 | VOUCHER | 4/4/01 | 338.50 | 338.50 | 0.00 | 0.00 | 0.00 | 16 |
| Vendor : | Water Supp | Home US | Totals: | 338.50 | 338.50 | 0.00 | 0.00 | 0.00 | |
| Vendor : | WebLink Wire | WebLink Wireless | | | | | | | |
| VCH046239 | 113979346 | VOUCHER | 1/3/01 | 86.82 | 0.00 | 0.00 | 0.00 | 86.82 | 107 |
| VCH046353 | 114253027 | VOUCHER | 2/2/01 | 84.94 | 0.00 | 0.00 | 84.94 | 0.00 | 77 |
| VCH047715 | 114506154 | VOUCHER | 3/2/01 | 84.94 | 0.00 | 84.94 | 0.00 | 0.00 | 49 |
| Vendor : | WebLink W | Home US | Totals: | 256.70 | 0.00 | 84.94 | 84.94 | 86.82 | |

B - 235

000101

# Aged Payables By: Branch Code/Vendor Code
## Quintus Corporation
### Summary Style, As of 04/20/2001
### Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | **Default Branch Code** | | | | - Continued... | | | | |
| **Vendor: Wells Leonar** | **Leonard Wells** | | | | | | | | |
| VCH007782 | Avon/Fee | VOUCHER | 8/8/97 | 4,462.50 | 0.00 | 0.00 | 0.00 | 4,462.50 | 1,351 |
| **Vendor: Wells Leon:Home  US** | | | Totals: | 4,462.50 | 0.00 | 0.00 | 0.00 | 4,462.50 | |
| **Vendor: Westbrook Co** | **Westbrook Convience Center** | | | | | | | | |
| VCH045684 | 670 | VOUCHER | 2/2/01 | 69.17 | 0.00 | 0.00 | 69.17 | 0.00 | 77 |
| **Vendor: Westbrook Home  US** | | | Totals: | 69.17 | 0.00 | 0.00 | 69.17 | 0.00 | |
| **Vendor: Wildman, Har** | **Wildman, Harrold, Allen & Dixon** | | | | | | | | |
| VCH046252 | 152623 | VOUCHER | 11/22/00 | 6,135.39 | 0.00 | 0.00 | 0.00 | 6,135.39 | 149 |
| **Vendor: Wildman, H Home  US** | | | Totals: | 6,135.39 | 0.00 | 0.00 | 0.00 | 6,135.39 | |
| **Vendor: Williams/IL** | **Williams Communications Solutions, LLC** | | | | | | | | |
| VCH046356 | 14395.P | VOUCHER | 2/19/01 | 291.89 | 0.00 | 291.89 | 0.00 | 0.00 | 60 |
| VCH046357 | 14394.P | VOUCHER | 2/19/01 | 433.95 | 0.00 | 433.95 | 0.00 | 0.00 | 60 |
| VCH046358 | 14398.P | VOUCHER | 2/19/01 | 534.60 | 0.00 | 534.60 | 0.00 | 0.00 | 60 |
| VCH046359 | 14397.P | VOUCHER | 2/19/01 | 534.60 | 0.00 | 534.60 | 0.00 | 0.00 | 60 |
| VCH046360 | 14396.P | VOUCHER | 2/19/01 | 534.60 | 0.00 | 534.60 | 0.00 | 0.00 | 60 |
| VCH046361 | 14399.P | VOUCHER | 2/19/01 | 13.20 | 0.00 | 13.20 | 0.00 | 0.00 | 60 |
| VCH046362 | 14400.P | VOUCHER | 2/19/01 | 534.60 | 0.00 | 534.60 | 0.00 | 0.00 | 60 |
| VCH046739 | 14339.P | VOUCHER | 2/16/01 | 11,087.58 | 0.00 | 0.00 | 11,087.58 | 0.00 | 63 |
| **Vendor: Williams/IL Home  US** | | | Totals: | 13,965.02 ✓ | 0.00 | 2,877.44 | 11,087.58 | 0.00 | |
| **Vendor: WilliamsComm** | **Williams Communications Solutions, LLC** | | | | | | | | |
| VCH046224 | 1695031 | VOUCHER | 2/2/01 | 100.00 | 0.00 | 0.00 | 100.00 | 0.00 | 77 |
| VCH046229 | 1682724 | VOUCHER | 1/30/01 | 200.00 | 0.00 | 0.00 | 200.00 | 0.00 | 80 |
| VCH046230 | 1674240 | VOUCHER | 1/29/01 | 150.00 | 0.00 | 0.00 | 150.00 | 0.00 | 81 |
| VCH046231 | 1428028 | VOUCHER | 10/27/00 | 300.00 | 0.00 | 0.00 | 0.00 | 300.00 | 175 |
| VCH046232 | 1446309 | VOUCHER | 11/2/00 | 860.44 | 0.00 | 0.00 | 0.00 | 860.44 | 169 |
| VCH046233 | 1494000 | VOUCHER | 11/17/00 | 459.56 | 0.00 | 0.00 | 0.00 | 459.56 | 154 |
| VCH046234 | 45929 | VOUCHER | 12/21/00 | 3,714.90 | 0.00 | 0.00 | 0.00 | 3,714.90 | 120 |
| VCH046237 | 1695030 | VOUCHER | 2/2/01 | 150.00 | 0.00 | 0.00 | 150.00 | 0.00 | 77 |
| VCH046238 | 1580150 | VOUCHER | 12/20/00 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 121 |
| VCH046740 | 1738885 | VOUCHER | 2/22/01 | 2,949.60 | 0.00 | 2,949.60 | 0.00 | 0.00 | 57 |
| VCH046741 | 54376 | VOUCHER | 2/15/01 | 650.00 | 0.00 | 0.00 | 650.00 | 0.00 | 64 |
| VCH046742 | 54375 | VOUCHER | 2/15/01 | 50.00 | 0.00 | 0.00 | 50.00 | 0.00 | 64 |
| **Vendor: WilliamsCo Home  US** | | | Totals: | 9,834.50 | 0.00 | 2,949.60 | 1,300.00 | 5,384.90 | |
| **Vendor: Wisconsin De** | **Wisconsin Department Of Revenue** | | | | | | | | |
| VCH047680 | Mar01 Sales Tax | VOUCHER | 4/19/01 | 1,571.25 | 1,571.25 | 0.00 | 0.00 | 0.00 | 1 |
| **Vendor: Wisconsin IHome  US** | | | Totals: | 1,571.25 | 1,571.25 | 0.00 | 0.00 | 0.00 | |
| **Vendor: www.Call** | **www.CallCenterWorld.Com** | | | | | | | | |
| VCH045860 | 328 | VOUCHER | 1/31/01 | 16,500.00 | 0.00 | 0.00 | 16,500.00 | 0.00 | 79 |
| **Vendor: www.Call  Home  US** | | | Totals: | 16,500.00 | 0.00 | 0.00 | 16,500.00 | 0.00 | |
| **Vendor: XO Comm** | **XO Communications** | | | | | | | | |
| VCH045997 | 0000070000022 | VOUCHER | 1/7/01 | 1,289.25 | 0.00 | 0.00 | 0.00 | 1,289.25 | 103 |
| **Vendor: XO Comm  Home  US** | | | Totals: | 1,289.25 | 0.00 | 0.00 | 0.00 | 1,289.25 | |

B - 236

000102

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

4/20/01
2:36:11PM

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: default | | Default Branch Code | | | - Continued... | | | | |
| Vendor : XO Communica | | | | | | | | | |
| XO Communications | | | | | | | | | |
| /CH046240 | 11545784 | VOUCHER | 2/1/01 | 3,445.00 | 0.00 | 0.00 | 3,445.00 | 0.00 | 78 |
| /CH046367 | 9658769 | VOUCHER | 7/1/00 | 2,050.00 | 0.00 | 0.00 | 0.00 | 2,050.00 | 293 |
| Vendor : XO Commu Home US | | | Totals: | 5,495.00 | 0.00 | 0.00 | 3,445.00 | 2,050.00 | |
| Vendor : Zee Med/MA | | | | | | | | | |
| Zee Medical Service Co. | | | | | | | | | |
| /CH045668 | 65068472 | VOUCHER | 12/27/00 | 65.78 | 0.00 | 0.00 | 0.00 | 65.78 | 114 |
| /CH046241 | 65069065 | VOUCHER | 2/21/01 | 39.22 | 0.00 | 39.22 | 0.00 | 0.00 | 58 |
| Vendor : Zee Med/M/Home US | | | Totals: | 105.00 | 0.00 | 39.22 | 0.00 | 65.78 | |
| Branch Code: default | Home US | | Totals: | 6,237,164.76 | 553,173.31 | 699,988.74 | 860,578.33 | 4,123,424.38 | |
| Branch Code: GA | | State of Georgia Rent | | | | | | | |
| Vendor : OmniNY02 | | | | | | | | | |
| Omni Offices/ New York - Midtown N, Inc. | | | | | | | | | |
| DISB018105 | DB000440 | DB.MEMO | | (2,877.97) | 0.00 | 0.00 | 0.00 | (2,877.97) | |
| Vendor : OmniNY02 Home US | | | Totals: | (2,877.97) | 0.00 | 0.00 | 0.00 | (2,877.97) | |
| Branch Code: GA | Home US | | Totals: | (2,877.97) | 0.00 | 0.00 | 0.00 | (2,877.97) | |
| REPORT TOTALS: | Home US | | Totals: | 6,234,286.79 | 553,173.31 | 699,988.74 | 860,578.33 | 4,120,546.41 | |

Total number of vendors listed: 335

*3,671,180   pre-petition*
*2,563,107   post-petition*
*6,234,287   g//*

000103

4/20/01
2:39:05PM

## Aged Payables By: Branch Code/Vendor Code
### Mustang Corporation
#### Summary Style, As of 04/20/2001
Include Future Trxs: No     Include Trxs Paid in Full: No

Page 1

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code: Default** | | Default | | | | | | | |
| **Vendor : All American** | | | | | | | | | |
| All American Delivery & Moving, Inc | | | | | | | | | |
| VO1749 | 295014 | VOUCHER | 12/6/00 | 95.00 | 0.00 | 0.00 | 0.00 | 95.00 | 135 |
| **Vendor : All America Home US** | | Totals: | 95.00 | 0.00 | 0.00 | 0.00 | 95.00 | | |
| **Vendor : Allied Digit** | | | | | | | | | |
| Allied Digital Technologies | | | | | | | | | |
| VO1806 | Ckt#112392 | VOUCHER | 2/21/01 | 328.78 | 0.00 | 328.78 | 0.00 | 0.00 | 58 |
| **Vendor : Allied Digit Home US** | | Totals: | 328.78 | 0.00 | 328.78 | 0.00 | 0.00 | | |
| **Vendor : Amerit IL** | | | | | | | | | |
| Ameritech | | | | | | | | | |
| VO1854 | test | VOUCHER | 2/1/01 | 1.00 | 0.00 | 0.00 | 1.00 | 0.00 | 78 |
| **Vendor : Amerit IL   Home US** | | Totals: | 1.00 | 0.00 | 0.00 | 1.00 | 0.00 | | |
| **Vendor : Arrowhead** | | | | | | | | | |
| Arrowhead Mountain Spring Water | | | | | | | | | |
| VO1747 | ooL0021627633 | VOUCHER | 12/6/00 | 14.90 | 0.00 | 0.00 | 0.00 | 14.90 | 135 |
| VO1762 | 01A0021627633 | VOUCHER | 1/6/01 | 33.04 | 0.00 | 0.00 | 0.00 | 33.04 | 104 |
| VO1863 | 10B0021627633 | VOUCHER | 2/6/01 | 34.59 | 0.00 | 0.00 | 34.59 | 0.00 | 73 |
| VO1944 | 01D0021627633 | VOUCHER | 4/6/01 | 43.03 | 43.03 | 0.00 | 0.00 | 0.00 | 14 |
| **Vendor : Arrowhead Home US** | | Totals: | 125.56 | 43.03 | 0.00 | 34.59 | 47.94 | | |
| **Vendor : Ascom Hasler** | | | | | | | | | |
| Ascom Hasler Mailing Systems | | | | | | | | | |
| VO1748 | 632493 | VOUCHER | 12/15/00 | 144.96 | 0.00 | 0.00 | 0.00 | 144.96 | 126 |
| **Vendor : Ascom Has Home US** | | Totals: | 144.96 | 0.00 | 0.00 | 0.00 | 144.96 | | |
| **Vendor : AT & T Wir04** | | | | | | | | | |
| AT & T Wireless Service | | | | | | | | | |
| VO1778 | Jan01 | VOUCHER | 2/3/01 | 322.46 | 0.00 | 0.00 | 322.46 | 0.00 | 76 |
| **Vendor : AT & T Wir Home US** | | Totals: | 322.46 | 0.00 | 0.00 | 322.46 | 0.00 | | |
| **Vendor : AT&T** | | | | | | | | | |
| AT&T   Acct. #661-871-4924 | | | | | | | | | |
| VO1768 | 0585389755001 | VOUCHER | 2/9/01 | 33.38 | 0.00 | 0.00 | 33.38 | 0.00 | 70 |
| VO1825 | Feb01 | VOUCHER | 2/1/01 | 27.80 | 0.00 | 0.00 | 27.80 | 0.00 | 78 |
| **Vendor : AT&T   Home US** | | Totals: | 61.18 | 0.00 | 0.00 | 61.18 | 0.00 | | |
| **Vendor : AT&T AZ** | | | | | | | | | |
| AT&T | | | | | | | | | |
| VO1841 | Feb01 | VOUCHER | 2/17/01 | 92.29 | 0.00 | 0.00 | 92.29 | 0.00 | 62 |
| **Vendor : AT&T AZ   Home US** | | Totals: | 92.29 | 0.00 | 0.00 | 92.29 | 0.00 | | |
| **Vendor : AT&T Wire AZ** | | | | | | | | | |
| AT&T Wireless Services | | | | | | | | | |
| VO1842 | Feb01 | VOUCHER | 2/7/01 | 24.20 | 0.00 | 0.00 | 24.20 | 0.00 | 72 |
| VO1843 | Feb01/1312608: | VOUCHER | 2/7/01 | 22.71 | 0.00 | 0.00 | 22.71 | 0.00 | 72 |
| **Vendor : AT&T Wire.Home US** | | Totals: | 46.91 | 0.00 | 0.00 | 46.91 | 0.00 | | |
| **Vendor : AT&T Wire CA** | | | | | | | | | |
| AT&T Wireless Services | | | | | | | | | |
| VO1804 | Jan01 | VOUCHER | 2/4/01 | 165.76 | 0.00 | 0.00 | 165.76 | 0.00 | 75 |
| VO1828 | Jan | VOUCHER | 1/4/01 | 30.49 | 0.00 | 0.00 | 0.00 | 30.49 | 106 |
| VO1862 | 38870192/Feb0' | VOUCHER | 3/1/01 | 227.81 | 0.00 | 227.81 | 0.00 | 0.00 | 50 |

B - 238

121

000104

**Aged Payables By: Branch Code/Vendor Code**
**Mustang Corporation**
**Summary Style, As of 04/20/2001**
**Include Future Trxs: No    Include Trxs Paid in Full: No**

Page 2

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|--------|---------|----------|------------|---------|---------------|------------|------------|--------------|-----------|
| Branch Code: | Default | Default | | | - Continued... | | | | |
| Vendor : AT&T Wire ·Home  US | | | Totals: | 424.06 | 0.00 | 227.81 | 165.76 | 30.49 | |
| Vendor : AT&T/06 | AT&T | | | | | | | | |
| VO1873 | 0512837959001· | VOUCHER | 2/19/01 | 11.09 | 0.00 | 11.09 | 0.00 | 0.00 | 60 |
| Vendor : AT&T/06  Home  US | | | Totals: | 11.09 | 0.00 | 11.09 | 0.00 | 0.00 | |
| Vendor : AT&T/AZ 02 | AT&T | | | | | | | | |
| VO1839 | 1312590218/feb | VOUCHER | 2/7/01 | 87.38 | 0.00 | 0.00 | 87.38 | 0.00 | 72 |
| Vendor : AT&T/AZ 02Home  US | | | Totals: | 87.38 | 0.00 | 0.00 | 87.38 | 0.00 | |
| Vendor : AT&T/AZ 04 | AT&T #058 535 0952-001 | | | | | | | | |
| VO1861 | Feb01 | VOUCHER | 2/27/01 | 33.84 | 0.00 | 33.84 | 0.00 | 0.00 | 52 |
| VO1941 | 6613879217/Mar | VOUCHER | 3/19/01 | 11.07 | 0.00 | 11.07 | 0.00 | 0.00 | 32 |
| VO1943 | 6613635820 | VOUCHER | 3/31/01 | 9.91 | 9.91 | 0.00 | 0.00 | 0.00 | 20 |
| Vendor : AT&T/AZ 04Home  US | | | Totals: | 54.82 | 9.91 | 44.91 | 0.00 | 0.00 | |
| Vendor : AT&T-AZ 8001 | AT&T -AZ | | | | | | | | |
| VO1824 | Feb01/80017214 | VOUCHER | 2/1/01 | 958.89 | 0.00 | 0.00 | 958.89 | 0.00 | 78 |
| | 7211901395 | | 4/1/01 | 988.40 | 988.40 | 0.00 | 0.00 | 0.00 | 19 |
| Vendor : AT&T-AZ 80Home  US | | | Totals: | 1,947.29 | .988.40 | 0.00 | 958.89 | 0.00 | |
| Vendor : AT&TWire/DL | AT&T Wireless Services#152359600 | | | | | | | | |
| VO1840 | feb01 | VOUCHER | 2/17/01 | 283.32 | 0.00 | 0.00 | 283.32 | 0.00 | 62 |
| Vendor : AT&TWire/[ Home  US | | | Totals: | 283.32 | 0.00 | 0.00 | 283.32 | 0.00 | |
| Vendor : BellSouth NC | BellSouth | | | | | | | | |
| VO1809 | 9546300155/Jar | VOUCHER | 1/19/01 | 135.44 | 0.00 | 0.00 | 0.00 | 135.44 | 91 |
| VO1865 | Feb01 | VOUCHER | 2/19/01 | 47.96 | 0.00 | 47.96 | 0.00 | 0.00 | 60 |
| Vendor : BellSouth NHome  US | | | Totals: | 183.40 | 0.00 | 47.96 | 0.00 | 135.44 | |
| Vendor : BellSouth PA | BellSouth Wireless Data | | | | | | | | |
| VO1783 | 379301 | VOUCHER | 1/1/01 | 592.58 | 0.00 | 0.00 | 0.00 | 592.58 | 109 |
| Vendor : BellSouth PHome  US | | | Totals: | 592.58 | 0.00 | 0.00 | 0.00 | 592.58 | |
| Vendor : BMI Mechanic | BMI Mechanical  Inc | | | | | | | | |
| VO1750 | 24517G | VOUCHER | 12/31/00 | 961.00 | 0.00 | 0.00 | 0.00 | 961.00 | 110 |
| VO1751 | 24337 | VOUCHER | 11/30/00 | 961.00 | 0.00 | 0.00 | 0.00 | 961.00 | 141 |
| VO1805 | 24668G | VOUCHER | 1/31/01 | 961.00 | 0.00 | 0.00 | 961.00 | 0.00 | 79 |
| VO1916 | 000939 | VOUCHER | 2/20/01 | 240.00 | 0.00 | 240.00 | 0.00 | 0.00 | 59 |
| Vendor : BMI Mechai Home  US | | | Totals: | 3,123.00 | 0.00 | 240.00 | 961.00 | 1,922.00 | |
| Vendor : Bobs Jung | Bobs Jungle | | | | | | | | |
| VO1787 | 16991 | VOUCHER | 2/1/01 | 95.00 | 0.00 | 0.00 | 95.00 | 0.00 | 78 |
| VO1864 | 18468 | VOUCHER | 3/1/01 | 95.00 | 0.00 | 95.00 | 0.00 | 0.00 | 50 |
| Vendor : Bobs Jung Home  US | | | Totals: | 190.00 | 0.00 | 95.00 | 95.00 | 0.00 | |

4/20/01
2:39:05PM

**Aged Payables By: Branch Code/Vendor Code**
Mustang Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 3

| Y TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | **Default** | **Default** | | | | - Continued... | | | |
| **Vendor:** | **California W** | | | | | | | | |
| | **California Water Service Co** | | | | | | | | |
| VO1808 | Jan/016270136C | VOUCHER | 12/18/00 | 250.46 | 0.00 | 0.00 | 0.00 | 250.46 | 123 |
| VO1834 | Jan/Feb 01 | VOUCHER | 2/21/01 | 233.67 | 0.00 | 233.67 | 0.00 | 0.00 | 58 |
| VO1917 | Feb01 | VOUCHER | 2/16/01 | 21.21 | 0.00 | 0.00 | 21.21 | 0.00 | 63 |
| **Vendor:** | **California W Home  US** | | **Totals:** | **505.34** | **0.00** | **233.67** | **21.21** | **250.46** | |
| **Vendor:** | **Coffee Brea** | | | | | | | | |
| | **Coffee Break Sevice, Inc** | | | | | | | | |
| VO1753 | 96499 | VOUCHER | 1/31/01 | 108.85 | 0.00 | 0.00 | 108.85 | 0.00 | 79 |
| VO1790 | 91549 | VOUCHER | 2/9/01 | 345.71 | 0.00 | 0.00 | 345.71 | 0.00 | 70 |
| VO1837 | 96847 | VOUCHER | 2/21/01 | 132.41 | 0.00 | 132.41 | 0.00 | 0.00 | 58 |
| **Vendor:** | **Coffee Brea Home  US** | | **Totals:** | **586.97** | **0.00** | **132.41** | **454.56** | **0.00** | |
| **Vendor:** | **ComEd** | | | | | | | | |
| | **ComEd** | | | | | | | | |
| VO1752 | 2725568018/Jan | VOUCHER | 1/8/01 | 38.79 | 0.00 | 0.00 | 0.00 | 38.79 | 104 |
| VO1851 | 2725568018/Feb | VOUCHER | 2/20/01 | 32.47 | 0.00 | 32.47 | 0.00 | 0.00 | 59 |
| **Vendor:** | **ComEd      Home  US** | | **Totals:** | **71.26** | **0.00** | **32.47** | **0.00** | **38.79** | |
| **Vendor:** | **CompuServe** | | | | | | | | |
| | **CompuServe Incorporated** | | | | | | | | |
| VO1789 | 1101103711 | VOUCHER | 1/27/01 | 9.95 | 0.00 | 0.00 | 9.95 | 0.00 | 83 |
| **Vendor:** | **CompuServ Home  US** | | **Totals:** | **9.95** | **0.00** | **0.00** | **9.95** | **0.00** | |
| **Vendor:** | **Cooper's Pro** | | | | | | | | |
| | **Cooper's Propane** | | | | | | | | |
| VO1695 | 26777 | VOUCHER | 1/11/01 | 243.40 | 0.00 | 0.00 | 0.00 | 243.40 | 99 |
| VO1696 | 26765 | VOUCHER | 1/10/01 | 534.83 | 0.00 | 0.00 | 0.00 | 534.83 | 100 |
| VO1697 | 26767 | VOUCHER | 1/10/01 | 303.88 | 0.00 | 0.00 | 0.00 | 303.88 | 100 |
| VO1698 | 26766 | VOUCHER | 1/10/01 | 550.02 | 0.00 | 0.00 | 0.00 | 550.02 | 100 |
| VO1754 | 27861 | VOUCHER | 1/29/01 | 621.14 | 0.00 | 0.00 | 621.14 | 0.00 | 81 |
| VO1755 | 27862 | VOUCHER | 1/29/01 | 621.14 | 0.00 | 0.00 | 621.14 | 0.00 | 81 |
| VO1830 | 28057 | VOUCHER | 2/13/01 | 340.52 | 0.00 | 0.00 | 340.52 | 0.00 | 66 |
| VO1831 | 28056 | VOUCHER | 2/13/01 | 314.23 | 0.00 | 0.00 | 314.23 | 0.00 | 66 |
| VO1832 | 28055 | VOUCHER | 2/13/01 | 253.26 | 0.00 | 0.00 | 253.26 | 0.00 | 66 |
| **Vendor:** | **Cooper's Pr Home  US** | | **Totals:** | **3,782.42** | **0.00** | **0.00** | **2,150.29** | **1,632.13** | |
| **Vendor:** | **CSC** | | | | | | | | |
| | **CSC** | | | | | | | | |
| VO1784 | 43340224 | VOUCHER | 8/11/00 | 122.71 | 0.00 | 0.00 | 0.00 | 122.71 | 252 |
| **Vendor:** | **CSC      Home  US** | | **Totals:** | **122.71** | **0.00** | **0.00** | **0.00** | **122.71** | |
| **Vendor:** | **Derret's Min** | | | | | | | | |
| | **Derret's Mini Storage  Inc** | | | | | | | | |
| VO342 | Pd. thru 12/00 | VOUCHER | 7/21/00 | 1,198.00 | 0.00 | 0.00 | 0.00 | 1,198.00 | 273 |
| **Vendor:** | **Derret's Mir Home  US** | | **Totals:** | **1,198.00** | **0.00** | **0.00** | **0.00** | **1,198.00** | |
| **Vendor:** | **Federal Expr** | | | | | | | | |
| | **Federal Express** | | | | | | | | |
| VO1827 | 572046927 | VOUCHER | 2/9/01 | 2.58 | 0.00 | 0.00 | 2.58 | 0.00 | 70 |
| VO1829 | 572108542 | VOUCHER | 2/23/01 | 70.40 | 0.00 | 70.40 | 0.00 | 0.00 | 56 |
| VO1838 | 572077459 | VOUCHER | 2/16/01 | 57.50 | 0.00 | 0.00 | 57.50 | 0.00 | 63 |
| VO1867 | 572140058 | VOUCHER | 3/2/01 | 49.41 | 0.00 | 49.41 | 0.00 | 0.00 | 49 |
| VO1940 | 576687490 | VOUCHER | 3/30/01 | 40.04 | 40.04 | 0.00 | 0.00 | 0.00 | 21 |
| **Vendor:** | **Federal Exp Home  US** | | **Totals:** | **219.93** | **40.04** | **119.81** | **60.08** | **0.00** | |

