## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| QUINTUS CORPORATION, *et al.*,[1] | : | Case No. 01-00501 (MFW) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| ──────────────────── | : | |
| | : | |
| AVAYA, INC. | : | |
| | : | C.A. No. 06-769 (SLR) |
| Appellant/Defendant, | : | |
| | : | |
| v. | : | Adv. Proc. No. 04-53074 (MFW) |
| | : | |
| KURT F. GWYNNE, CHAPTER 11 | : | |
| TRUSTEE, | : | |
| | : | |
| Appellee/Plaintiff. | : | |
| ──────────────────── | : | |

## ANSWERING BRIEF OF THE CHAPTER 11 TRUSTEE IN OPPOSITION TO AVAYA'S APPEAL FROM AN ORDER OF THE BANKRUPTCY COURT

Dated:  May 9, 2007
      Wilmington, Delaware

Kimberly E.C. Lawson (No. 3966)
J. Cory Falgowski (No. 4546)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

Attorneys for Kurt F. Gwynne,
Chapter 11 Trustee

---

[1]    The Debtors are the following entities:  Quintus Corporation, Mustang.com, Inc., and Acuity Corp.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 2

COUNTER-STATEMENT OF FACTS ........................................................................ 3

JURISDICTION AND STANDARD OF REVIEW ................................................... 8

        A.  Standard of Review for Summary Judgment ................................................... 8

        B.  Standard of Review for Rule 37 Sanctions for Spoliation ............................... 9

ARGUMENT ...................................................................................................................... 10

   I.     The Bankruptcy Court Properly Granted Summary Judgment
        to the Trustee for the Breach of Contract Claim .............................................. 10

        A.  The Bankruptcy Court Properly Interpreted the APA .................................... 11

        B.  The Bankruptcy Court Properly Concluded that Vendor
            Invoices and Files Were Part of the Debtors' Books and
            Records ........................................................................................................ 14

        C.  The Bankruptcy Court's Holding that the Final Schedule Was
            Not a Conclusive List of the Liabilities Assumed by Avaya Was
            Not Clearly Erroneous .................................................................................. 15

        D.  The Bankruptcy Court's Holding that the Debtors' Bankruptcy Schedules
            Reflect Liabilities on the Debtors' Books and Records
            Was Proper ................................................................................................... 18

  II.    The Bankruptcy Court's Entry of Judgment Against Avaya as a
        Sanction for Avaya's Intentional Spoliation of Evidence was not
        an Abuse of Discretion ..................................................................................... 20

        A. The Bankruptcy Court's Finding that Avaya Destroyed
            Documents And Failed to Produce Archived Hard Copies
            of the Debtors Books and Records When it Should Have
            Reasonably Anticipated Litigation Over the Payment of
            Assumed Liabilities was not Clearly Erroneous ........................................... 26

B.  The Bankruptcy Court Did Not Abuse its Discretion When it
Found that Avaya Intentionally Destroyed Evidence ...................................... 29

C.  The Bankruptcy Court's Holding that the Trustee is Prejudiced by
Avaya's Destruction of, and Failure to Produce, the Debtors' Books
and Records is Not an Abuse of the Bankruptcy Court's Discretion ............. 34

D.  The Bankruptcy Court's Award of $1,888,410.52 Was Appropriate
and Not an Abuse of the Bankruptcy Court's Discretionary Powers
Under Rule 37 .............................................................................................. 38

CONCLUSION ............................................................................................................... 39

## TABLE OF AUTHORITIES

Page

**Cases**

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.,*
   197 F.3d 76 (3d Cir.1999) .................................................................... 8

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................. 8, 9

*Aon Risk Servs., Inc. of Illinois v. Shetzer,*
   2002 WL 1989466, at *6 (N.D.Ill. Aug. 27, 2002) ........................................ 25

*Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.,*
   247 F.3d 79 (3d Cir. 2001) .................................................................. 11

*Brewer v. Quaker State Oil Refining Corp.,*
   72 F.3d 326 (3d Cir. 1995) .................................................................. 30

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 265 (1986) ....................................... 9

*Chambers v. NASCO, Inc.,*
   501 U.S. 32, 111 S.Ct. 2123, 2134 .......................................................... 20

*Citadel Holding Corp. v. Roven,*
   603 A.2d 818 (Del. 1992) .................................................................... 11

*City Investing Co. Liquidating Trust v. Cont'l Cas. Co.,*
   624 A.2d 1191 (Del. 1993) ................................................................... 11

*Computer Assocs. Int'l, Inc. v. American Fundware, Inc.,*
   133 F.R.D. 166 (D.Colo. 1990) .......................................................... 21, 37

*E.I. Dupont de Nemours & Co. v. Allstate Ins. Co.,*
   693 A.2d 1059 (Del. 1997) ................................................................... 11

*Finley v. Marathon Oil Co.,*
   75 F.3d 1225 (7th Cir. 1996) ................................................................ 25

*Fireman's Ins. Co. of Newark, N.J. v. DuFresne,*
   676 F.2d 965 (3d Cir. 1982) .................................................................. 9

*Fletcher v. District of Columbia,*
   2005 WL 670676, at *7 (D.C. Cir. March 22, 2005) ....................................... 26

*Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*,
    341 F.3d 1292 (11th Cir. 2003) ...................................................................... 26

*Hickman v. Carnival Corp.*,
    2005 WL 3675961, at *2 (S.D.Fla. July 11, 2005) ........................................ 26

*Holmes v. Amerex Rent-A-Car*,
    180 F.3d 294 (D.C. Cir. 1999) ...................................................................... 26

*Howell v. Maytag*,
    168 F.R.D. 502 (M.D.Pa. 1996) .................................................................... 27

*Huang v. BP Amoco Corp.*,
    271 F.3d 560 (3rd Cir. 2001) ......................................................................... 9

*In re CM Holdings, Inc.*,
    254 B.R. 578 (D.Del. 2000) ......................................................................... 36

*Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*,
    145 F.3d 124 (3d Cir. 1998) ......................................................................... 10

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ......................................................................... 20

*Lumbermens Mut. Cas. Co. v. Able Telecomm. & Power, Inc.*,
    2006 WL 229212, at *3 (N.D.Ga. Jan. 31, 2006) ........................................ 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................... 9

*McClure v. Vice President, Human Resources, Union Carbide Corp.*,
    2005 WL 1214645, at *7 (S.D.Tex. May 20, 2005) ...................................... 25

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
    945 F.2d 635 (3d Cir.1991) ........................................................................... 8

*Mindek v. Rigatti*,
    964 F.2d 1369 (3d Cir. 1992) ....................................................................... 10

*Olympic Junior, Inc. v. David Crystal, Inc.*,
    463 F.2d 1141 (3d Cir. 1972) ......................................................................... 9

*Poulis v. State Farm Fire & Casualty Co.*,
    747 F.2d 863 (3d Cir. 1984) ........................................................................... 9

*Rabello v. Bell Helicopter Textron, Inc.*,
    200 F.R.D. 484 (S.D.Fla. 2001) ............................................................... 25

*Raleigh v. Illinois Dept. of Revenue*,
    530 U.S. 15 (2000) .................................................................................... 36

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists, Inc.*,
    616 A.2d 1192 (Del. 1992) .................................................................. 11, 12

*Roadway Express, Inv. v. Piper*,
    447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed. 2d 488 (1980) ........................... 21

*Schmid v. Milwaukee Elec. Tool Corp.*,
    13 F.3d 76 (3d. Cir. 1994) .................................................................. 21, 22

*Shamis v. Ambassador Factors Corp.*,
    34 F.Supp.2d 879 (S.D.N.Y. 1999) ..................................................... 21, 27

*Shepherd v. ABC*,
    62 F.3d 1469 (D.C.Cir. 1995) .................................................................. 39

*Silvestri v. General Motors Corp.*,
    271 F.3d 583 (4th Cir. 2001) .............................................................. 20, 21

*Smith v. Shipping Utilities, Inc.*,
    2005 WL 3133494, at *2 (S.D.Ill. Nov. 23, 2005) .................................. 26

*Tripoli Co., Inc. v. Wella Corp.*,
    425 F.2d 932 (3d Cir. 1970) ....................................................................... 9

*Turner v. Hudson Transit Lines, Inc.*,
    142 F.R.D. 68 (S.D.N.Y 1991) ................................................................. 21

*Universal Minerals, Inc. v. C.A. Hughes & Co.*,
    669 F.2d 98 (3d Cir.1981) ........................................................................... 8

*Urban v. U.S.,*
    392 F.Supp.2d 1018 (N.D.Ill. 2005) ................................................................. 26

*Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,*
    593 F.Supp. 1443 (C.D. Cal. 1984) ................................................................. 21

## Statutes

11 U.S.C. § 101 ........................................................................................................ 3

11 U.S.C. § 502 ...................................................................................................... 36

11 U.S.C. § 521 ...................................................................................................... 18

18 U.S.C. § 152 ...................................................................................................... 18

28 U.S.C. § 158 ........................................................................................................ 8

28 U.S.C. § 1746 .................................................................................................... 18

28 U.S.C. § 3571 .................................................................................................... 18

## Other Authorities

MOORE'S FEDERAL PRACTICE, 3d § 37 ........................................................... 21, 39

## Rules

Fed.R.Civ.P. 26(a) ................................................................................................. 25

Fed.R.Civ.P. 37 ............................................................................................. 9, 20, 25

Fed.R.Civ.P. 56 ................................................................................................... 8, 9

Fed.R.Bankr.P. 1007 ............................................................................................. 18

Fed.R.Bankr.P. 1008 ............................................................................................. 18

Fed.R.Bankr.P. 7056 ............................................................................................... 8

## NATURE AND STAGE OF PROCEEDINGS

On March 18, 2004, Kurt F. Gwynne, the Chapter 11 Trustee (the "Trustee") instituted the above-captioned adversary proceeding against Avaya alleging breach of contract, and alternatively, asserting a claim for unjust enrichment. (*See In re: Quintus Corporation, et al.,* Case No. 01-00501 (MFW) Bankr. D.I. 953[2], *Quintus Corporation, et al. v. Avaya, Inc.,* Adversary Proceeding Number 04-53074 (MFW) Adv. D.I. 1[3]). Avaya filed its Answer and Defenses (Adv. D.I. 5) and a Motion to Dismiss the Complaint (Adv. D.I. 6) on April 19, 2004.

