## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE: Quintus Corporation, et al.

| | |
|---|---|
| Avaya, Inc. | ) |
| | ) |
| Appellant, | )   C.A. No. 06-769 (SLR) |
| | ) |
| v. | ) |
| | ) |
| KURT F. GWYNNE, Chapter 11 | )   Bankruptcy Case No. 01-00501 through |
| Trustee, | )                   01-00503 (MFW) |
| | )   Adv.   04-53074 |
| Appellee. | )   AP     06-06-73 |

## REPLY BRIEF OF DEFENDANT AVAYA
## IN SUPPORT OF ITS APPEAL FROM AN ORDER
## OF THE BANKRUPTCY COURT

ROSENTHAL, MONHAIT & GODDESS, P.A.
Jeffrey S. Goddess (Del. Bar. No. 630)
919 N. Market Street, Suite 1401
Wilmington, DE 19801
jgoddess@rmgglaw.com
(302) 656-4433

- and -

SIDLEY AUSTIN LLP
James D. Arden
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

May 23, 2007

*Attorneys for Appellant*

**TABLE OF CONTENTS**

**PAGE**:

TABLE OF CITATIONS      ii

INTRODUCTION      1

ARGUMENT      3

     I.     AVAYA ASSUMED ONLY LIABILITIES LISTED      5
                ON DEBTORS' BOOKS AND RECORDS AS OF
                THE CLOSING DATE

            A.     "Accrued Or Recorded" Means Entered In The      5
                     Company Books And Records

            B.     As Its Author Testified, The Final Schedule Sets      6
                     Forty All Assumed Liabilities

            C.     Vendor Invoices Are Not Part Of Debtors' Books      10
                     And Records

            D.     Bankruptcy Schedules Are Not Company Books      12
                     And Records

     II.     THE BANKRUPTCY COURT ABUSED ITS DISCRETION      13
                IN ENTERING JUDGMENT FOR THE SPOLIATION OF
                EVIDENCE

            A.     There Is No Evidence That Avaya Destroyed Documents      14
                     To Impede Anticipated Litigation Over The Payment Of
                     Assumed Liabilities

            B.     There Was No Evidence Of Prejudice By The Alleged      16
                     Destruction Of Evidence Or The Purportedly Belated
                     Production

            C.     The Bankruptcy Court's Award Of $1,888,410.52 Was      19
                     Not Appropriate Under The APA

CONCLUSION      20

## TABLE OF CITATIONS

**CASE**:                                                                    **PAGE**:

*American Flint Workers Union v. Anchor Resolution Corp.*,                         3
    197 F.3d 76 (3d Cir. 1999)

*Brewer v. Quaker State Oil Refining Corp.*,                                    4, 13
    72 F.3d 326 (3d Cir. 1995)

*In re DaimlerChrysler AG Sec. Litig.*,                                        16, 17
    2003 WL 22951696 (D.Del. Nov. 25, 2003)

*In re General DataComm Indus.*,                                                  3
    407 F.3d 616 (3d Cir. 2005)

*Hickman v. Carnival Corp.*,                                                     15
    2005 WL 3675961 (S.D. Fla. July 11, 2005)

*Jaconski v. Avisum Corp.*,                                                      10
    359 F.2d 931 (3d Cir. 1966)

*Josey v. John R. Hollingsworth Corp.*,                                          4
    996 F.2d 632 (3d Cir. 1993)

*Menz v. New Holland North America, Inc.*,                                     13, 16
    2006 WL 645908 (8th Cir. March 16, 2006)

*Schmid v. Milwaukee Elec. Tool Corp.*,                                      4, 13, 16
    13 F.3d 76 (3d Cir. 1994)

*Shamis v. Ambassador Factors Corp.*,                                       13, 15, 16
    34 F.Supp.2d 879 (S.D.N.Y. 1999)

*In re Trans World Airlines, Inc.*,                                               3
    145 F.3d 124 (3d Cir. 1998)

**OTHER AUTHORITIES**:

29 Am.Jur.2d Evidence §177                                                      13

## **INTRODUCTION**

Rather than addressing the arguments in the Opening Brief, the Trustee's brief argues points the Bankruptcy Court properly rejected, seeks to introduce new facts and arguments, and misconstrues the evidence properly before the Bankruptcy Court on the Summary Judgment and Sanctions Motions.[1] The Trustee continues to argue that Avaya assumed all liabilities incurred by Debtors prior to the Closing Date, regardless of whether those were accrued or recorded in the books and records of Debtors. In fact, as the Bankruptcy Court correctly held, "Avaya assumed only obligations that were reflected in the Debtors' books and records" (Opinion at 20) – a ruling the Trustee does not contest by cross-appeal. Indeed, the sole former Quintus officer to be deposed, Mark Thompson, testified that his understanding was the same as Avaya's: Assumed Liabilities were accrued or recorded in the accounting system of Quintus, in the ordinary course and consistent with past practice, "up to closing." (Thompson Tr. at 22:1-7 (App. 182).) The Trustee does not cite any evidence to support the Bankruptcy Court's notion that Avaya could assume additional *Quintus* liabilities *after the Closing* by entering them into *Avaya's* books.

Mr. Thompson further testified on personal knowledge that the Final Schedule he prepared captured all the liabilities entered in the accounting system (as accrued or recorded entries) as of the Closing. The Trustee cites no evidence against Mr. Thompson's unequivocal testimony concerning the Assumed Liabilities or the Final Schedule. Even if there had been evidence presented against Mr. Thompson's testimony – and there was none – the Bankruptcy Court's decision to resolve these facts against Avaya on summary judgment was plain error.

