IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: Quintus Corp., et al., ) | ) Bankr. Nos. 01-501 to 01-503 (MFW) |
| Debtors. ) | ) |
| AVAYA, INC. ) | ) |
| Appellant, ) | ) Adv. No. 04-53074 |
| v. ) | ) Civ. No. 06-769-SLR |
| KURT F. GWYNNE, ) Chapter 11 Trustee, ) | ) |
| Appellee. ) | ) |

**MEMORANDUM ORDER**

At Wilmington this 29th day of November, 2007, having reviewed the papers submitted in connection with the above captioned appeal;

IT IS ORDERED that said appeal is granted in part and denied in part, and the matter is remanded for clarification, as described below.

1. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of

the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. See In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002). The appropriate standard of review of the bankruptcy court's imposition of sanctions for the spoliation of evidence is abuse of discretion. See Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994); Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 870 (3d Cir. 1984).

2. **Background.** On February 22, 2001, Quintus Corporation and its subsidiaries (collectively "the Debtors") filed voluntary petitions for bankruptcy under chapter 11 of the Bankruptcy Code. On that same day, the Debtors executed an Asset Purchase Agreement ("APA") with Avaya, Inc. ("Avaya") for the sale of substantially all the Debtors' assets. In exchange for the Debtors' assets, Avaya agreed to assume certain of the Debtors' liabilities not to exceed $30 million and to pay $30 million in cash at closing. On April 6, 2001, the bankruptcy court entered an order authorizing the sale of the Debtors' assets free and clear of all claims and interests pursuant to the terms of the APA. The sale closed on April 11, 2001 (the "Closing Date"). On the Closing Date, the Debtors transferred their books and records (both hard copies and electronic versions) to Avaya. On April 20, 2001, the Debtors forwarded to Avaya a document

2

titled "Schedule of Assumed Liabilities - Final" (the "Final Schedule").

3. On January 30, 2002, Kurt F. Gwynne was appointed as the chapter 11 trustee ("the Trustee") in the jointly administered cases. On March 18, 2004, the Trustee filed the above referenced adversary proceeding against Avaya asserting breach of contract and unjust enrichment for failure to pay certain liabilities assumed under the APA. Avaya filed an answer and affirmative defenses. At the close of discovery, both parties filed motions for summary judgment. The Trustee also filed a motion for sanctions seeking judgment in his favor as a result of Avaya's destruction of books and records essential to the Trustee's case.[1]

4. The United States Bankruptcy Court for the District of Delaware issued a decision granting, in part, Avaya's motion for summary judgment and granting, in part, both of the Trustee's motions. Quintus Corp. v. Avaya, Inc., 353 B.R. 77, 85 (Del. Bankr. 2006). More specifically, the bankruptcy court granted Avaya's motion for summary judgment on the Trustee's unjust enrichment claim, and granted the Trustee's motion for summary judgment on the breach of contract claim. In connection with the motion for sanctions, the bankruptcy court found that Avaya had intentionally destroyed evidence relevant to the breach of contract claim[2] and, consequently, "conclude[d] that

---

[1] Section 5.05 of the APA required Avaya to retain copies of the Debtors' files and business records for seven years after the Closing Date. However, several months after the Closing Date, an unknown employee of Avaya deleted the electronic version of the books and records when reformatting a computer server. According to the bankruptcy court, Avaya deliberately deleted the Debtors' electronic records in order to give itself more computer space.

[2] The Trustee asserted that Avaya failed to produce the Debtors' general ledger, sub-ledgers, and vendor files from which he could establish what remains unpaid of the liabilities Avaya assumed. Id. at 82.

3

the most severe sanction of judgment against Avaya is warranted." Id. at 93. As a result, the bankruptcy court entered judgment in favor of the Trustee and against Avaya "for all [the] claims listed in the Debtors' bankruptcy schedules and on the claims register which the Trustee contends is $1,888,410.52." Id. at 94. It is from this decision that Avaya appeals.

5. **Analysis.** The bankruptcy court began its analysis with the Trustee's motion for sanctions, and determined in this regard that Avaya intentionally destroyed, or otherwise failed to produce, Debtors' books and records at a time when it had not paid all the liabilities it had assumed under the APA. The court then proceeded to analyze whether the Trustee suffered any prejudice as a result.