B - 240

123

000106

## Aged Payables By: Branch Code/Vendor Code
### Mustang Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | Default | Default | | | - Continued... | | | | |
| Vendor : Genesys Conf | | | | | | | | | |
| Genesys Conferencing | | | | | | | | | |
| VO1915 | 1497712 | VOUCHER | 2/28/01 | 75.52 | 0.00 | 75.52 | 0.00 | 0.00 | 51 |
| Vendor : Genesys CcHome US | | | Totals: | 75.52 | 0.00 | 75.52 | 0.00 | 0.00 | |
| Vendor : Hewitt Assoc | | | | | | | | | |
| Hewitt Associates LLC | | | | | | | | | |
| VO1802 | oVERPYMT | VOUCHER | 2/21/01 | 2,499.99 | 0.00 | 2,499.99 | 0.00 | 0.00 | 58 |
| Vendor : Hewitt AssoHome US | | | Totals: | 2,499.99 | 0.00 | 2,499.99 | 0.00 | 0.00 | |
| Vendor : Holiday Inn | | | | | | | | | |
| Holiday Inn Select | | | | | | | | | |
| VO1675 | Holiday party | VOUCHER | 1/9/01 | 3,378.14 | 0.00 | 0.00 | 0.00 | 3,378.14 | 101 |
| Vendor : Holiday Inn Home US | | | Totals: | 3,378.14 | 0.00 | 0.00 | 0.00 | 3,378.14 | |
| Vendor : Interstate D | | | | | | | | | |
| Interstate Distribution Center | | | | | | | | | |
| VO1761 | 10112080 | VOUCHER | 12/19/00 | 1,385.70 | 0.00 | 0.00 | 0.00 | 1,385.70 | 122 |
| Vendor : Interstate D Home US | | | Totals: | 1,385.70 | 0.00 | 0.00 | 0.00 | 1,385.70 | |
| Vendor : Kern Securit | | | | | | | | | |
| KSS Security, Inc. | | | | | | | | | |
| 3 | 60752-s | VOUCHER | 2/4/01 | 155.74 | 0.00 | 0.00 | 155.74 | 0.00 | 75 |
| Vendor : Kern SecuriHome US | | | Totals: | 155.74 | 0.00 | 0.00 | 155.74 | 0.00 | |
| Vendor : Lowe's Home | | | | | | | | | |
| Lowe's Home Centers, Inc. | | | | | | | | | |
| VO1786 | #0469212-0790 | VOUCHER | 1/25/01 | 111.02 | 0.00 | 0.00 | 111.02 | 0.00 | 85 |
| VO1787 | 079003698932 | VOUCHER | 2/5/01 | 70.03 | 0.00 | 0.00 | 70.03 | 0.00 | 74 |
| VO1788 | 079004199387 | VOUCHER | 2/10/01 | 111.12 | 0.00 | 0.00 | 111.12 | 0.00 | 69 |
| Vendor : Lowe's HorHome US | | | Totals: | 292.17 | 0.00 | 0.00 | 292.17 | 0.00 | |
| Vendor : Meliton Alta | | | | | | | | | |
| Meliton Altamirano | | | | | | | | | |
| VO1785 | 315984 | VOUCHER | 2/6/01 | 600.00  - 1023 | 0.00 | 0.00 | 600.00 | 0.00 | 73 |
| VO1786 | 315985 | VOUCHER | 2/6/01 | 280.00 | 0.00 | 0.00 | 280.00 | 0.00 | 73 |
| VO1932 | 215873 4/3/01 | VOUCHER | 4/3/01 | 600.00 | 600.00 | 0.00 | 0.00 | 0.00 | 17 |
| Vendor : Meliton AltaHome US | | | Totals: | 1,480.00 | 600.00 | 0.00 | 880.00 | 0.00 | |
| Vendor : Metal Kennet | | | | | | | | | |
| Kenneth R. Metal | | | | | | | | | |
| VO1795 | Insuran. | VOUCHER | 2/20/01 | 0.69 | 0.00 | 0.69 | 0.00 | 0.00 | 59 |
| Vendor : Metal KennHome US | | | Totals: | 0.69 | 0.00 | 0.69 | 0.00 | 0.00 | |
| Vendor : Office Depot | | | | | | | | | |
| Office Depot | | | | | | | | | |
| VO1706 | 118450838-001 | VOUCHER | 1/10/01 | 11.49 | 0.00 | 0.00 | 0.00 | 11.49 | 100 |
| 3 | 120634533-001 | VOUCHER | 2/7/01 | 78.50 | 0.00 | 0.00 | 78.50 | 0.00 | 72 |
| 4 | 122011767 | VOUCHER | 2/21/01 | 19.20 | 0.00 | 19.20 | 0.00 | 0.00 | 58 |
| Vendor : Office DepoHome US | | | Totals: | 109.19 | 0.00 | 19.20 | 78.50 | 11.49 | |
| Vendor : OSI Collecti | | | | | | | | | |
| OSI Collection Services | | | | | | | | | |
| VO1748 | File #784985 | VOUCHER | 2/6/01 | 2,952.90 | 0.00 | 0.00 | 2,952.90 | 0.00 | 73 |
| VO177 | File #784977 | VOUCHER | 2/13/01 | 1,246.62 | 0.00 | 0.00 | 1,246.62 | 0.00 | 66 |

4/20/01
2:39:08PM

**Aged Payables By: Branch Code/Vendor Code**
Mustang Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 5

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|--------|---------|----------|------------|---------|---------------|------------|------------|--------------|-----------|
| **Branch Code:** | **Default** | **Default** | | | - Continued... | | | | |
| | Vendor: OSI CollectiHome  US | | Totals: | 4,199.52 | 0.00 | 0.00 | 4,199.52 | 0.00 | |
| | Vendor: Pacific Bell Pacific Bell | | | | | | | | |
| VO1815 | 2373710810-2/7 | VOUCHER | 2/7/01 | 339.98 | 0.00 | 0.00 | 339.98 | 0.00 | 72 |
| VO1816 | 2383810652-2/7 | VOUCHER | 2/7/01 | 169.98 | 0.00 | 0.00 | 169.98 | 0.00 | 72 |
| VO1817 | 6618721796-2/5 | VOUCHER | 2/5/01 | 60.01 | 0.00 | 0.00 | 60.01 | 0.00 | 74 |
| VO1818 | 6618724497-2/5 | VOUCHER | 2/5/01 | 274.76 | 0.00 | 0.00 | 274.76 | 0.00 | 74 |
| VO1819 | 2383811725-2/7 | VOUCHER | 2/7/01 | 478.05 | 0.00 | 0.00 | 478.05 | 0.00 | 72 |
| VO1833 | 6618714924-2/1 | VOUCHER | 2/11/01 | 107.78 | 0.00 | 0.00 | 107.78 | 0.00 | 68 |
| VO1869 | 6618732500-2/1 | VOUCHER | 2/11/01 | 153.38 | 0.00 | 0.00 | 153.38 | 0.00 | 68 |
| VO1870 | 6613879217-2/1 | VOUCHER | 2/13/01 | 38.41 | 0.00 | 0.00 | 38.41 | 0.00 | 66 |
| VO1871 | 6613879231-2/1 | VOUCHER | 2/13/01 | 35.51 | 0.00 | 0.00 | 35.51 | 0.00 | 66 |
| VO1872 | 6618739997-2/1 | VOUCHER | 2/11/01 | 825.00 | 0.00 | 0.00 | 825.00 | 0.00 | 68 |
| VO1902 | 6618732500-pre | VOUCHER | 3/11/01 | 66.43 | 0.00 | 66.43 | 0.00 | 0.00 | 40 |
| VO1903 | 6618739997-pre | VOUCHER | 3/11/01 | 357.01 | 0.00 | 357.01 | 0.00 | 0.00 | 40 |
| VO1904 | 2383810652-pre | VOUCHER | 3/7/01 | 102.79 | 0.00 | 102.79 | 0.00 | 0.00 | 44 |
| VO1905 | 2373710810-pre | VOUCHER | 3/7/01 | 205.53 | 0.00 | 205.53 | 0.00 | 0.00 | 44 |
| VO1906 | 6618724497-pre | VOUCHER | 3/5/01 | 169.27 | 0.00 | 169.27 | 0.00 | 0.00 | 46 |
| VO1908 | 6618721796-pre | VOUCHER | 3/5/01 | 38.54 | 0.00 | 38.54 | 0.00 | 0.00 | 46 |
| VO1909 | 2383811725-pre | VOUCHER | 3/7/01 | 274.38 | 0.00 | 274.38 | 0.00 | 0.00 | 44 |
| VO1947 | 6618714924-3/1 | VOUCHER | 3/11/01 | 109.23 | 0.00 | 109.23 | 0.00 | 0.00 | 40 |
| | Vendor: Pacific Bell Home  US | | Totals: | 3,806.04 | 0.00 | 1,323.18 | 2,482.86 | 0.00 | |
| | Vendor: Pacific Gas Pacific Gas & Electric | | | | | | | | |
| ●48 | pge | CASHDISB | | (0.32) | 0.00 | 0.00 | 0.00 | (0.32) | |
| | Vendor: Pacific Gas Home  US | | Totals: | (0.32) | 0.00 | 0.00 | 0.00 | (0.32) | |
| | Vendor: Pitney Bowes Pitney Bowes, Inc. | | | | | | | | |
| VO1811 | 5122826-JA01 | VOUCHER | 2/14/01  1025 | 20.95 | 0.00 | 0.00 | 20.95 | 0.00 | 65 |
| | Vendor: Pitney BowHome  US | | Totals: | 20.95 | 0.00 | 0.00 | 20.95 | 0.00 | |
| | Vendor: Qwest Qwest | | | | | | | | |
| VO1822 | 4805138311-2/7 | VOUCHER | 2/7/01 | 164.30 | 0.00 | 0.00 | 164.30 | 0.00 | 72 |
| VO1823 | 4805138427-2/7 | VOUCHER | 2/7/01 | 369.54 | 0.00 | 0.00 | 369.54 | 0.00 | 72 |
| | Vendor: Qwest    Home  US | | Totals: | 533.84 | 0.00 | 0.00 | 533.84 | 0.00 | |
| | Vendor: QWEST Comm Qwest | | | | | | | | |
| VO1794 | 621020072 | VOUCHER | 2/3/01 | 20.83 | 0.00 | 0.00 | 20.83 | 0.00 | 76 |
| VO1945 | 523852615 | VOUCHER | 4/3/01 | 23.25 | 23.25 | 0.00 | 0.00 | 0.00 | 17 |
| | Vendor: QWEST ComHome  US | | Totals: | 44.08 | 23.25 | 0.00 | 20.83 | 0.00 | |
| | Vendor: Runes Rebecc Rebecca Runes | | | | | | | | |
| VO97 | w/e 04/29/00 | VOUCHER | 4/29/00 | 0.10 | 0.00 | 0.00 | 0.00 | 0.10 | 356 |
| | Vendor: Runes RebrHome  US | | Totals: | 0.10 | 0.00 | 0.00 | 0.00 | 0.10 | |
| ● | Vendor: S.T.O.Pests S.T.O.Pests | | | | | | | | |
| VO1946 | 39411 | VOUCHER | 4/6/01 | 75.00 | 75.00 | 0.00 | 0.00 | 0.00 | 14 |
| | Vendor: S.T.O.PestsHome  US | | Totals: | 75.00 | 75.00 | 0.00 | 0.00 | 0.00 | |
| | Vendor: Sniders Sniders | | | | | | | | |

B - 242

000108

4/20/01
2:39:05PM

## Aged Payables By: Branch Code/Vendor Code
### Mustang Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 6

| TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | Default | Default | | | - Continued... | | | | |
| Vendor : | Sniders | Sniders | | | - Continued... | | | | |
| VO1760 | S 29531 | VOUCHER | 1/24/01 | 139.86 | 0.00 | 0.00 | 139.86 | 0.00 | 86 |
| | Vendor : Sniders | Home US | Totals: | 139.86 | 0.00 | 0.00 | 139.86 | 0.00 | |
| | Vendor : Sparkle Text | Sparkle Textile Rental | | | | | | | |
| VO1810 | Acct. #915 1/31 | VOUCHER | 1/31/01 | 39.99 | 0.00 | 0.00 | 39.99 | 0.00 | 79 |
| | Vendor : Sparkle Tex | Home US | Totals: | 39.99 | 0.00 | 0.00 | 39.99 | 0.00 | |
| | Vendor : St. Pierre L | Lance St. Pierre | | | | | | | |
| VO1836 | Jan 01 | VOUCHER | 1/2/01 | 710.00 | 0.00 | 0.00 | 0.00 | 710.00 | 108 |
| | Vendor : St. Pierre L | Home US | Totals: | 710.00 | 0.00 | 0.00 | 0.00 | 710.00 | |
| | Vendor : Superior San | Superior Sanitation Service | | | | | | | |
| VO1868 | Acct. #125816 | VOUCHER | 3/1/01 | 111.00 | 0.00 | 111.00 | 0.00 | 0.00 | 50 |
| | Vendor : Superior Sa | Home US | Totals: | 111.00 | 0.00 | 111.00 | 0.00 | 0.00 | |
| | Vendor : Unisource Ma | Unisource Maintenance Supply | | | | | | | |
| VO1820 | 011005522118 | VOUCHER | 2/8/01 | 294.25 | 0.00 | 0.00 | 294.25 | 0.00 | 71 |
| VO1821 | 011005530767 | VOUCHER | 2/9/01 | 133.86 | 0.00 | 0.00 | 133.86 | 0.00 | 70 |
| | Vendor : Unisource I | Home US | Totals: | 428.11 | 0.00 | 0.00 | 428.11 | 0.00 | |
| | Vendor : Varsity Cont | Varsity Contractors Inc | | | | | | | |
| VO1812 | 132716 | VOUCHER | 2/10/01 | 1,167.82 | 0.00 | 0.00 | 1,167.82 | 0.00 | 69 |
| | Vendor : Varsity Con | Home US | Totals: | 1,167.82 | 0.00 | 0.00 | 1,167.82 | 0.00 | |
| | Vendor : Virgin E-Com | Virgin E-Commerce | | | | | | | |
| VO1801 | ck#002518 | VOUCHER | 2/21/01 | 5,500.00 | 0.00 | 5,500.00 | 0.00 | 0.00 | 58 |
| | Vendor : Virgin E-Co | Home US | Totals: | 5,500.00 | 0.00 | 5,500.00 | 0.00 | 0.00 | |
| Branch Code: | Default | Home US | Totals: | 40,764.79 | 1,779.63 | 11,043.49 | 16,246.06 | 11,695.61 | |

REPORT TOTALS:    Home US .    Totals:    40,764.79    1,779.63    11,043.49    16,246.06    11,695.61

Total number of vendors listed: 51

*(handwritten: 103D next to VO1812 132716 line)*

*(handwritten: Immaterial Diff of .26 to G/L)*

000109

B - 243

126

4/20/01
2:37:47PM

3001-
3003 Post

2 550

**Aged Payables By: Branch Code/Vendor Code**
Acuity Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No     Include Trxs Paid in Full: No

Page 1

| APPLY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | **Default Branch Code** | | | | | | | |
| **Vendor :** At & T wi | At & T Wireless Service | | | | | | | | |
| VO3111 | 61742201/Feb01 | VOUCHER | 2/23/01 | 1,615.46 | 0.00 | 1,615.46 | 0.00 | 0.00 | 56 |
| | **Vendor : At & T wi Home US** | | **Totals:** | 1,615.46 | 0.00 | 1,615.46 | 0.00 | 0.00 | |
| **Vendor : AT&T 019-1** | AT & T 019-157-3467-001 | | | | | | | | |
| VO2982 | Jan01 | VOUCHER | 1/8/01 | 3,676.79 | 0.00 | 0.00 | 0.00 | 3,676.79 | 104 |
| VO3055 | Feb01 | VOUCHER | 2/6/01 | 6,569.20 | 0.00 | 0.00 | 6,569.20 | 0.00 | 73 |
| VO3218 | Apr01 | VOUCHER | 4/8/01 | 7,851.12 | 7,851.12 | 0.00 | 0.00 | 0.00 | 14 |
| | **Vendor : AT&T 019-1 Home US** | | **Totals:** | 18,097.11 | 7,851.12 | 0.00 | 6,569.20 | 3,676.79 | |
| **Vendor : AT&T 512** | AT&T 512 425-2200 | | | | | | | | |
| DISB224 | DB6 | DB.MEMO | | (4.13) | 0.00 | 0.00 | 0.00 | (4.13) | |
| | **Vendor : AT&T 512 Home US** | | **Totals:** | (4.13) | 0.00 | 0.00 | 0.00 | (4.13) | |
| **Vendor : AT&T/Chicago** | AT&T | | | | | | | | |
| VO3215 | G890924 | VOUCHER | 4/1/01 | 945.29 | 945.29 | 0.00 | 0.00 | 0.00 | 19 |
| | **Vendor : AT&T/Chica Home US** | | **Totals:** | 945.29 | 945.29 | 0.00 | 0.00 | 0.00 | |
| **Vendor : Avcom Commun** | Avcom Communications | | | | | | | | |
| VO3026 | 415145/Feb | VOUCHER | 2/1/01 | 273.80 | 0.00 | 0.00 | 273.80 | 0.00 | 78 |
| | **Vendor : Avcom Con Home US** | | **Totals:** | 273.80 | 0.00 | 0.00 | 273.80 | 0.00 | |
| **Vendor : Boise Cascad** | Boise Cascade Office Products | | | | | | | | |
| VO2911 | 137310 | VOUCHER | 1/11/01 | 146.05 | 0.00 | 0.00 | 0.00 | 146.05 | 99 |
| VO2950 | 520046 | VOUCHER | 1/25/01 | 118.39 | 0.00 | 0.00 | 118.39 | 0.00 | 85 |
| VO2951 | 518395 | VOUCHER | 1/25/01 | 46.52 | 0.00 | 0.00 | 46.52 | 0.00 | 85 |
| VO2953 | 438453 | VOUCHER | 1/23/01 | 35.35 | 0.00 | 0.00 | 35.35 | 0.00 | 87 |
| VO2983 | 154862 | VOUCHER | 1/26/01 | 31.61 | 0.00 | 0.00 | 31.61 | 0.00 | 84 |
| VO3094 | 932240 | VOUCHER | 2/9/01 | 188.19 | 0.00 | 0.00 | 188.19 | 0.00 | 70 |
| | **Vendor : Boise Casc.Home US** | | **Totals:** | 566.11 | 0.00 | 0.00 | 420.06 | 146.05 | |
| **Vendor : Broadwing/KY** | Broadwing Telecommunications, Inc. | | | | | | | | |
| VO3029 | 10010672/Jan01 | VOUCHER | 1/18/01 | 93.35 | 0.00 | 0.00 | 0.00 | 93.35 | 94 |
| VO3110 | 10010672 | VOUCHER | 2/19/01 | 7.33 | 0.00 | 7.33 | 0.00 | 0.00 | 60 |
| | **Vendor : Broadwing/ Home US** | | **Totals:** | 100.68 | 0.00 | 7.33 | 0.00 | 93.35 | |
| **Vendor : Broadwing/TX** | Broadwing | | | | | | | | |
| VO3022 | 020182090 | VOUCHER | 2/1/01 | 1,250.00 | 0.00 | 0.00 | 1,250.00 | 0.00 | 78 |
| VO3225 | 40182090 | VOUCHER | 4/1/01 | 1,250.00 | 1,250.00 | 0.00 | 0.00 | 0.00 | 19 |
| | **Vendor : Broadwing/ Home US** | | **Totals:** | 2,500.00 | 1,250.00 | 0.00 | 1,250.00 | 0.00 | |
| **Vendor : Cold, Inc.** | Cold, Inc. | | | | | | | | |
| VO3021 | 35536 | VOUCHER | 2/1/01 | 140.73 | 0.00 | 0.00 | 140.73 | 0.00 | 78 |
| | **Vendor : Cold, Inc.  Home US** | | **Totals:** | 140.73 | 0.00 | 0.00 | 140.73 | 0.00 | |
| **Vendor : Cothron's Sa** | Cothron's Safe & Lock Inc. | | | | | | | | |