On March 17, 2006, Avaya filed the Motion of Defendant Avaya, Inc., for Partial Summary Judgment (Adv. D.I. 87), Avaya Inc.'s Rule 7056-1 Statement of Undisputed Facts (Adv. D.I. 88), Opening Brief of Defendant Avaya, Inc. in Support of Its Motion for Partial Summary Judgment (Adv. D.I. 89) and Appendix (Adv. D.I. 90). Also on March 17, 2006, the Trustee filed the Chapter 11 Trustee's Motion for Sanctions for Spoliation of Evidence (Adv. D.I. 91), Opening Brief in Support of Chapter 11 Trustee's Motion for Sanctions and Spoliation of Evidence (Adv. D.I. 92), Chapter 11 Trustee's Motion for Partial Summary Judgment (Adv. D.I. 93), and Opening Brief in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment (Adv. D.I. 94). On May 9, 2006, Avaya filed Avaya, Inc.'s Motion for Leave to File Sur-Reply in Response to Certain New Matters First Appearing in the Reply Brief of the Chapter 11 Trustee on his Motion for Sanctions for Spoliation (Adv. D.I. 113). On May 10, 2006, Avaya filed Avaya, Inc.'s Amended Motion for Leave to File Sur-Reply in Response to Certain New Matters First Appearing in the Reply Brief of the Chapter 11 Trustee on his Motion for Sanctions

---

[2]  References to docket items in *In re: Quintus Corporation, et al.,* Case No. 01-00501 (MFW) shall be hereinafter referred to as "Bankr. D.I."

[3]  References to docket items in *Quintus Corporation, et al. v. Avaya, Inc.,* Adversary Proceeding No. 04-53074 (MFW) shall be hereinafter referred to as "Adv. D.I."

for Spoliation (Adv. D.I. 114). On May 22, 2006, the Trustee filed the Motion of Chapter 11 Trustee for Leave to File Supplement Relating to Opening and Reply Briefs in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment (Adv. D.I. 116).

On October 30, 2006, the Bankruptcy Court issued it Opinion Granting in Part Motions of the Trustee and Granting in Part Avaya's Motion for Partial Summary Judgment and Entering Judgment in favor of Plaintiffs (Adv. D.I. 120) and Order Granting in Part Motions of the Trustee and Granting in Part Avaya's Motion for Partial Summary Judgment and Entering Judgment in favor of Plaintiffs (Adv. D.I. 121). In the Order, the Bankruptcy Court awarded judgment to the Trustee in the amount of $1,888,410.52.

Avaya filed a Notice of Appeal on November 8, 2006. (Adv. D.I. 123). On December 14, 2006, the Bankruptcy Court entered the Order for Stay of Execution (Adv. D.I. 131). On December 15, 2006, Avaya filed a supersedeas bond. (Adv. D.I. 132).

## SUMMARY OF ARGUMENT

1.    The Bankruptcy Court held that Avaya assumed the obligations that were reflected in the Debtors' books and records including those liabilities that were listed in the Debtors' bankruptcy schedules and in the Debtors' vendor files. In reaching this decision, the Bankruptcy Court held that the Final Schedule was not a conclusive list, but only provided an estimate of broad categories of the types of liabilities assumed by Avaya. Based upon these holdings, the Bankruptcy Court awarded judgment to the Trustee in the amount of $752,696.76. Avaya has failed to demonstrate that there is any material issue of fact in dispute relative to the Bankruptcy Court's granting of summary judgment in favor of the Trustee. In addition, the holdings of the Bankruptcy Court were consistent with the evidence presented by the parties. Therefore, this Court should affirm the Bankruptcy Court granting of judgment in favor of the

- 2 -

Trustee.

2.      The Bankruptcy Court found that all of the Debtors' books and records were

relevant and integral to the determination of what liabilities were assumed under the APA,

including the sub-ledgers of the Debtors' accounting system, invoices and vendor files.  In

addition, the Bankruptcy Court held that Avaya's intentional destruction of the electronic version

of the Debtors' books and records and failure to produce the archived books and records of the

Debtors' prejudiced the Trustee.  This was particularly problematic to the Bankruptcy Court in

light of Avaya's obligation under the APA to preserve the Debtors books and records for a

period of seven (7) years after the Closing.  The Bankruptcy Court held that litigation over

Avaya's failure to fulfill its obligations under the APA was foreseeable.  Finally, after

considering the available sanctions for Avaya's misconduct, the Bankruptcy Court held that the

proper sanction under the circumstances was judgment in favor of the Trustee in the amount of

$1,888,410.52.  The sanction was clearly within the discretion of the Bankruptcy Court.  And,

based upon the uncontroverted evidence, the Bankruptcy Court's exercise of its discretion was

not abusive.

## COUNTER-STATEMENT OF FACTS

On February 22, 2001, Quintus Corporation, Mustang.com, Inc., and Acuity Corp. (the

"Debtors" or "Plaintiffs") separately filed voluntary petitions for relief under Chapter 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  On that same day, the

Debtors executed an Asset Purchase Agreement dated February 22, 2001 (the "APA") with

Avaya, Inc. ("Avaya") for the sale of substantially all of the Debtors' assets.  In exchange for the

Debtors' assets, Avaya agreed to pay $30 million in cash and assume certain of the Debtors'

liabilities not to exceed $30 million.  By Order entered on April 6, 2001, the Bankruptcy Court

approved the sale (the "Sale") to Avaya. (*See* Bankr. D.I. 157). The Debtors and Avaya closed the Sale on April 11, 2001 (the "Closing" or "Closing Date").

Prior to the commencement of these cases, the Debtors maintained, in the ordinary course of business, books and records that reflected, among other things, the amounts owed to their creditors. Pursuant to Section 1.01(a)(ii) of the APA and the Sale Order, on the Closing date, the Debtors transferred all computers and servers to Avaya. (App. 8[4]). In addition, pursuant to Section 1.01(a)(viii) of the APA and the Sale Order, the Debtors transferred "all books, records, files, and papers, whether in hard copy or computer format[,]" including the accounting system, to Avaya on the Closing date. (App. 8; *See also* Sherbet II Trans. at 73 (App. B-12[5]); Maloney Trans. at 66 (App. B-21)). Pursuant to Section 5.05(a) of the APA, Avaya was contractually obligated "to make copies of all business records and files being transferred to [Avaya] pursuant to [the APA] and to retain such copies for seven years after the Closing." (App. 36). Accordingly, Avaya was required to make and maintain a copy of the books and records, including the accounting system (the "General Ledger"), for seven years after the Closing. This time period has not yet expired.

On June 5, 2001, the Court entered an Order Fixing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice of Bar Dates (Bankr. D.I. 272) establishing August 15, 2001 (the "Bar Date") as the final date for the filing of proofs of claim against the Debtors.

After the Closing, Rosie Nguyen, a pre-Closing employee of the Debtors that worked as a transitional employee for Avaya, archived the electronic and hard copies of the Debtors books

---

[4]    References herein to "App _" refer to the Appendix to Opening Brief of Defendant Avaya in Support of its Appeal From an Order of the Bankruptcy Court.

[5]    References to "App. B_" shall refer to the Appendix to Answering Brief of the Chapter 11 Trustee in Opposition to Avaya's Appeal From an Order of the Bankruptcy Court.

and records, including the General Ledger. (Nguyen Trans. at 27-28 (App. B-47)). Sometime in 2001, only several months after the Sale closed, an employee of Avaya destroyed the electronic copy of the General Ledger by reformatting the accounting server. (Nguyen Trans. at 29 (App. B-48)).

On January 30, 2002, Kurt F. Gwynne (the "Trustee") was appointed as the chapter 11 trustee in the jointly administered cases of the Debtors.

As early as May 2002, the Trustee attempted to informally obtain evidence from Avaya relative to the liabilities assumed under the APA. In 2002, the Trustee provided to Avaya a copy of the Claims in Dispute summary dated May 16, 2002 (the "Claims Register"), which was prepared, maintained and provided by Donlin Recano & Company, Inc., the official claims agent for the Bankruptcy Court. (Adv. D.I. 105 at Exhibit A). At that time, the Trustee requested that Avaya provide information regarding the payment or non-payment of the assumed liabilities. When those efforts failed, the Trustee filed the Motion of Chapter 11 Trustee and the Official Committee of Equity Security Holders for an Order, Pursuant to Fed.R.Bankr.P. 2004 and Del.Bankr.LR. 2004-1, (I) Authorizing Examination of Avaya, Inc. and (II) Compelling Production of Documents (the "Rule 2004 Motion") (Bankr. D.I. 865).

On January 30, 2004, the Trustee conducted a Rule 2004 examination of Avaya in which the Trustee sought documents from Avaya and deposed Eric Sherbet as part of that examination. More specifically, the Trustee sought through the Rule 2004 Motion to examine documents of Avaya covering, *inter alia,* the following subjects: (i) Avaya's payment and non-payment of Assumed Liabilities; (ii) Avaya's payment and non-payment of taxes under the APA; (iii) all background documents relating to the amounts set forth in the document which bears the heading "Quintus Corporation Schedule of Assumed Liabilities – FINAL"; and (v) all background

documents relating to the amounts set forth in the Company Financial Statement and / or Company Disclosure Documents.

To resolve the Rule 2004 Motion, the Trustee, the Official Committee of Equity Security Holders (the "Equity Committee") and Avaya entered into a certain letter agreement dated September 22, 2003 (the "Letter Agreement") whereby Avaya promised to produce documents to the Trustee not later than October 24, 2003, including, but not limited to the following: (1) documents indicating which obligations of Quintus were paid by Avaya as "Assumed Liabilities" as defined in the APA; (2) documents indicating which taxes incurred by Quintus have been paid by Avaya under the APA; and (3) documents indicating which particular obligations (including claimant and amount) comprise the amount set forth in the "estimate of Assumed Liabilities as of the closing date" required by Section 1.03 of the APA.  (App. B-1). Avaya admitted that it agreed to produce documents "which it in fact had" as opposed to documents that "did not then exist." (*See* Adv. D.I. 114 at p. 6, n.5).

As previously indicated, the Trustee commenced the action that is the subject of this appeal on March 18, 2004.  On May 20, 2004, the Trustee served the Chapter 11 Trustee's First Set of Interrogatories, Requests for Production, and Requests for Admission Directed to Defendant Avaya, Inc. on Avaya (Adv. D.I. 13).  On June 22, 2004, Avaya served Avaya, Inc.'s Responses and Objections to the Chapter 11 Trustee's First Requests for the Production of Documents, First Request for Admissions, and First Set of Interrogatories (Adv. D.I. 15).  In response to the document requests, Avaya produced approximately 1,500 pages of documents.