---

[1] All defined terms are used as in Avaya's Opening Brief ("Opening Brief" or "Op. Br."). The Chapter 11 Trustee's opposition brief is referred to as "Opposition" or "Op Br.". References to App. C 1, *et seq*. refer to portions of the record that included in the accompanying appendix.

The Trustee similarly fails to support the award of sanctions. The Bankruptcy Court erred in holding that Avaya's deletion of electronic records for a business reason – "in order to give itself more computer space" long before the instant suit was initiated – somehow satisfied the strict standards for sanctions. (Opinion at 9.) In the face of the Court's clear error, the Trustee introduces new allegations of difficulties in discovery, even citing a subpoena to Bank of America for checks cashed by creditors – while omitting the fact that Avaya cooperated with the subpoena and shared in the costs of the bank's production. These issues would not support sanctions and were not even cited as the basis of the sanctions award. The Bankruptcy Court relied on the "deliberate" reformatting of electronic records, its mistaken notion that Avaya had an obligation to maintain records of its payments of Assumed Liabilities under the APA, and its neglect of the law authorizing sanctions only where the conduct at issue was undertaken with the intent to impede or obstruct a pending or threatened litigation. (Id.)

There was no evidence before the Bankruptcy Court that at the time the electronic records were lost Avaya did not intend to pay all Assumed Liabilities. Mr. Thompson testified, and documents produced confirm, that as of June 30, 2001 only approximately $1,199 in trade liabilities and $138,000 in tax liabilities remained unpaid. (See Thompson Tr. at 41:8-14 (App. 196); App. 151-152.)[2] Moreover, the Trustee utterly fails to show that the information he has is insufficient for him to fulfill his responsibilities. Indeed, the Trustee does not even address the fact that that he and the Equity Committee relied on such information in arguing, in a recent filing in the main bankruptcy action, that a tax claim filed by the State of Ohio "was grossly disproportionate with the [amount] listed in [Debtors'] Books and Records as being due and owing to Ohio." (In re Quintus Corporation, Bankruptcy Petition Number 001-00501-MFW,

---

[2]     Although these schedules demonstrated that Avaya paid substantially all Assumed Liabilities, the subsequent failure of certain creditors to cash issued checks left certain additional amounts outstanding.

2

D.I. 1549 at ¶ 12.) Because there is no basis to conclude that Avaya deliberately destroyed documents to suppress the truth, any sanctions award is inappropriate. At the very least, the $1,888,410.52 judgment – consisting chiefly of claims asserted after the Closing with respect to alleged liabilities that Avaya did not assume – was grossly excessive insofar as it was not based on any showing of prejudice to the Trustee.

The Bankruptcy Court's Opinion and Order should be reversed, except to the extent that it correctly held "that Avaya assumed only obligations that were reflected in the Debtors' books and records." (Opinion at 20.) This action should be remanded for an evidentiary hearing to determine which Assumed Liabilities remain unpaid.

## ARGUMENT

Generally, this Court should apply a *de novo* standard of review to the Bankruptcy Court's legal determinations, and review its factual findings "for clear error and its exercise of discretion for abuse thereof." In re General DataComm Indus., 407 F.3d 616, 619 (3d Cir. 2005) (quoting In re Trans World Airlines, Inc., 145 F.3d 124, 130-31 (3d Cir. 1998); see also American Flint Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). Significantly, the standard of review is more exacting where, as here, a grant of summary judgment is appealed: "the grant of summary judgment, a purely legal determination, [is subject to] a de novo standard of review." American Flint, 197 F.3d at 80. The Trustee cites American Flint, but overlooks its statement of the *de novo* standard of review applicable here.

The Bankruptcy Court properly determined that under the unambiguous language of the APA, "Avaya assumed only obligations that were reflected in the Debtors' books and records." (Opinion at 20.) However, the Bankruptcy Court departed from the language of the APA and the evidence presented in holding Avaya liable for unbooked invoices and liabilities listed on the Debtors' bankruptcy schedules – and in so doing failed to observe the fundamental

3

principle that, on summary judgment, the Court "cannot decide issues of fact" and must view the depositions and exhibits presented "in the light most favorable to the non-moving party." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993) (citation omitted). Indeed, the Bankruptcy Court decided facts against Avaya in the face of uncontradicted evidence that both sides to the APA understood that the scope of Assumed Liabilities excluded those that were not "accrued or recorded" in the accounting system at the time the Avaya acquisition closed.

Sanctions are appropriate only where "the party that has prevented the production did so out of the well-founded fear that the contents would harm him." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995). In determining whether sanctions are appropriate for the spoliation of evidence, the Court should consider:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994) (citations omitted).[3] In the Answering Brief, the Trustee fails to support the Bankruptcy Court's decision under the applicable standards, much less defend its disregard of legal precedent and uncontroverted testimony.

---

[3] In the Answering Brief, the Trustee contends that the "Bankruptcy Court also considered the non-production of hard copies of the Debtors'' books and records to the Trustee as a basis for the sanction imposed." (Ans. Br. at 22 (citing Opinion at 9, n.5.).)  In fact, the Bankruptcy Court relied on only one action for showing a "deliberate" loss of records – that "Avaya deleted the Debtors electronic records …." (Opinion at 9.)  The Bankruptcy Court did not undertake any analysis, as required before sanctions should be issued, to determine whether the purported destruction of hard-copies of documents was in any sense deliberate, much less undertaken "out of the well-founded fear that the contents would harm him." Brewer, 72 F.3d at 334.  Nonetheless, as explained herein, there is no basis for awarding sanctions based on the destruction of hard copies of documents or electronic documents. (See infra Section II.)