6. The court concluded, first, that the Trustee was precluded as a matter of law from pursuing its equitable claim for unjust enrichment. In connection with the Trustee's breach of contract claim, the court reviewed Schedule 1.03 of the APA, which provides, in relevant part, that Avaya agreed to assume

> [a]ll liabilities listed on the Company Balance sheet . . . and **all liabilities accrued or recorded after the Balance Sheet Date in the ordinary course of business consistent with past practice to the extent not satisfied prior to the Closing Date**, provided that the aggregate amount of liabilities assumed pursuant to this paragraph shall not exceed $30,000,000. . . .

Id. at 85. The bankruptcy court interpreted the highlighted language above to mean that "Avaya assumed only obligations that were reflected in the Debtors' books and records." Id. at 88.[3] In this regard, the bankruptcy court next determined that the Final

---

[3] The Trustee had argued that the word "accrued" is interchangeable with the word "incurred," a broader meaning.

4

Schedule did not constitute an acceptable substitute for the Debtors' books and records, in that it did not

> represent a final and exclusive list of liabilities assumed by Avaya. Rather, the Final Schedule provide[d] only a broad categorical description of the types of liabilities to be assumed and an estimate of the amount owed in each of those categories; it does not include a specific listing of liabilities to be assumed, particularly with respect to the accrued liabilities. The Final Schedule bears no hallmarks of finality. It uses "estimate" six times, reflects dollar figures rounded to the nearest thousand and makes almost no reference to specific creditors.

Id. at 89. The court did conclude, however, that the Debtors' bankruptcy schedules reflected liabilities assumed by Avaya, based on evidence that these schedules were prepared contemporaneously from the Debtors' books and records. Avaya did produce the accounts payable ledger; the bankruptcy court concluded, however, that the vendor files (which were not produced) "were part of the Debtors' books and records" because "the Debtors' made notations on the face of the vendors' invoices" and only noted in the accounts payable ledger the Debtors' estimate of what they owed, not necessarily the correct amount owed to vendors. Id. at 92-93. Finally, the court declared that "the claims listed on the claims register, to the extent they were not otherwise recorded in the Debtors' bankruptcy schedules or books and records, were not assumed by Avaya." Id. at 91.

7. Based on the foregoing, the bankruptcy court concluded that "all the Debtors' books and records, including the vendor files, general ledger and sub-ledgers, are relevant to the Trustee's claims and should have been preserved and produced in discovery," and that the "most severe sanction of judgment against Avaya is warranted." Id. at 93. In determining the amount of the judgment to be entered in favor of the

Trustee on his breach of contract claim, the court basically accepted the Trustee's damages award of $1,888,410.52, which figure includes $731,921.46 reflected on the bankruptcy schedules, $228,564 in rejection damages,[4] and approximately $927,925.06 in liabilities reflected on the claims register. The court, despite its rejection of the claims register as a viable substitute for Debtors' books and records, reasoned as follows in this regard:

> If the Court applied the spoliation inference and inferred that the destroyed (or withheld) documents would be unfavorable to Avaya's position, it must conclude that the Debtors' books and records would include the claims of those creditors who have filed proofs of claims. Similarly, if the Court were to preclude Avaya from presenting any evidence that the Debtors' books and records did not include those claims or included them in lesser amounts, the Court would have to conclude that the Debtors' books and records were consistent with the creditors' records as reflected in their proofs of claim.

Id. at 93.

8. It cannot be disputed that Avaya had a contractual obligation to maintain Debtors' books and records for a period of seven years in order to facilitate the implementation of the APA. Under the circumstances at bar, to wit, Avaya has not produced said records at a time when there are still outstanding liabilities to be reconciled under the terms of the APA, I find no error in the bankruptcy court's entry of judgment against Avaya as a sanction for spoliation. My only concern insofar as the amount of judgment entered is the prospect of a windfall for certain creditors, i.e., those whose proofs of claim may not be tested against what records do exist or against a common sense approach to the claims process. In other words, it is not clear to me

---

[4] See id. at 94, n.13.

whether the claims register (rejected at the outset by the bankruptcy court as an inappropriate reflection of the Debtors' books and records) will dictate what claims are paid and in what amounts for those claims not otherwise reflected in the Debtors' records, or whether the bankruptcy court is giving the Trustee close to a million dollars to use at his discretion. I am uncomfortable with affirming, in whole, this award and remand for clarification of this issue.

                                                                                                                                 *[Signature]*
United States District Judge