B - 244

**127**

000110

4/20/01
2:37:47PM

**Aged Payables By: Branch Code/Vendor Code**
Acuity Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 2

| APPLY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | Cothron's Sa | Cothron's Safe & Lock Inc. | | | - Continued... | | | | |
| VO2909 | 254179 | VOUCHER | 1/22/01 | 465.15 | 0.00 | 0.00 | 465.15 | 0.00 | 88 |
| | Vendor : Cothron's S Home  US | | Totals: | 465.15 | 0.00 | 0.00 | 465.15 | 0.00 | |
| | Vendor : Cover All Ma | Cover All Maintenance | | | | | | | |
| VO3213 | 5428 | VOUCHER | 4/10/01 | 1,461.38 | 1,461.38 | 0.00 | 0.00 | 0.00 | 10 |
| VO3224 | 5427 | VOUCHER | 4/17/01 | 270.63 | 270.63 | 0.00 | 0.00 | 0.00 | 3 |
| | Vendor : Cover All M Home  US | | Totals: | 1,732.01 | 1,732.01 | 0.00 | 0.00 | 0.00 | |
| | Vendor : Dell Financi | DFS Acceptance | | | | | | | |
| VO3047 | 8243941 | VOUCHER | 2/5/01 | 1,167.81 | 0.00 | 0.00 | 1,167.81 | 0.00 | 74 |
| VO3048 | 8243943 | VOUCHER | 2/5/01 | 99.73 | 0.00 | 0.00 | 99.73 | 0.00 | 74 |
| VO3049 | 8243942 | VOUCHER | 2/5/01 | 278.29 | 0.00 | 0.00 | 278.29 | 0.00 | 74 |
| VO3050 | 8243944 | VOUCHER | 2/5/01 | 105.16 | 0.00 | 0.00 | 105.16 | 0.00 | 74 |
| VO3172 | 9016510 | VOUCHER | 3/9/01 | 217.80 | 0.00 | 217.80 | 0.00 | 0.00 | 42 |
| VO3173 | 9016512 | VOUCHER | 3/9/01 | 98.30 | 0.00 | 98.30 | 0.00 | 0.00 | 42 |
| VO3174 | 9016509 | VOUCHER | 3/9/01 | 1,151.14 | 0.00 | 1,151.14 | 0.00 | 0.00 | 42 |
| VO3175 | 9016513 | VOUCHER | 3/9/01 | 103.66 | 0.00 | 103.66 | 0.00 | 0.00 | 42 |
| | Vendor : Dell Financi Home  US | | Totals: | 3,221.89 | 0.00 | 1,570.90 | 1,650.99 | 0.00 | |
| | Vendor : Dell Marketi | Dell Marketing L.P | | | | | | | |
| VO20 | 495515617 | VOUCHER | 1/12/01 | 2,813.37 | 0.00 | 0.00 | 0.00 | 2,813.37 | 98 |
| | Vendor : Dell Marketi Home  US | | Totals: | 2,813.37 | 0.00 | 0.00 | 0.00 | 2,813.37 | |
| | Vendor : Federal Expr | Federal Express | | | | | | | |
| VO3028 | 572609443 | VOUCHER | 2/1/01 | 111.05 | 0.00 | 0.00 | 111.05 | 0.00 | 78 |
| VO3051 | 572636299 | VOUCHER | 2/8/01 | 269.54 | 0.00 | 0.00 | 269.54 | 0.00 | 71 |
| VO3054 | 572668549 | VOUCHER | 2/15/01 | 136.19 | 0.00 | 0.00 | 136.19 | 0.00 | 64 |
| VO3177 | 572698243 | VOUCHER | 2/22/01 | 174.29 | 0.00 | 174.29 | 0.00 | 0.00 | 57 |
| VO3214 | 377484032 | VOUCHER | 4/5/01 | 77.95 | 77.95 | 0.00 | 0.00 | 0.00 | 15 |
| | Vendor : Federal Exp Home  US | | Totals: | 769.02 | 77.95 | 174.29 | 516.78 | 0.00 | |
| | Vendor : Fox Service | Fox Service Co. Inc. | | | | | | | |
| VO2992 | 325995 | VOUCHER | 12/31/00 | 160.75 | 0.00 | 0.00 | 0.00 | 160.75 | 110 |
| VO2997 | 325745 | VOUCHER | 12/28/00 | 332.35 | 0.00 | 0.00 | 0.00 | 332.35 | 113 |
| VO2998 | 326072 | VOUCHER | 1/28/01 | 609.19 | 0.00 | 0.00 | 609.19 | 0.00 | 82 |
| VO2999 | 327896 | VOUCHER | 1/24/01 | 219.33 | 0.00 | 0.00 | 219.33 | 0.00 | 86 |
| VO3061 | 329841 | VOUCHER | 2/19/01 | 322.59 | 0.00 | 322.59 | 0.00 | 0.00 | 60 |
| VO3068 | 330168 | VOUCHER | 2/21/01 | 219.33 | 0.00 | 219.33 | 0.00 | 0.00 | 58 |
| VO3069 | 330048 | VOUCHER | 2/21/01 | 142.89 | 0.00 | 142.89 | 0.00 | 0.00 | 58 |
| VO3095 | 328649 | VOUCHER | 1/31/01 | 225.43 | 0.00 | 0.00 | 225.43 | 0.00 | 79 |
| | Vendor : Fox Service Home  US | | Totals: | 2,231.86 | 0.00 | 684.81 | 1,053.95 | 493.10 | |
| | Vendor : Freight Save | Freight Savers Express | | | | | | | |
| VO2996 | 47855A16 | VOUCHER | 1/16/01 | 178.24 | 0.00 | 0.00 | 0.00 | 178.24 | 94 |
| | Vendor : Freight Sav Home  US | | Totals: | 178.24 | 0.00 | 0.00 | 0.00 | 178.24 | |
| | Vendor : Freytags Flo | Freytags Florists | | | | | | | |
| VO3099 | 339031 | VOUCHER | 12/12/01 | 65.98 | 65.98 | 0.00 | 0.00 | 0.00 | (238) |
| VO3100 | 348602 | VOUCHER | 1/29/01 | 60.62 | 0.00 | 0.00 | 60.62 | 0.00 | 81 |

**B - 245**

**128**

4/20/01
2:37:47PM

**Aged Payables By: Branch Code/Vendor Code**
Acuity Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

Page 3

| APPLY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | Default Branch Code | | - Continued... | | | | | |
| **Vendor :** | Freytags Flo | | | - Continued... | | | | | |
| | Freytags Florists | | | | | | | | |
| VO3101 | 330398 | VOUCHER | 10/30/01 | 60.57 | 60.57 | 0.00 | 0.00 | 0.00 | (193) |
| | Vendor : Freytags FkHome US | | Totals: | 187.17 | 126.55 | 0.00 | 60.62 | 0.00 | |
| **Vendor :** | HQ-Gold Rive | | | | | | | | |
| | HQ Global Workplaces | | | | | | | | |
| VO3070 | 0155826-Svcs | VOUCHER | 2/17/01 | 889.11 | 0.00 | 0.00 | 889.11 | 0.00 | 62 |
| | Vendor : HQ-Gold RiHome US | | Totals: | 889.11 | 0.00 | 0.00 | 889.11 | 0.00 | |
| **Vendor :** | Ikon Office | | | | | | | | |
| | Ikon Office Solutions | | | | | | | | |
| DISB263 | DB8 | DB.MEMO | | (94.43) | 0.00 | 0.00 | 0.00 | (94.43) | |
| | Vendor : Ikon Office Home US | | Totals: | (94.43) | 0.00 | 0.00 | 0.00 | (94.43) | |
| **Vendor :** | IOS Capital | | | | | | | | |
| | IOS Capital (IKON) | | | | | | | | |
| VO3056 | 50833990 | VOUCHER | 2/14/01 | 633.26 | 0.00 | 0.00 | 633.26 | 0.00 | 65 |
| | Vendor : IOS Capital Home US | | Totals: | 633.26 | 0.00 | 0.00 | 633.26 | 0.00 | |
| **Vendor :** | Iron Mountai | | | | | | | | |
| | Iron Mountain | | | | | | | | |
| VO3004 | 7109570 | VOUCHER | 1/3/01 | 33.67 | 0.00 | 0.00 | 0.00 | 33.67 | 107 |
| | Vendor : Iron MountzHome US | | Totals: | 33.67 | 0.00 | 0.00 | 0.00 | 33.67 | |
| **Vendor :** | Itty Bitty S | | | | | | | | |
| | Itty Bitty Servers, Inc | | | | | | | | |
| VO3008 | 2000-1011 | VOUCHER | 2/10/01 | 2,000.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 69 |
| | Vendor : Itty Bitty S Home US | | Totals: | 2,000.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | |
| **Vendor :** | Jani-King of | | | | | | | | |
| | Jani-King of Austin | | | | | | | | |
| VO2993 | 68350 | VOUCHER | 1/15/01 | 394.86 | 0.00 | 0.00 | 0.00 | 394.86 | 95 |
| VO3000 | 68963 | VOUCHER | 2/1/01 | 2,071.91 | 0.00 | 0.00 | 2,071.91 | 0.00 | 78 |
| VO3216 | 71781 | VOUCHER | 3/7/01 | 337.08 | 0.00 | 337.08 | 0.00 | 0.00 | 44 |
| | Vendor : Jani-King oHome US | | Totals: | 2,803.85 | 0.00 | 337.08 | 2,071.91 | 394.86 | |
| **Vendor :** | Jason's Deli | | | | | | | | |
| | Jason's Deli | | | | | | | | |
| VO2995 | INV0357082 | VOUCHER | 12/21/00 | 351.01 | 0.00 | 0.00 | 0.00 | 351.01 | 120 |
| VO3067 | 372798 | VOUCHER | 2/1/01 | 365.61 | 0.00 | 0.00 | 365.61 | 0.00 | 78 |
| VO3226 | 2111085 | VOUCHER | 2/23/01 | 352.34 | 0.00 | 352.34 | 0.00 | 0.00 | 56 |
| | Vendor : Jason's DelHome US | | Totals: | 1,068.96 | 0.00 | 352.34 | 365.61 | 351.01 | |
| **Vendor :** | Kampfe | | | | | | | | |
| | Kampfe/de Stijl, Inc. | | | | | | | | |
| VO2766 | 63420 | VOUCHER | 12/15/00 | 22,048.53 | 0.00 | 0.00 | 0.00 | 22,048.53 | 126 |
| | Vendor : Kampfe Home US | | Totals: | 22,048.53 | 0.00 | 0.00 | 0.00 | 22,048.53 | |
| **Vendor :** | Los Angeles | | | | | | | | |
| | Los Angeles Co Tax Collector | | | | | | | | |
| VO3217 | 4482640000 | VOUCHER | 4/19/01 | 27.17 | 27.17 | 0.00 | 0.00 | 0.00 | 1 |
| | Vendor : Los Angele:Home US | | Totals: | 27.17 | 27.17 | 0.00 | 0.00 | 0.00 | |

1496 *(handwritten)*

**B - 246**

000112

4/20/01
2:37:47PM

**Aged Payables By: Branch Code/Vendor Code**
Acuity Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 4

| APPLY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** | default | Default Branch Code | | | - Continued.... | | | | |
| Vendor : | Maynards Del Maynards Deli | | | | | | | | |
| VO2990 | 2725 | VOUCHER | 1/15/01 | 65.67 | 0.00 | 0.00 | 0.00 | 65.67 | 95 |
| Vendor : | Maynards DlHome  US | | Totals: | 65.67 | 0.00 | 0.00 | 0.00 | 65.67 | |
| Vendor : | Network Desi Network Designs Integration Services | | | | | | | | |
| VO3097 | 9027 | VOUCHER | 2/5/01 | 733.32 | 0.00 | 0.00 | 733.32 | 0.00 | 74 |
| Vendor : | Network DeHome  US | | Totals: | 733.32 | 0.00 | 0.00 | 733.32 | 0.00 | |
| Vendor : | Office Depot Office Depot, Inc. | | | | | | | | |
| VO2922 | 118077760-001 | VOUCHER | 1/10/01 | 50.15 | 0.00 | 0.00 | 0.00 | 50.15 | 100 |
| VO2923 | 118954174-001 | VOUCHER | 1/10/01 | 116.00 | 0.00 | 0.00 | 0.00 | 116.00 | 100 |
| VO3036 | 117321480 | VOUCHER | 1/17/01 | 38.27 | 0.00 | 0.00 | 0.00 | 38.27 | 93 |
| VO3064 | 121854606-001 | VOUCHER | 2/14/01 | 36.47 | 0.00 | 0.00 | 36.47 | 0.00 | 65 |
| VO3065 | 121709085-001 | VOUCHER | 2/14/01 | 171.68 | 0.00 | 0.00 | 171.68 | 0.00 | 65 |
| VO3066 | 121645549-001 | VOUCHER | 2/14/01 | 44.51 | 0.00 | 0.00 | 44.51 | 0.00 | 65 |
| VO3073 | 122253315 | VOUCHER | 2/21/01 | 11.05 | 0.00 | 11.05 | 0.00 | 0.00 | 58 |
| Vendor : | Office DepcHome  US | | Totals: | 468.13 | 0.00 | 11.05 | 252.66 | 204.42 | |
| Vendor : | OfficeTeam OfficeTeam | | | | | | | | |
| VO2871 | 4443716 | VOUCHER | 1/9/01 | 535.92 | 0.00 | 0.00 | 0.00 | 535.92 | 101 |
| VO28?6 | 4459317 | VOUCHER | 1/15/01 | 674.52 | 0.00 | 0.00 | 0.00 | 674.52 | 95 |
| VO29?9 | 04001765 | VOUCHER | 1/30/01 | 729.96 | 0.00 | 0.00 | 729.96 | 0.00 | 80 |
| VO3035 | 4695485 | VOUCHER | 2/12/01 | 674.52 | 0.00 | 0.00 | 674.52 | 0.00 | 67 |
| VO3036 | 4654589 | VOUCHER | 2/6/01 | 711.48 | 0.00 | 0.00 | 711.48 | 0.00 | 73 |
| VO3037 | 4547830 | VOUCHER | 1/23/01 | 406.56 | 0.00 | 0.00 | 406.56 | 0.00 | 87 |
| VO3062 | 04723428 | VOUCHER | 2/19/01 | 711.48 | 0.00 | 711.48 | 0.00 | 0.00 | 60 |
| VO3112 | 04810973 | VOUCHER | 2/27/01 | 406.56 | 0.00 | 406.56 | 0.00 | 0.00 | 52 |
| VO3221 | 05118031 | VOUCHER | 4/10/01 | 739.20 | 739.20 | 0.00 | 0.00 | 0.00 | 10 |
| VO3223 | 5088203 | VOUCHER | 4/3/01 | 702.24 | 702.24 | 0.00 | 0.00 | 0.00 | 17 |
| Vendor : | OfficeTeam Home  US | | Totals: | 6,292.44 | 1,441.44 | 1,118.04 | 2,522.52 | 1,210.44 | |
| Vendor : | Orkin Exterm Orkin Exterminating | | | | | | | | |
| VO2991 | 3488098 | VOUCHER | 1/4/01 | 45.25 | 0.00 | 0.00 | 0.00 | 45.25 | 106 |
| VO3063 | 3827444 | VOUCHER | 2/1/01 | 45.25 | 0.00 | 0.00 | 45.25 | 0.00 | 78 |
| Vendor : | Orkin Exter Home  US | | Totals: | 90.50 | 0.00 | 0.00 | 45.25 | 45.25 | |
| Vendor : | OSI Collecti American Express | | | | | | | | |
| VO2960 | FILE #784234 | VOUCHER | 2/7/01 | 1,873.63 | 0.00 | 0.00 | 1,873.63 | 0.00 | 72 |
| Vendor : | OSI CollectiHome  US | | Totals: | 1,873.63 | 0.00 | 0.00 | 1,873.63 | 0.00 | |
| Vendor : | Patalay Neel Neelkamal Patalay | | | | | | | | |
| VO3219 | w/e 11/11/00 | VOUCHER | 4/17/01 | 118.63 | 118.63 | 0.00 | 0.00 | 0.00 | 3 |
| VO3236 | w/e 11/25/00 | VOUCHER | 11/25/00 | 469.18 | 0.00 | 0.00 | 0.00 | 469.18 | 146 |
| VO3237 | w/e 12/2/00 | VOUCHER | 12/2/00 | 479.26 | 0.00 | 0.00 | 0.00 | 479.26 | 139 |
| Vendor : | Patalay NeeHome  US | | Totals: | 1,067.07 | 118.63 | 0.00 | 0.00 | 948.44 | |
| Vendor : | Pavillion Te Pavillion Technologies, Inc. | | | | | | | | |
| VO3189 | RQ401-pre | VOUCHER | 3/31/01 | 425.79 | 425.79 | 0.00 | 0.00 | 0.00 | 20 |
| Vendor : | Pavillion TeHome  US | | Totals: | 425.79 | 425.79 | 0.00 | 0.00 | 0.00 | |

**B - 247**

130

000113

4/20/01
2:37:47PM

**Aged Payables By: Branch Code/Vendor Code**
**Acuity Corporation**
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid in Full: No

Page 5

| APPLY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| **Vendor : Petty Cash** | | | | | | | | | |
| | Petty Cash/Wendy Winnett | | | | | | | | |
| VO3231 | Petty Cash-4/18 | VOUCHER | 4/19/01 | 2,663.42 | 2,663.42 | 0.00 | 0.00 | 0.00 | 1 |
| | Vendor : Petty Cash | Home | US | Totals: | 2,663.42 | 2,663.42 | 0.00 | 0.00 | 0.00 |
| **Vendor : PGR** | | | | | | | | | |
| | PGR Incorporated | | | | | | | | |
| VO3104 | TEST | VOUCHER | 2/28/01 | 25.00 | 0.00 | 25.00 | 0.00 | 0.00 | 51 |
| | Vendor : PGR | Home | US | Totals: | 25.00 | 0.00 | 25.00 | 0.00 | 0.00 |
| **Vendor : Pitney Bowes** | | | | | | | | | |
| | Pitney Bowes, Inc. | | | | | | | | |
| VO3031 | 437435 | VOUCHER | 2/5/01 | 126.53 | 0.00 | 0.00 | 126.53 | 0.00 | 74 |
| VO3078 | 1782521686/Feb | VOUCHER | 2/26/01 | 162.39 | 0.00 | 162.39 | 0.00 | 0.00 | 53 |
| | Vendor : Pitney Bow | Home | US | Totals: | 288.92 | 0.00 | 162.39 | 126.53 | 0.00 |
| **Vendor : Recycling Se** | | | | | | | | | |
| | Recycling Services  Inc. | | | | | | | | |
| VO3226 | 12469 | VOUCHER | 3/8/01 | 10.83 | 0.00 | 10.83 | 0.00 | 0.00 | 43 |
| | Vendor : Recycling S | Home | US | Totals: | 10.83 | 0.00 | 10.83 | 0.00 | 0.00 |
| **Vendor : Regional Sup** | | | | | | | | | |
| | Regional Supply Center, Inc. | | | | | | | | |
| VO3225 | 193697 | VOUCHER | 1/15/01 | 1,196.30 | 0.00 | 0.00 | 0.00 | 1,196.30 | 95 |
| | Vendor : Regional S | Home | US | Totals: | 1,196.30 | 0.00 | 0.00 | 0.00 | 1,196.30 |
| **Vendor : RHI Consu** | | | | | | | | | |
| | RHI Consulting | | | | | | | | |
| VO2872 | 4460292 | VOUCHER | 1/15/01 | 1,224.00 | 0.00 | 0.00 | 0.00 | 1,224.00 | 95 |
| VO2966 | 4619167 | VOUCHER | 2/5/01 | 1,224.00 | 0.00 | 0.00 | 1,224.00 | 0.00 | 74 |
| VO3034 | 04671228 | VOUCHER | 2/12/01 | 1,224.00 | 0.00 | 0.00 | 1,224.00 | 0.00 | 67 |
| VO3046 | 04724345 | VOUCHER | 2/19/01 | 1,224.00 | 0.00 | 1,224.00 | 0.00 | 0.00 | 60 |
| | Vendor : RHI Consu | Home | US | Totals: | 4,896.00 | 0.00 | 1,224.00 | 2,448.00 | 1,224.00 |
| **Vendor : Sam's Club** | | | | | | | | | |
| | Sam's Club | | | | | | | | |
| VO3059 | Feb01 | VOUCHER | 2/8/01 | 2,259.89 | 0.00 | 0.00 | 2,259.89 | 0.00 | 71 |
| VO3170 | 490960489002p | VOUCHER | 3/8/01 | 1,349.41 | 0.00 | 1,349.41 | 0.00 | 0.00 | 43 |
| VO3220 | 490960489002-4 | VOUCHER | 4/9/01 | 3,042.55 | 3,042.55 | 0.00 | 0.00 | 0.00 | 11 |
| | Vendor : Sam's Club | Home | US | Totals: | 6,651.85 | 3,042.55 | 1,349.41 | 2,259.89 | 0.00 |
| **Vendor : Shurgard Of** | | | | | | | | | |
| | Shurgard Of North Austin | | | | | | | | |
| VO3057 | 55934 | VOUCHER | 2/15/01 | 159.00 | 0.00 | 0.00 | 159.00 | 0.00 | 64 |
| VO3230 | 58070 | VOUCHER | 4/16/01 | 159.00 | 159.00 | 0.00 | 0.00 | 0.00 | 4 |
| | Vendor : Shurgard O | Home | US | Totals: | 318.00 | 159.00 | 0.00 | 159.00 | 0.00 |
| **Vendor : Smyser Kapla** | | | | | | | | | |
| | Smyser Kaplan & Veselka  LLP | | | | | | | | |
| VO3113 | 5516 | VOUCHER | 2/27/01 | 375.00 | 0.00 | 375.00 | 0.00 | 0.00 | 52 |
| | Vendor : Smyser Kap | Home | US | Totals: | 375.00 | 0.00 | 375.00 | 0.00 | 0.00 |
| **Vendor : Software Dim** | | | | | | | | | |
| | Software Dimensions | | | | | | | | |

B - 248

131

000114

4/20/01
2:37:47PM

**Aged Payables By: Branch Code/Vendor Code**
Acuity Corporation
Summary Style, As of 04/20/2001
Include Future Trxs: No    Include Trxs Paid In Full: No

| APPLY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: default | | Default Branch Code | | | - Continued... | | | | |
| Vendor : Software Dim | | Software Dimensions | | | - Continued... | | | | |
| VO2979 | 2422 | VOUCHER | 2/6/01 | 445.00 | 0.00 | 0.00 | 445.00 | 0.00 | 73 |
| Vendor : Software Di | Home US | | Totals: | 445.00 | 0.00 | 0.00 | 445.00 | 0.00 | |
| Vendor : Sonitrol of | | Sonitrol of Austin | | | | | | | |
| VO3103 | 549733* | VOUCHER | 2/1/01 | 244.98 | 0.00 | 0.00 | 244.98 | 0.00 | 78 |
| VO3116 | 488299 | VOUCHER | 10/1/00 | 311.76 | 0.00 | 0.00 | 0.00 | 311.76 | 201 |
| VO3117 | 535073 | VOUCHER | 1/1/01 | 311.76 | 0.00 | 0.00 | 0.00 | 311.76 | 109 |
| VO3222 | 505786-May 01 | VOUCHER | 4/19/01 | 330.47 | 330.47 | 0.00 | 0.00 | 0.00 | 1 |
| Vendor : Sonitrol of | Home US | | Totals: | 1,198.97 | 330.47 | 0.00 | 244.98 | 623.52 | |
| Vendor : Southern Uni | | Southern Union Gas | | | | | | | |
| VO2985 | 7171348269-JAl | VOUCHER | 1/4/01 | 611.95 | 0.00 | 0.00 | 0.00 | 611.95 | 106 |
| VO3044 | 7171348269-2/0 | VOUCHER | 2/5/01 | 527.73 | 0.00 | 0.00 | 527.73 | 0.00 | 74 |
| VO3118 | 7171348269-3/5 | VOUCHER | 3/5/01 | 137.39 | 0.00 | 137.39 | 0.00 | 0.00 | 46 |
| Vendor : Southern Ui | Home US | | Totals: | 1,277.07 | 0.00 | 137.39 | 527.73 | 611.95 | |
| Vendor : Southwes/02 | | Southwestern Bell | | | | | | | |
| VO3033 | 7100609192-1/2 | VOUCHER | 1/25/01 | 854.42 | 0.00 | 0.00 | 854.42 | 0.00 | 85 |
| Vendor : Southwes/0 | Home US | | Totals: | 854.42 | 0.00 | 0.00 | 854.42 | 0.00 | |
| Vendor : Southwest/02 | | Southwestern Bell | | | | | | | |
| VO3115 | 7135223034 | VOUCHER | 2/25/01 | 443.12 | 0.00 | 443.12 | 0.00 | 0.00 | 54 |
| VO3232 | 7135223034-01: | VOUCHER | 3/25/01 | 205.56 | 205.56 | 0.00 | 0.00 | 0.00 | 26 |
| VO3233 | 7135223034-01: | VOUCHER | 3/25/01 | 168.02 | 168.02 | 0.00 | 0.00 | 0.00 | 26 |
| Vendor : Southwest/0 | Home US | | Totals: | 816.70 | 373.58 | 443.12 | 0.00 | 0.00 | |
| Vendor : Southwestern | | Southwestern Bell | | | | | | | |
| VO2987 | 5124252200* | VOUCHER | 1/19/01 | 3,219.70 | 0.00 | 0.00 | 0.00 | 3,219.70 | 91 |
| Vendor : Southweste | Home US | | Totals: | 3,219.70 | 0.00 | 0.00 | 0.00 | 3,219.70 | |
| Vendor : Sun Office | | Sun Office Service Inc. | | | | | | | |
| VO2879 | 70276 | VOUCHER | 1/11/01 | 7.95 | 0.00 | 0.00 | 0.00 | 7.95 | 99 |
| VO2929 | 70414 | VOUCHER | 1/25/01 | 279.85 | 0.00 | 0.00 | 279.85 | 0.00 | 85 |
| VO3096 | 71550 | VOUCHER | 2/8/01 | 194.50 | 0.00 | 0.00 | 194.50 | 0.00 | 71 |
| Vendor : Sun Office | Home US | | Totals: | 482.30 | 0.00 | 0.00 | 474.35 | 7.95 | |
| Vendor : TBN | | Technical Business Network | | | | | | | |
| VO3060 | 2038 | VOUCHER | 2/20/01 | 200.00 | 0.00 | 200.00 | 0.00 | 0.00 | 59 |
| Vendor : TBN | Home US | | Totals: | 200.00 | 0.00 | 200.00 | 0.00 | 0.00 | |
| Vendor : Texas Dispos | | Texas Disposal Systems Inc. | | | | | | | |
| VO3032 | 1166787-1/31/01 | VOUCHER | 1/31/01 | 164.59 | 0.00 | 0.00 | 164.59 | 0.00 | 79 |
| Vendor : Texas Disp: | Home US | | Totals: | 164.59 | 0.00 | 0.00 | 164.59 | 0.00 | |
| Vendor : U.S. News | | U.S. News | | | | | | | |