On December 23, 2004, the Trustee filed his Motion to Compel Discovery Directed to Defendant Avaya, Inc. (Adv. D.I. 18) and his Brief in Support of Chapter 11 Trustees' Motion to Compel Discovery Directed to Defendant Avaya, Inc. (Adv. D.I. 19).   After hearing oral

argument, the Court entered the Order Granting in Part Motion to Compel Discovery Directed to Defendant Avaya, Inc. and Avaya's Cross-Motion to Compel Discovery Directed to the Trustee on October 18, 2005 (Adv. D.I. 45). The deadline for completion of fact discovery was October 31, 2005 (Adv. D.I. 35), except for depositions, which were to be completed by December 30, 2005 (Adv. D.I. 75).

Despite requests by the Trustee to produce copies of cancelled checks and other evidence of payment of assumed liabilities, Avaya failed to produce such evidence. Since substantially all of the assets of the Debtors were transferred to Avaya at the Closing, Avaya had possession, custody and control of the evidence requested by the Trustee. However, Avaya failed to produce such evidence. As a result of Avaya's failure to produce evidence of payment of the assumed liabilities, the Trustee was forced to issue a subpoena on April 8, 2005 to Bank of America Corporation requesting all documents, including, but not limited to account statements, cancelled checks, and wire confirmations, relating to the account number provided by Avaya as being the account number for the account used to pay obligations under the APA. Bank of America produced copies of thousands of checks and many bank statements in May 2005.

Then, *after* the close of fact discovery and *after* all of depositions had concluded, Avaya produced approximately 2,800 pages of additional documents under cover letter dated February 8, 2006. (App. B-4). *None* of these documents were produced in connection with the Rule 2004 examination, Avaya's responses to the Trustee's document requests, or in response to the Bankruptcy Court's order compelling Avaya to produce such document.

As of the date of this Brief, Avaya has not produced a hard or electronic copy of any portion of the General Ledger, except for a printout of what is entitled "Aged Payables By: Branch Code/Vendor Code" as of April 20, 2001 (the "Aged Payables Ledger"). In addition,

Avaya has not produced archived copies of any of the invoices or other records relative to assumed liabilities that remain unpaid.

## JURISDICTION AND STANDARD OF REVIEW

Appellate jurisdiction from the Bankruptcy Court resides with this Court pursuant to 28 U.S.C. § 158(a). On appeal, this Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to the Bankruptcy Court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir.1999). When addressing mixed questions of law and fact, this Court must accept the Bankruptcy Court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.' " *Mellon Bank, N.A. v. Metro Commc'ns, Inc.,* 945 F.2d 635, 642 (3d Cir.1991) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101-02 (3d Cir.1981))

### A. Standard of Review for Summary Judgment

The legal standard for summary judgment is well established. Rule 56(c), as incorporated by Fed.R.Bankr.P. 7056, states:

> [Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Issues of material fact are those "that might affect the outcome

of the suit under governing law." *Id.* at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Huang v. BP Amoco Corp.,* 271 F.3d 560 (3rd Cir. 2001) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed. 265 (1986)). Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e). *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions"); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141 (3d Cir. 1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment"); *Tripoli Co., Inc. v. Wella Corp.,* 425 F.2d 932, 935 (3d Cir. 1970) (holding that to defeat summary judgment motion, "a party must now come forward with affidavits setting forth specific facts showing that there is a genuine issue for trial").

**B. Standard of Review for Rule 37 Sanctions for Spoliation**

This Court reviews the decision of the Bankruptcy Court to sanction Avaya pursuant to Rule 37, made applicable to adversary proceedings by Bankruptcy Rule 7037, under an abuse of discretion standard. *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 868 (3d Cir.

1984); *Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 145 F.3d 124, 130 (3d Cir. 1998). Substantial deference is given to the Bankruptcy Court's decision. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

## ARGUMENT

I.     **The Bankruptcy Court Properly Granted Summary Judgment to the Trustee for the Breach of Contract Claim**

The Trustee sought summary judgment against Avaya in the amount of $1,888,410.52 for unpaid claims that were allegedly assumed by Avaya pursuant to the APA. The Trustee asserted that pursuant to Schedule 1.03 of the APA, Avaya assumed all liabilities that arose after December 31, 2000, including the claims listed on the Debtors' bankruptcy schedules and on proofs of claim filed by creditors in the bankruptcy cases. Avaya argued that Schedule 1.03 could not be read that broadly and that the only liabilities that it assumed were those that were reflected in the Debtors' books and records as of the Closing Date. The dispute required an interpretation of Schedule 1.03 of the APA, which provides in pertinent part:

> All liabilities listed on the Company Balance Sheet (exclusive of the liability listed thereon that is an Excluded Liability pursuant to Section 10.04(v)) and *all liabilities accrued or recorded after the Balance Sheet Date [December 31, 2000] in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing Date [April 11, 2001]*, provided that the aggregate amount of liabilities assumed pursuant to this paragraph shall not exceed $30,000,000 ....

(App. 62).

The Trustee argued that under the plain language of Schedule 1.03, Avaya was liable for any and all liabilities incurred by the Debtors after the Balance Sheet Date (December 31, 2000) that were not paid prior to the Closing Date (April 11, 2001). Specifically, the Trustee argued that "accrued" and "incurred" were interchangeable. In contrast, Avaya argued that "accrued" meant that a liability had to have been recorded on the Debtors' books and records and that the

only liabilities it assumed were those reflected on the Final Schedule submitted to Avaya at the Closing. The Bankruptcy Court was unable to determine from a plain reading of Schedule 1.03 whether the Trustee's or Avaya's interpretation of the APA was correct. (Opinion[6] at 17). Therefore, in accordance with applicable law, the Bankruptcy Court looked to other evidence to determine the intent of the parties to the APA. (Id.). After considering all the evidence presented, the Bankruptcy Court found that the parties intended the term "accrued" to mean an obligation that was estimated on the Debtors' books and records. (Opinion at 19-20). The Bankruptcy Court therefore concluded that Avaya only assumed obligations that were reflected in the Debtors' books and records. (Opinion at 20). Avaya does not appeal or dispute these findings. The challenges by Avaya relate to the Bankruptcy Court's interpretation of what constituted the books and records of the Debtors and the timing of when a liability had to have been accrued or recorded in order to constitute an assumed liability under the APA.

## A. The Bankruptcy Court Properly Interpreted the APA

Interpretation of a contract always starts with the plain meaning of the agreement between the parties. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992). If the language in the agreement is clear on its face, then the agreement is the sole source for understanding the intent of the parties. *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993). Language in an agreement is not ambiguous merely because of a disagreement on its meaning. *E.I. Dupont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997). *See also Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 93 (3d Cir. 2001). An ambiguity only arises when the language is reasonably and fairly

---

[6]    References to Opinion herein shall refer to the Opinion of the Bankruptcy Court (Adv. D.I. 120).

susceptible to different interpretation. *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists, Inc.*, 616 A.2d 1192, 1196 (Del. 1992).

Avaya argues that the Bankruptcy Court's ruling that the phrase "prior to the Closing" only modifies the phrase "to the extent not satisfied" is contrary to the evidence presented and inconsistent with the Bankruptcy Court's holding that Avaya only assumed those liabilities that were recorded in the Debtors' books and records. (Opening Brief[7] at 19). The subject language of Schedule 1.03 is not ambiguous and therefore no extrinsic evidence as to the intent of the parties was necessary. Schedule 1.03 provides in pertinent part: *all liabilities accrued or recorded after the Balance Sheet Date in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing Date.* The text of Schedule 1.03 only requires that a liability be recorded *after the Balance Sheet Date* in order to be assumed. No justification for Avaya's interpretation can be found in the APA, Schedule 1.03 or any other evidence presented to the Bankruptcy Court.

Avaya also argues that the inclusion of the phrase "prior to the Closing" after the phrase "accrued or recorded after the Balance Sheet Date" would be redundant. In support of this argument Avaya asserts that "any liabilities that were entered in the books and records that *belonged* to Avaya after the Closing Date could not have been entered 'in the ordinary course of business consistent with past practice' as required by Schedule 1.03." (Opening Brief at 19 (emphasis added)). Avaya's arguments are raised in the context of the Bankruptcy Court's holding that to the extent that the liabilities asserted in a claim listed on the claims register was recorded in the Debtors' books and records, the liability was assumed by Avaya.

---

[7]   References herein to the Opening Brief shall refer to the Opening Brief of Defendant Avaya in Support of its Appeal from an Order of the Bankruptcy Court.

However, the invoices attached to the claims filed in the Bankruptcy Case relate to liabilities that were incurred by the Debtors prior to the Petition Date. Therefore, the obligations would have been obligations that were recorded in the Debtors' books and records prior to the Closing. Therefore, Avaya's argument that entries it made after the Closing for liabilities that *belonged* to Avaya are irrelevant. The liabilities at issue are liabilities that would have been recorded prior to the Petition Date.

In addition, Avaya purchased substantially all of the assets of the Debtors and continued to use the Debtors' books and records after the acquisition until all of the business was transferred over to Avaya's books and records, which did not occur until sometime after June 30, 2001. (Thompson Trans. at 39:13-23 (App. B-29), 52:2-18 (App. B-30), 73:10-20 (App. B-31), and 137:17-138:18 (App. B-35-B-36); Nguyen Trans. at 14:2-15:4 (App. B-47), 17:1-9 (App. B-48), 26:18-23 (App. B-47), 26:8-28:9 (App. B-47)). The transitional employees continued to process invoices that were received in the ordinary course of business after the Closing in the Debtors' books and records. (Nguyen Trans. at 25:3-27:5 (App. B-47); Thompson Trans. at 39:13-23 (App. B-29)). In addition, they continued to use the Debtors' books and records for determining whether a liability was assumed and to pay assumed obligations. (Thompson Trans. 39:13-23 (App. B-29), 52:2-18 (App. B-30), 73:10-20 (App. B-31), and 137:17-138:18 (App. B-35-B-36); Nguyen Trans. at 14:2-15:4 (App. B-47), 17:1-9 (App. B-48), 26:18-23 (App. B-47), 26:8-28:9 (App. B-47)). Moreover, although the Bankruptcy Court held that the filing of a proof of claim was not a recording of a liability in the Debtors' books and records done in the ordinary course of business consistent with past practices, the Bankruptcy Court held that to the extent that a claim listed on the claims register was recorded in the Debtors' schedules or books and

records, it was assumed by Avaya.[8]  (Opinion at 26).  Therefore, the Bankruptcy Court's holding was not erroneous or inconsistent with its holding that Avaya only assumed those liabilities

## B.  The Bankruptcy Court Properly Concluded that Vendor Invoices and Files Were Part of the Debtors' Books and Records

Avaya argues that the Bankruptcy Court's holding that vendor invoices and any notations reflected thereon were part of the Debtors' books and records was clearly erroneous and inconsistent with the Bankruptcy Courts holding that Avaya only assumed those liabilities reflected on the Debtors' books and records.   Avaya argued in the Bankruptcy Court and continues to argue on appeal that the only relevant documents are the Final Schedule and the Aged Payable Ledger.  However, the testimony obtained during discovery demonstrates that the liabilities of the Debtors were not just reflected in the Aged Payable Ledger, but were reflected in other locations, such as various sub-ledgers of the General Ledger, invoices, and vendor files. (Thompson Trans. at 78:17-79:16 (App. B-32), 103:22-104:20 (App. B-33); Nguyen Trans. 44:1-45:11 (App. B-47)).