4

## I.    AVAYA ASSUMED ONLY LIABILITIES LISTED ON DEBTORS' BOOKS AND RECORDS AS OF THE CLOSING DATE

As the Bankruptcy Court correctly held, "Avaya assumed only obligations that were reflected in the Debtors' books and records." (Opinion at 20.) The Trustee attempts to expand the scope of Avaya's obligations to include liabilities that Debtors may have incurred, and could be reflected on invoices, but were not accrued or recorded in Debtors' books. (See Ans. Br. at 12-17.) This argument is directly contrary to the the APA and not supported by any evidence.

### A.    "Accrued Or Recorded" Means Entered In The Company Books And Records

Pursuant to the APA, Avaya is only responsible for liabilities listed on Debtors' books and records as of the Closing Date. Schedule 1.03 obligates Avaya to pay:

> All liabilities listed on the Company Balance Sheet ... and all liabilities accrued or recorded after the Balance Sheet Date in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing Date, provided that the aggregate amount of liabilities assumed pursuant to this paragraph shall not exceed $30,000,000....

(App. 62.) Avaya did not agree to assume liabilities that were (or could be) entered into Debtors' books and records after the Closing Date. Instead, Avaya agreed only to assume liabilities that were reflected on Debtors' books and records, either as an accrual or a recording "up to the closing date." (Thompson Tr. at 22:1-7 (App. 182).) Moreover, any liabilities entered in the books and records after the Closing Date – when the books and records were transferred to Avaya – by definition could not have been entered in the Debtor's books or entered "in the ordinary course of business consistent with past practice" as required by Schedule 1.03. (See App. 62; see also Opinion at 26.) In the Answering Brief, the Trustee does not – and cannot – challenge the fact that both parties understood that liabilities had to be accrued or recorded prior to the Closing Date for such liabilities to be assumed under the APA.

5

The Trustee concedes that to be "recorded," a liability must be entered in a company's books and records. (See Gwynne Tr. at 58:23-59:2 (App. 159-160).) However, ignoring both accounting literature and uncontroverted testimony, the Trustee continues to argue that "accrued" has the same meaning as "incurred." (See, e.g., Ans. Br. at 13.) This argument was correctly rejected by the Bankruptcy Court: "the Court is persuaded that the parties intended the term 'accrued' to have its financial meaning, that is, an obligation which must be estimated on the Debtors' books and records for purposes of accounting." (Opinion at 19-20.) Likewise, the Trustee's suggestion that Avaya assumed incurred liabilities that *should have been* accrued or recorded on Debtors books and records (see Ans. Br. at 13) is flatly contradicted by the plain language of the APA. The liabilities at issue here were assumed only if, *inter alia*, they were "accrued or recorded." (App. 62). The parties knew how to draft language when they wished to capture unbooked liabilities that "should be" booked: the second half of Schedule 1.03 provides that certain categories of liabilities not at issue here were assumed if they were "or should be accrued or recorded on the Company balance sheet." (Id.) The text and structure of Section 1.03 defeat the Trustee's argument that Avaya assumed all liabilities incurred by Debtors. The Bankruptcy Courts' holding is correct that "Avaya assumed only obligations that were reflected in Debtors' books and records for purposes of accounting." (Opinion at 20.)

## B.    As Its Author Testified, The Final Schedule Sets Forth All Assumed Liabilities

In the Answering Brief, the Trustee argues that the Final Schedule is only an estimate of Assumed Liabilities. (See Ans. Br. at 15-16, 19.) While asserting this bald conclusion, the Trustee does not dispute Mr. Thompson's testimony that the Final Schedule reflected all liabilities that were present on Debtors' books and records as of the Closing Date and thus reflected all Assumed Liabilities. (See Thompson Tr. at 29:16-30:2 (App. 188-189);

6

see also Ans. Br. at 16.) Instead, the Trustee misconstrues the facts to argue that the Final

Schedule "was subject to verification, comments and challenge *after the Closing*." (Ans. Br. at

16 (emphasis in original).) The Trustee confuses the Initial Schedule with the Final Schedule.

Six days prior to the Closing, on April 5, 2001, Debtors submitted the Initial Schedule setting

forth an "estimate of the Assumed Liabilities as of the Closing Date" as required by Section 1.03

of the APA. (See App. 10-11.) Section 1.03 required that after an estimate of Assumed

Liabilities was submitted by Debtors, Avaya had the "right to confirm the accuracy of the

schedule for a period of 5 business days *after* the Closing." (Id. at 11 (emphasis supplied).)

Nine days *after* the Closing Date, on April 20, 2001, Debtors submitted the Final Schedule,

which Avaya accepted and signed. The Final Schedule was not (nor could have been) a forward-

looking statement of what Debtors' books and records would look like as of the Closing Date,

but rather reflected the books as they were at Closing. (See App. 72-74.) Indeed, the cover

memorandum to the Final Schedule makes clear that it was submitted to Avaya "in lieu of" the

estimate of Assumed Liabilities required by Section 1.03 of the APA. (See App. 72.)

Nor is there any support for the Trustee's argument that the Final Schedule does

not capture the liabilities accrued or recorded on Debtors' books and records because the Final

Schedule "estimates" certain liabilities. (See Ans. Br. at 17.) Under basic accounting principles,

an "accrued liability" signifies a liability that is not recorded, yet is listed under current liabilities

on a company's books and records. See Barron's Dictionary of Accounting Terms 12 (3d ed.

2000); see also Opinion at 20. An "accrual" occurs prior to receipt of a final bill or invoice.