**B - 249**

000115

4/20/01

2:37:47PM

**Aged Payables By: Branch Code/Vendor Code**

Acuity Corporation

Summary Style, As of 04/20/2001

Include Future Trxs: No    Include Trxs Paid In Full: No

Page 7

| APPLY TO NUM | DOC NUM | TRX TYPE | AGING DATE | BALANCE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor : | U.S. News | | | | - Continued... | | | | |
| | U.S. News | | | | | | | | |
| VO2783 | 020DA4000362E | VOUCHER | 1/9/01 | 14.95 | 0.00 | 0.00 | 0.00 | 14.95 | 101 |
| VO3023 | Quin | VOUCHER | 1/1/01 | 19.95 | 0.00 | 0.00 | 0.00 | 19.95 | 109 |
| Vendor : | U.S. News | Home | US | Totals: | 34.90 | 0.00 | 0.00 | 0.00 | 34.90 |
| Vendor : | Williams Com | | | | | | | | |
| | Williams Communications Solutions | | | | | | | | |
| VO3043 | 1691967 | VOUCHER | 2/1/01 | 248.98 | 0.00 | 0.00 | 248.98 | 0.00 | 78 |
| Vendor : | Williams CcHome | US | Totals: | 248.98 | 0.00 | 0.00 | 248.98 | 0.00 | |
| Vendor : | Xerox Corp | | | | | | | | |
| | Xerox Corporation | | | | | | | | |
| VO3024 | 589290569 | VOUCHER | 2/2/01 | 121.02 | 0.00 | 0.00 | 121.02 | 0.00 | 77 |
| VO3025 | 589290572 | VOUCHER | 2/2/01 | 122.98 | 0.00 | 0.00 | 122.98 | 0.00 | 77 |
| VO3027 | 080005066 | VOUCHER | 2/1/01 | 102.14 | 0.00 | 0.00 | 102.14 | 0.00 | 78 |
| VO3227 | 589689508 | VOUCHER | 4/2/01 | 121.02 | 121.02 | 0.00 | 0.00 | 0.00 | 18 |
| Vendor : | Xerox Corp Home | US | Totals: | 467.16 | 121.02 | 0.00 | 346.14 | 0.00 | |
| Branch Code: | default | Home | US | Totals: | 102,095.54 | 20,885.99 | 9,798.44 | 32,088.16 | 39,522.95 |
| REPORT TOTALS: | Home | US | Totals: | 102,095.54 ✓ | 20,885.99 | 9,798.44 | 32,088.16 | 39,522.95 | |

Total number of vendors listed: 55

✓ – T + A to g/l

B - 250

133

000116

| From: | Wall, Kelly A (Kelly) [kawall@avaya.com] |
|---|---|
| Sent: | Tuesday, May 15, 2001 1:59 PM |
| To: | Black, Lewis W (Lewis); Milet, Pierre (Pierre); Grey, Michael P (Mike); Davies, Tony (Tony) |
| Cc: | Asthana, Shobhna (Shobhna); Maloney, Gregory L (Greg); 'mark.thompson@avaya.com'; Mason, Judith A (Judy) |
| Subject: | FW: Liabilities Update - monthly schedule of beg bal. liabilities needed for int'l |
| Attachments: | BS43001vs41001.xls; liabilities11.xls; AP41001.xls |

    

BS43001vs41001.xls    liabilities11.xls    AP41001.xls

Lewis,

We have asked Mark to prepare a schedule of liabilities <beginning balances – assumed by Avaya> each month, reconciling payments made during the month as a reduction of beginning balance liabilities. Please see email below from Mark Thompson, in which he has indicated 700K of int'l balances assumed have been paid down in April. Please provide a schedule of international liablilities <beginning balances – assumed by Avaya> each month.

best regards,
Kelly Wall
Financial Results, Applications
Avaya, Inc.
(408)577-7706 (Mon, Tues, Thurs)
(925)513-7997 (Wed, Fri)


-----Original Message-----
From: Mark.Thompson@quintus.com [mailto:Mark.Thompson@quintus.com]
Sent: Tuesday, May 08, 2001 1:41 PM
To: kawall@avaya.com
Cc: sasthana@avaya.com
Subject: Liabilities Update


Hi Kelly,

I am attaching a recap on the liabilities that were assumed by Avaya. I thought this format would enable us to discuss the account balances a little easier. Here are some initial comments:

1

B - 251

**134**

MT 00430

\*      The accounts payable liabilities were reduced by $1.3 million, of which 700k was due to international payables that are no longer tracked in my numbers. The remaining approximately 600k were payments made to vendors which were incurred as liabilites "post-bankruptcy" (i.e. end of February). What i have for backup would be a report showing the initial amount that was assumed by Avaya, then i am manually tracking what payments were made each month from this initial list. I anticipate with our large payment scheduled for next week that the majority if not all of these initial assumed liabilites will be paid and gone from this list by the end of May.

\*      The accrued liabilities amount is a mixture of many accounts. I have detailed in one of my files the decrease by account number. We have reconciliations for these accounts and i will forward an email from Lisa Facka which will have some included. Note that of the initial $5.5 million assumed, only $2.7 million remains at the end of April. Major causes of this are due to 1) payroll being booked, reducing the accrued payroll amount, 2) bonuses being paid out, leaving a balance that is in essense an over-accrual, although there will be some payments that are made late that will flow through this account, and 3) a reduction due to international liabilities that are no longer tracked in these numbers.

\*      Deferred revenue was reduced by approximately $621k, and the reconciliation will be included in Lisa's email.

When you have time lets discuss.

mark


<<BS43001vs41001.xls>>  <<liabilities11.xls>>  <<AP41001.xls>>

Mark P. Thompson
Avaya Inc.
(p) 925 479-2854
(f)  925 479-2101

2

MT 00431

**Quintus Corporation**
**Consolidated Balance Sheets**
**4/30/2001**
**(in 000's)**

| | Quintus | Acuity | Mustang | Total | Quintus | Avaya | Total |
|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents | 579 | (91) | (2) | 486 | - | 486 | 486 |
| Short-Term Investments | - | - | 62 | 62 | - | 62 | 62 |
| Accounts Receivable, net | 6,651 | 99 | 449 | 7,199 | - | 7,199 | 7,199 |
| Prepaid Expenses & Other Assets | 332,943 | (46,517) | (273,900) | 2,526 | 1,256 | 1,270 | 2,526 |
| **Total Current Assets** | 330,173 | (46,509) | (273,391) | 10,273 | 1,256 | 9,017 | 10,273 |
| Property & Equipment, net | 14,841 | 532 | 1,015 | 16,388 | 774 | 15,614 | 16,388 |
| Intangible Assets, net | - | 4,774 | 4,771 | 9,545 | - | 9,545 | 9,545 |
| Other Assets | 6,553 | 36 | 2 | 6,391 | 18 | 6,373 | 6,391 |
| Intercompany Receivable - US | 2,041 | (11,359) | 9,318 | - | - | - | - |
| Intercompany Receivable - BV | | | | | | | |
| **TOTAL ASSETS** | 353,408 | (57,526) | (258,285) | 42,597 | 2,044 | 40,549 | 42,597 |
| **LIABILITIES & EQUITY** | | | | | | | |
| **Current Liabilities** | | | | | | | |
| Accounts Payable | 6,543 | 98 | 34 | 6,675 | - | 6,675 | 6,675 |
| Accrued Liabilities | 8,858 | 392 | 478 | 9,728 | 7,016 | 2,712 | 9,728 |
| Deferred Revenue | 6,990 | 163 | 295 | 7,448 | - | 7,448 | 7,448 |
| Capital Leases | 44 | 116 | 10 | 170 | - | 170 | 170 |
| Short-Term Debt | 177 | 100 | - | 277 | 12 | 265 | 277 |
| **Total Current Liabilities** | 22,612 | 869 | 817 | 24,298 | 7,028 | 17,270 | 24,298 |
| Capital Leases | 119 | - | 238 | 357 | - | 357 | 357 |
| Long Term Debt | 580 | - | - | 580 | 580 | - | 580 |
| Deferred Revenue | 178 | - | - | 178 | - | 178 | 178 |
| **Total Liabilities** | 23,489 | 869 | 1,055 | 25,413 | 7,608 | 17,805 | 25,413 |
| **Stockholders' Equity** | | | | | | | |
| Preferred Stock | | | | | | | |
| Common Stock | 36 | - | - | 36 | 36 | - | 36 |
| Additional Paid-in Capital | 442,500 | - | - | 442,500 | 442,500 | - | 442,500 |
| Shareholder Note Receivable | (5,281) | - | - | (5,281) | (223) | (5,058) | (5,281) |
| Deferred Compensation | (418) | - | - | (418) | (418) | - | (418) |
| Unrealized Gain/(Loss) | | | | | | | |
| Cumulative Translation Adjustment | (605) | - | - | (605) | 76 | | |
| Quintus Purchase | | | | | 76 | | 76 |
| International Purchase | | | | | (31,281) | 31,281 | |
| Accumulated Deficit | (106,313) | (53,395) | (259,340) | (419,048) | (416,300) | (1,668) | (417,976) |
| **Total Stockholders' Equity** | 329,919 | (53,395) | (259,340) | 17,184 | (5,560) | 22,744 | 17,184 |
| **TOTAL LIABILITIES & EQUITY** | 353,408 | (57,526) | (258,285) | 42,597 | 2,044 | 40,549 | 42,597 |

**B - 253**

**136**

MT 00432

Quintus Corporation
Consolidated Balance Sheets
4/10/2001
(in 000's)

| | Quintus | Avaky | Mustang | Int'l | Total | Eliminating Entry | Total | Quintus | Avaya | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents | 5,123 | (9) | 2 | 816 | 5,992 | | 5,992 | - | 5,992 | 5,992 |
| Short-Term Investments | - | - | 62 | - | 62 | | 62 | - | 62 | 62 |
| Accounts Receivable, net | 6,780 | 100 | 572 | 1,070 | 8,522 | | 8,522 | - | 8,522 | 8,522 |
| Prepaid Expenses & Other Assets | 322,971 | (46,530) | (273,000) | 619 | 3,140 | | 3,140 | 1,256 | 1,884 | 3,140 |
| **Total Current Assets** | 334,874 | (46,439) | (273,246) | 2,565 | 17,716 | | 17,716 | 1,256 | 16,460 | 17,716 |
| Property & Equipment, net | 15,159 | 558 | 1,038 | 430 | 17,185 | | 17,185 | 774 | 16,411 | 17,185 |
| Intangible Assets, net | - | 4,774 | 4,771 | - | 9,545 | | 9,545 | - | 9,545 | 9,545 |
| Other Assets | 6,353 | 16 | 2 | - | 6,371 | | 6,371 | 18 | 6,353 | 6,371 |
| Intercompany Receivable - US | 4,259 | (10,906) | 9,333 | 11,022 | 13,768 | | 13,768 | | | |
| Intercompany Receivable - BV | | | | (13,768) | (13,768) | (20) | (13,768) | | | |
| **TOTAL ASSETS** | 360,685 | (51,997) | (259,100) | 249 | 30,817 | | 30,817 | 2,048 | 48,769 | 30,817 |
| **LIABILITIES & EQUITY** | | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | | |
| Accounts Payable | 7,142 | 123 | 26 | 703 | 7,996 | | 7,996 | 7,074 | 7,996 | 7,996 |
| Accrued Liabilities | 10,941 | 583 | 542 | 519 | 12,585 | | 12,585 | | 5,511 | 12,585 |
| Deferred Revenue | 7,551 | 118 | 330 | - | 8,069 | | 8,069 | - | 8,069 | 8,069 |
| Capital Leases | 44 | 116 | 10 | - | 170 | | 170 | 12 | 170 | 170 |
| Short Term Debt | 177 | 100 | - | - | 277 | | 277 | - | 265 | 277 |
| **Total Current Liabilities** | 25,855 | 1,112 | 908 | 1,222 | 29,097 | | 29,097 | 7,086 | 22,011 | 29,097 |
| Capital Leases | 119 | - | 238 | - | 357 | | 357 | - | 357 | 357 |
| Long Term Debt | 580 | - | - | - | 580 | | 580 | 580 | - | 580 |
| Deferred Revenue | 178 | - | - | - | 178 | | 178 | - | 178 | 178 |
| **Total Liabilities** | 26,732 | 1,112 | 1,146 | 1,222 | 30,212 | (20) | 30,212 | 7,666 | 22,546 | 30,212 |
| **Stockholders' Equity** | | | | | | | | | | |
| Preferred Stock | - | - | - | - | - | | - | - | - | - |
| Common Stock | 36 | - | - | 20 | 36 | | 36 | 36 | - | 36 |
| Additional Paid-in Capital | 442,500 | - | - | - | 442,500 | | 442,500 | 442,500 | - | 442,500 |
| Shareholder Note Receivable | (5,281) | - | - | - | (5,281) | | (5,281) | (223) | (5,058) | (5,281) |
| Deferred Compensation | (418) | - | - | - | (418) | | (418) | (418) | - | (418) |
| Unrealized Gain/(Loss) | (557) | - | - | 633 | 76 | | 76 | 76 | - | 76 |
| Cumulative Translation Adjustment | (102,327) | - | - | (1,626) | (31,281) | | (31,281) | (31,281) | 31,281 | - |
| Quintus Purchase | | (33,109) | (259,246) | | (416,308) | | (416,308) | (416,308) | - | (416,308) |
| Accumulated Deficit | (416,308) | | | | | | | | | |
| **Total Stockholders' Equity** | 333,953 | (33,109) | (259,246) | (973) | 20,605 | | 20,605 | (5,618) | 26,223 | 20,605 |
| **TOTAL LIABILITIES & EQUITY** | 360,685 | (51,997) | (259,100) | 249 | 30,817 | | 30,817 | 2,048 | 48,769 | 30,817 |

MT 00433

**Quintus Corporation**
**Schedule of Assumed Liabilities - FINAL**
   In Thousands

**Current Liabilities**

| | | | 4/30/2001 |
|---|---|---|---|
| Other Accounts Payable[1] | $ | 917 | 865,153 |
| Trade AP | | 7,080 | 5,810,569 |
| Accrued Liabilities - See attached Detail | | 5,513 | 2,714,043 |
| Deferred Revenue | | 8,069 | 7,448,000 |
| Capital Leases | | 170 | 170,000 |
| Short Term Debt[3] | | 265 | 265,000 |
| **Total Current Liabilities** | | 22,014 | 17,272,764 |
| Capital Leases | | 357 | 357,000 |
| Long Term Debt | | - | - |
| Deferred Revenue | | 178 | 178,000 |
| **Total Liabilities 4** | $ | 22,549 | 17,807,764 |

NOTES:

1. Accrual for amounts due to third party contractors, international and Atlanta building expenses.
2. Estimate of Post Petition Trade Accounts payable.
3. Remaining short term debt relates to the SVB Term Loan and the Beehive Note.
4. Excludes the amount of U.S. $500,000 owing to Silicon Valley Bank secured by certain accounts receivable from Intecom Inc. to Quintus Corporation, which amount shall be satisfied by Avaya Inc. pursuant to a settlement agreement among Quintus Corporation, Avaya Inc., Intecom Inc. and Silicon Valley Bank providing for the cancellation by Silicon Valley Bank of such receivables and the payment of such amount by Avaya Inc. to Silicon Valley Bank.

MT 00434



**Quintus Corporation**
**Account Reconciliation**

**Account Description:**

Put name here

QUINTUS

**Account Number:**

3001-000000 and

3003-000000

**Fiscal Period:**

30-Jun-01

**Prepared By:** Cathy Hawthorne

**Date:** June 27, 2001

**Approved By:** _____

**Date:** _____

B - 263

02511

**139**

**Accounts Payable Reconciliation - QUINTUS**
**Account: 3001-000000 and 3003-000000**
**31-May-01**

| | | |
|---|---|---|
| Aging | $ | 12,397.68 |
| General Ledger #3001 | $ | (3,671,179.70) |
| General Ledger #3003 | $ | 3,683,351.68 |
| Variance | $ | 225.70 |

3003

Temp Labor

02512

6/27/01
3:59:06PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Detail Style, As of 06/27/2001
Include Future Trxs: No     Include Trxs Paid in Full: No

Page 1

| APPLY TO NUM TRX NUM | CURRENCY DOC NUM | TRX TYPE | AGING DATE | APPLY DATE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | **Default Branch Code** | | | | | | | | |
| **Vendor :** Automated Sy | | | | Status: **Active** | | | | | |
| | Automated Systems Design, LLC | | | | Contact: | | | | | |
| | P.O box 280221 | | | | Phone: **(901) 386-9625** | | | | | |
| | Memphis , TN 38128-0221 | | | | Attention: | | | | | |
| | | | | | Phone: **0 -** | | | | | |
| VCH022934 | US | | | | | | | | |
| VCH022934 | 60198 | VOUCHER | 7/15/99 | 7/15/99 | 0.00 | 0.00 | 0.00 | 2,040.00 | 713 |
| | VCH022934 | | Totals: | 2,040.00 | 0.00 | 0.00 | 0.00 | 2,040.00 | |
| **Vendor :** Automated Home US | | | Totals: | 2,040.00 | 0.00 | 0.00 | 0.00 | 2,040.00 | |
| **Vendor :** Azevedo Tr | | | | Status: **Active** | | | | | |
| | Azevedo Travel | | | | Contact: | | | | | |
| | 1333 Willow Pass Rd | | | | Phone: **0 -** | | | | | |
| | Concord, CA 94520 | | | | Attention: | | | | | |
| | | | | | Phone: **0 -** | | | | | |
| VCH020652 | US | | | | | | | | |
| VCH020652 | C505/3/14/99 | VOUCHER | 3/19/99 | 3/23/99 | 30.00 | 0.00 | 0.00 | 0.00 | (2,822) |
| | VCH020652 | | Totals: | 30.00 | 30.00 | 0.00 | 0.00 | 0.00 | |
| **Vendor :** Azevedo Tr Home US | | | Totals: | 30.00 | 30.00 | 0.00 | 0.00 | 0.00 | |
| **Vendor :** Brobeck Ph | | | | Status: **Active** | | | | | |
| | Brobeck Phleger & Harrison | | | | Contact: | | | | | |
| | Dept. 05834 | | | | Phone: **0 -** | | | | | |
| | P.O. Box 39000 | | | | Attention: | | | | | |
| | San Francisco, CA 94139-5834 | | | | Phone: **(415) 424-0160** | | | | | |
| VCH021434 | US | | | | | | | | |
| VCH021434 | 21873 | VOUCHER | 4/27/99 | 5/7/99 | 0.00 | 0.00 | 0.00 | 814.25 | 792 |
| B018542 | 026176 | CASHDISB | 4/27/99 | 5/7/99 | 0.00 | 0.00 | 0.00 | (814.25) | |
| SB019490 | 026176 | VOIDTRX | 4/27/99 | 6/17/99 | 0.00 | 0.00 | 0.00 | 814.25 | |
| | VCH021434 | | Totals: | 814.25 | 0.00 | 0.00 | 0.00 | 814.25 | |
| **Vendor :** Brobeck PhHome US | | | Totals: | 814.25 | 0.00 | 0.00 | 0.00 | 814.25 | |
| **Vendor :** Chen Yiwei | | | | Status: **Active** | | | | | |
| | Yiwei Chen | | | | Contact: | | | | | |
| | | | | | Phone: **0 -** | | | | | |
| | | | | | Attention: | | | | | |
| | | | | | Phone: **0 -** | | | | | |
| VCH033674 | US | | | | | | | | |
| VCH033674 | w/e 07/01/2000 | VOUCHER | 6/30/00 | 6/30/00 | 0.00 | 0.00 | 0.00 | 41.47 | 362 |
| DISB025941 | yc07/01/00 | CASHDISB | 6/30/00 | 6/30/00 | 0.00 | 0.00 | 0.00 | (41.42) | |
| | VCH033674 | | Totals: | 0.05 | 0.00 | 0.00 | 0.00 | 0.05 | |
| **Vendor :** Chen Yiwei Home US | | | Totals: | 0.05 | 0.00 | 0.00 | 0.00 | 0.05 | |
| **Vendor :** Cooke Doreen | | | | Status: **Active** | | | | | |
| | Doreen Cooke | | | | Contact: | | | | | |
| | 1471 Balhan Drive, #208 | | | | Phone: **0 -** | | | | | |
| | Concord, CA 94521 | | | | Attention: | | | | | |
| | | | | | Phone: **0 -** | | | | | |
| VCH046976 | US | | | | | | | | |
| VCH046976 | w/e 03/03/01 | VOUCHER | 3/20/01 | 2/28/01 | 0.00 | 0.00 | 0.00 | 0.01 | 99 |
| | VCH046976 | | Totals: | 0.01 | 0.00 | 0.00 | 0.00 | 0.01 | |
| VCH046977 | US | | | | | | | | |
| VCH046977 | w/e 3/10/01 | VOUCHER | 3/20/01 | 2/28/01 | 0.00 | 0.00 | 0.00 | 0.01 | 99 |
| | VCH046977 | | Totals: | 0.01 | 0.00 | 0.00 | 0.00 | 0.01 | |
| **Vendor :** Cooke DoreHome US | | | Totals: | 0.02 | 0.00 | 0.00 | 0.00 | 0.02 | |
| **Vendor :** Moonlight In | | | | Status: **Active** | | | | | |
| | Moonlight Interactive | | | | Contact: **Randy Brooks** | | | | | |
| | 20020 - L Rodriguez Ave | | | | Phone: **(408) 253-7234** | | | | | |
| | Cupertino, CA 95014 | | | | Attention: | | | | | |
| | | | | | Phone: **0 -** | | | | | |