Ms. Nguyen, the accounting manager for the Debtors who later became an Avaya employee, testified that the Debtors made adjustments to invoices only on the face of the invoice itself (which invoices have been archived) and not on the General Ledger.  (Nguyen Trans. at 44:1-23 (App. B-47)).  Therefore, not all invoiced amounts were reflected on the Aged Payable Ledger or the General Ledger.   As Ms. Nguyen's testimony establishes, the invoices were part of the Debtors' books and records on which obligations were recorded.  The proper amount of an invoice may be recorded only on the invoice, which amount was then properly reflected in the Debtors' schedules. (Nguyen Trans. at 44:1-23 (App. B-47)).  That would explain any difference

---

[8]    Moreover, Avaya did not deny that any proofs of claim filed prior to the Closing date constituted an assumed liability.  Therefore, even under Avaya's restrictive view of the APA, at a minimum the Trustee was entitled to summary judgment on filed claims in the amount of $47,138.18.

between the Debtors' books and records as reflected in the schedules and the amounts listed in the Aged Payable Ledger. In addition, Ms. Nguyen and Mark Thompson testified that liabilities were only entered in the Aged Payable Ledger when they were ready to be paid. (Nguyen Trans. at 44:1-45:11 (App. B-47-B-48); Thompson Trans. 78:17-79:16 (App. B-32) and 103:22-104:20 (App. B-33)). And Mr. Thompson also testified that when a liability was paid, it was transferred out of the Aged Payable Ledger into another sub-ledger of the General Ledger. (Thompson Trans. at 79:3-16 (App. B-32), 81:1-11 (App. B-32), and 105:9-20 (App. B-33)). In addition, Ms. Nguyen testified that a paper record of all information entered into the General Ledger was kept in a vendor file, including a copy of invoices and checks written to the vendor. (Nguyen Trans. at 17:5-9 (App. B-48) and 44:1-45:11 (App. B-47-B-48)). Even Mr. Sherbet (Avaya's general counsel) admits that the Debtors' books and records consist of its "General Ledgers [and] other ordinary course records, the records that were comprised of the accounting system." (Sherbet I Trans. at 42:13-21 (App. B-7)). Avaya failed to raise any evidence of a dispute regarding a genuine issue of material fact. Based upon the foregoing evidence and other evidence presented to the Bankruptcy Court, the Bankruptcy Court properly concluded that vendor invoices and any notations made thereon were part of the Debtors' books and records and that the Trustee needs the Aged Payable Ledger, the sub-ledgers and General Ledger, the actual invoices, and the vendor files to determine the obligations recorded in the Debtors' books and records.

**C. The Bankruptcy Court's Holding that the Final Schedule Was Not a Conclusive List of the Liabilities Assumed by Avaya Was Not Clearly Erroneous**

Avaya argues on appeal that the Bankruptcy Court's holding that the Final Schedule was not a conclusive list of liabilities assumed by Avaya was clear error. Avaya argued in the

- 15 -

Bankruptcy Court below and argues to this Court that the Final Schedule is a definitive list of the liabilities assumed by Avaya.  Section 1.03, which provides in pertinent part:

> No more than 3 business days prior to the Closing Date, [the Debtors] shall deliver to [Avaya] a schedule in reasonable detail showing [the Debtors'] *estimate of the Assumed Liabilities as of the Closing Date.*  [Avaya] shall have the right, to review this schedule of Assumed Liabilities, and the parties shall agree to discuss in good faith any comments or questions that [Avaya] may have with respect to such schedule.  *From and after the Closing, [Avaya] shall the right to confirm the accuracy of the schedule for a period of 5 business days after the Closing.  If, based on such review, [Avaya] believes that the Assumed Liabilities as of the Closing Date exceed $30,000,000, the parties agree to discuss in good faith [Avaya's] comments,* and any disputes that the parties cannot resolve within 2 business days will be resolved expeditiously before the Bankruptcy Court.

(APA § 1.03; App. 10-11 (emphasis added)).  This unambiguous language confirms that the Final Schedule bears none of the hallmarks of finality, and makes clear that the schedule was subject to verification, comments and challenge *after the Closing*.

The Estimated Schedule was not intended to be a final and exclusive list of Assumed Liabilities is facially evident from the document itself.  This two-page document--which according to Avaya is supposed to cover *$30 million* of liabilities--uses the word or a variation of the word "estimate" six times, consists of only twenty-one line items, reflects dollar figures rounded to the nearest thousand, and makes virtually no reference to specific creditors.  All these factors prompted Mr. Thompson, when asked about the purpose of the Estimated Schedule at his deposition, to refer to this document as nothing more than a "snapshot" of the Debtors' liabilities as of the Closing date.  (Thompson Trans. at 20 (App. B-28)).

Additionally, none of the Avaya employees who were actually responsible for paying Assumed Liabilities used the Final Schedule in executing that job.  (Thompson Trans. at 39:12-23 (App. B-29), 52:2-18 (App. B-30), 73:10-20 (App. B-31), 137:17-138:18 (App. B-35-B-36); Nguyen Trans. at 14:2-15:4 (App. B-47), 17:1-9 (App. B-48), 26:18-23 (App. B-47), 26:8-28:9

(App. B-47)).  In particular, Avaya employee, Greg Maloney, who played an integral part in the post-closing integration effort, confirmed under oath that the Final Schedule was *not* the "master list" of assumed liabilities used by Avaya in deciding to pay or not to pay the Debtors' liabilities. (Maloney Trans. at 47-48 (App. B-18-B-19), 51 (App. B-20) and 75 (App. B-22)).

That same analysis is true with respect to any claim listed in the Aged Payables Ledger. Specifically, Avaya contends that it is not liable for any scheduled claim or filed proof of claim to the extent that the scheduled amount or the amount listed in the proof of claim exceeds the amount of the creditor's claim as listed in the Final Schedule.  As the Final Schedule is, *by agreement*, nothing more than an "estimate," the actual amount of the creditor's claim as set forth in the schedules or a filed proof of claim governs the "estimated" amount set forth in the Final Schedule.  Thus, Avaya is also liable for any scheduled claim or filed proof of claim that is also listed anywhere in the Debtors' books and records, whether the General Ledger (which Avaya destroyed), the General Ledger "reconciliation binder," the Aged Payable Ledger, or the vendor invoices.  To hold otherwise, would undo the parties' agreement that the Final Schedule was just that – an "estimate."

The Final Schedule is not the ultimate document that determined which liabilities were assumed by Avaya – it is merely a compilation of assets and liability line items that include an estimated liability figure that corresponds to a sum of individual liabilities listed in the Debtors' books and records.  The Debtors' books and records are the documents that provide the details required to identify the liabilities that constitute assumed liabilities under the APA.  In addition, the Final Schedule was only an "estimate."  One must review the books and records to determine the actual assumed liabilities.  Therefore, Avaya's arguments that the Bankruptcy Court erroneously held that Final Schedule does not represent a final and exclusive list of liability

assumed by Avaya is without merit and fails to raise a genuine issue of material fact such that summary judgment should be reversed.

### D. The Bankruptcy Court's Holding that the Debtors' Bankruptcy Schedules Reflect Liabilities on the Debtors' Books and Records Was Proper

Avaya asserts that the Bankruptcy Court erroneously concluded that Avaya assumed the liabilities listed on the Debtors' schedules because the schedules are not reflective of the Debtors' books and records. In addition, Avaya argues that it did not assume the liabilities listed on the Debtors' schedules because the schedules were not prepared in a manner that was consistent with past practices of the Debtors. Although the schedules were not something that the Debtors prepared in the past in the ordinary course of their businesses, the underlying books and records that formed the basis of the schedules were prepared in the ordinary course of the Debtors' businesses consistent with past practices.

Section 521(a)(1)(B)(i) of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure require a debtor to file a schedule of assets and liabilities in a bankruptcy case. In addition, Federal Rule of Bankruptcy Procedure 1008 requires that all schedules be verified by the debtor or contain an unsworn declaration as provided in 28 U.S.C. § 1746, which requires that the schedules be declared as true under penalty of perjury. The Debtors filed their schedules on April 11, 2001 (Bankr. D.I. 185-187), *which is the same day that the Sale closed.* Mr. Thompson was the Vice President of Finance at the Debtors and was primarily responsible for the maintenance of the Debtors' books and records. (*See* Thompson Trans. at 10:20-23 (App. B-26) and 11:8-14 (App. B-26)). On April 10, 2001, *only one day prior to the Closing*, Mr. Thompson executed the schedules under the penalties of perjury set forth in 18 U.S.C. §§ 152 and 3571.

The schedules list the Debtors' liabilities from their books and records as of the Petition Date and were created based upon a review of the Debtors' books and records, including the General Ledger.  Specifically, Mr. Thompson testified as follows with respect to the schedules claims:

> Q:    Okay.  If it's listed on the schedule, should it have been somewhere in the ledger?
>
> A:    Yeah.

(Thompson Trans. at 154:18-21 (App. B-39); *see also* Thompson Trans. at 146:25-147:13 (App. B-37) and 153:15-21 (App. B-38)).  Mr. Thompson's testimony that the scheduled claims were based upon the books and records of the Debtors was uncontroverted.