(See Asthana Tr. at 69:16-17 (App. 176); see also FASB Statement of Financial Accounting

Concepts No. 6 ("[a]ccrual is concerned with expected future cash receipts and payments; it is

the accounting process of recognizing assets or liabilities and the related liabilities, assets,

revenues, expenses, gains, or losses for amounts expected to be received or paid, usually in cash, in the future.").) The undisputed evidence is that Mr. Thompson prepared the Final Schedule using Debtors' books and records, and that the Final Schedule listed the total amount of all unpaid trade payables and tax liabilities reflected on Debtors' books and records that Avaya assumed under the APA. (See Thompson Tr. at 29:16-30:2 (App. 188-189).) Moreover, as set forth in Avaya's Opening Brief, and not refuted by the Trustee, the word "estimate" in the Final Schedule appears only as the basis for actual accruals or the vestige of the prior, Initial Schedule. (See Op. Br. at 24.) Accordingly, there is nothing noteworthy about including accruals, which are liabilities entered on a company's books prior to receipt of an invoice, in the Final Schedule. The unrefuted evidence is clear: all liabilities assumed by Avaya were reflected in the Final Schedule, and those liabilities not reflected in the Final Schedule remained Debtors' obligation to pay. (App. 72-74; Thompson Tr. at 34:20-35:20 (App. 190-191).)[4]

Also unavailing is the Trustee's argument that the Final Schedule did not reflect all Assumed Liabilities as of the Closing because it was not used by Avaya employees to pay Assumed Liabilities. (See Ans. Br. at 16-17.) The purpose of the Final Schedule was to reflect which liabilities Avaya assumed under the APA (see Thompson Tr. at 29:16-30:2 (App. 188-189); other documents were used to track the payment of Assumed Liabilities. After the Closing, Mr. Thompson generated interim financial schedules showing the payments that had been made. (See Thompson Tr. at 37:14-38:21 (App. 193-194); see also, App. 138 (showing that as of April 30, 2001, over $4.5 million in Assumed Liabilities had been paid).) On July 25, 2001, Mr. Thompson provided Avaya a schedule that demonstrated that, as of June 30, 2001, only $1,199 in trade liabilities and $138,826.90 in tax liabilities that Avaya assumed under the

---

[4]    The Trustee's argument that "[o]ne must review the books and records to determine the actual assumed liabilities" (Ans. Br. at 17) likewise fails because that simply states what Mr. Thompson in fact did to prepare the Final Schedule.  (See Thompson Tr. at 29:16-30:2 (App. 188-189).)

8

APA remained outstanding. (See Thompson Tr. at 41:8-14 (App. 196); App. 151-152.)[5]

Further, Mr. Thompson preformed monthly reconciliations of the Payables Report to the General

Ledger to ensure the accuracy of the trade payable information. (See Thompson Tr. at 61:21-25

(App. 202); see also Asthana Tr. at 58:18-59:12 (App. 174-175).) Avaya also produced copies

of documents establishing that there was no material difference between the outstanding trade

payable liabilities reflected in the Payables Report and the General Ledger after almost all of

those liabilities had been paid. (See App. 139-146.) The testimony of Mr. Thompson and Ms.

Nguyen further confirm that the interim schedules that Mr. Thompson prepared accurately

reflected the books and records. (See Thompson Tr. at 36:8-12; 60:17-25 (App. 192, 201); see

also Nguyen Tr. at 13:20-23 (App. 217).)

Against all this evidence, the Trustee seeks to rely on certain testimony of Greg

Maloney (Ans. Br. at 17); however, Mr. Maloney was not involved in the negotiation of the

APA, the creation of the Final Schedule, or the payment of Assumed Liabilities, which was Mr.

Thompson's responsibility. (See Thompson Tr. at 36:8-12 (App. 192).) In the testimony cited

by the Trustee, Mr. Maloney responded to a series of questions about an attachment to an email

"from Mary Chan to the larger integration team" concerning a section entitled "Finance -

Shobhna Asthana & Mark Thompson." (See Maloney Tr. at 131:8-24 (App. B-23).) The two

persons actually associated with the statement which the Trustee asked Mr. Maloney to construe

– Ms. Asthana and Mr. Thompson – provide absolutely no support for the Trustee's claim that

$500,000 in payables remained outstanding in August 2001. In fact, Mr. Thompson testified that

---

[5]     The Trustee complains that because "the amounts listed on the second page of the June Schedule are listed by sub-ledger account number and not by taxing authority name … it is impossible for the Trustee to determine which taxing authorities were supposed to be paid what amounts…." (Ans. Br. at 22-23.) However, the June Schedule includes a state-by-state breakdown of each of the assumed tax liabilities that remained outstanding as of June 30, 2001. (App. 151-152.) The Trustee's complaint relates at most to how Avaya maintained its records in the ordinary course of business, an insufficient basis to award sanctions for the spoliation of evidence. In any event, the account reconciliations Avaya produced during discovery include the account number and the taxing authority name. (See, e.g., App. C-1-11.)

9

by that time Avaya had paid substantially all of liabilities it assumed from Quintus. (See

Thompson Tr. at 41:8-14 (App. 196).) Because Mr. Maloney lacked personal knowledge (and

testified to that lack), his statements cannot create a genuine issue with respect to the testimony

of Mr. Thompson, much less support any grant of summary judgment to the Trustee.

### C.    Vendor Invoices Are Not Part Of Debtors' Books And Records

Attempting to create obligations beyond those specified in the APA and identified

in the Final Schedule, the Trustee argues that "the liabilities of Debtors were not just reflected in

the Payables Report, but were reflected in other locations, such as various sub-ledgers of the

General Ledger, invoices, and vendor files." (Ans. Br. at 14.)[6]  This muddled argument ignores

both the language the APA and the way Quintus kept its books. First, it assumes that liabilities

did not need to be reflected in the books by entries in the ordinary course, but merely needed to

be "reflected in other locations" – as if the mere existence of invoices in a physical location were

enough for them to be deemed "accrued or recorded" even if they were not booked. Second, it

ignores that the subledgers tie to the General Ledger within the same accounting system and that

the only subledger concerning unpaid trade payables is the Payables Report.[7]

Invoiced amounts become reflected in the books only by entries to the accounting

system. (See Nguyen Tr. at 33:7-8 (App. 220).) The Trustee misconstrues the testimony of Ms.