02513

Aged Payables By: Branch Code/Vendor Code

Quintus Corporation

Detail Style, As of 06/27/2001

Include Future Trxs: No    Include Trxs Paid in Full: No

6/27/01
3:59:06PM

| APPLY TO NUM TRX NUM | CURRENCY DOC NUM | TRX TYPE | AGING DATE | APPLY DATE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor: Moonlight In | | | | Status: Active | - Continued... | | | | |
| | Moonlight Interactive | | | Contact: Randy Brooks | | | | | |
| | 20020 - L Rodrigues Ave | | | Phone: (408) 253-7234 | | | | | |
| | Cupertino, CA 95014 | | | Attention: | | | | | |
| | | | | Phone: 0 - | | | | | |
| VCH008299 | US | | | | | | | | |
| VCH008299 | QUI0002 | VOUCHER | 11/1/96 | 10/10/97 | 0.00 | 0.00 | 0.00 | 400.00 | 1,699 |
| DISB009203 | 014689 | CASHDISB | 11/1/96 | 10/10/97 | 0.00 | 0.00 | 0.00 | (400.00) | |
| DISB009218 | DB000250 | DB.MEMO | 11/1/96 | 10/10/97 | 0.00 | 0.00 | 0.00 | (400.00) | |
| | VCH008299 | Totals: | | | (400.00) | 0.00 | 0.00 | 0.00 | (400.00) |
| Vendor: Moonlight hHome US | | Totals: | | | (400.00) | 0.00 | 0.00 | 0.00 | (400.00) |
| Vendor: N.C. Dept of | | | | Status: Active | | | | | |
| | N.C. Dept. of Revenue | | | Contact: | | | | | |
| | P.O. Box 25000 | | | Phone: 0 - | | | | | |
| | Raleigh,NC 27640-0150 | | | Attention: | | | | | |
| | | | | Phone: 0 - | | | | | |
| DISB021223 | US | | | | | | | | |
| DISB021223 | DB000599 | DB.MEMO | | 12/31/99 | 0.00 | 0.00 | 0.00 | (16,697.90) | |
| DISB037824 | DB000599 | APPLY OA | | 8/26/01 | 0.00 | 0.00 | 0.00 | 16,697.00 | |
| | DISB021223 | Totals: | | | (0.90) | 0.00 | 0.00 | 0.00 | (0.90) |
| Vendor: N.C. Dept o Home US | | Totals: | | | (0.90) | 0.00 | 0.00 | 0.00 | (0.90) |
| Vendor: Network Solu | | | | Status: Active | | | | | |
| | Network Solutions, Inc. | | | Contact: | | | | | |
| | PO Box 17305 | | | Phone: 0 - | | | | | |
| | Baltimore, MD 21297-0525 | | | Attention: | | | | | |
| | | | | Phone: 0 - | | | | | |
| DISB037872 | US | | | | | | | | |
| DISB037872 | DB000927 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (70.00) | |
| | DISB037872 | Totals: | | | (70.00) | 0.00 | 0.00 | 0.00 | (70.00) |
| VCH046301 | US | | | | | | | | |
| VCH046301 | 28826157 | VOUCHER | 12/4/00 | 2/27/01 | 0.00 | 0.00 | 0.00 | 70.00 | 205 |
| DISB036870 | 001341 | CASHDISB | 12/4/00 | 5/14/01 | 0.00 | 0.00 | 0.00 | (70.00) | |
| DISB037789 | 002290 | CASHDISB | 12/4/00 | 6/28/01 | 0.00 | 0.00 | 0.00 | (70.00) | |
| DISB037885 | 002290 | VOIDTRX | 12/4/00 | 6/27/01 | 0.00 | 0.00 | 0.00 | 70.00 | |
| DISB037611 | 001341 | STOPPYT | 12/4/00 | 6/22/01 | 0.00 | 0.00 | 0.00 | 70.00 | |
| | VCH046301 | Totals: | | | 70.00 | 0.00 | 0.00 | 0.00 | 70.00 |
| Vendor: Network SoHome US | | Totals: | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Vendor: Newsedge | | | | Status: Active | | | | | |
| | Newsedge | | | Contact: | | | | | |
| | 8 New England Executive Park-West | | | Phone: 0 - | | | | | |
| | Burlington, MA 01803-5007 | | | Attention: | | | | | |
| | | | | Phone: 0 - | | | | | |
| VCH020199 | US | | | | | | | | |
| VCH020199 | B000203931-40 | VOUCHER | 2/28/99 | 2/28/99 | 0.00 | 0.00 | 0.00 | 29.95 | 850 |
| | VCH020199 | Totals: | | | 29.95 | 0.00 | 0.00 | 0.00 | 29.95 |
| Vendor: Newsedge  Home US | | | | | 29.95 | 0.00 | 0.00 | 0.00 | 29.95 |
| Vendor: Oce-Use 02 | | | | Status: Active | | | | | |
| | Oce-USA Inc. | | | Contact: | | | | | |
| | P.O. Box 92601 | | | Phone: 0 - | | | | | |
| | Chicago, IL 60675-2601 | | | Attention: | | | | | |
| | | | | Phone: 0 - | | | | | |
| DISB037863 | US | | | | | | | | |
| DISB037863 | DB000918 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (361.38) | |
| | DISB037863 | Totals: | | | (361.38) | 0.00 | 0.00 | 0.00 | (361.38) |
| DISB037864 | US | | | | | | | | |
| DISB037864 | DB000919 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (32.13) | |
| | DISB037864 | Totals: | | | (32.13) | 0.00 | 0.00 | 0.00 | (32.13) |
| DISB037865 | US | | | | | | | | |
| DISB037865 | DB000920 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (123.28) | |
| | DISB037865 | Totals: | | | (123.28) | 0.00 | 0.00 | 0.00 | (123.28) |

**B - 266**

**142**

02514

6/27/01
3:59:06PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Detail Style, As of 06/27/2001
Include Future Trxs: No     Include Trxs Paid in Full: No

Page 3

| APPLY TO NUM TRX NUM | CURRENCY DOC NUM | TRX TYPE | AGING DATE | APPLY DATE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| Branch Code: | default | Default Branch Code | | | - Continued... | | | | |
| Vendor: | Oce-Use 02 | | Status: | Active | - Continued... | | | | |
| | Oce-USA Inc. | | Contact: | | | | | | |
| | P.O. Box 92601 | | Phone: | 0 - | | | | | |
| | Chicago, IL 60675-2601 | | Attention: | | | | | | |
| | | | Phone: | 0 - | | | | | |
| DISB037866 | US | | | | | | | | |
| DISB037866 | DB000921 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (37.96) | |
| | | DISB037866 | Totals: | (37.96) | 0.00 | 0.00 | 0.00 | (37.96) | |
| DISB037867 | US | | | | | | | | |
| DISB037867 | DB000922 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (275.60) | |
| | | DISB037867 | Totals: | (275.60) | 0.00 | 0.00 | 0.00 | (275.60) | |
| DISB037868 | US | | | | | | | | |
| DISB037868 | DB000923 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (1,373.75) | |
| | | DISB037868 | Totals: | (1,373.75) | 0.00 | 0.00 | 0.00 | (1,373.75) | |
| DISB037869 | US | | | | | | | | |
| DISB037869 | DB000924 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (275.60) | |
| | | DISB037869 | Totals: | (275.60) | 0.00 | 0.00 | 0.00 | (275.60) | |
| DISB037871 | US | | | | | | | | |
| DISB037871 | DB000928 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (361.38) | |
| | | DISB037871 | Totals: | (361.38) | 0.00 | 0.00 | 0.00 | (361.38) | |
| DISB037873 | US | | | | | | | | |
| DISB037873 | DB000928 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (39.93) | |
| | | DISB037873 | Totals: | (39.93) | 0.00 | 0.00 | 0.00 | (39.93) | |
| DISB037874 | US | | | | | | | | |
| DISB037874 | DB000929 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (227.32) | |
| | | DISB037874 | Totals: | (227.32) | 0.00 | 0.00 | 0.00 | (227.32) | |
| DISB037875 | US | | | | | | | | |
| DISB037875 | DB000930 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (338.59) | |
| | | DISB037875 | Totals: | (338.59) | 0.00 | 0.00 | 0.00 | (338.59) | |
| DISB037876 | US | | | | | | | | |
| DISB037876 | DB000931 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (56.56) | |
| | | DISB037876 | Totals: | (56.56) | 0.00 | 0.00 | 0.00 | (56.56) | |
| DISB037877 | US | | | | | | | | |
| DISB037877 | DB000932 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (257.84) | |
| | | DISB037877 | Totals: | (257.84) | 0.00 | 0.00 | 0.00 | (257.84) | |
| DISB037878 | US | | | | | | | | |
| DISB037878 | DB000933 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (338.59) | |
| | | DISB037878 | Totals: | (338.59) | 0.00 | 0.00 | 0.00 | (338.59) | |
| DISB037879 | US | | | | | | | | |
| DISB037879 | DB000934 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (10.80) | |
| | | DISB037879 | Totals: | (10.80) | 0.00 | 0.00 | 0.00 | (10.80) | |
| DISB037880 | US | | | | | | | | |
| DISB037880 | DB000935 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (122.09) | |
| | | DISB037880 | Totals: | (122.09) | 0.00 | 0.00 | 0.00 | (122.09) | |
| Vendor: | Oce-Use 02 Home  US | | Totals: | (4,228.80) | 0.00 | 0.00 | 0.00 | (4,228.80) | |
| Vendor: | Reeves Sus | | Status: | Active | | | | | |
| | Reeves & Associates | | Contact: | sreeves@batnet.com | | | | | |
| | 721 Birch Avenue | | Phone: | 0 - | | | | | |
| | San Mateo, CA 94402 | | Attention: | | | | | | |
| | | | Phone: | 0 - | | | | | |
| VCH008300 | US | | | | | | | | |
| VCH008300 | 22 | VOUCHER | 10/3/97 | 10/10/97 | 0.00 | 0.00 | 0.00 | 11,270.00 | 1,383 |
| DISB008896 | 014747 | CASHDISB | 10/3/97 | 10/10/97 | 0.00 | 0.00 | 0.00 | (11,044.60) | |
| DISB008896 | 014747 | DISCOUNT | 10/3/97 | 10/10/97 | 0.00 | 0.00 | 0.00 | (225.40) | |
| DISB009218 | DB000248 | DB.MEMO | 10/3/97 | 10/10/97 | 0.00 | 0.00 | 0.00 | (11,270.00) | |
| | | VCH008300 | Totals: | (11,270.00) | 0.00 | 0.00 | 0.00 | (11,270.00) | |
| Vendor: | Reeves Sus Home  US | | Totals: | (11,270.00) | 0.00 | 0.00 | 0.00 | (11,270.00) | |
| Vendor: | Tamburri Deb | | Status: | Active | | | | | |
| | Deborah Tamburri | | Contact: | | | | | | |
| | | | Phone: | 0 - | | | | | |
| | | | Attention: | | | | | | |
| | | | Phone: | 0 - | | | | | |
| VCH046121 | US | | | | | | | | |
| VCH046121 | w/e 2/10/01 | VOUCHER | 2/10/01 | 2/23/01 | 0.00 | 0.00 | 0.00 | 587.75 | 137 |
| | | VCH046121 | Totals: | 587.75 | 0.00 | 0.00 | 0.00 | 587.75 | |

B - 267

143

02515

6/27/01
3:59:06PM

**Aged Payables By: Branch Code/Vendor Code**
Quintus Corporation
Detail Style, As of 06/27/2001
Include Future Trxs: No     Include Trxs Paid in Full: No

Page 4

| APPLY TO NUM TRX NUM | CURRENCY DOC NUM | TRX TYPE | AGING DATE | APPLY DATE | UNDER 30 DAYS | 31-60 DAYS | 61-90 DAYS | OVER 90 DAYS | DAYS AGED |
|---|---|---|---|---|---|---|---|---|---|
| **Branch Code:** default | | Default Branch Code | | | - Continued... | | | | |
| Vendor : Tamburri D | Home  US | | Totals: | 587.75 | 0.00 | 0.00 | 0.00 | 587.75 | |
| Vendor : XO Comm | | | | Status:     Active | | | | | |
| | XO Communications | | | Contact: | | | | | |
| | PO Box 31001-0429 | | | Phone:     0 - | | | | | |
| | Pasadena, CA 91110-0429 | | | Attention: | | | | | |
| | | | | Phone:     0 - | | | | | |
| DISB037870 | US | | | | | | | | |
| DISB037870 | DB000925 | DB.MEMO | | 6/22/01 | 0.00 | 0.00 | 0.00 | (1,289.25) | |
| | | DISB037870 | Totals: | (1,289.25) | 0.00 | 0.00 | 0.00 | (1,289.25) | |
| VCH045997 | US | | | | | | | | |
| VCH045997 | 0000070000022 | VOUCHER | 1/7/01 | 2/21/01 | 0.00 | 0.00 | 0.00 | 1,289.25 | 171 |
| DISB036963 | 001473 | CASHDISB | 1/7/01 | 5/14/01 | 0.00 | 0.00 | 0.00 | (1,289.25) | |
| DISB037858 | 002372 | CASHDISB | 1/7/01 | 6/26/01 | 0.00 | 0.00 | 0.00 | (1,289.25) | |
| DISB037866 | 002372 | VOIDTRX | 1/7/01 | 6/27/01 | 0.00 | 0.00 | 0.00 | 1,289.25 | |
| DISB037508 | 001473 | STOPPYT | 1/7/01 | 6/22/01 | 0.00 | 0.00 | 0.00 | 1,289.25 | |
| | | VCH045997 | Totals: | 1,289.25 | 0.00 | 0.00 | 0.00 | 1,289.25 | |
| Vendor : XO Comm | Home  US | | Totals: | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Branch Code:** default | Home  US | | Totals: | (12,397.68) | 30.00 | 0.00 | 0.00 | (12,427.68) | |
| **REPORT TOTALS:** | Home  US | | Totals: | (12,397.68) | 30.00 | 0.00 | 0.00 | (12,427.68) | |

Total number of vendors listed: 13

02516

6/27/01
4:00:13PM

## General Ledger Report By: Account Code / Apply Date
### Quintus
**06/01/2001 Thru 06/30/2001, Summary, Non-Zero Accounts, All Transactions**
**\* = Totals or Records that Include Unposted Transactions**

Page 1

Beginning Account Code: 3001-000000

Ending Account Code: 3001-000000

| ACCOUNT CODE | DESCRIPTION | | DEBIT | CREDIT | BALANCE |
|---|---|---|---|---|---|
| 000000 Accounts Payable - Trade General | | Beginning Balance | | | (3,671,179.70) |
| **Report Totals:** | | | (3,671,179.70) | 0.00 | 0.00 | (3,671,179.70)* |

Total Number of accounts listed: 1

02517

6/27/01
4:00:59PM

**General Ledger Report By: Account Code / Apply Date**

Page 1

Quintus

**06/01/2001 Thru 06/30/2001, Summary, Non-Zero Accounts, All Transactions**
**\* = Totals or Records that Include Unposted Transactions**

Beginning Account Code: 3003-000000                                                                Ending Account Code: 3003-000000

| ACCOUNT CODE | DESCRIPTION | | DEBIT | CREDIT | BALANCE |
|---|---|---|---|---|---|
| 3003-000000  Accounts Payable - Post Petition - Trade | | Beginning Balance | | | 3,736,680.67 |
| | Period 3 Totals: | | 1,826,225.45 | 1,879,554.44 | (53,328.99) |
| | Ending Balance thru 06/30/2001 | | | | 3,683,351.68 |
| Report Totals: | | | 3,736,680.67 | 1,826,225.45 | 1,879,554.44 | 3,683,351.68 |

Total Number of accounts listed:  1

**B - 270**

**146**

02518

| From: | Maloney, Gregory L (Greg) [gmaloney@avaya.com] |
|---|---|
| Sent: | Wednesday, July 25, 2001 12:31 PM |
| To: | Wilson, Gary (Gary) |
| Cc: | Friedman, Keith (Keith); Poriadjian, Janet (Janet); Lowery, Melissa (Melissa); Erdle, Robert J (Robert); Wall, Kelly A (Kelly); Konicki, Gary R (Gary); mpthompson@avaya.com; Asthana, Shobhna (Shobhna); Black, Lewis W (Lewis); Sherbet, Eric (Eric) |
| Subject: | RE: Quintus issue |
| Attachments: | liabilities13.xls |

Gary,

To your knowledge was a schedule put together that would have outlined any outstanding international compensation liabilities incurred by Quintus before the Avaya close?

Regards,


**Greg**

**G. L. Maloney, Process Owner**
**M&A Infrastructure Integration**
**Avaya Inc.**

Room 1W-017; 211 Mt. Airy Road
Basking Ridge, New Jersey 07920
908/953-2537 (ofc.); 908/953-3603 (fax)
908/369-8807 (vo); 908/432-8743 (mobile)


-----Original Mess[Maloney, Gregory L (Gr age-----
**From:** mpthompson@avaya.com [mailto:mpthompson@avaya.com]
**Sent:** Wednesday, July 25, 2001 11:10 AM
**To:** Maloney, Gregory L (Greg); Asthana, Shobhna (Shobhna)
**Cc:** Friedman, Keith (Keith); Poriadjian, Janet (Janet); Lowery, Melissa (Melissa); Erdle, Robert J (Robert); Wall, Kelly A (Kelly); Konicki, Gary R (Gary); mpthompson@avaya.com
**Subject:** RE: Quintus issue

All:

Attached is a final schedule of the assumed liabilities that Avaya took over from Quintus, approximately $22.5 million (note 4/20/01 column). Included in those liabilities were the international numbers (i.e. from the BV operations), of which $90k were for accrued commissions. I am not aware of any other international charges that were not accrued for at the time of the acquisition. Detail for any of the international assumed liabilites should be addressed to the international team.

mark

-----Original Message-----
**From:** Maloney, Gregory L (Greg) [mailto:gmaloney@avaya.com]
**Sent:** Wednesday, July 25, 2001 7:07 AM
**To:** Asthana, Shobhna (Shobhna)
**Cc:** Friedman, Keith (Keith); Poriadjian, Janet (Janet); Lowery, Melissa (Melissa); Erdle, Robert J (Robert);

MT  00332

**Wall, Kelly A (Kelly); Konicki, Gary R (Gary); Thompson, Mark P (Mark P)**
**Subject:** RE: Quintus issue

Shobhna,

Hopefully you have the schedule that is referring to below....

Regards,

*Greg*

**G. L. Maloney, Process Owner**
**M&A Infrastructure Integration**
**Avaya Inc.**

**Room 1W-017; 211 Mt. Airy Road**
**Basking Ridge, New Jersey 07920**
**908/953-2537 (ofc.); 908/953-3603 (fax)**
**908/369-8807 (vo); 908/432-6743 (mobile)**

> ----Original Message----
> **From:** Lowery, Melissa (Melissa)
> **Sent:** Wednesday, July 25, 2001 9:48 AM
> **To:** Asthana, Shobhna (Shobhna)
> **Cc:** Friedman, Keith (Keith); Poriadjian, Janet (Janet); Maloney, Gregory L (Greg)
> **Subject:** RE: Quintus issue
>
> Per the Quintus agreement (refer to Schedule 1.03), Avaya is responsible for all liabilities or obligations
> relating to employee benefits or compensation arrangements (other than those accrued on the
> Company Balance Sheet) existing on or prior to the Closing Date with respect to any employee or
> former employee solely to the extent such liabilities or obligations and an estimate of the amount
> thereof are disclosed in an annex to this Schedule.
>
> Shobna,
> I'm not quite sure if you or someone in your group received a detailed schedule of such liabilities and
> their estimated amounts. I believe we discussed these type of compensation arrangements during
> Janet and I visit in April. If I remember correctly, I believe you were in agreement with assuming those
> liabilities, but I do not recall specifically discussing Dutch Quintus.
>
> > ----Original Message----
> > **From:** Friedman, Keith (Keith)
> > **Sent:** Monday, July 23, 2001 1:34 PM
> > **To:** Lowery, Melissa (Melissa)
> > **Subject:** FW: Quintus issue
> >
> > Melissa,
> >
> > Not sure if you have a copy of the Merger Agreement to see if it says anything about this. Let's
> > discuss.
> >
> > > ----Original Message----
> > > **From:** Maloney, Gregory L (Greg)
> > > **Sent:** Monday, July 23, 2001 1:03 PM

MT 00333

RE: Quintus issue

**To:**   Asthana, Shobhna (Shobhna); Wali, Kelly A (Kelly)

**Cc:**   Erdle, Robert J (Robert); Kopec-Boub, Sandra (Sandra); Chan, Mary W (Mary); Mahr, Frank Joseph (Frank); Friedman, Keith (Keith)

**Subject:**   RE: Quintus issue

Shobhna / Kelly,

Does is make sense for us to be paying for this?

Regards,


## *Greg*

**G. L. Maloney, Process Owner**
**M&A Infrastructure Integration**
**Avaya Inc.**

Room 1W-017; 211 Mt. Airy Road
Basking Ridge, New Jersey 07920
908/953-2537 (ofc.); 908/953-3603 (fax)
908/369-8807 (vo); 908/432-8743 (mobile)

-----Original Message-----
**From:**  Kopec-Boub, Sandra (Sandra)
**Sent:**  Monday, July 23, 2001 10:57 AM
**To:**    Maloney, Gregory L (Greg); Chan, Mary W (Mary)
**Cc:**    Erdle, Robert J (Robert)
**Subject:**   FW: Quintus issue
**Importance:**   High

Mary,
Greg,

Not sure whose call this is -- can you provide guidance? Are we responsible for paying compensation on revenue generated before Avaya purchased Quintus? This appears to be another unresolved issue lingering from Quintus.

*Sandra Kopec-Boub*
**Project Manager**
**Global Employee Services**
**Avaya Inc.**
**Voice: 908 953-5072**

-----Original Message-----
**From:**  Russo, Annette L (Annette)
**Sent:**  Monday, July 23, 2001 5:49 AM
**To:**    Kopec-Boub, Sandra (Sandra)
**Cc:**    Losfeld, Annabel (Annabel)
**Subject:**   Quintus issue
**Importance:**   High

Sandra,

MT 00334

The compensation manager in EMEA has had some questions from the Quintus salespeople in her region. They are asking if Avaya will be paying compensation on any revenue that was generated prior to Avaya's purchase of Quintus.

Can you tell me if we purchased the liability for paying that compensation from the Dutch Quintus company that was involved in the transaction (I believe that it was called Quintus Call Centers BV)?

If you need any further information or if you have questions, please feel free to contact me.

Regards,

Annette

Annette L. Russo
Senior Manager, International Sales Compensation Administration
☎ 32.2.357.5836
🖨 TBD
✉ arusso@avaya.com

MT 00335

Quintus Corporation
Schedule of Assumed Liabilities – FINAL
  In Thousands

Current Liabilities

| | | 3/31/2001 | 4/30/2001 | 5/31/2001 | 6/30/2001 |
|---|---|---|---|---|---|
| Other Accounts Payable[1] | $ | 917 | 865,153 | 247,138 | 230,000 |
| Trade AP | | 7,080 | 5,810,569 | (52,891) | 1,199 |
| Accrued Liabilities – See attached Detail | | 5,513 | 2,714,043 | 2,465,093 | 2,458,507 |
| Deferred Revenue | | 8,069 | 7,448,000 | 7,146,573 | 8,488,380 |
| Capital Leases | | 170 | 170,000 | 156,784 | 179,114 |
| Short Term Debt[3] | | 265 | 265,000 | 0 | 0 |
| | | | | | |
| Total Current Liabilities | | 22,014 | 17,272,764 | 9,962,696 | 11,357,200 |
| | | | | | |
| Capital Leases | | 357 | 357,000 | 357,895 | 318,784 |
| Long Term Debt | | - | - | - | - |
| Deferred Revenue | | 178 | 178,000 | 178,000 | 178,000 |
| | | | | | |
| Total Liabilities 4 | $ | 22,549 | 17,807,764 | 10,498,591 | 11,853,984 |

NOTES:

1. Accrual for amounts due to third party contractors, international and Atlanta building expenses.
2. Estimate of Post Petition Trade Accounts payable.
3. Remaining short term debt relates to the SVB Term Loan and the Beehive Note.
4. Excludes the amount of U.S. $500,000 owing to Silicon Valley Bank secured by certain accounts receivable from Intecom
   Inc. to Quintus Corporation, which amount shall be satisfied by Avaya Inc. pursuant to a settlement agreement among
   Quintus Corporation, Avaya Inc., Intecom Inc. and Silicon Valley Bank providing for the cancellation by Silicon Valley
   Bank of such receivables and the payment of such amount by Avaya Inc. to Silicon Valley Bank.