In addition, Avaya presented evidence in the Bankruptcy Court from a General Ledger "reconciliation binder.9"  (*See* Adv. D.I. 114 at 6-8).  Specifically, Avaya argued that the difference of $194,266.28 between the scheduled tax claims and the amount listed in the Final Schedule was explained by, *inter alia*, tax claims for the states of Georgia, Utah, and Tennessee. (*See* Adv. D.I. 114 at 6-7).  Avaya argued that the amounts schedule for those states' tax claims exceeded the amounts listed on the General Ledger "reconciliation binder" (thought Avaya never produced the actual General Ledger) and, therefore, Avaya was not liable for the difference because "the possible existence of invoices that reflect different amounts from those that were in fact accrued or recorded is of no moment." (*See* Adv. D.I. 114 at 6-8).  The Trustee respectfully disagreed and so did the Bankruptcy Court.

Avaya's argument actually demonstrated why Avaya is *liable* for those states' tax claims. As argued in detail elsewhere, the Final Schedule was nothing more than an *estimate*.  Any tax

---

9    The evidence presented by Avaya was belatedly produced.  Pursuant to the discussion below, Avaya should not be permitted to rely upon the belatedly produced documents in making it arguments on appeal.

claim that is accounted for in the General Ledger reconciliation binder is an obligation assumed by Avaya (by its own admissions). The fact that the amount of the obligation was incorrectly estimated does not mean that Avaya is not liable for the actual amount of the obligation. That is the nature of an estimate. Accordingly, Avaya is liable for the actual amount of the Georgia, Utah, and Tennessee tax obligations that Avaya admits were listed in what it describes as the General Ledger "reconciliation binder" as the alleged backup for the destroyed General Ledger.

Based upon the foregoing evidence and arguments presented to the Bankruptcy Court, Avaya has failed to raise a genuine issue of material fact that is in dispute. Accordingly, based upon the evidence presented regarding the liabilities assumed by Avaya under the terms of the APA, the Bankruptcy Court's holding that Avaya was liable to the Trustee in the amount of $752,696.76 for unpaid assumed liabilities was not clearly erroneous.

**II.    The Bankruptcy Court's Entry of Judgment Against Avaya as a Sanction for Avaya's Intentional Spoliation of Evidence was not an Abuse of Discretion**

In determining whether to impose sanctions for the spoliation of evidence, the Bankruptcy Court had to determine whether Avaya had any obligation to preserve the evidence at issue; whether the destroyed evidence would have been relevant to the contested issues; and whether the Trustee would suffer prejudice as a result of the spoliation. MOORE'S FEDERAL PRACTICE, 3d § 37.120. Significantly, the duty to preserve material evidence arises not only during litigation, but also before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.[10] *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *see also Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).

---

[10]    In cases where the spoliation occurred before litigation, there is some debate as to whether Federal Rule of Civil Procedure 37 may serve as a source of authority to impose sanctions for spoliation, or rather, may be found to derive from the Court's inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 2134 (recognizing that courts have the inherent power, as well as the authority expressly granted to them under the Federal Rules of Civil Procedure, to impose sanctions

To justify the imposition of a spoliation sanction, the movant must also show prejudice and the unavailability of alternative sources of evidence. MOORE'S FEDERAL PRACTICE, 3d § 37 A.12(5)(b).

"The destruction of documents creates a presumption that the missing documents would have permitted a plaintiff to prove the illegal conduct which is at the heart of the complaint." *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 593 F.Supp. 1443 (C.D. Cal. 1984). It is equally settled that "[d]estroying the best evidence relating to the core issue in the case inflicts the ultimate prejudice upon the opposing party." *Computer Assocs. Int'l, Inc. v. American Fundware, Inc.,* 133 F.R.D. 166, 170 (D.Colo. 1990). In determining the prejudice suffered by an opposing party as a result of spoliation, a court should "examine the materiality and value of the suppressed evidence upon the ability of a [party] to fully and fairly prepare for trial." *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 889 (S.D.N.Y. 1999).

In determining the appropriate sanction for spoliation, the Third Circuit has instructed that a court should consider the following factors:

(1)    the degree of fault of the party who altered or destroyed the evidence;

(2)    the degree of prejudice suffered by the opposing party; and

(3)    whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78 (3d Cir. 1994). In general, the

---

where warranted). *See also* MOORE'S FEDERAL PRACTICE, 3d § 37.120 n. 9; *Silvestri v. General Motors, Corp.,* 271 F.3d 583, 540 (4th Cir. 2001) (recognizing that "[t]he right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation..."); *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y 1991) (recognizing that the authority to sanction litigants for spoliation arises jointly under the Federal Rules of Civil Procedure *and* the court's own inherent policies); *accord Roadway Express, Inv. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed. 2d 488 (1980). Therefore, whether acting pursuant to Rule 37 or in exercising its inherent powers, the Bankruptcy Court had the authority necessary to grant the relief requested by the Trustee in his sanctions motion.

responding party's culpability and the prejudicial harm caused by the destruction of relevant evidence are the most important factors in determining the severity of sanctions. *Id.*

Avaya's arguments focus on the deletion of the computer server as the only basis for the Bankruptcy Court's imposition of sanctions upon Avaya for the intentional destruction of evidence. However, the Bankruptcy Court also considered the non-production of hard copies of the Debtors' books and records to the Trustee as a basis for the sanction imposed. (Opinion at page 9, fn 5). The Trustee requested documentation of the assumed liabilities from Avaya for almost four (4) years to allow the Trustee to determine whether Avaya had fulfilled its obligations under the APA. The Trustee's requests began as early as May of 2002 with a voluntary request. Avaya's non-compliance with the early requests resulted in the filing of the Rule 2004 Motion. However, because Avaya did not produce the documentation necessary for the Trustee to determine the liabilities assumed by Avaya and Avaya's fulfillment of its obligations under the APA, the Trustee was forced to institute the adversary proceeding against Avaya. The Trustee even had to subpoena Avaya's bank in order to obtain evidence of the payment of certain assumed liabilities.

Although Avaya produced some documents, it did not produce documents that were relevant to the central issue raised by the Trustee in the Complaint. Avaya asserts that it produced a schedule created by Mr. Thompson that showed the payment of assumed liabilities through June 30, 2001. (Opening Brief at 31; App. 151-152). However, the June 30, 2001 schedule (the "June Schedule") was merely another categorical description of the assumed liabilities. In addition, Avaya argues that the June Schedule contains a state by state breakdown of the tax liabilities assumed. However, the amounts listed on the second page of the June Schedule are listed by sub-ledger account number and not by taxing authority name. (Thompson

Trans. at 103:19-104:20 (App. B-33)).  Therefore, it is impossible for the Trustee to determine

which taxing authorities were supposed to be paid what amounts, particularly since the tax

liabilities were accruals and not actual final amounts of taxes payable.  Avaya has never

produced the individual tax sub-ledgers.  In addition, the June Schedule indicates that as of

June 30, 2001, Avaya knew that it had not paid at least $138,000 in assumed tax liabilities in

addition to the admittedly unpaid trade claims in the amount of $1,199.  However, the testimony

of Avaya's own employees unequivocally indicates that Avaya should have expected to be sued

by the Debtors when Avaya destroyed the Debtors' books and records.  Mr. Maloney testified

that in August 2001 $500,000 in Assumed Liabilities were still unpaid.  (Maloney Trans. at

131:8-132:7 (App. B-23)).  Moreover, even under Avaya's restrictive interpretation of the APA

pursuant to which Avaya claims that it was only liable for certain liabilities, Avaya still has not

paid over $202,165.46 in trade obligations and either $109,489.17[11] or $321,383.83[12] in tax

liabilities for which it is admittedly liable.  (Adv. D.I. 94 at Exhibit M, ¶¶ 6-7; Thompson Trans.

at 158:1-162:20 (App. B-40-B-41); Schedule E of Bankr. D.I. 185-187; Sherbet I Trans. at

82:13-83:16 (App. B-8)).  Finally, this document was not actually produced by Avaya.  It was

produced by Mr. Thompson as a result of a call by Trustee's counsel in anticipation of the need

for his deposition.

　　　　The final group of documents that Avaya refers to in its Opening Brief is the group of

---

[11]　Avaya acknowledges that it has failed to pay at least $1,199 or 0.0.2% of the assumed trade liabilities
and a "portion of the tax liabilities it has assumed …." (Opening Brief at 28).  What Avaya does not
point out to the Court is that the "portion" of unpaid tax liabilities that Avaya is referring to represents
85% of those tax liabilities.

[12]　At his deposition, Thompson admitted that Avaya assumed $109,489.17 in tax liabilities, which
remain unpaid.  Thompson, however, also executed Schedule E under penalty of perjury, which
provides that $321,383.83 in taxes were due and owing.  Those amounts, as Thompson testified, were
reflected in the Debtors' Books and records.  (Thompson Trans. at 154:18-21 (App. B-39); *see also*
Thompson Trans. at 146:25-147:13 (App. B-37) and 153:15-21 (App. B-38)).  Therefore, the
Schedule E tax claims are amounts for which Avaya is liable under its own interpretation of the APA.

documents that Avaya indicates establishes no material difference between the outstanding trade payable liabilities from the Aged Payable Ledger and the General Ledger after almost all of the trade payable liabilities had been paid (App. 139-146).

As previously discussed, the Trustee made efforts as far back as May 2001 to obtain documents from Avaya relative to the liabilities assumed under the APA. It was not until *after* the close of fact discovery and *after* all of depositions had concluded that Avaya produced approximately 2,800 pages of additional documents under cover letter dated February 8, 2006. (App. B-4). *None* of these documents were produced in connection with the Rule 2004 examination or Avaya's responses to the Trustee's document requests. Rather, Avaya wrongfully withheld those documents for over 2 years and 5 months after Avaya agreed to produce documents in the Letter Agreement, nearly 2 years after the Trustee served document requests on Avaya, approximately 3 months after the deadline set by the Bankruptcy Court compelled Avaya to produce the documents and *after* all depositions and all fact discovery had concluded.