Nguyen to suggest that notations on invoices somehow constitute a separate accounting system

---

[6]       To attempt to support this argument, and others, the Trustee not only mischaracterizes testimony but
impermissibly cites to pages of deposition testimony that was not considered by the Bankruptcy Court on the
Summary Judgment Motions or the Sanctions Motions. An appellate court should only consider the "record only as
it existed at the time the court below" made its determination. See Jaconski v. Avisum Corp., 359 F.2d 931, 937 n.
11 (3d Cir. 1966). Pages from Mr. Thompson's deposition transcript now cited by the Trustee but not part of the
record on this appeal include 52, 73, 78, 29, 81, 105, 137 and 138.

[7]       The Trustee even misconstrues Avaya's position to argue that "Avaya did not deny that any proofs of claim
filed prior to the Closing date constituted an assumed liabitility." (Ans. Br. at 14, n.8.) Avaya's position has always
been that as set forth in the APA: liabilities are assumed only if accrued or recorded on Debtors' books. Proofs of
claim are irrelevant to that question.

reflecting Assumed Liabilities. (Ans. Br. at 15.) However, as Ms. Nguyen testified, notations were made on invoices simply in connection with the contemporaneous recording (or "vouchering") of entries of amounts that were less than the amounts set forth in the original invoice. Changes were made on the face of invoices only to conform to the adjusted amounts entered in the Payables Report, which included everything that had been entered into the accounting system. (See Nguyen Tr. at 44:14-16 (App. B-47); Thompson Tr. at 44:9-11 (App. 197).)

        The Trustee's effort to portray notations on invoices as an act of recording, rather than acts merely incidental to the actual recordings to the books, is egregious. As the testimony of Mr. Thompson – the person responsible for the payment of Assumed Liabilities (see Thompson Tr. at 36:8-12 (App. 192); Nguyen Tr. at 13:16-23 (App. 217) – makes clear, all liabilities accrued or recorded (and assumed by Avaya) were reflected on the Final Schedule (Thompson Tr. at 29:16-30:2 (App. 188-189), and the Payables Report showed "all of the vouchered invoices that [Debtors] had received at that point in time" (Thompson Tr. at 44:9-11 (App. 197)).[8] Likewise, the Trustee's reliance on Mr. Sherbet's testimony[9] to argue that vendor invoices are part of Debtor's books and records is misplaced. Mr. Sherbet testified that "Quintus' financial records … [i]ncludes things like general ledger." (Sherbet I Tr. at 42:13-21 (App. B-7).) Mr. Sherbet's testimony is in no way inconsistent with the testimony of Mr. Thompson – that the amounts in the Final Schedule matched precisely those amounts that were accrued or recorded in Debtors' books and records as of Closing.

---

[8]     The Payables Report contains "anything that was vouchered into the accounts payable ledger that did not get paid." (Nguyen Tr. at 33:7-8 (App. 220).)

[9]     The Trustee calls Mr. Sherbet "Avaya's general counsel" (Ans. Br. at 15), a post he never held (see Deposition Transcript of Eric M. Sherbet, dated November 22, 2005 at 8:6-13 (App. C-14).)

11

### D.    Bankruptcy Schedules Are Not Company Books And Records

Under Schedule 1.03, Avaya assumed only those liabilities "accrued or recorded

after the Balance Sheet Date *in the ordinary course of business consistent with past practices*."

(App. 62 (emphasis supplied).)  Recognizing that bankruptcy schedules are neither the Debtors'

books and records nor something "Debtors prepared in the past in the ordinary course of their

business," the Trustee argues that "the underlying books and records that formed the basis of the

[bankruptcy] schedules were prepared in the ordinary course of the Debtors' business consistent

with past practices."  (Ans. Br. at 18.)  The Trustee presented no evidence concerning who

prepared Debtors' bankruptcy schedules or how they were prepared.  Indeed, Mr. Thompson

testified, and the Trustee does not contest, that he did not believe his group prepared the

bankruptcy schedules.  (See Thompson Tr. at 146:12-17 (App. 210).)[10]

Instead, the Trustee relies on testimony from Mr. Thompson to argue that because

a liability is listed on a bankruptcy schedule, it *should* be in a ledger somewhere.  (See Ans. Br.

at 19.)  This obviously fails to constitute evidence that liabilities that "should" have been accrued

or recorded were in fact accrued or recorded.  The parties contemplated that some liabilities that

"should be accrued or recorded" might not be accrued or recorded, and provided for different

rules for different liabilities.  (See App. 62.)  The Trustee does not argue that the bankruptcy

schedules reflect liabilities falling in the narrow category of liabilities in Schedule 1.03 that are

assumed provided they "should be accrued or recorded"; rather, such liabilities are assumed only

to the extent "accrued or recorded."  Moreover, as set forth above, the Final Schedule is an

accurate reflection of all liabilities that Avaya agreed to assume.  (See Thompson Tr. at 29:16-

---

[10]        Although Avaya has not admitted it is liable for \$321,383.83 in tax liabilities (see Ans. Br. at 23, 23 n.12),
an amount well in excess of the amounts accrued in the books, the Trustee's argument at most seeks to raise a
genuine issue of material fact that cannot be decided on a motion for summary judgment.

12

30:2 (App. 188-189); App. 72-74.) Accordingly, the Trustee's argument that the bankruptcy

schedules reflected Assumed Liabilities is wholly without any evidentiary support and

contradicted by the evidence before the Bankruptcy Court.