MT  00336

Quinox Corporation
Schedule of Accrued Liabilities - FINAL
In Thousands

| | Description | GL Account | Amount 4/30/2001 | Amount 3/31/2001 | Amount 5/31/2001 | Amount 6/30/2001 |
|---|---|---|---|---|---|---|
| **Legal & Accounting** | | | | | | |
| Transaction/Bankruptcy/Shareholder Litigation | | | | | | |
| Davis Polk Estimate | 500 | 3201-600000 | 308,000.00 | 303,000.00 | 308,000.00 | 208,000.00 |
| Prababhi Sturg Zbo & Vaung & Jones | 500 | 3201-600000 | 208,000.00 | 208,000.00 | 208,000.00 | 208,000.00 |
| PricewaterhouseCoopers | 515 | 3204-600000 | 115,000.00 | 115,000.00 | 69,515.00 | 69,515.00 |
| **Trailers Normal Course Legal** | 102 | 3201-607W11 | 900,000.00 | 715,000.00 | 97,163.98 | 712,315.98 | 92,465.10 | 662,465.10 | 72,532.79 | 641,671.91 |

**Prepaid Related**

| Description | | GL Account | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Accrued Commissions | 329 | 3382-600000 | 226,876.95 | | 77,265.95 | | | | |
| Internal Payroll Taxes | 316 | International | 315,982.00 | 93,986.50 | 1,106.00 | 5,339.77 | 1,200.50 | 9,878.04 | 624.50 | |
| **Total Accrued Liabilities** | 5,255 | | 5,562,478.55 | | 2,714,642.46 | | 2,465,093.17 | 2,465,093.17 | 2,458,507.14 | 2,458,507.14 |

**NOTES**

1. Estimates of Professional Fees and Expenses. These amounts have not yet been invoiced to Quinox.
2. Estimated payroll accrual for period from April 1 – April 30. Includes estimated accrued vacation and 40% of approximately 50%.

MT 00337



UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 11 |
| | ) Bankr. No. |
| QUINTUS CORPORATION, et al., | ) 01-00501 |
| | ) (MFW) |
| | ) through |
| Debtors. | ) No. 01-00503 |
| ------------------------------ | ) (MFW) |
| QUINTUS CORPORATION, | ) |
| MUSTANG.COM, INC., and | ) |
| ACUITY CORPORATION, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) Adversary No |
| AVAYA, INC., | ) 04-53074 |
| | ) (MFW) |
| Defendant. | ) |
| | ) |
| ------------------------------) | |


DEPOSITION OF IRVING L. ROTTER
New York, New York
Friday, November 4, 2005


Reported by:
TAMI H. TAKAHASHI, RPR
JOB NO. 178894

Esquire Deposition Services
(212) 687-8010

B - 277

153

```
 1

 2      A P P E A R A N C E S :

 3

 4         REED SMITH LLP

 5         Attorneys for Plaintiffs

 6              1201 Market Street, Suite 1500

 7              Wilmington, Delaware 19801

 8         BY:   JOHN G. HARRIS, ESQ.

 9

10

11         SIDLEY AUSTIN BROWN & WOOD LLP

12         Attorneys for Defendant

13              787 Seventh Avenue

14              New York, New York  10019

15         BY:   JAMES D. ARDEN, ESQ.

16

17

18

19

20

21

22

23

24

25
```

1                        Rotter

2      at Davis Polk and us.

3           There may have been other lawyers

4      who were working in correlative areas, but

5      they would have been basing it upon what they

6      perceived the deal was, as we had done it.

7      But, in other words, the direct knowledge

8      should have been from the people negotiating

9      the transaction.

10          Q.    Understood.

11              Is it fair to say, Mr. Rotter, that

12     both section 1.03 and schedule 1.03 were

13     heavily negotiated?

14          A.    Yes.

15          Q.    Can you elaborate on your answer?

16          A.    There were extensive discussions

17     about them.   There were a number of different

18     conversations.   There was -- there were

19     drafts, as I think you're aware, of that

20     particular language that went back and forth.

21              Needless to say, it was a

22     significant provision because it formed the

23     portion of the consideration that was most

24     subject to fluctuation, or that could be

25     subject to fluctuation.

Page 126

1

2

3                    C E R T I F I C A T E

4

5      STATE OF NEW YORK      )

6                              : ss.

7      COUNTY OF NEW YORK     )

8

9          I, TAMI H. TAKAHASHI, RPR and Notary

10     Public within and for the State of New York,

11     do hereby certify:

12              That IRVING ROTTER, the witness

13     whose deposition is hereinbefore set forth,

14     was duly sworn by me and that such deposition

15     is a true record of the testimony given by the

16     witness.

17              I further certify that I am not

18     related to any of the parties to this action

19     by blood or marriage, and that I am in no way

20     interested in the outcome of this matter.

21              IN WITNESS WHEREOF, I have hereunto

22     set my hand this 8th day of November 2005.

23

24     _____

25              TAMI H. TAKAHASHI

1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Bankr. Nos. |
| QUINTUS CORPORATION, et | ) 01-00501 through |
| al., | ) 01-00503 (MFW) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| ———————————————————— | ) |
| | ) |
| QUINTUS CORPORATION, | ) |
| MUSTANG.COM, INC., and | ) |
| ACUITY CORPORATION, | ) |
| | ) |
| Plaintiffs, | ) Adversary No. |
| | ) 04-53074 (MFW) |
| v. | ) |
| | ) |
| AVAYA, INC., | ) |
| | ) |
| Defendant. | ) |

          Deposition of KURT F. GWYNNE, taken
pursuant to notice at the law offices of Rosenthal,
Monhait, Gross & Goddess, P.A., 919 North Market
Street, Wilmington, Delaware, beginning at 10:10 a.m.,
on Tuesday, November 22, 2005, before Julie H.
Parrack, Registered Merit Reporter, Certified Realtime
Reporter and Notary Public.

APPEARANCES:

          KIMBERLY E. CONNOLLY LAWSON, ESQUIRE
          REED SMITH LLP
            1201 Market Street, Suite 1500
            Wilmington, Delaware  19801
            For the Trustee Kurt F. Gwynne


                    WILCOX & FETZER
        1330 King Street - Wilmington, Delaware 19801
                    (302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters

ORIGINAL

1    APPEARANCES (CONT'D)

2

3         ELIZABETH M. ZITO, ESQUIRE
          DONALD P. RENALDO, II, ESQUIRE
          SIDLEY AUSTIN BROWN & WOOD LLP
4            787 Seventh Avenue
             New York, New York  10019
5            On behalf of Defendant Avaya, Inc.

6                      - - - - -

7

8                      KURT F. GWYNNE,

9         the deponent herein, having first been duly

10        sworn on oath, was examined and testified as

11        follows:

12   BY MS. ZITO:

13       Q.    Good morning, Mr. Gwynne.

14       A.    Good morning.

15       Q.    My name is Elizabeth Zito.  I'm with the law

16   firm of Sidley Austin Brown & Wood, and we represent

17   Avaya, Inc., in this action.  Would you please state

18   your full name for the record?

19       A.    Kurt Frederic Gwynne.

20       Q.    And could you tell me your address, please?

21       A.    My home address is 24 Beach Tree -- that's with

22   two e's, and Beach and Tree are two words, Beach Tree

23   Drive, Glen Mills, PA, 19342.

24       Q.    And your work address?

1   could have recorded something before the obligation

2   accrued.

3          It also may be that --

4   Q.   I just want to -- I used the word "incurred."

5   You're using "accrued."

6   A.   They're interchangeable.

7   Q.   They're completely interchangeable to you?

8   A.   I mean accrued may even be broader.  But I

9   certainly don't think, I certainly think accrued is at

10  least as broad as the word incurred.

11  Q.   Okay.  So separate and apart from prepaid

12  expenses, can you think of any other types of

13  liabilities that would be recorded that are not yet

14  incurred? --

15  A.   Well, lease obligations, be another example.

16  You know, you incur them monthly.  Obligations, that

17  would be real, personal property leases, employment

18  obligation liabilities, you know, you'd pay them

19  monthly, for example.  You don't pay them -- I mean

20  there's a thousand.  I'm not an accountant, but there

21  are many, many.  I certainly can't give them all to

22  you.

23  Q.   Where is a recorded liability recorded?

24  A.   On the company's books and records.  It could



WILCOX & FETZER LTD.
Registered Professional Reporters

1    be a number of places.  Should be on a general ledger.

2    Everything should be on the general ledger.

3       Q.    You've used the phrase "books and records."

4    What do you mean by that?

5       A.    Books and records, pretty broad.  The company's

6    general ledgers, any other specific ledgers that the

7    company has, could include its financial software.

8    Anything that involves its finance or accounting

9    systems could fall within that definition of books and

10   records for this purpose.  Obviously books and records

11   could also include corporate minutes and things like

12   that.

13      Q.    Which, if any, of the debtors' books and

14   records have you reviewed?

15      A.    Me personally?

16      Q.    The trustee.

17      A.    Well, that's me.  Okay, me personally.  It's

18   hard to answer that question, again, because the

19   length of the case.  It's been going on for several

20   years.  I have reviewed many of the debtors' 10-Ks and

21   10-Qs, and obviously much of that dealt with things

22   other than Avaya litigation.

23            We've looked at the schedules, we've

24   looked at the claims register, which is part of our

**W&F**

1                    CERTIFICATE

2      STATE OF DELAWARE)
                       )
3      NEW CASTLE COUNTY)

4              CERTIFICATE OF REPORTER

5           I, Julie H. Parrack, Registered Professional
       Reporter and Notary Public, do hereby certify that
6      there came before me on the 22nd day of November,
       2005, the deponent herein, KURT F. GWYNNE, who was
7      duly sworn by me and thereafter examined by counsel
       for the respective parties; that the questions asked
8      of said deponent and the answers given were taken down
       by me in Stenotype notes and thereafter transcribed by
9      use of computer-aided transcription and computer
       printer under my direction.

10
             I further certify that the foregoing is a true
11     and correct transcript of the testimony given at said
       examination of said witness.

12
             I further certify that I am not counsel,
13     attorney, or relative of either party, or otherwise
       interested in the event of this suit.

14

15                           _Julie H. Parrack_

16                           Julie H. Parrack, RMR, CRR
                             Certification No. 102-RPR
17                           (Expires January 31, 2008)

18
       DATED: 12/5/05
19

20

21

22

23

24

Page 1

1                    IN THE UNITED STATES BANKRUPTCY COURT
2                        FOR THE DISTRICT OF DELAWARE

3
4          IN RE:                          :   CHAPTER 11        **COPY**
                                           :
5          QUINTUS CORPORATION, et al,     :   Bankr. No. 01-00501(MFW)
                                           :   through No. 01-00503 (MFW)
6                                          :
           Debtors                         :   Jointly Administered
7          ─────────────────────────      :
                                           :
8          QUINTUS CORPORATION,            :
           MUSTANG.COM, INC., and          :
9          ACUITY CORPORATION,             :   Adversary No. 04-53074 (MFW)
                                           :
10           Plaintiffs,                   :
                                           :   DEPOSITION OF:
11               vs.                       :
                                           :   ERIC M. SHERBET
12         AVAYA, INC.,                    :
                                           :
13           Defendant.                    :
           ─────────────────────────      :
14

15                    TRANSCRIPT of the stenographic notes of the

16         proceedings in the above-entitled matter, as taken by and

17         before JANICE D. BURNESS, a Certified Shorthand Reporter,

18         Registered Professional Reporter and Notary Public of the

19         State of New Jersey, held at the office of REED SMITH, LLP,

20         Princeton Forrestal Village, 136 Main Street, Suite 250,

21         Princeton, New Jersey, on Tuesday, November 22, 2005,

22         commencing at 10:05 in the forenoon.

23

24

25

DOERNER & GOLDBERG, INC                                    973-740-1100
5 Becker Farm Road · Roseland, NJ  07068    2 Industrial Way West · Eatontown, NJ  07724

B - 290

162

Page 2

```
 1        A P P E A R A N C E S:

 2

 3            REED SMITH, LLP
              BY:  JOHN G. HARRIS, ESQ.
 4            1201 Market Street
              Suite 1500
 5            Wilmington, Delaware  19801
              Attorneys for Chapter 11 Trustee
 6
              SIDLEY, AUSTIN, BROWN & WOOD, LLP
 7            BY:  JAMES D. ARDEN, ESQ.
              787 Seventh Avenue
 8            New York, New York  10019
              Attorneys for Avaya, Inc.
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DOERNER & GOLDBERG, INC                                  973-740-1100
5 Becker Farm Road • Roseland, NJ  07068        2 Industrial Way West • Eatontown, NJ  07724

B - 291

163

Page 8

1          Q.      And you're presently employed by Avaya?

2          A.      Yes.

3          Q.      And how long have you been employed by Avaya?

4          A.      Since July 2000.

5          Q.      What are your current responsibilities?

6          A.      I'm the vice president and general auditor of

7    Avaya, which means that I am the head of the internal audit

8    group at Avaya.

9          Q.      Did you hold that same position in the year

10   2001 when the Quintus Avaya transaction closed?

11         A.      No, I did not.

12         Q.      What was your position then?

13         A.      Corporate counsel, Avaya's law department.

14         Q.      And I know that you were an associate at the

15   law firm of Paul Hastings prior to joining Avaya.  Is that

16   correct?

17         A.      That's correct.

18         Q.      What was your main practice there while you

19   were in private practice?

20         A.      Just corporate law, mergers and acquisitions,

21   security law.

22         Q.      While at Avaya, have you ever handled any other

23   sale acquisitions?

24         A.      Yes.

25         Q.      And what were those acquisitions?

Page 39

1      Q.    You already have in front of you what's been

2   premarked Exhibit 1, the Asset Purchase Agreement without

3   exhibits, and the addendum.

4        You recognize that document, don't you?

5     A.    Yes.

6     Q.    Would you please turn to Section 1.03 of the

7   Asset Purchase Agreement.  I'm -- for purposes of the record,

8   I'm referring to the executed copy of the Asset Purchase

9   Agreement.  And that Section 1.03 begins on page 4 and carries

10   over to page 5, does it not?

11     A.    Yes.

12     Q.    Feel free to take as much time as you need to

13   familiarize yourself with that section, although you have

14   already read portions of it.

15        Do you recall whether that section of the Asset

16   Purchase Agreement was -- who drafted that section of the

17   agreement?

18     A.    I don't have a specific recollection of this

19   particular section.  My assumption would be Davis Polk, who is

20   counsel for Quintus, generally controlled the document, I

21   would presume, in terms of the drafting.  I would presume that

22   it was drafted by them primarily, subject to negotiation with

23   our side.

24     Q.    Would you turn now or focus on Schedule 1.03?

25     MR. HARRIS:  Could we go off the record?

Page 51

1    The way I view that, in my experience, is I

2    read "recorded" as specifically -- a specific liability that's

3    been recorded, such as an accounts payable register.

4    And "accrued" to mean, in the accounting sense,

5    the -- that a cost that has been incurred prior to the date of

6    the preparation of statements but for which there is not a

7    specific invoice, and so you record an accrual in your

8    accounting records.

9    Q.    You used the word "incurred."  Do you draw a

10    distinction between the use -- or the meaning of the word

11    "incurred" versus "accrued"?

12    A.    Yes.

13    Q.    What is the difference?

14    A.    In my mind, "incurred" -- "accrued" reflects a

15    -- "accrued" reflects a recording in the accounting records

16    based on an entry, an accrual entry.  So if you look at the

17    schedule of assumed liabilities, you will see certain

18    liabilities that are recorded as accrued liabilities.  So I

19    take it in that sense.

20    I would also -- if you were to look at the

21    black-lined copy that we are referring to and look at the

22    deleted language, if you look at line 244, there is language

23    that says -- that seems to indicate the prior language that

24    sets forth on the balance sheet and all liabilities incurred

25    thereafter.  And now the new language says "accrued," which is

DOERNER & GOLDBERG, INC                          973-740-1100
5 Becker Farm Road * Roseland, NJ  07068    2 Industrial Way West * Eatontown, NJ  07724

B - 292

166

Page 123

CERTIFICATE

1

2

3      I, JANICE D. BURNESS, a Certified Shorthand

4   Reporter, Registered Professional Reporter and Notary Public

5   of the State of New Jersey, do hereby certify that prior to

6   the commencement of the examination ERIC M. SHERBET was duly

7   sworn by me to testify the truth, the whole truth and nothing

8   but the truth.

9      I DO FURTHER CERTIFY that the foregoing is a true

10  and accurate transcript of the testimony as taken

11  stenographically by and before me at the time, place and on

12  the date hereinbefore set forth.

13     I DO FURTHER CERTIFY that I am neither a relative

14  nor employee nor attorney nor counsel of any of the parties to

15  this action, and that I am neither a relative nor employee of

16  such attorney or counsel, and that I am not financially

17  interested in the action.

18

19     *Janice D. Burness*

20

21  Certified Shorthand Reporter, License XI00225900
    Registered Professional Reporter

22  Notary Public of the State of New Jersey
    I.D.  2015681   Expires 01/29/2008

23

24  Dated:  December 5, 2005

25

DOERNER & GOLDBERG, INC
5 Becker Farm Road • Roseland, NJ  07068        2 Industrial Way West • Eatontown, NJ  07724        973-740-1100

B - 293

167

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

in re:

QUINTUS CORPORATION, et al.

            debtors,

_____/

QUINTUS CORPORATION,
MUSTANG.COM, INC. and
AQUITY CORPORATION,

            Plaintiffs,

      vs.                              No. 01-00501
                                       through 01-005503

AVAYA, INC.,

            Defendants.

_____/



DEPOSITION OF SHOBHNA ASTHANA

January 25, 2006

PATRICIA CALLAHAN & ASSOCIATES, INC.
Certified Shorthand Reporters
Oakland, California  510-835-3993
San Francisco, California  415-788-3993
Castro Valley, California  510-885-2371

Facsimile 510-247-9775
WeReport@aol.com

Reported by:
LaRelle M. Fagundes
CSR No. 9762

6

```
 1            BE IT REMEMBERED THAT, pursuant to Notice of

 2    Taking Deposition, and on Wednesday, January 25,

 3    2006, commencing at the hour of 9:09 o'clock a.m.

 4    of the said day, at the law offices of REED SMITH,

 5    1999 Harrison Street, Suite 22-A, Oakland,

 6    California, before me, LARELLE M. FAGUNDES, a

 7    Certified Shorthand Reporter, personally appeared

 8    SHOBHNA ASTHANA, a witness in the above-entitled

 9    court and cause, produced on behalf of the

10    plaintiff therein, who being by me first duly

11    sworn, was then and there examined and interrogated

12    by Attorney KIMBERLY E. CONNOLLY LAWSON,

13    representing the law firm of REED SMITH, 1201

14    Market Street, Suite 1500, Wilmington, Delaware,

15    counsel for the plaintiffs.

16

17                  APPEARANCES OF COUNSEL

18

19    FOR PLAINTIFFS:

20            REED SMITH

21            BY:  KIMBERLY E. CONNOLLY LAWSON, ESQ.

22            1201 Market Street

23            Suite 1500

24            Wilmington, Delaware  19801

25    //
```

PATRICIA CALLAHAN & ASSOCIATES

```
1    FOR DEFENDANTS:

2         SIDLEY AUSTIN, LLP

3         BY:  JAMES D. ARDEN, ESQ.

4         787 Seventh Avenue

5         New York, New York  10019

6

7         The following proceedings were thereupon

8    had, and the following testimony was thereupon

9    given, to-wit:

10

11                        ---oOo---

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PATRICIA CALLAHAN & ASSOCIATES

B – 302

**170**

1              And there was -- were you somewhere in

2      between Avaya and Yahoo?

3      A.       I was consulting for different companies.

4      Q.       Okay.

5              Why did you leave Avaya?

6      A.       I was laid off.

7      Q.       Okay.

8              While you were at Avaya, did you hold more

9      than one position?

10     A.       The position was the same, but the role

11     changed in the sense that the BU was changing as --

12     the BU is the business unit -- as they were giving

13     more to the GM here.  My role was supporting the GM

14     here, who was based here.  So as they were given

15     more responsibilities, I was supporting more.  It

16     went anywhere from 150 million BU to 2.2 million

17     BU.  So depending on that, the role changed, but it

18     was the BU financial support.

19     Q.       You said BU is business unit?

20     A.       Yes.

21     Q.       And GM, what does that refer to?

22     A.       General manager.

23     Q.       Okay.

24              Was there a particular type of area that

25     you were responsible for?

1    A.    I was responsible for the financial support

2    to the BU.

3    Q.    Okay.  Financial support.

4    A.    So doing the FP&A role, so the budgets, the

5    planning.  At one point, I also had the reporting

6    and things like that under me.  So I had three,

7    four direct reports who had direct reports under

8    them.

9    Q.    Okay.  And you said FP&A?

10    A.    Which is financial planning and analysis.

11    Q.    Okay.  I wanted to take you back to around

12    2001, end of 2000 beginning of 2001.  Okay?

13    A.    All right.

14    Q.    You were employed by Avaya at that time?

15    A.    Yes.

16    Q.    And you were doing the job you just

17    described in the finance department?

18    A.    Yes.  Yes.

19    Q.    Okay.

20          Were you involved at all -- are you aware

21    that -- let me start that over.

22          Are you aware that Avaya and Quintus

23    Corporation, Mustang.com, Inc., and Aquity

24    Corporation; which I work for them collectively as

25    Quintus for purposes of this deposition, were you

1    that, there might be an objectionable question in

2    my mind or I might have a question that Kim might

3    think she can raise an objection about.  But if

4    it's just on relevance or the way the question is

5    framed or something else, we make our objection for

6    the record so the judge can consider it later.

7              THE WITNESS:          Okay.  Got it.

8              MS. LAWSON:           Okay.  Let me figure

9    out where we were.

10   Q.        You were you talking about the integration

11   of the two systems and the Excel spreadsheet that

12   you used to map the two systems.  I think I

13   understand based on your last explanation.

14              Were you at all involved with determining

15   what specific liabilities Avaya was responsible to

16   pay or that Avaya had assumed?

17   A.        We actually kept Mark and Rosie on the

18   payroll to work with the lawyers on that.  So they

19   were there.  I don't remember if it was three

20   months to six months, because we kept some of them

21   six months, some of them for three months, and they

22   were working on closing all that.

23   Q.        Okay.

24   A.        So my role was more, once it was an

25   integrated, you know, then I do the support going

58

```
 1    Q.      Okay.

 2            And you don't know what that means?

 3    A.      That just means that whatever we had

 4    estimated as accruals, we were saying we are not

 5    picking up in this.  Again, I don't remember

 6    exactly why we didn't pick these up.

 7    Q.      Okay.

 8            Can you turn to page five of the May

 9    report, which is Exhibit 4.

10    A.      Sure.

11    Q.      It's Bates stamped 01247.  Can you read the

12    fourth bullet point.

13    A.      "Monthly reconcilliaiton of beginning

14    balance liabilities to be prepared by Mark

15    Thompson."

16    Q.      Do you know what that statement means?

17    A.      Yeah.  Yes.

18    Q.      What was Mark -- what does that mean?  What

19    duties was Mark performing?

20    A.      So he was reconciling the liabilities

21    amounts every month to show the transactions that

22    took place.  Because every month we were not

23    putting in the detail in the Avaya systems, and we

24    were putting in the top-level summary information,

25    balance sheet information.  So he was reconciling
```

1   that to make sure that the ending and the beginning

2   balances made sense.