Avaya sought to rely upon the withheld documents even though the Trustee did not have an opportunity to examine the many witnesses with respect to those documents produced only after discovery had closed. Avaya sought to use those documents, and its characterizations of their contents, with respect to the spoliation motion and the parties' respective motions for summary judgment raised before the Bankruptcy Court. The Bankruptcy Court did not and this Court should not countenance such conduct. Specifically, the Bankruptcy Court held that such belated production does not help Avaya's cause and that Avaya could not "selectively preserve 'relevant' documents and only present those that it finds favorable to its case, at a time when it finds it convenient." (Opinion at 29). Rather, as Federal Rule of Civil Procedure 37 instructs,

the Bankruptcy Court properly precluded Avaya from using the belatedly-produced documents

or any information contained therein for any purpose in this litigation.[13]  To permit Avaya to use

the belatedly-produced documents about which the Trustee did not have the opportunity to

examine the various witnesses would reward Avaya's discovery abuses and would be

fundamentally unfair to the Trustee.[14]

      Accordingly, although Avaya asserts that the documentation produced was sufficient, an

analysis of this evidence clearly demonstrates that the documents produced were not actually

sufficient to allow the Trustee to make a determination as to what liabilities were assumed by

Avaya and remain unpaid.  The Bankruptcy Court evaluated the evidence produced by Avaya

and which Avaya asserts was sufficient to identify the liabilities it assumed and properly held

---

[13]  *See Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) ("The Finleys missed the deadline by months, courting exclusion.  New Rule 37(c)(1) provides that 'a party that without substantial justification fails to disclose information required by Rule 26(a) . . . *shall* not, unless such failure is harmless, be permitted to use as evidence at a trial … any … information not so disclosed' (emphasis added). The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless."); *Lumbermens Mut. Cas. Co. v. Able Telecomm. & Power, Inc.*, 2006 WL 229212, at *3 (N.D.Ga. Jan. 31, 2006) ("Plaintiff is precluded from introducing in its case-in-chief any documents which were not produced to Defendants for inspection and copying before the close of discovery. *See also* Fed.R.Civ.P. 37(c)(1), 37(b)(2)(A)-(C).  Plaintiff further is precluded from using information in these documents unless there is an independent admissible basis or source for such information."); *Aon Risk Servs., Inc. of Illinois v. Shetzer*, 2002 WL 1989466, at *6 (N.D.Ill. Aug. 27, 2002) (precluding party from utilizing documents produced two weeks after close of discovery).  Avaya has no explanation or justification for the belated production of these documents.  In addition, the belated production of over 2800 documents clearly demonstrates that Avaya had possession, custody and control over the archived books and records of the Debtors.  Moreover, the belated production is evidence that Avaya did not conduct as extensive search for documents responsive to the Trustee's discovery requests as it has represented to this and the Bankruptcy Court.

[14]  Only the Debtors should be entitled to use the belatedly-produced documents as they deem appropriate.  *See Rabello v. Bell Helicopter Textron, Inc.*, 200 F.R.D. 484, 489 (S.D.Fla. 2001) ("it is appropriate to deny Defendant Bell Helicopter the use of all the documents produced as Court Exhibit 1, but permitting Plaintiffs to use any documents belatedly produced").  *See McClure v. Vice President, Human Resources, Union Carbide Corp.*, 2005 WL 1214645, at *7 (S.D.Tex. May 20, 2005) ("Defendants' failure to timely produce the Recently-Produced SPD warrants the penalty under Rule 37(c) that Defendants are not entitled to rely on the document now.  To permit Defendants belatedly to divulge and rely on a document they claim is central to the case without granting Plaintiff's attorney opportunity for discovery about the document would be fundamentally unfair.").

that the information was not sufficient.  The Bankruptcy Court's finding that the production was

insufficient is supported by the evidence and was not an abuse of its discretion.

### A. The Bankruptcy Court Properly Found that Avaya Destroyed Documents And Failed to Produce Archived Hard Copies of the Debtors Books and Records When it Should Have Reasonably Anticipated Litigation Over the Payment of Assumed Liabilities

Avaya argues that this Court's determination of Avaya's "degree of fault" should not

include any consideration of the fact that Avaya destroyed all electronic copies of the Debtors'

documents just a few short months after the Closing (Nguyen Trans. at 28:25-30:18 (App. B-47-

B-48)) – notwithstanding Avaya's duty to maintain the Debtors' documents *"for seven years*

*after the Closing"* under Section 5.05(a) of the APA.  (App. 36 (emphasis added)).  Avaya's

breach of its contractual duty could not be more relevant to a consideration of Avaya's "degree

of fault."  Otherwise, Avaya's promise to maintain the records would be mere surplusage and

completely illusory.

In considering Avaya's fault in destroying the Debtors' documents, the Bankruptcy Court

properly considered Avaya's violation of its agreement to maintain those documents.  *Green*

*Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)

(referring to "a legal or contractual duty to preserve evidence"); *Holmes v. Amerex Rent-A-Car*,

180 F.3d 294, 297 (D.C. Cir. 1999) (same); *Smith v. Shipping Utilities, Inc.*, 2005 WL 3133494,

at *2 (S.D.Ill. Nov. 23, 2005) ("In determining whether a duty to preserve evidence exists, first,

as a threshold matter, the court must determine whether such a duty arises by agreement,

contract, statute, special circumstance, or voluntary undertaking."); *Fletcher v. District of*

*Columbia*, 2005 WL 670676, at *7 (D.C. Cir. March 22, 2005) (referring to "a legal or

contractual duty to preserve evidence"); *Hickman v. Carnival Corp.*, 2005 WL 3675961, at *2

(S.D.Fla. July 11, 2005) (same); *Urban v. U.S.*, 392 F.Supp.2d 1018, 1025 (N.D.Ill. 2005) ("a

duty may arise through a statute, contract, agreement, or other special circumstances"). By violating its duty to preserve the Debtors' records, Avaya demonstrated a high "degree of fault."

In addition to destroying the electronic copy of the General Ledger, Avaya has failed to produce a hard copy of the General Ledger and other books and records of the Debtors, including vendor files and invoices, which it archived. (Nguyen Trans. at 27:1-28:14 (App. B-47)). Further compounding Avaya's failure to produce a hard copy of the General Ledger is the fact that Avaya also has failed to produce copies of invoices that were archived. (Nguyen Trans. at 44:1-20 (App. B-47)). All of those documents are relevant "books and records" of the Debtors. Avaya's destruction (and non-production) of documents is also contrary to its contractual duty to maintain copies of Debtors' documents under the APA and to make such documents available to the Debtors and their successors.

Avaya, however, argues that it did not have any reason to believe that litigation was foreseeable when it destroyed the electronic copies of Debtors' books and records simply because the Trustee was not yet appointed and there was no way that it could have anticipated being sued for liabilities that were not included in the Final Schedule. (*See* Opening Brief at 28). A party who has *reason to anticipate litigation* has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit. *See, e.g., Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D.Pa. 1996); *Shamis*, 34 F.Supp.2d at 888-89 (asking whether the party "knew or should have known that the destroyed evidence was relevant to pending, imminent, *or reasonably foreseeable litigation*") (emphasis added). Avaya again misses the point – the Trustee needs the Debtors' books and records to determine what liabilities fall within the estimated amounts set forth in the Final Schedule. As the Bankruptcy Court properly held, the Final Schedule is merely a categorical estimate of the liabilities assumed by Avaya. In addition, even if the Trustee

asserted that every single claim asserted in the Bankruptcy Cases was assumed by Avaya, which

he has not done, the burden of preservation on the part of Avaya would not have changed

because Avaya was obligated under the Section 5.05 of the APA to preserve the Debtors' books

and records.  In addition, *Avaya was aware* that it had not satisfied all of the assumed liabilities

under the APA and Final Schedule and should have preserved the Debtors' books and records.

Therefore, Avaya's arguments that it could not reasonably believe that it might be sued for

liabilities beyond the Final Schedule are without merit.  Avaya was required to maintain all of

the Debtors' books and records, not just those that Avaya believed pertained to the Final

Schedule.  (APA at § 5.05 (App 36)).  The Trustee's suit did not change Avaya's obligation to

maintain the Debtors' books and records and had Avaya done so, the Trustee would have all the

evidence necessary to prosecute his case against Avaya.

The witnesses' testimony unequivocally indicates that Avaya should have expected to be

sued by the Debtors when Avaya destroyed the Debtors' books and records.  Mr. Maloney

testified that in August 2001 $500,000 in Assumed Liabilities were still unpaid.  (Maloney

Trans. at 131:8-132:7 (App. B-23)).  Moreover, even under Avaya's restrictive interpretation of

the APA pursuant to which Avaya claims that it was only liable for certain liabilities, Avaya still

has not paid over $202,165.46 in trade obligations and either $109,489.17[15] or $321,383.83[16] in

tax liabilities for which it is admittedly liable.  (Adv. D.I. 94 at Exhibit M, ¶¶ 6-7; Thompson

---

[15]  Avaya argues that it has failed to pay at least $1,199 or 0.0.2% of the assumed trade liabilities and a
"portion of the tax liabilities it has assumed ...." (Opening Brief at 28).  What Avaya does not point
out to the Court is that the "portion" of unpaid tax liabilities that Avaya is referring to represents 85%
of those tax liabilities.

[16]  At his deposition, Thompson admitted that Avaya assumed $109,489.17 in tax liabilities, which
remain unpaid.  Thompson, however, also executed Schedule E under penalty of perjury, which
provides that $321,383.83 in taxes were due and owing.  Those amounts, as Thompson testified, were
reflected in the Debtors' Books and records.  (Thompson Trans. at 154:18-21 (App. B-39); *see also*
Thompson Trans. at 146:25-147:13 (App. B-37) and 153:15-21 (App. B-38)).  Therefore, the
Schedule E tax claims are amounts for which Avaya is liable under its own interpretation of the APA.

Trans. at 158:1-162:20 (App. B-40-B-41); Schedule E of Bankr. D.I. 185-187; Sherbet I Trans. at

82:13-83:16 (App. B-8)).  Having failed to pay at least $500,000 in Assumed Liabilities as of the

date that it destroyed the Debtors' electronic books and records, Avaya should have been well

aware that litigation with the Debtors was "foreseeable."  Avaya could not reasonably have

assumed that the Debtors would have suffered damages in excess of $500,000 without seeking

redress in the Bankruptcy Court.  In fact, according to the June 30, 2001 schedule that Avaya

relies upon in the appeal (App. at 151), Avaya knew in June of 2001 that it owed significantly

more than just the $1,199 for unpaid assumed trade liabilities and $138,000 for unpaid assumed

tax liabilities.  (*See* App. at 151.)  According to the June 30, 2001 schedule, Avaya owed

$2,458,507 in unpaid assumed accrued liabilities.  Therefore, Avaya's arguments in the

Bankruptcy Court and in this Court that it did not have any reason to believe that it would be

sued for not paying the liabilities it assumed under the APA because such amounts were minimal

are without merit.  Avaya knew at the time that it reformatted the server that it had failed to

fulfill its obligations under the APA and therefore should have reasonably believed that it could

be sued for breach of the APA.  In fact, Avaya to this day has not paid even those liabilities that

it admits that it assumed and owes.