## II.    THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN ENTERING JUDGMENT FOR THE SPOLIATION OF EVIDENCE

Before awarding sanctions for the spoliation of evidence, the movant must

demonstrate that the party charged with destroying evidence "knew or should have known that

the destroyed evidence was relevant to pending, imminent or reasonably foreseeable litigation,"

Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 888-89 (S.D.N.Y. 1999), and that the

party who "has prevented production did so out of the well-founded fear that the contents would

harm him." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326,334 (3d Cir. 1995); see also

Menz v. New Holland North America, Inc., No. 05-1739, 2006 WL 645908, at *3 (8th Cir.

March 16, 2006) ("there must be a finding of intentional destruction indicating a desire to

suppress the truth" before sanctions may issue) (internal quotation omitted); 29 Am.Jur.2d

Evidence §177 (noting that sanctions are only appropriate when the destruction "was intentional,

and indicates fraud and a desire to suppress the truth, and [sanctions are not appropriate] where

the destruction was a matter of routine with no fraudulent intent"), quoted in Brewer, 72 F.3d at

334. Before awarding sanctions, the Court should consider, *inter alia*, "the degree of fault of the

party who altered or destroyed the evidence" and "the degree of prejudice suffered by opposing

party." Schmid, 13 F.3d at 79.

In the Answering Brief, the Trustee fails to demonstrate that Avaya destroyed any

documents relevant to "pending, imminent or foreseeable litigation" or that anyone at Avaya

destroyed documents out of the "well-founded fear that the contents would harm" Avaya. *See*

Shamis, 34 F. Sup. 2d at 888-89; Brewer, 72 F. 3d at 334. Moreover, even if the Trustee

13

otherwise had met the strict standards for sanctions, the award could not be sustained because the

Trustee has failed to demonstrate any prejudice he suffered as a result of the alleged destruction

of documents. For these reasons, the Bankruptcy Court's sanctions were wholly unsupported,

contrary to settled precedent, and extreme, and therefore should be reversed.

## A.    There Is No Evidence That Avaya Destroyed Documents To Impede Anticipated Litigation Over The Payment Of Assumed Liabilities

The Trustee's argument that "Avaya was aware that it had not satisfied all of the

assumed liabilities under the APA and Final Schedule and should have preserved the Debtors'

books and records" (Ans. Br. at 28) ignores the relevant documents produced in this action and

the facts leading up to the purported destruction of evidence. On July 25, 2001, six months

before the Trustee was appointed, Mr. Thompson provided other Avaya employees with a

schedule showing that as of June 30, 2001, only $1,199 in trade liabilities and certain specified

tax liabilities it assumed remained unpaid. (See App. 147-152.)[11]  There is absolutely no

evidence that Avaya did not intend to pay the relatively few remaining liabilities. The Trustee,

however, misconstrues the testimony of Mr. Maloney to argue that it should have been aware

that litigation with Debtors was foreseeable. (See Ans. Br. at 28-29.) Mr. Maloney construed a

line in a document from August 2001 that he did not author as meaning that some Assumed

Liabilities remained unpaid. (See Maloney Tr. at 131:21-132:7 (App. B-23-B-24).) This alone,

however, is not sufficient to demonstrate that litigation with Debtors was "reasonably

foreseeable." Under the Trustee's strained logic, immediately after the Closing Date, Avaya

should have anticipated litigation with Debtors because Assumed Liabilities remained unpaid.

As expected, the Assumed Liabilities were being substantially paid down in the months

---

[11]    The Trustee seeks to rely on the June 30, 2001 schedule to argue (incorrectly) that "Avaya owed $2,458,507 in unpaid assumed *accrued* liabilities." (Ans. Br. at 29 (emphasis supplied). )  The $2,458,507 figure is irrelevant as it includes accruals paid over time and not in dispute, such as payroll and accrued vacation. (See App. 152.)

14

following the Closing, and there was no evidence presented that at the relevant time there was even the remotest suggestion of a future dispute about any payment. See Hickman v. Carnival Corp., No. 04-20044 CIV UUB, 2005 WL 3675961, at *2 (S.D. Fla. July 11, 2005) ("the duty to preserve evidence must be based on more than the mere possibility that something may occur at some time in the future"). Indeed, this lawsuit was not commenced until 2004.

Also without merit is the Trustee's argument that Avaya should have anticipated litigation with Debtors' because "incurred" liabilities remained outstanding. (See Ans. Br. at 26-28, 35-37.) As noted above, the parties negotiated that Avaya would not be responsible for "incurred" liabilities, but only those actually included in the books and records as of Closing, which corresponded to the amounts on the Final Schedule. Thus, Avaya had no inkling that it would become involved in litigation brought at some distant future time by a yet-to-be appointed Trustee, seeking a recovery of "incurred" obligations that the parties had already agreed that Avaya did not have to pay. See Shamis, 34 F. Supp. 2d at 888-89.

The Trustee's reliance on an affidavit from Mr. Michel of DSI further demonstrates that Avaya had no reason to anticipate litigation when the documents were allegedly destroyed. Mr. Thompson testified that he transferred all of his files to DSI (Debtors' agent) before leaving and that DSI was permitted unfettered access to Debtors' books and records during the transition period. (See Thompson Tr. at 65:13-66:1.)[12] Mr. Michel's Affidavit acknowledges that he "had access to the financial records of the Debtors." (Ans. Br. at 31 (quoting Adv. D.I. 114, Ex. G, ¶11).) Mr. Michel does not claim that DSI ever raised any issue concerning the payment of Assumed Liabilities or indicated that there could be future

---

[12]     In the Answering Brief, the Trustee argues that Mr. Thompson "recanted" his prior testimony on cross-examination and that any confusion regarding Mr. Thompson's testimony could be resolved by the affidavits of Messr. Michel and Sharp. (See Ans. Br. at 30-31). Not only is resolving a factual dispute improper on summary judgment, but Mr. Michel's Affidavit makes clear that Avaya had no reason to anticipate litigation when the documents were allegedly destroyed.