3   Q.      Okay.

4           So when you refer to "beginning balance

5   liabilities," that's on a month-to-month basis?

6   That's not the beginning liabilities of the cutoff

7   date of the assets purchase agreement?

8   A.      That's correct.

9   Q.      Okay.

10          And this reconciliation, was that occurring

11  on the Quintus system, the Avaya system, or on that

12  interim Excel sheet you referred to earlier?

13  A.      I don't remember.  I think it was Excel,

14  but I don't remember.  I think all of the

15  reconciliation were on Excel sheet.

16  Q.      Can you turn to page eight of that

17  document, Bates number 01250.

18  A.      Yeah.

19  Q.      Can you read the last bullet point on the

20  page under subtitle "issues."

21  A.      It says, "Archiving A/R and invoice

22  history."

23  Q.      Do you know what that is referring to?

24  A.      To our receivables.

25  Q.      Is that Quintus receivables --

1          Is there a difference between accrued and

2     recorded?

3          MR. ARDEN:          And you're saying in

4     this document that she wasn't involved in preparing

5     or generally in accounting?

6          MS. LAWSON:          Q.   Generally in

7     accounting is there a difference between accrued

8     and recorded?

9     A.     Generally accrued will be recorded.   If

10    you're accruing something, you're recording it on

11    the books.

12    Q.     At what point is it recorded?

13    A.     When it's incurred.   It's supposed to be

14    recorded when the liability is incurred.   Now, it

15    could be estimates, because you might not have the

16    actual amount.   And that's the point of accruals,

17    is estimating what your liabilities are.

18    Q.     Can you give me some examples of

19    liabilities that would be accrued and then

20    recorded?

21    A.     For example, we accrued anything that we

22    said we will pay to employees, accrued commission.

23    So they're -- you know, they have sold something

24    that we are liable to pay them commission on,

25    things like that that we record as accruals.

*ERRATA SHEET FOR TRANSCRIPT OF:*  Shobhna Asthana

*DATE TAKEN:*  January 25, 2006

| Page | Line | Change From: | Change To: | Reason: |
|------|------|--------------|------------|---------|
| 10 | 17 | I started out in '97 in Oracle. It was | I started out in '97 in Octel. It was | Transcription Error |
| 11 | 16 | It went anywhere from 150 million BU to 2.2 million BU. | It went anywhere from 150 billion BU to 2.2 billion BU. million ✓ | Transcription Error |
| 16 | 18 | and so we were doing the chartive accounts integration. | and so we were doing the Chart of Accounts integration. | Transcription Error |
| 16 | 19 | Their chartive account was different than ours. | Their Chart of Accounts was different than ours. | Transcription Error |
| 28 | 20 | the chartive account mapping, setting up the profit | the Chart of Accounts mapping, setting up the profit | Transcription Error |
| 50 | 5 | Gary Konicki is an A/P person is Avaya. | Gary Konicki is an FP&A person is Avaya. | Transcription Error |

Shobhna Asthana

*Subscribed and sworn to before me this* 7 *day of* March 2006

Notary Public



NY1 5840119v.1

B - 309

177

1          IN THE UNITED STATES BANKRUPTCY COURT

2              FOR THE DISTRICT OF DELAWARE

3    - - - - - - - - - - - - - - - - - -

4    IN RE:                          ) Chapter 11

5    QUINTUS CORPORATION, et al.,     ) Bankr. No.

6              Debtors.              ) 01-00501

7    - - - - - - - - - - - - - - - -) through

8    QUINTUS CORPORATION, MUSTANG.COM,) 01-00503

9    INC., and ACUITY CORPORATION,    ) (MFW)

10             Plaintiffs,           )

11   V.                              ) Adversary

12   AVAYA, INC.,                     ) No. 04-53074

13             Defendant.            ) (MFW)

14   - - - - - - - - - - - - - - - -

15

16

17          DEPOSITION OF MARK THOMPSON

18          THURSDAY, JANUARY 26, 2006

19

20

21

22

23

24

25

Page 3

1    APPEARANCES OF COUNSEL:

2    FOR PLAINTIFF:

3        REED SMITH, LLP

4        BY:   KIMBERLY E. CONNOLLY LAWSON, ESQUIRE

5        1201 Market Street, Suite 1500

6        Wilmington, Delaware 19801

7        Telephone:  (302) 778-7597

8

9    FOR DEFENDANT:

10        SIDLEY AUSTIN, LLP

11        BY:   JAMES D. ARDEN, ESQUIRE

12        787 Seventh Avenue

13        New York, New York 10019

14        Telephone:  (212) 839-5889

15

16

17

18

19

20

21

22

23

24

25

Page 10

1    describe it?

2         Business intelligence software is

3    probably the best way to do it.

4        Q.   Now, for some period you were

5    employed by Quintus Corporation?

6        A.   Correct.

7        Q.   When were you first employed by

8    Quintus?

9        A.   My resume is long, so let me -- let

10   me think of the years here.  Boy.  1990 --

11   unfortunately, I'm guessing.  I'm going to

12   say '98 through 2001.  It could be '97.  I'd

13   really have to go back and take a look at my

14   records.

15        I've -- I've had about a dozen

16   positions here in Silicon Valley.

17        Q.   And when you joined in 1998 or

18   thereabouts, what was your position?

19        A.   It was controller.

20        Q.   And at some point you became

21   vice-president of finance?

22        A.   Correct.  About a year later I

23   believe.

24        Q.   What were your responsibilities as

25   vice-president of finance?

Page 11

1       A.    Basically, it was the financial

2   operations of the corporation.  So, it

3   covered everything from SEC reporting to

4   financial planning to just general financial

5   information.  I also was responsible for the

6   risk management area, the insurance area,

7   some legal as well as facilities eventually.

8       Q.    When you became vice-president of

9   finance, did you continue with the

10  responsibilities you had as controller?

11      A.    Yes.

12      Q.    And those included maintaining the

13  books and records of the company?

14      A.    Correct.

15      Q.    And technically, was the title

16  vice-president, finance or vice-president of

17  finance?

18      A.    I believe it was vice-president,

19  finance.  I couldn't swear on that, but I'm

20  pretty sure that's what it was.

21      Q.    To whom did you report?

22      A.    Sue Salveson (phonetic), our CFO.

23      Q.    And who reported to you?

24      A.    I had -- at the beginning or just

25  over the -- over the life of the 3 or 4 years

Page 22

1      Q.   But this closing was going to be

2  after December 31, 2000, and this defined

3  that Avaya would also assume under certain

4  conditions liabilities that had been accrued

5  or recorded?

6      A.   That's correct, up to the closing

7  date.

8      MS. LAWSON:  I'm sorry.  I don't mean to

9  interrupt, but when you were referring him to

10  page 509, was it Bates stamp 509 or --

11      MR. ARDEN:   519.  It was the definition

12  of "balance sheet."

13      MS. LAWSON:  I didn't hear the 19.  Okay.

14  Good.

15  BY MR. ARDEN:

16      Q.   So, that second set of liabilities

17  would be liabilities accrued or recorded

18  after the balance sheet date up to the

19  closing date; right?

20      A.   That is correct.

21      Q.   And those would mean -- withdrawn.

22           Those liabilities would be

23  liabilities that had been accrued or recorded

24  on the books of Quintus; right?

25      A.   Correct.

Page 23

1      Q.    The sentence also states that the

2    liabilities that had been accrued or recorded

3    would be assumed to the extent they had not

4    been paid prior to the closing date; right?

5      A.    Correct.

6      Q.    Your understanding is that Avaya was

7    not assuming liabilities that had already

8    been paid prior to the closing date; right?

9      A.    That's correct.

10     Q.    For liabilities to be accrued or

11   recorded on the books, where in the books

12   would they be accrued or recorded --

13   withdrawn.

14          When liabilities are accrued or

15   recorded on the books, where are liabilities

16   accrued or recorded?

17     A.    Are you asking what accounts are

18   they recorded in or where on the balance

19   sheet?

20          I mean, it's in the liability

21   section of the balance sheet.  It could be --

22   depending upon what type of liability it is,

23   it could either be within the accounts

24   payable area or it could be outside of the

25   accounts payable area for an accrual of any

Page 24

1    other type of expense that the company has

2    incurred but not paid yet.

3        Q.    But in any case, there would be

4    entries made into the accounting system;

5    correct?

6        A.    Correct.   There would be journal

7    entries made into the accounting system.

8        MR. ARDEN:   Could you mark this as

9    Thompson Exhibit 3.

10              (Defendant's Exhibit No. 3

11              was marked for identification)

12   BY MR. ARDEN:

13       Q.   Mr. Thompson, I'm showing you a

14   3-page document that has been marked Thompson

15   Exhibit 3 bearing the stamp numbers 248

16   through 250.

17              (Defendant's Exhibit No. 4

18              was marked for identification)

19   BY MR. ARDEN:

20       Q.    I'm also showing you a document that

21   has been marked Thompson Exhibit 4 which

22   bears the stamp pages 251 through 253.

23              And, Mr. Thompson, I'll ask you --

24   I'll be asking you some questions about each

25   of these -- each of these documents.

1    A.    Okay.

2    Q.    The first page of Exhibit 3 is not

3  dated, but it does have a fax stamp of April

4  5, 2001.

5         Do you recall preparing a

6  document -- withdrawn.

7         Do you recall preparing Exhibit 3 in

8  early April 2001?

9    A.    I remember preparing a document,

10  yes.

11    Q.    And what is Exhibit 3?

12    A.    It's a schedule -- this is a

13  schedule as of a point in time of what our

14  balance sheet was at at that point in time

15  being April the 10th.

16    Q.    So, when you -- when you prepared

17  this document, you thought the closing would

18  occur on April 10th?

19    A.    I don't remember the specifics, but

20  it -- I would assume so.

21    Q.    But in any case when you prepared

22  this document, you were estimating what the

23  books would look like at a certain date in

24  the future; right?

25    A.    We were estimating to the best of

1    our ability at that point in time.   Quintus

2    was on a normal month and calendar close.

3    So, to close the books at a point in time

4    that's not a month and -- it took a little

5    bit of estimating definitely that we were not

6    normally used to doing.   That's such a short

7    notice to prepare a balance sheet.

8        Q.   And did you understand in the Asset

9    Purchase Agreement that some days prior to

10   the closing there would be an estimate that

11   would be given to Avaya, right, an estimated

12   schedule of liabilities?

13       A.   Correct, yes.

14       Q.   How did you prepare Exhibit 3?

15   Withdrawn.

16           You were responsible for Exhibit 3;

17   right?

18       A.   Correct.

19       Q.   And that's your signature on the

20   first page?

21       A.   Correct.

22       Q.   How was Exhibit 3 prepared?

23       A.   This would be basically a snapshot

24   of what was out of our financial system that

25   we used.

Page 28

1    other than an invoice; right?

2        MS. LAWSON:  Objection to form.

3        THE WITNESS:  I believe all the three

4    numbers you see in the top were all estimates

5    based upon the transaction, that I was given

6    numbers -- I don't remember by who off the

7    top of my head.  But they definitely were

8    given to me in order to accrue a certain

9    amount without a supportable invoice yet that

10   had been received.

11   BY MR. ARDEN:

12       Q.   Was it the practice of Quintus not

13   to accrue telephone charges or the like but

14   rather to record them once an invoice was

15   received or bill received?

16       A.   That would be the normal process.

17   But it would not mean that there would not be

18   an exception to that process would be my

19   answer.

20       Q.   Now, on the page 249 under trade

21   accounts payable, there are both pre-petition

22   trade accounts payable and post-petition

23   trade accounts payable; right?

24       A.   Correct.

25       Q.   Where did those -- withdrawn.

1        Each of those numbers was supported

2   by a detail of specific payables; right?

3        A.   Everything that has -- that has

4   referenced a trade AP means that the invoice

5   was received and processed or vouchered into

6   our financial system so there was support by

7   detail, vendor name, to back up what you see

8   in those numbers.

9        Q.   And why was pre-petition and

10  post-petition separated out?

11       A.   Boy, I don't remember the definition

12  of -- of why it was set up that way off the

13  top of my head.

14       Q.   If you could turn to Exhibit 4,

15  there there's a -- withdrawn.

16       You recognize Exhibit 4; right?

17       A.   Yes.

18       Q.   And what is that document?

19       A.   It is a signed copy between myself

20  and Avaya on the Asset Purchase Agreement for

21  detailing the assumed liabilities.

22       Q.   If you turn to page 252, that second

23  page, that schedule as of April 20 sets forth

24  all the unpaid liabilities that were accrued

25  or recorded on the books of Quintus and

Page 30

1   assumed by Avaya; correct?

2       A.    That's correct.

3       Q.    And there were no other assumed

4   liabilities as of April 20; right?

5       A.    As of April 20 that we were aware

6   of, those were the liabilities that we had

7   put on our books.

8       Q.    Did you ever become aware that

9   Quintus had previously accrued or recorded

10  other liabilities prior to the closing date?

11      MS. LAWSON:   Objection to form.

12      THE WITNESS:   Not recorded.   Just a --

13  just a quick explanation of our -- of the

14  accrual process for the company.

15          We didn't have a purchasing system

16  at the company.   So, POs were not always

17  initiated for obligations that the company

18  entered into.   So, we did not use POs to

19  accrue for those particular obligations.

20          As such, when we accrued for an

21  actual bill, it was usually based upon

22  receiving an invoice in-house.   And so,

23  that's when we would accrue for it unless we

24  were made aware by someone within the

25  organization that a service had been rendered

1          Q.    So, looking at the page 252, as of

2     April 20 the total amount of unpaid

3     liabilities that had been accrued or recorded

4     was $22,549,000; correct?

5          MS. LAWSON:  Objection to form.

6          THE WITNESS:  I believe that was the

7     number as far as the number that was going to

8     be assumed by Avaya.  It wasn't all the

9     assumed liabilities on our books at that

10    point.

11    BY MR. ARDEN:

12         Q.    Not all the liabilities on your

13    books.

14         A.    You mean assumed --

15         Q.    But the 22.549 was the --

16         A.    They were the assumed liabilities to

17    Avaya, that Avaya was going to go ahead and

18    take over.  The other liabilities stayed if

19    there were any.  I can't remember the detail.

20    But I know there were some balance sheet

21    items and some liability items stayed on the

22    Quintus books.  I just don't remember in

23    detail which ones they were.

24         Q.    You mean, they stayed on Quintus

25    books and stayed the responsibility of

1    Quintus?

2        A.    Quintus.    Correct.

3        Q.    So, 22.549 million was the amount

4    that was assumed by Avaya; correct?

5        A.    Correct.

6        Q.    Did someone from Avaya go over the

7    books with you before signing the first page

8    of Exhibit 4?

9        A.    I can't remember if anybody did.    I

10   do know after they certainly then would have

11   asked and tried to understand what was

12   embedded within each of those line items.

13       Q.    And you'd refer to this as the final

14   schedule of assumed liabilities; right?

15       A.    Correct.

16       Q.    And the final schedule of assumed

17   liabilities trade AP is a single line; right?

18       A.    Yes.    7080.

19       Q.    And that would be 7,080,000?

20       A.    80,000

21       Q.    What are accounts payable?    What are

22   trade accounts payable?

23       A.    Trade accounts payable are normal

24   obligations that the company has entered into

25   in business with vendors that do services for

Page 36

1   the company, and that we have received

2   invoices for those services that have been

3   rendered, and that we have put on our books

4   but have not paid out yet.  So, we have

5   incurred, we have recognized the expense on

6   our books, but we have not actually paid the

7   cash out to those vendors yet.

8       Q.   After the closing date, was one of

9   your responsibilities to see that the trade

10  accounts payable would be paid out or paid

11  down?

12      A.   Correct.

13      Q.   And who were the persons who worked

14  on that?

15      A.   Specifically, the responsibility was

16  for Rosie Nguyen who was our accounting

17  manager.  That was her area of responsibility

18  to continue our internal process that we had

19  at Quintus which was to do check runs for the

20  particular trade AP that were becoming due.

21  And so, she would go ahead and do the normal

22  check run process.

23          I would then go ahead and sign the

24  checks.  And we would go ahead and draw that

25  number down.

Page 37

1          MR. ARDEN:  Off the record.

2          (Brief recess; 10:05 a.m. to 10:17 a.m.)

3              (Defendant's Exhibit No. 5

4              was marked for identification)

5     BY MR. ARDEN:

6          Q.   Mr. Thompson, I'm showing you a

7     document that has been marked as Thompson

8     Exhibit 5 bearing the stamp MT 430 through

9     434.

10         A.   Yes.

11         Q.   Mr. Thompson, you authored an e-mail

12    that begins on 430 to 431; correct?

13         A.   Correct.

14         Q.   And the attached documents are

15    documents that were prepared by you or under

16    your supervision; right?

17         A.   Correct.

18         Q.   And were they prepared -- which one

19    was it actually?  Did someone else prepare it

20    and send it to you for your review, or did

21    you generate the documents that are the

22    exhibits or the attachments to that e-mail?

23         A.   I'm thinking these are documents

24    that I would have prepared that are attached

25    to this e-mail.  These are coming right out

Page 38

1    of our -- out of our system -- financial

2    system which then go right to an Excel

3    spreadsheet.

4          So, I would do that.

5          Q.    And so, these are the documents

6    you're referring to on 432, 433, and 434?

7          A.    Correct.

8          Q.    And you wrote to Kelly Wall that you

9    were attaching a recap of the liabilities

10   that were assumed by Avaya; right?

11         A.    Correct.

12         Q.    And on the last page, you have two

13   columns, one showing what had been originally

14   assumed and a second column that shows the

15   effect of paying down certain items among the

16   assumed liabilities; right?

17         A.    That is correct.

18         Q.    So, as of April 30, 2001, the total

19   liabilities assumed by Avaya stood at

20   17,807,764; right?

21         A.    That's correct.

22         Q.    You noted that the accounts payable

23   had been reduced by about 1.3 million; right?

24         A.    Correct.

25         Q.    And the accrued liabilities had also

1              (Defendant's Exhibit No. 6

2              was marked for identification)

3    BY MR. ARDEN:

4        Q.    Mr. Thompson, I'm showing you a

5    document that bears the stamp 00332 through

6    00337 and includes the letters MT at the

7    beginning.

8        A.    Uh-huh.  Yes.

9        Q.    And that includes an e-mail that you

10   prepared on July 25, 2001; right?

11       A.    Correct.

12       Q.    And it also includes a 2-page

13   attachment that you included with that

14   e-mail; right?

15       A.    Correct.

16       Q.    And you note that what you have

17   attached is the final schedule of the assumed

18   liabilities that Avaya took over from

19   Quintus, approximately 22.5 million; right?

20       A.    Correct.

21       Q.    And that is the number that appears

22   on the far left column of 00336?

23       A.    Correct.

24       Q.    Now, those numbers appear in

25   thousands; right?

Page 41

1       A.    Correct.

2       Q.    The columns to the right include the

3    last dollar amount; right?

4       A.    Say again?

5       Q.    They include -- they go to a single

6    dollar amount?

7       A.    Yes.

8       Q.    And this shows that as of June 30,

9    2001 the trade accounts payable had been paid

10   down to only $1,199; right?

11      A.    That's correct.

12      Q.    So, there's $1 less than $1200 left

13   in trade accounts payable; right?

14      A.    That's correct.

15      Q.    And that number also was tied to the

16   accounting system of -- of Quintus; right?

17      A.    Correct.

18      Q.    Do you know what the $1,199 referred

19   to, what were those --

20      A.    I don't remember off the top of my

21   head, no.

22      Q.    Do you believe that at the time you

23   left Avaya all accounts payable had been

24   paid?

25      A.    All the accounts...?  My -- my

1        A.    Yes.

2        Q.    Mr. Thompson, do you recognize that

3    document?

4        A.    Yes, I do.

5        Q.    And what is that?

6        A.    This is an aged payable report

7    directly out of our financial system.

8        Q.    And --

9        A.    This shows -- all of the vouchered

10    invoices that we had received at that point

11    in time had been put into our system, they

12    have not been paid yet but have been

13    recognized as expense by the company.

14            And it's broken out into three --

15    three I guess I'll call it companies.  The

16    way we kept our books, we'd have Quintus by

17    its own, and then through acquisitions Acuity

18    and Mustang also were shown as their own

19    entities.  And then, we would consolidate.

20        Q.    So, does this include all the trade

21    accounts payable that had been entered into

22    the books and records of the company?

23        A.    It should.

24        Q.    Now, if you could -- if you could

25    look at the first entry, it has

Page 57

1   don't know if that is -- is document 7 or

2   not.

3       Q.   Right.  Do you recall sending

4   certain invoices to any consultant or

5   representative of Quintus such as DSI because

6   it represented a liability that had not been

7   assumed by Avaya?

8       MS. LAWSON:  Objection to form.

9       THE WITNESS:  I want to say I can

10  probably think of at least one time we

11  probably did that which was to receive an

12  invoice and then to give it to the DSI people

13  that were there at the Quintus location and

14  say they needed to go talk to Avaya and

15  figure out how to deal with this particular

16  invoice.

17  BY MR. ARDEN:

18      Q.   Uh-huh.

19      A.   I don't remember examples of who

20  they were for, et cetera, but it was

21  convenient for us because the DSI individuals

22  were frankly in the same building right

23  around the corner from where our financial

24  team was located.

25          And so, whenever something would

Page 58

1  come up in that particular instance it was

2  very easy to go to them and just say, "Hey,

3  you guys need to deal with this since we're

4  not sure how to do it on our end."  We were

5  directed not to pay those, so it was a matter

6  of how to deal.  And our answer was to give

7  it to the DSI people and let them work it

8  through with Avaya.

9      Q.   And did they ever report back to

10  you?

11     A.   I don't remember final resolutions

12  on any of those.

13     Q.   Did anyone at DSI say that they

14  thought it should be an assumed liability

15  even though it was not accrued or recorded on

16  the books of Quintus?

17     MS. LAWSON:  Objection:  Form.

18     THE WITNESS:  I don't remember.

19  BY MR. ARDEN:

20     Q.   What were the persons at DSI doing

21  onsite as you recall?

22     A.   Good question.  At times, we were

23  wondering that as well.

24         They -- they had ownership of all

25  the Quintus records prior to the acquisition.

1    And, you know, we ended up flooding their

2    office with boxes and boxes of records I

3    know.  I know part of their -- part of their

4    work was to monitor what was in our -- our

5    records because they were really in essence

6    commingled.

7        When we closed our books, like I

8    said, we had -- it was a Quintus operation

9    there.  And so, we had to go ahead and have a

10   balance sheet that broke out the real

11   Quintus -- what was still Quintus which in

12   essence DSI then was responsible for versus

13   what we had in our books being now Avaya.

14       And so, Rosie would work with the

15   DSI people so that they could -- I assume

16   they closed their books monthly as well, and

17   they had to go ahead and do balance sheets

18   and they had to go ahead and see, you know,

19   where they were at a point in time as far as,

20   you know, how much money was in the balance

21   sheet and had to report to the trustees or

22   whoever from a Quintus side.  But that was

23   something which myself I never got involved

24   in.  I never really, you know, worked with

25   them in detail with -- I do remember Rosie

Page 60

1    working with them probably more in detail

2    than anybody else on our team.

3        Q.    Uh-huh.  Did they ever share with

4    you any documents they had generated?

5        A.    I don't remember any off the top of

6    my head.