### B.  The Bankruptcy Court Did Not Abuse its Discretion When it Found that Avaya Intentionally Destroyed Evidence

Avaya also claims that its destruction of the Debtors' electronic books and records was

"unintentional."  The contrary is true.  Avaya intentionally reformatted the Debtors' server so

that Avaya would have more space available for other data.  There is no evidence that Avaya's

actions were accidental, that reformatting the Debtors' server was inadvertent, or that Avaya was

unaware that reformatting a server eliminates all information stored thereon.[17]  Avaya's failure to

produce archived hard copies of the Debtors' books and records is also intentional misconduct.

Avaya offers no explanation for failing to produce such documents, which are well within its

possession, custody and control.  Moreover, even assuming that Avaya's conduct was

unintentional, Avaya's conduct need only evidence a "degree of fault" to suffer spoliation

sanctions.  Avaya's violation of the APA by destroying documents and its failure to produce

relevant archived documents is more than sufficient to demonstrate Avaya's fault.  Avaya has

failed to demonstrate that its destruction and non-production of evidence was the result of a loss

or accidental destruction or that such destruction or failure to produce was "otherwise properly

accounted for."  *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

Such failure is fatal to Avaya's argument.

Finally, Avaya misstates the testimony of Mr. Thompson, and omits the testimony of Ms.

Nguyen, in an effort to avoid liability for destroying the Debtors' books and records (and

presumably, to explain its failure to produce the archived documents).  Avaya asserts that Mr.

Thompson transferred all of his files to Development Specialist, Inc. ("DSI"), the Debtors'

management consultant.  Upon cross-examination, however, Mr. Thompson stated that he was

"trying to remember which records [DSI] received versus which records historically were sent

---

[17]    Avaya argues that there is no evidence as to who destroyed the server and that it is logical to assume
that the person was a technician in the computer department who was unlikely to have been aware of
the APA or the possibility of future litigation.  However, Ms. Nguyen testified that Mr. Sidarham, a
vice president at Avaya at the time the server was reformatted, was aware of and agreed to the
reformatting of the server that contained the electronic version of all of the Debtors' books and
records.  (Nguyen Trans. at 30:8-31:7 (App. B-46)).  Mr. Sidarham was an employee of the Debtors
prior to the acquisition and became an employee of Avaya after the acquisition and certainly would
have been aware of the importance of the server.  In addition, as in-house counsel involved in the
acquisition of the assets of the Debtors, Mr. Sherbet was aware of Avaya's obligations under Section
5.05 of the APA to preserve the Debtors' books and records and certainly could have and should have
implemented appropriate safeguards to preserve the books and records of the Debtors, electronic and
hard copies.

out to Avaya," but then admitted "I just don't remember." (Thompson Trans. at 107:7-20 (App. B-34)). Mr. Thompson further admitted that DSI had "just a small little office" at Avaya's premises and that DSI was there only "very sporadically." (Thompson Trans. at 109:3-19 (App. B-34)). Unlike Mr. Thompson, Ms. Nguyen had a very specific recollection of what happened to the Debtors' books and records that Avaya had purchased under the APA. Ms. Nguyen testified that all of the Debtors' books and records "from the beginning of time" were sent to archives *by Avaya* at a single location (except for payroll documents which went to a second location in Florida). (Nguyen Trans. at 27:1-28:27 (App. B-47)).

Any uncertainty created by Mr. Thompson's confusion regarding the transfer of documents to DSI is resolved by the Affidavits of M. Scott Michel (formerly) of DSI (Adv. D.I. 104 at Exhibit G) and Bradley D. Sharp of DSI (Adv. D.I. 104 at Exhibit H). As Michel testifies, "I performed services for the Debtors and the Trustee at the Debtors' Fremont, California location. At that location, I had access to the financial records of the Debtors. However, my access was limited to viewing the financial records as they were kept in the ordinary course of business of the Debtors and under the supervision of the employees of Avaya, Inc." (Adv. D.I. 104 at Exhibit G, ¶ 11). Michel further testifies that "DSI did take possession, custody and control of an electronic file containing 1099 tax information for the Debtors. However, DSI did not take possession, custody or control of any other financial records, including invoices, of the Debtors' in either electronic or paper format" and that "DSI did not take possession, custody or control, in electronic or paper format, of the Debtors' General Ledger." (Adv. D.I. 104 at Exhibit G, ¶¶ 12-13). Sharp confirms Michel's testimony. (Adv. D.I. 104 at Exhibit H, ¶¶ 10-11). Thus, Avaya's attempt to lay blame upon DSI based upon Mr. Thompson's equivocal

testimony (abandoned on cross-examination) cannot withstand scrutiny under comparison with Ms. Nguyen's and DSI's unequivocal testimony.

Additionally, on October 19, 2005, Avaya issued a subpoena to DSI requesting the production of various documents, including, but not limited to, the Debtors' books and records. (Adv. D.I. 115 at Exhibit C). DSI produced all documents in its possession, custody and control that were responsive to the subpoena. The documents produced do not include the Debtors' books and records that existed prior to Avaya's acquisition of substantially all of the assets of the Debtors.

Avaya also misunderstands the importance of the chronology. As Avaya concedes, Mr. Thompson was employed by Avaya for some time *after* Ms. Nguyen had left Avaya. (*See* Adv. D.I. 114 at 10). Ms. Nguyen testified that all of the Debtors' books and records "from the beginning of time" were sent to archives *by Avaya* at a single location (except for payroll documents which went to a second location in Florida). (Nguyen Trans. at 27:1-28:27 (App. B-47)). Mr. Thompson's testimony (though later recanted based upon an admission of lack of recall) that he subsequently sent documents to DSI (Adv. D.I. 114 at 11) means little. Whatever documents remained at that time could only have been the balance of documents remaining after the books and records "from the beginning of time" were archived by Avaya. Further, DSI's statements in the Affidavits are consistent with Ms. Nguyen's testimony.

Importantly, Avaya's belated post-discovery production of 2800 documents also belies Avaya's contentions that all of its Debtor-related documents were sent to DSI. As that belated production evidences, Avaya had the remaining hard copies in storage. To date, however, Avaya has still not produced copies of relevant invoices or vendor files, a hard copy of the General Ledger, or other relevant financial documents. Avaya, having destroyed the Debtors' electronic

documents, has also failed to produce the relevant hard copies.

Avaya also argues that the Bankruptcy Court failed to conduct an analysis of whether damages were established by the Trustee to warrant the imposition of the award. (Opening Brief at 29). Avaya further argues that since the bulk of the judgment consists of claims asserted by creditors for the first time well after the Closing and not reflected on the Debtors schedules, the finding of the Bankruptcy Court that the destroyed server would have shown that such liabilities were on the Debtors' books and records defies logic. (Opening Brief at 29).

The Bankruptcy Court conducted an analysis of whether damages were established by the Trustee and found that the destroyed evidence was "not simply relevant to this case but goes to the heart of the Trustee's suit: what claims were assumed by Avaya that remain unpaid." (Opinion at 32). In addition, Avaya's argument is circular in nature. Avaya argues that the Trustee did not present any evidence to prove damages and therefore, the Bankruptcy Court did not consider any evidence to demonstrate damages. But that is the point of a spoliation sanction -- the absence of the documentary evidence is the damage because without the documentation, the Trustee is unable to determine what liabilities were assumed by Avaya. Further, August 15, 2001 was the Bar Date for the filing of claims by creditors. The claims that are the subject of the judgment awarded by the Bankruptcy Court were filed no later than August 15, 2001, which is only four (4) months after the Closing. The claims were submitted with copies of invoices and other documentation evidencing that the underlying liabilities were sent to the Debtors. Therefore, those liabilities should be reflected in the Debtors books and records. If Avaya had produced the Debtors' vendor invoices and files, the Trustee would be able to prove that these claims were assumed liabilities under the APA. However, since Avaya has failed to produce the archived hard copies of the Debtors books and records and has destroyed the electronic version

of the Debtors accounting system, the Trustee cannot prove that these liabilities were assumed by Avaya. Moreover, although the claims were filed after the Closing, they assert unpaid obligations that arose prior to the Petition Date, with a few exceptions from taxing authorities that may have raised post-petition, pre-Closing liabilities. Accordingly, it is very logical that information regarding the claims asserted would be contained in the Debtors' books and records.[18] Therefore, the Bankruptcy Court did not abuse its discretion in finding that Avaya intentionally destroyed the Debtors' books and records when it could have reasonably anticipated litigation over the payment of assumed liabilities.

### C. The Bankruptcy Court's Holding that the Trustee is Prejudiced by Avaya's Destruction of, and Failure to Produce, the Debtors' Books and Records is Not an Abuse of the Bankruptcy Court's Discretion

Avaya again raises the argument that its production was sufficient and identifies the same evidence that it presented related to an earlier argument. Therefore, the Trustee refers this Court to Argument II of this Brief for the Trustee's response. Avaya's destruction of relevant documents greatly prejudices the Trustee. In focusing on the prejudice to the Trustee, it is important to recognize the chronology. Mr. Thompson, a former Quintus and then an Avaya employee, signed a declaration under penalty of perjury concerning the Debtors' Schedules of Assets and Liabilities (Bankr. D.I. 185-187). That declaration was executed on *April 10, 2001,*

---

[18] Avaya repeatedly argues that the books and records that were lost as a result of the reformatting of the server were records created by Ms. Nguyen and Mr. Thompson in their role as Avaya employees after the Closing and therefore those books and records do not fall within the scope of Section 5.05 of the APA because they are books and records created by Avaya and not the books and records of the Debtors. However, Avaya fails to acknowledge that the testimony of Ms. Nguyen and Mr. Thompson clearly indicates that the server they used when they became Avaya employees was the exact same server containing the books and records of the Debtors. (Nguyen Trans. at 25:3-27:5 (App. B-45); Thompson Trans. at 39:13-23 (App. B-29)). Therefore, the reformatting of the server destroyed the Debtors' books and records that Avaya was obligated to preserve pursuant to Section 5.05 of the APA.

*just one day before the closing under the APA.* On April 11, 2001, Avaya closed on its purchase of the Debtors' assets, *including* its books and records.

Although Mr. Thompson expressly stated that scheduled claims were based upon their inclusion in the General Ledger, and although common sense dictates that claims were scheduled based upon a review of the Debtors' General Ledger, Avaya disputes -- without any factual basis -- that the schedules accurately reflect the information on the Debtors' General Ledger. Avaya's allegation, though lacking in factual support, is bolstered by its destruction of the electronic copy of the Debtors' General Ledger and failure to produce a hard copy of the General Ledger or the Debtors' invoices. The Trustee cannot review the General Ledger because Avaya has destroyed it -- in violation of its contractual duty. Thus, the Trustee is prejudiced in pursuing Avaya for scheduled claims because of Avaya's argument that scheduled claims may not have been listed in the General Ledger or other books and records destroyed (or archived and not produced) by Avaya. Therefore, the Trustee is prejudiced by his inability to access and review the Debtors' books and records, including without limitation, the General Ledger, sub-ledgers, invoices and vendor files.