15

litigation with Debtors. Thus, the Trustee seeks to impose a duty on Avaya to divine potential litigation at a time when *Debtors' own agents* had no reason to anticipate litigation. This falls woefully short of "pending, imminent or reasonably foreseeable litigation." Shamis, 34 F. Supp. 2d 888-89.

    In any event, the award of sanctions was an abuse of discretion for the further reason that absolutely no evidence suggested that the server was reformatted to conceal documents relevant to future – and unforeseen – litigation. The Trustee does not even argue – and there is no evidence – that the person who re-formatted the server did so with any awareness of future litigation or for any reason other than the business need for space on the server. Accordingly, the sanctions award was improper. See Menz v. New Holland North America, Inc., No. 05-1739, 2006 WL 645908, at *3 (8th Cir. March 16, 2006) ("there must be a finding of intentional destruction indicating a desire to suppress the truth" before sanctions may issue) (internal quotation omitted).[13]

### B.    There Was No Evidence Of Prejudice By The Alleged Destruction Of Evidence Or The Purportedly Belated Production

    The Bankruptcy Court's sanctions also should be reversed in view of the Trustee's failure to show any prejudice from the reformatting of the server or the purportedly belated production of documents. See Schmid, 13 F.3d at 81 (reversing sanctions award where there was no showing of prejudice to the movant). Where dispositive sanctions are sought, the "burden of establishing prejudice must be shown by 'direct evidence which is clear and convincing.'" In re DaimlerChrysler AG Sec. Litig., No. Civ. A 00-993-JJF, 2003 WL

---

[13]    Moreover, explained in Avaya's Opening Brief, Mr. Thompson and Ms. Nguyen generated electronic information concerning post-closing payment of Assumed Liabilities, which were stored on one of Avaya's servers. Such post-closing information is not relevant to the question of the scope of liabilities that Avaya assumed under the APA. Likewise, the Trustee's argument that Avaya had a contractual obligation to preserve the server is without merit -- and would not support the sanction here in any event. The lost records were created by Mr. Thompson and Mr. Nguyen in connection with their responsibilities as Avaya employees and therefore do not fall within the scope of Section 5.05 of the APA. (See App. 36-37.)

22951696, at \*2, n.2 (D. Del. Nov. 25, 2003) (internal citation omitted). Rather than present any direct evidence, the Trustee simply asserts prejudice "because of Avaya's argument that scheduled claims may not have been listed in the General Ledger or other books and records destroyed (or archived and not produced) by Avaya." (Ans. Br. at 35.)

Among the documents that Avaya produced during discovery were the Final Schedule, which sets forth all of the liabilities Avaya assumed under the APA (App. 72-74); a copy of the Payables Report, which lists, by vendor, *all* of the trade liabilities that existed on Debtor's books at Closing and were unpaid as of April 20, 2001 (App. 75-133); interim schedules that reflect the payment of Assumed Liabilities after April 20, 2001 (see, e.g., App. 138); and the schedule created by Mr. Thompson showing the payment of Assumed Liabilities through June 30, 2001, which includes a state-by-state breakdown of each of the assumed tax liabilities that remained outstanding as of June 30, 2001 (App. 151-152). Avaya also produced copies of documents establishing that the outstanding trade payable liabilities reflected in the Payables Report reconciled to the General Ledger, including at the time that almost all of those liabilities had been paid. (See App. 139-146.) There was no evidence rebutting the fact that the Payables Report produced to the Trustee reflected *all* payables entered in the books of Quintus and unpaid at Closing. That the documents produced are sufficient to enable the Trustee to perform his job is evidenced by the recent objection to the State of Ohio tax claim, which was based in part on documents produced by Avaya and the statements of Mr. Thompson. (See Ans. Br. at 36, n. 19; see also Op. Br. at 32.)[14]

---

[14]     The lack of prejudice is further evidence by another recent omnibus objection filed by the Equity Committee, supported by an affidavit of the Trustee, prior to which "[t]he Equity Committee, along with the Trustee, conducted a review of the Proofs of Claim and the information from the Debtors [sic] books and records *provided by Avaya ... to determine the validity of the asserted claims*." (In re Quintus Corporation, Bankruptcy Petition Number 001-00501-MFW, D.I. 1550 at ¶9, filed March 29, 2007(emphasis supplied).)

17

The Trustee asserts at several points in his brief that Avaya produced 2800 pages of documents after the close of discovery and even argues that the "Bankruptcy Court properly precluded Avaya from using the belatedly-produced documents or any information contained there in for any purpose in this litigation." (Ans. Br. at 25.) In fact, Avaya never sought to use the "belatedly-produced documents," which were merely consistent with such documents as the Final Schedule and the Payables Report. There is no basis to conclude that Avaya "selectively preserve[d] 'relevant' documents and only present[ed] those that it finds favorable to its case, at a time when it finds convenient." (Opinion at 29; see also Ans. Br. at 24-25.) Avaya engaged in an exhaustive search for relevant information and produced to the Trustee all documents. The Trustee merely speculates that documents may have helped his case, but offers nothing beyond a conclusory assertion.[15] This falls short of the required showing of prejudice to justify sanctions.