7        MR. ARDEN:  Let me use a version of a

8    document that doesn't have a stamp but there

9    is another version that has a stamp that I

10   could give you later.

11       MS. LAWSON:  Okay.

12       MR. ARDEN:  Let's please mark this as

13   Thompson Exhibit 10.

14            (Defendant's Exhibit No. 10

15            was marked for identification)

16   BY MR. ARDEN:

17       Q.    Mr. Thompson, if you could review

18   this document.  And when you do, I will ask

19   you to --

20       A.    Go ahead.

21       Q.    What is the document?

22       A.    It's a standard account

23   reconciliation for the trade accounts payable

24   account -- accounts.

25       Q.    Okay.  And what's being reconciled?

Page 61

1    A.    It looks like they're reconciling

2    the accounts payable aging report to the

3    general ledger accounts.

4    Q.    And there the two essentially

5    reconcile?

6    A.    Correct.

7    Q.    There is a variance of $225?

8    A.    Correct.

9    Q.    And that's not considered a material

10   variance?

11   A.    That's correct.

12   Q.    Why was this document prepared?

13   A.    This is -- it looks like just our

14   standard account reconciliations that are

15   done on a monthly basis.  And this was

16   prepared by the accounts payable clerk Cathy

17   Hawthorne who reported to Rosie Nguyen.  And

18   so, Rosie would be the manager and would

19   review this reconciliation.  I wouldn't

20   necessarily see it.

21   Q.    And this was done on a monthly basis

22   to make sure that the -- the aged payables

23   matched what was on the general ledger?

24   A.    Correct.  In this particular case,

25   yes.

Page 64

1    Q.   And there's a work number there.

2    A.   Yeah.

3    Q.   Do you know the 925 area code?

4    A.   He had an office there at the

5  Dublin, California office location.

6    Q.   And you worked in Dublin,

7  California?

8    A.   Yes.

9    Q.   And Rosie Nguyen worked in Dublin,

10  California?

11    A.   Yes.

12    Q.   That was the main office of Quintus?

13    A.   That was the main office just for a

14  few months.  The company was really in

15  Fremont up until December of 2000 and then

16  moved to Dublin, California.

17    Q.   As of -- at the time of the closing

18  of the purchase agreement, were all the books

19  and records of the company at Dublin?

20    A.   Yes.

21    Q.   And Mr. Michel had access to those

22  books and records of Quintus; right?

23    A.   He had access to everything, yes.

24       I smile only because he could barely

25  get into his office probably.  We -- we gave

Page 65

1    him all the records that we could.  We had

2    also sent records off to Avaya for I think

3    payroll and accounts payable related records

4    as well.  I don't remember in detail what

5    those were.

6            Rosie was responsible for sending

7    those off to Avaya.

8        Q.    But Mr. Michel received accounts

9    payable and other records?

10       A.    Yes.

11       Q.    Correct?

12       A.    Yes.

13       Q.    When you say that it was difficult

14   to get into his office because of all the

15   documents and records he had about Quintus,

16   were those documents financial and accounting

17   related?

18       A.    Primarily, yes.

19            I mean, they were -- a lot of them

20   were historical just Quintus activity that

21   Avaya would -- had not requested to receive.

22   So, you know, before we left, myself being

23   the last person, we boxed everything up that

24   we had in our files and frankly then gave

25   them to DSI and said, "Here they are.  I'm

Page 66

1    not sure who needs these."

2            Excuse me.

3        Q.    Did you hear from Scott Michel after

4    October 2001?

5        A.    I don't remember hearing from him.

6        Q.    Do you know if he received any of

7    the documents that would show how the

8    accounts payable that had been assumed by

9    Avaya had been paid down?

10        A.    I don't know specifically.    I

11    believe Rosie would.

12        Q.    Do you know what he did with the

13    documents he received?

14        A.    No.

15        Q.    Do you recall preparing schedules

16    with respect to the bankruptcy of Quintus?

17        A.    I remember some schedules for the

18    bankruptcy.    I just don't remember in detail

19    what in the heck they comprised of.    But I

20    remember some schedules.

21        Q.    Did you prepare them, or did someone

22    else prepare them?

23        A.    I just don't recollect off the top

24    of my head.

25        Q.    Do you know how those were prepared?

1    Q.   So, I might still have some

2    questions for you later.

3    MS. LAWSON:  I'd just like to see if we

4    can take maybe, like, a 5-minute break.

5    (Brief recess; 11:17 a.m. to 11:25 a.m.)

6    EXAMINATION

7    BY MS. LAWSON:

8    Q.   Okay.  While you were employed at

9    Avaya, what was your position or title there?

10   A.   I didn't really have a title.  I

11   think we were all just transitionary

12   employees.  There wasn't really a title that

13   I was aware of.

14   Q.   Okay.  Did your responsibilities

15   change at all from what they were at Quintus?

16   A.   I was still responsible for my

17   immediate team.  So, from that respect I

18   still had ownership of -- of managing my

19   group.  And that was -- that was really just

20   the -- you know, change I guess I would call

21   it.  I reported then to Shobhna at Avaya.

22   Q.   Okay.  So, that was -- did you

23   report to anyone else besides Shobhna or

24   just --

25   A.   I was -- formally, it was reporting

Page 100

1    just testified that should have been accrued

2    for but weren't accrued for?

3        MR. ARDEN:  Objection to form.

4        THE WITNESS:  In a normal accounting

5    environment, yes, we would have -- we should

6    have accrued if we had known it.  Did not

7    know it.  So, we didn't accrue it.  And as a

8    result of the acquisition, it needed to get

9    put into the assumed liabilities.

10   BY MS. LAWSON:

11       Q.  And the first instance when you

12   received those you referred those to DSI?

13       A.  That would be our normal course of

14   recourse would have been to take it over to

15   DSI because they frankly were right there in

16   our office.  So, it was easy to go ahead and

17   just say, "Here, guys," versus us trying to

18   figure out the Avaya system and who we needed

19   to go talk to on it.

20       Q.  Okay.  Earlier you testified that in

21   reference to -- there was a May 31st e-mail

22   from Janet Poriadjian?

23       A.  Uh-huh.

24       Q.  And I'll find the -- that was

25   Exhibit 9.  And she references in there the

Page 108

1    So, all the payroll records I believe all

2    definitely went back to Avaya.

3            The accounts payable records, I

4    remember Rosie worked with somebody back east

5    and as far as sending out all the accounts

6    payable records that we had I thought to a

7    point in time.  But I could be wrong.  I

8    don't know.  You'd have to talk to Rosie on

9    that one.

10           I do remember though that all the

11   records -- we had a bunch of records that

12   were still there onsite in the office that

13   basically we just boxed up and told DSI, "No

14   one wants them so we're leaving them here.

15   Whether or not someone from Avaya comes and

16   gets them or the DSI Quintus people need

17   them, they were there."

18       Q.    Was the Dublin office leased or --

19       A.    It was leased.

20       Q.    It was leased.

21       A.    It was leased.

22       Q.    Do you know if Avaya assumed that

23   lease?

24       A.    I assume so.  I mean, they would

25   have to since all the employees were kept on

Page 122

1      Q.    Okay.  Can a liability ever be

2   accrued but not recorded?

3      A.    Say again please.

4      Q.    Can a liability be accrued but not

5   recorded?

6      A.    No, I mean it's -- accrued?  Well, I

7   think it's the same.  My interpretation would

8   be if it's accrued --

9      Q.    Not under this agreement.

10      A.    Right.

11      Q.    Just from an accounting standpoint,

12   can there be an accrued liability that's not

13   recorded in the ledger?

14      A.    Not to my knowledge.

15      Q.    Okay.  For your accounts payable, do

16   you know what your payment schedule was, how

17   often would you pay out for your accounts

18   payable liability?  Weekly, monthly,

19   biweekly?

20      A.    I'd be guessing.  I think Rosie

21   probably would know the answer more so than I

22   would.

23           I would say we were doing it once to

24   twice a week.  It was pretty quick.  It was

25   pretty often.

Page. 146

1  documents?
2      A.  I remember signing the documents,
3  yeah.  It's just daunting when you get
4  something this large.
5      Q.  And did you at the time that you
6  signed these realize that you were signing --
7  that these were accurate under penalty of
8  perjury of fine and imprisonment?
9      A.  Yeah.  I remember reading what that
10  said, but it's what was in our numbers so
11  that's fine.
12      Q.  Okay.  And do you remember who
13  actually prepared these schedules physically?
14      A.  I do not remember who prepared
15  these.  I don't think we -- I can't remember
16  if our -- I don't think our group would have
17  done something like this, so....
18      Q.  Do you know who would have provided
19  the information to create these documents?
20      MR. ARDEN: Objection: Calls for
21  speculation.
22  BY MS. LAWSON:
23      Q.  Did you provide the information to
24  create these schedules?
25      A.  Personally, no.  It would be someone
TSG Reporting - Worldwide....212-702-9580

Page. 147

1  on my team would help with the sub schedules
2  to prepare this.
3      Q.  All right.  Can you turn in Tab 1 --
4      Well, let me ask you this question:
5  Would the information that's contained in
6  here be based on -- do you know whether it
7  would be based on Quintus' books and records?
8      MR. ARDEN: Objection: Foundation.
9      THE WITNESS: Yes, it would.
10  BY MS. LAWSON:
11      Q.  You mean you can't answer that.
12      A.  Oh, it means I can answer that.  It
13  should be.
14      Q.  Okay.  Can you -- it's hard to tell
15  you exactly where to turn, but if you flip
16  through and try to find Schedule E, it's
17  probably a little bit more than halfway
18  through the pack of 1?
19      A.  Schedule A.
20      Q.  Schedule E?
21      A.  Oh, E.  Is that machinery and
22  equipment?  That's B still.  F.  D.
23  Creditors Holding Unsecured Priority Claims.
24      Q.  Correct.
25      A.  Okay.
TSG Reporting - Worldwide....212-702-9580

Page. 148

1      Q.  And if you look, it says page 1 of
2  2, but it's basically Schedule E.
3      Can you look at that and the next
4  page and see -- tell me what types of
5  liabilities they look like, they appear to
6  be?
7      A.  These are -- appear to be sales and
8  use tax liabilities.  I think all of them
9  look that way.
10      Q.  And how do you know that?
11      A.  I know that because that's all that
12  we would have on our books would be sales and
13  use tax liabilities.  We wouldn't accrue for
14  anything else or have on our books anything
15  else.
16      Q.  Okay.  And if these were in your
17  books and records in your general ledger
18  somewhere, where would they be located?
19      A.  They're specifically spelled out.  I
20  think we've looked at those in another
21  schedule if I remember right.  They had all
22  those accounts.
23      I mentioned they were states pretty
24  much.  And so, they're distinctly in our
25  general ledger under separate GL account
TSG Reporting - Worldwide....212-702-9580

Page. 149

1  numbers.
2      Q.  Okay.  I believe the exhibit you
3  were referring to earlier -- I'm trying to
4  find that schedule.  It was probably a
5  different date than these.  I'll try and find
6  it.
7      A.  This document here is as of April
8  10th.
9      MR. ARDEN: Part of it, yes.
10      THE WITNESS: Part of it.
11      MR. ARDEN: Exhibit 4?
12      MS. LAWSON: No, I don't think that's it.
13      MR. ARDEN: Oh.
14      MS. LAWSON: I think it's Exhibit 10.
15      MR. ARDEN: The July exhibit.
16      MS. LAWSON: No, it's not 10.
17      Here it is.  I think it's Exhibit 5
18  maybe.
19      No, that's not it either.
20      Here we go.  Exhibit 6.
21      THE WITNESS: Yes.  Last page.
22  BY MS. LAWSON:
23      Q.  On page MT 00337.
24      A.  Correct.  Some of them tie though.
25      Q.  Okay.
TSG Reporting - Worldwide....212-702-9580

Page 201

1   this Exhibit 19 is dated from September 14th.

2   So, at this point based on prior testimony

3   the Quintus system would have been closed; is

4   that correct?

5       A.   That's correct.

6       Q.   So, any of these escheat liabilities

7   would have been handled through the Avaya

8   system; is that correct?

9       A.   That's correct.

10      MS. LAWSON:   I think I'm done, but I just

11  need to check one more thing and I should be

12  finished.

13          Okay.   I have no further questions.

14      MR. ARDEN:   I have no further questions.

15  You're a free man.

16          (At 3:31 p.m., the deposition

17          proceedings concluded)

18

19          MARK THOMPSON

21

22  State of California, County of Alameda
    Subscribed and sworn to (or affirmed) before me
23  on this 4 day of March, 2006.
    by Mark Thompson
24  personally known to me or proved to me on the
    basis of satisfactory evidence to be the person(s)
    who appeared before me.
25  Signature:

CRAIG NEIDLE
COMM. #1572373
Notary Public-California
SANTA CLARA COUNTY
My Comm. Exp. April 23, 2009

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


IN RE:

QUINTUS CORPORATION, et al.,

     Debtors.

_____

QUINTUS CORPORATION, MUSTANG.COM,
INC., and ACUITY CORPORATION,

     v.


AVAYA, INC.,

     Defendants.

_____/

BANKR. NO.
01-00501 (MFW)
through NO.
01-00503 (MFW)

COPY


DEPOSITION OF ROSIE NGUYEN

January 27, 2006



PATRICIA CALLAHAN & ASSOCIATES, INC.
Certified Shorthand Reporters
Oakland, California   (510) 835-3993
San Francisco, California (415) 788-3993
Castro Valley, California (510) 885-2371
Facsimile (510) 247-9775
WeReport@aol.com


Reported by:
WENDY C. BROWN
C.S.R. NO. 5697

B - 341

212

6

1       BE IT REMEMBERED THAT, pursuant to Subpoena,

2  and on Friday, January 27, 2006, commencing at the hour

3  of 9:17 o'clock a.m. of the said day, at the CROWN PLAZA

4  HOTEL, 1221 Chess Drive, Foster City, California, before

5  me, WENDY C. BROWN, a Certified Shorthand Reporter for

6  the State of California, personally appeared

7  ROSIE NGUYEN, a witness in the above-entitled court and

8  cause, produced on behalf of the plaintiffs, who, being

9  by me first duly sworn, was then and there examined and

10  interrogated by Attorney KIMBERLY E. CONNOLLY LAWSON,

11  representing the law offices of REED SMITH, 1201 Market

12  Street, Suite 1500, Wilmington, Delaware, counsel for

13  the plaintiffs.

14

15                    APPEARANCES OF COUNSEL

16

17   FOR THE PLAINTIFFS:

18

19        REED SMITH

20        BY:   KIMBERLY E. CONNOLLY LAWSON

21        1201 Market Street, Suite 1500

22        Wilmington, Delaware   19801

23

24

25

7

1   FOR THE DEFENDANT:

2

3          SIDLEY AUSTIN

4          BY:   JAMES D. ARDEN, ESQ.

5          787 Seventh Avenue

6          New York, New York   10019

7

8          The following proceedings were thereupon had,

9   and the following testimony was thereupon given, to-wit:

10

11                      ---oOo---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

10

1  schools?

2  A.    Um, no.

3  Q.    Where are you currently employed?

4  A.    At Cisco Systems, Incorporated.

5  Q.    Okay.  Were you ever employed by Quintus

6  Corporation, Mustang.com or Acuity Corporation?

7. A.    Yes, by Quintus.

8  Q.    And when was that?

9  A.    That was from 1997 through 2000, when Quintus

10  was purchased by Avaya.

11  Q.    Did you say 2000?

12  A.    I believe it was the year 2000 that the

13  acquisition happened.

14  Q.    If I told you it happened in 2001 --

15  A.    Oh, sorry.

16  Q.    -- would you believe me?

17  A.    Yes.  It's been a while.

18  Q.    So do you know approximately how long you were

19  there after the acquisition, like, by months or --

20  A.    I left the ac -- I left Avaya -- September the

21  10th was my last day.

22  Q.    Okay.  And what was your position at Quintus?

23  A.    I was the accounting manager.

24  Q.    Okay.  And what were your responsibilities as

25  accounting manager?

11

1  A.      Basically, I was responsible for accounts

2  payable, um, accounts receivable, payroll and GL.

3  Q.      And when you say --

4  A.      And fixed assets.

5  Q.      When you say "GL," what does that mean?

6  A.      General ledger, sorry.

7  Q.      Okay.  So based on your previous testimony, were

8  you actually employed at Quintus at the time of the

9  acquisition by Avaya?

10  A.      Yes.

11  Q.      Okay.

12      MR. ARDEN:      And I object to the

13  characterization of acquisition.  Of course, I

14  understand you mean acquisition of certain assets.

15      MS. LAWSON:      Yeah.  I'll rephrase to be

16  clear.

17  Q.      Were you employed at Quintus at the time when

18  Avaya purchased certain assets and liabilities from

19  Quintus?

20  A.      Yes.

21  Q.      Were you employed then by Avaya at any time?

22  A.      Yes.

23  Q.      And you said you were there till September?

24  A.      Correct.

25  Q.      Okay.  Do you recall the day of April 11th as

13

1  what you do -- if you had not been purchased by Avaya,

2  you wouldn't have to do all that.  And what gets booked

3  over to Avaya was, um, given guidance by the accounting

4  team from the Avaya side.  Okay.

5  Q.      And who did you report to at Avaya?

6  A.      Um, I reported to Shobhna -- and I have no idea

7  what her last name is; she was the CFO at the time --

8  but I interfaced with Kelly Wall.

9  Q.      Okay.

10  A.      Okay.

11  Q.      And did you still report to anyone on what I'll

12  call the Quintus side?

13  A.      So -- from -- from an actual reporting

14  structure, no.

15  Q.      Okay.

16  A.      But we all -- you know, we're the same team, so

17  we all rolled up to Mark Thompson, who was the --

18  Q.      Okay.

19  A.      -- controller then.

20  Q.      Okay.  And were you involved at all in the

21  payment of assumed liabilities on the Avaya side, once

22  you transitioned over?

23  A.      Yes.

24  Q.      Okay.  And for that, that's when you reported to

25  Shobhna and you worked with Kelly Wall; is that correct?

PATRICIA CALLAHAN & ASSOCIATES

B - 345

217

24

1   A.      Correct.

2   Q.      Okay.  If you look back in that first paragraph

3   on the Bates stamp page 529, there's references to

4   "accrued" and "recorded."  Is there a difference between

5   an accrued liability and a recorded liability?

6   A.      No.  If it was accrued, then it is recorded.

7   And the only way that anything that is on the balance

8   sheet is recorded is that it could have been accrued --

9   it was accrued.

10  Q.      Okay.

11  A.      Okay.  Actually, I change that.  So on the

12  balance sheet, when it's recorded, it could be accrued

13  or, for example, paid, right, um, but not the other way

14  around.

15          MR. ARDEN:          Is it that accrued is a

16  subset of recorded, but recorded could include things

17  other than accrued?

18          THE WITNESS:          Correct.

19          MS. LAWSON:          Q.  Could there -- based on

20  what you're just saying, could there be a liability that

21  was accrued but had not been put into the general ledger

22  yet?

23  A.      No.

24  Q.      Are you aware whether all of the liabilities

25  that were assumed by Avaya that fell within the scope of

29

1  conversation with an Avaya employee about the books and

2  records and the archival of those records?

3  A.      Yes.

4  Q.      Was the conversation about the hard copy or the

5  electronic copy?

6  A.      The electronic piece.  The accounting system, in

7  fact.

8  Q.      And what was that conversation?

9  A.      Um, so, I still had relationships with various

10  people, Quintus people who are now Avaya employees, and

11  I was told that the accounting server was reformatted,

12  because they needed the server.

13  Q.      And do you know what reformatting is or what it

14  would do to the accounting system?

15  A.      Basically, it wipes out the entire accounting

16  system and all the data on there.  And, you know, once

17  you format a drive, it basically wipes it clean, as if

18  it's a brand new server.

19  Q.      Okay.  And the exhibit that's in front of you,

20  Exhibit 2, can you turn to page 30 of the asset purchase

21  agreement, which, at the bottom, is 000503.

22  A.      (Witness complies.)

23  Q.      And if you look down the page, there's Section

24  5.05, "Books and Records."  Can you read paragraph (a)

25  for me, please?

1   Payables By: Branch Code/Vendor Code, Quintus

2   Corporation, Summary Style, As Of 4/20/2001."

3           Do you recognize this document?

4   A.      Yes.   It's the accounts payable aging.

5   Q.      And what types of entries would be shown here in

6   this document?

7   A.      So, anything that was vouchered into the

8   accounts payable ledger that did not get paid shows up

9   on here.   And it shows you how many days that it's been

10  sitting there, approximately, if you read across from,

11  um, the aging report.   And it gives you -- the balance

12  gives you the total amount of accounts payable trade

13  liabilities at the time that the report is ran.

14          So this report says, "As of 4/20/2001."   This is

15  what was sitting in the Quintus trade payables as of

16  4/20/2001.

17  Q.      And do you know whether this would be a list

18  of -- of liabilities that were assumed by Avaya?

19          MR. ARDEN:          Objection as to form.

20          THE WITNESS:        This account is one that

21  sits on the balance sheet.   It ties directly to the

22  balance sheet and reconciles to the balance sheet, so

23  the assumption is, yes.

24          MS. LAWSON:         Q.  Okay.  So is it fair to

25  say that the liabilities that are listed in here

62

## CERTIFICATE

1

2

3      I, the undersigned, a Certified Shorthand

4  Reporter, hereby certify that the witness in the

5  foregoing deposition was first duly sworn to testify to

6  the truth, the whole truth, and nothing but the truth in

7  the within-entitled cause; that said deposition was

8  taken at the time and place therein stated; that the

9  testimony of said witness was reported by me, a

10  disinterested person, and was thereafter transcribed

11  under my direction into typewriting; that the foregoing

12  is a full, complete and true record of said testimony;

13  and that the witness was given an opportunity to read

14  and, if necessary, correct said deposition and to

15  subscribe to the same.

16      I further certify that I am not of counsel or

17  attorney for either or any of the parties in the

18  foregoing deposition and caption named, nor in any way

19  interested in the outcome of the cause named in said

20  caption.  Executed this 27th day of January, 2006.

21

22

23

24                      CERTIFIED SHORTHAND REPORTER
                        NO. 5697

25

PATRICIA CALLAHAN & ASSOCIATES

B - 350

221

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on April 9, 2007, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF which will send notification of such filing to

all registered participants.  I further certify that I caused a copy of the foregoing document to be

served upon the following persons in the manner indicated:

**First Class Mail**
(Official Committee of Unsecured Creditors)
Christopher A. Ward, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899-5130

**First Class Mail**
Richard Schepacarter, Esquire
Office of the U.S. Trustee
844 King Street, Room 2311
Wilmington, DE 19801

**First Class Mail**
(Official Committee of Equity Security
  Holders)
J. Mark Chevallier, Esquire
McGuire, Craddock & Strother, P.C.
Lincoln Plaza, Suite 3550
500 North Akard
Dallas, TX 75201

**First Class Mail**
Michael S. Etkin, Esquire
Ira M. Levee, Esquire
Lowenstein Sandler PC
65 Livington Avenue
Roseland, NJ 07068

**First Class Mail**
(Official Committee of Equity Security
  Holders)
Thomas E. Biron, Esquire
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103

**First Class Mail**
(Official Committee of Equity Security
  Holders)
Bonnie Glantz Fatell, Esquire
Blank Rome LLP
1201 Market Street #800
Wilmington, DE 19801-4226

**Hand Delivery**
Kimberly E.C. Lawson, Esquire
Reed Smith LLP
1201 Market Street #1500
Wilmington, DE 19801-1163

_/s/ Jeffrey S. Goddess_
Jeffrey S. Goddess (Del. Bar No. 630)
Jessica Zeldin (Del. Bar No. 3558)
jgoddess@rmgglaw.com
jzeldin@rmgglaw.com
(302) 656-4433