The Trustee is also prejudiced with respect to other arguments regarding the interpretation of Schedule 1.03 and its application to filed proofs of claim. The Bankruptcy Court held that Avaya is responsible for all obligations reflected in the Debtors' books and records. (Opinion at 20). Since the Bankruptcy Court adopted Avaya's interpretation of Schedule 1.03, the Trustee is significantly prejudiced by Avaya's intentional destruction and non-production of relevant documents, including the General Ledger (and sub-ledgers contained therein), invoices, and vendor files because he does not have a copy of the General Ledger to review and determine if the filed proofs of claims (or the underlying invoices) were reflected in

the Debtors' General Ledger *or other documents*. Without a copy of the General Ledger (including sub-ledgers), invoices, and vendor files, the Trustee cannot accurately determine what filed proofs of claim represented obligations that were reflected in the General Ledger and the Final Schedule.[19]

Avaya responds that the Aged Payable Ledger should contain all of the relevant trade payables. But Avaya's general counsel said otherwise. Mr. Sherbet stated that he could not opine as to whether Mr. Thompson could rely solely upon the Aged Payable Ledger alone in deciding whether to pay the Debtors' obligations. (Sherbet II Trans. at 24:6-10 (App. B-11) and 121:4-19 (App. B-14)).  In addition, the uncontroverted testimony of Ms. Nguyen demonstrates that the Trustee would need more than just the Aged Payable Ledger to determine what liabilities were contained in the Debtors' books and records.  Ms. Nguyen testified that the Debtors recorded adjustments to invoices only on the face of the invoice itself (which invoices have been archived) and not on the General Ledger. (Nguyen Trans. at 44:1-23 (App. B-47)).  Therefore, not all invoiced amounts are reflected on the Aged Payable Ledger or the General Ledger.  One

---

[19] Avaya argues that the documents produced by Avaya during discovery were more than sufficient to enable the Trustee to fulfill his fiduciary duties. (Opening Brief at 32.) Avaya refers this Court to an objection filed by the Equity Committee (Avaya incorrectly states that the objection was filed by the Trustee. (Opening Brief at 32-33)) to a claim filed by the State of Ohio as proof of this argument. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." The burden of proof on determining the validity of tax claims rests on the objecting party. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20-21 (2000) (where the burden of proof is on taxpayer under substantive law creating tax obligation, the burden of proof on the tax claim in bankruptcy court remains where it is under the substantive law); *In re CM Holdings, Inc.*, 254 B.R. 578, 598-99 (D.Del. 2000) (same). Contemporaneously with the filing and service of the objection, the Equity Committee served the State of Ohio with discovery to attempt to obtain the necessary documentation to prosecute its objection to the claim as the documents in the possession of the Trustee are insufficient to meet the Equity Committee's burden of proof as to the objection. If the Trustee had possession of the Debtors' books and records it would have information related to the amount, type and form of sales activities within the State of Ohio that is necessary to prosecute the objection. However, since Avaya destroyed that information by reformatting the server and failed to produce the archived version of the Debtors' books and records without explanation, the Equity Committee is relying on the documentation produced by the State of Ohio, not the clearly insufficient documents produced by Avaya, to prosecute the objection.

needs the actual archived invoices to determine the proper amount of the Debtors' obligations. (Nguyen Trans. at 44:1-23 (App. B-47)). Avaya, however, has failed to produce those archived invoices.

Avaya also ignores the fact that it admits that it failed to pay 85% of the tax liabilities that Avaya admits it owes. These tax liabilities were not reflected in the Aged Payable Ledger. Mr. Thompson specifically testified that the accrued tax liabilities would not have been recorded in the Aged Payable Ledger, but instead would have been recorded in the applicable tax sub-ledgers. (Thompson Trans. 103:19-104:20 (App. B-33)).

Even Mr. Sherbet (Avaya's general counsel) admits that the Debtors' books and records consist of its "General Ledgers [and] other ordinary course records, the records that were comprised of the accounting system." (Sherbet I Trans. at 42:13-21 (App. B-7)). Avaya, however, destroyed the electronic copy of the General Ledger and has failed to produce the archived copy of the General Ledger (including sub-ledgers), invoices, or vendor files. Avaya offers no explanation for those failures. The Trustee is prejudiced by Avaya's destruction of the electronic version of the General Ledger in violation of the APA and its cavalier refusal to produce a copy of the archived General Ledger (including sub-ledgers), invoices, or vendor files.

Avaya has destroyed and failed to produce the "best evidence relating to the core issue in this case," which "inflicts the ultimate prejudice" upon the Trustee. *See Computer Assocs. Int'l, Inc.,* 133 F.R.D. at 170. The Bankruptcy Court's holding that since it did not agree with the Trustee's interpretation of Schedule 1.03, the Trustee was severely prejudiced by Avaya's destruction of the electronic version of the Debtors' books and records and failure to produce the hard copy of the Debtors' books and records was clearly supported by the evidence and not an abuse of the Bankruptcy Court's discretion.

### D. The Bankruptcy Court's Award of $1,888,410.52 Was Appropriate and Not an Abuse of the Bankruptcy Court's Discretionary Powers Under Rule 37

The Bankruptcy Court did not abuse its discretion in granting the Trustee judgment in the amount of $1,888,410.52. Avaya argues that there was no basis for the judgment award because the judgment is not reflective of the Debtors' books and records as of the Closing. (Opening Brief at 33). Avaya argues that the judgment includes claims that were asserted well into the bankruptcy case and long after the Closing,[20] and a claim for rejection damages[21]. (Opening Brief at 33). Consequently, Avaya argues that the Bankruptcy Court's sanction award exceeded Avaya's obligations under the APA. (Opening Brief at 34). However, Avaya misses the point on the purpose of a sanction award for spoliation of evidence under Rule 37. Because Avaya destroyed the server and failed to produce the hard copies of the Debtors' books and records, the Trustee is unable to prove the exact amount of Avaya's obligation under the APA. Therefore, he is entitled to judgment in the amount that he asserts was assumed under the APA in accordance with the Bankruptcy Court's findings regarding the proper interpretation of the APA. If spoliation sanctions were limited to what the movant can prove in terms of the underlying claim, there would never be a spoliation sanctions award because the reason the movant sought spoliation sanctions was because the non-moving party destroyed the evidence necessary for the

---

[20] This argument has already been addressed by the Trustee, so the Trustee refers the Court to page s 25-28 of this Brief instead of repeating those arguments.

[21] Avaya argues that the Trustee raised the $228,564 rejection damages claim of EOP Westbrook for the first time in a sur-reply brief. (Opening Brief at 5). However, the Trustee did not raise that claim in sur-reply, but instead raised the claim in his Motion of Chapter 11 Trustee for Leave to File Supplement Relating to Opening and Reply Briefs in Support of Chapter 11 Trustee's Motion for Partial Summary Judgment (Adv. D.I. 116). In Avaya's answering brief, Avaya stated that it would be willing to pay the claim subject to verification that the claim was valid. (Adv. D.I. 119 at 2). Therefore, the Bankruptcy Court's finding that Avaya conceded its liability for such a claim was not clearly erroneous or an abuse of discretion.

movant to prove damages on the underlying case. Requiring the moving party to prove the destroyed documents supports the underlying claim does not make any sense.

The Bankruptcy Court did not abuse its discretion in granting judgment to the Trustee in the amount of $1,888,410.52. The proper remedy for Avaya's destruction of electronic documents in violation of its contractual duty and its failure to produce relevant archived documents is entry of judgment against Avaya. Such a sanction is required because the Trustee does not have the underlying documents necessary to counter Avaya's contentions that certain obligations were not "accrued or recorded" after the Balance Sheet Date and that the schedules do not accurately reflect the Debtors' books and records. *See* MOORE'S FEDERAL PRACTICE, 3d § 37.12; *Shepherd v. ABC*, 62 F.3d 1469, 1479 (D.C.Cir. 1995) (judgment is appropriate remedy where destruction of documents deprives adversary of opportunity to present critical evidence).

The Bankruptcy Court specifically considered the alternative sanctions available based upon Avaya's conduct and properly concluded that even if the less severe sanctions were imposed the end result would be the same. Therefore, the Bankruptcy Court did not abuse its discretion in granting judgment in favor of the Trustee for all of the claims listed in the bankruptcy schedules and on the claim register that the Trustee contends were assumed by Avaya.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court affirm the Bankruptcy Court's Opinion and Order.

Dated: May 9, 2007
      Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:   /s/ Kimberly E. C. Lawson
      Kimberly E.C. Lawson (No. 3966)
      J. Cory Falgowski (No. 4546)
      1201 Market Street, Suite 1500
      Wilmington, DE 19801
      Telephone: (302) 778-7500
      Facsimile: (302) 778-7575

      Attorneys for Kurt F. Gwynne,
      Chapter 11 Trustee

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| QUINTUS CORPORATION, *et al.*,[1] | : | Case No. 01-00501 (MFW) |
| | : | Jointly Administered |
| Debtors. | : | |

| | | |
|---|---|---|
| AVAYA, INC. | : | |
| | : | |
| Appellant, | : | C.A. No. 06-769 (SLR) |
| | : | |
| v. | : | Adv. Proc. No. 04-53074 (MFW) |
| | : | |
| KURT F. GWYNNE, CHAPTER 11 TRUSTEE, | : | |
| | : | |
| Appellee. | : | |

## CERTIFICATE OF SERVICE

I, Kimberly E. C. Lawson, Esq., hereby certify that on this 9th day of May, 2007 I caused true and correct copies of the following:

1. Answering Brief Of The Chapter 11 Trustee In Opposition To Avaya's Appeal From An Order Of The Bankruptcy Court; and

2. Appendix To Answering Brief Of The Chapter 11 Trustee In Opposition To Avaya's Appeal From An Order Of The Bankruptcy Court

to be served upon the addressees on the attached service list in the manners indicated.

By: /s/ Kimberly E. C. Lawson
Kimberly E. C. Lawson (No. 3966)

---

[1] The Debtors are the following entities: Quintus Corporation, Mustang.com, Inc., and Acuity Corp.