As Mr. Thompson unequivocally testified, the Final Schedule reflected "the liabilities we had put on our books" that Avaya agreed to assume under the APA. (Thompson Tr. at 29:18-30:07 (App. 188-89).) The details supporting the Assumed Liabilities are reflected in the Payables Report and the documents showing the reconciliation of accounts, which were produced during discovery. (See App. 75-133, 141-152.) Thus, the Trustee's speculation is flatly contradicted by the documents produced and the testimony elicited during discovery.[16]

The Trustee also fails to show any prejudice resulting from the reformatting of the server at some point after October 2001. As set forth above, Avaya produced documents setting forth all of the information needed by the Trustee to prosecute its breach of contract claim with

---

[15]    Tellingly, the Trustee was unable to identify either a single instance of prejudice by the late production of any document or a single document among those last produced by Avaya that would have materially advanced his position if it had been produced earlier.

[16]    Likewise, the Trustee's suggestion that he was somehow prejudiced because "the Trustee was forced to issue a subpoena on April 8, 2005 to Bank of America Corporation" is frivolous. (Ans. Br. at 7.) The parties entered a stipulation to "jointly subpoena" the information from Bank of America. (See D.I. 28.)

18

respect to Avaya's obligations for Assumed Liabilities.[17]  The Trustee identifies no information

that may have been on the reformatted server that would somehow add anything or contradict

any relevant matter in either the breadth of documents Avaya produced or the undisputed

testimony concerning those documents.

## C.    The Bankruptcy Court's Award Of $1,888,410.52 Was Not Appropriate Under The APA

As set forth in Avaya's Opening Brief, the Bankruptcy Court's decision to award

$1,888,410.52 as a sanction is entirely inconsistent with its holding that "Avaya assumed only

obligations that were reflected in the Debtors' books and records." (Opinion at 20.)  The

sanctions award includes (a) claims that were asserted by creditors well into the bankruptcy case

and long after the Closing; (b) claims for rejection of contracts; and (c) claims, such as the

$519,784.49 tax claim of the State of Ohio, to which the Equity Committee and Trustee have

filed a formal objection. As evidenced again by the Equity Committee's recent omnibus

objection to certain claims, which was supported by the Trustee (In re Quintus Corporation,

Bankruptcy Petition Number 001-00501-MFW, D.I. 1550, filed March 29, 2007), the

Bankruptcy Court's Order granting the Equity Committee's objection to certain claims (In re

Quintus Corporation, Bankruptcy Petition Number 001-00501-MFW, D.I. 1571, entered May 15,

2007), and the recent withdrawal of a tax claim by the City of New York Finance Department (In

re Quintus Corporation, Bankruptcy Petition Number 001-00501-MFW, D.I. 1572, filed May 11,

2007), the Bankruptcy Court awarded the amounts of claims that are still in dispute and even

claims withdrawn by creditors. (See Op. Br. at 33-34; see also D.I. 94.)

---

[17]    Moreover, the Trustee brought and prosecuted its contract claim on the baseless theory that "accrued or recorded" liabilities under the APA meant all incurred liabilities, not on the theory that the Quintus books could somehow reflect any accrued or recorded trade payables other than those set forth in the Payables Report.

19

As explained above, the Bankruptcy Court's holding was correct insofar as it limited liabilities Avaya assumed under the APA to those "reflected in the Debtors' books and records." (Opinion at 20.)  Because Avaya did not assume *post-closing* liabilities under the APA, and because unbooked invoices, or notations made thereon, are not liabilities "accrued or recorded … in the ordinary course of business consistent with past practice" (App. 62), the bulk of the sanctions award related to potential liabilities that never were booked by Quintus.  The sanctions award is an abuse of discretion and should be reversed.

## CONCLUSION

For the foregoing reasons, and those set forth in Avaya's Opening Brief, Avaya respectfully requests that the Court reverse the Bankruptcy Court's Opinion and Order, except to the extent that it properly held that "Avaya assumed only obligations that were reflected in the Debtors' books and records" (Opinion at 20), and remand to determine which Assumed Liabilities remain unpaid.

Dated:  May 23, 2007

ROSENTHAL, MONHAIT, & GODDESS, P.A.

By:_____
     Jeffrey S. Goddess  (Del. Bar No. 630)
     919 N. Market Street
     Wilmington DE 19801
     (302) 656-4433
     jgoddess@rmgglaw.com

          - and -

SIDLEY AUSTIN LLP
James D. Arden
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendant Avaya, Inc.

20

## CERTIFICATE OF SERVICE

I, Jeffrey S. Goddess, hereby certify that on May 23, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to all registered participants. I further certify that I caused a copy of the foregoing document to be served upon the following persons in the manner indicated:

**First Class Mail**
(Official Committee of Unsecured Creditors)
Christopher A. Ward, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899-5130

**First Class Mail**
Richard Schepacarter, Esquire
Office of the U.S. Trustee
844 King Street, Room 2311
Wilmington, DE 19801

**First Class Mail**
(Official Committee of Equity Security
  Holders)
J. Mark Chevallier, Esquire
McGuire, Craddock & Strother, P.C.
Lincoln Plaza, Suite 3550
500 North Akard
Dallas, TX 75201

**First Class Mail**
Michael S. Etkin, Esquire
Ira M. Levee, Esquire
Lowenstein Sandler PC
65 Livington Avenue
Roseland, NJ 07068

**First Class Mail**
(Official Committee of Equity Security
  Holders)
Thomas E. Biron, Esquire
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103

**First Class Mail**
(Official Committee of Equity Security
  Holders)
Bonnie Glantz Fatell, Esquire
Blank Rome LLP
1201 Market Street #800
Wilmington, DE 19801-4226

**First Class Mail**
Kimberly E.C. Lawson, Esquire
Reed Smith LLP
1201 Market Street #1500
Wilmington, DE 19801-1163

_____
Jeffrey S. Goddess (Del. Bar No. 630)
Jessica Zeldin (Del. Bar No. 3558)
jgoddess@rmgglaw.com
jzeldin@rmgglaw.com
(302) 656-4433